**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **ABEL GARZA,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:23-cv-00027-D** |
| | § | |
| **ENERGY TRANSFER PARTNERS, L.L.C. and LA GRANGE ACQUISITION, L.P.,** | § | |
| | § | |
| | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Date: January 4, 2024

Respectfully submitted,

*/s/ Kelley Edwards*
Kelley Edwards (Attorney-in-Charge)
Texas State Bar No. 24041775
kedwards@littler.com
LITTLER MENDELSON, P.C.
1301 McKinney Street, Suite 1900
Houston, TX  77010
713.951.9400 (Telephone)
713.951.9212 (Facsimile)

Matthew A. Swanger (Local Counsel)
Texas State Bar No. 24100286
mswanger@littler.com
LITTLER MENDELSON, P.C.
2001 Ross Avenue, Suite 1500, Lock Box 116
Dallas, TX  75201.2931
214.880.8100 (Telephone)
214.880.0181 (Facsimile)

**ATTORNEYS FOR DEFENDANTS
ENERGY TRANSFER PARTNERS, L.L.C.
and LA GRANGE ACQUISITION, L.P.**

1

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................... 1

II.    FACTUAL BACKGROUND .............................................................................. 2

    A.    La Grange's Business and its Equal Employment Opportunities............................ 2

    B.    Plaintiff's Job Duties as a Plant Operator.................................................................. 3

    C.    Plaintiff's Accommodation Request and the Interactive Process.............................. 4

    D.    Plaintiff Could Not Perform the Essential Functions of His Job and There Were No Other Available Positions for Him.............................................................. 5

    E.    Plaintiff is Terminated Because He is Unable to Return to Work............................. 8

III.    PROCEDURAL POSTURE ............................................................................... 9

IV.    SUMMARY JUDGMENT STANDARD OF REVIEW ..................................... 9

V.    ARGUMENTS AND AUTHORITIES ............................................................. 10

    A.    Plaintiff's Disability Discrimination Claims Fail as a Matter of Law Because He Cannot Make Out a *Prima Facie* Case or Show Pretext for Discrimination. ........................................................................................................ 10

        i.    Plaintiff Was Not Qualified for His Position as a Plant Operator. ................ 11

        ii.    Plaintiff Cannot Establish that He was Terminated On Account of his Disability.................................................................................................... 16

        iii.    Plaintiff Cannot Establish Any Comparators.................................................. 17

    B.    La Grange Had a Legitimate, Nondiscriminatory Reason for Plaintiff's Termination, and Plaintiff Cannot Show it was Pretextual. ...................................... 18

    C.    Plaintiff's Age Discrimination Claim Fails. .......................................................... 20

    D.    Plaintiff Cannot Establish a Claim for Retaliation. ................................................ 22

    E.    Plaintiff's USERRA Claims Fail. .......................................................................... 25

VI.    CONCLUSION ................................................................................................. 31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alamo Heights Indep. Sch. Dist. v. Clark,*
    544 S.W.3d 755, 782 (Tex. 2018) ............................................................... 20

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) .................................................................................... 10

*Arismendez v. Nightingale Home Health Care, Inc.,*
    493 F.3d 602 (5th Cir.2007) ....................................................................... 19

*Auguster v. Vermillion Parish Sch. Bd.,*
    249 F.3d 400 (5th Cir. 2001) ...................................................................... 22

*AutoZone v. Reyes,*
    272 S.W.3d 588, 592 (Tex. 2008) (per curiam) .......................................... 21

*Barber v. Nabors Drilling U.S.A., Inc.,*
    130 F.3d 702 (5th Cir.1997) ................................................................. 13, 15

*Bennett v. Dallas Indep. Sch. Dist.,*
    936 F. Supp. 2d 767 (N.D. Tex. 2013) ................................................. 26, 27

*Bodenheimer v. PPG Indust., Inc.,*
    5 F.3d 955, 959 (5th Cir. 1993) .................................................................. 10

*Bradberry v. Jefferson Cty., Tex.,*
    732 F.3d 540, 545 (5th Cir. 2013) .............................................................. 26

*Britt v. Grocers Supply Co., Inc.,*
    978 F.2d 1441, 1451 (5th Cir. 1992) .......................................................... 20

*Burch v. City of Nacogdoches,*
    174 F.3d 615, 621 (5th Cir. 1999) .............................................................. 15

*Burns v. Nielsen,*
    456 F. Supp. 3d 807 (W.D. Tex. 2020) .................................................. 10, 16

*Burrus v. United Tel. Co. of Kan., Inc.,*
    683 F.2d 339, 343 (10th Cir.), cert. denied, 459 U.S. 1071, 103 S.Ct. 491, 74
    L.Ed.2d 633 (1982) ..................................................................................... 23

*Campos v. Steves & Sons, Inc.,*
    10 F.4th 515, 525 (5th Cir. 2021) ............................................................... 23

*Carr v. Reno*,
    23 F.3d 525, 530 (D.C.Cir.1994) ........................................................................13

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)...........................................................................................9

*Chandler v. City of Dall.*,
    2 F.3d 1385 (5th Cir.1993) ...............................................................................11

*Chavez v. City of Arvada*,
    88 F.3d 861, 866 (10th Cir.1996), cert. denied, 519 U.S. 1056, 117 S.Ct. 684,
    136 L.Ed.2d 608 (1997) .....................................................................................23

*Clark Cnty. Sch. Dist. v. Breeden*,
    532 U.S. 268, 273–74 (2001)...........................................................................24

*E.E.O.C. v. Chevron Phillips Chem. Co.*,
    570 F.3d 606, 615 (5th Cir.2009) .....................................................................11

*E.E.O.C. v. LHC Group, Inc.*,
    773 F.3d 688 (5th Cir. 2014) ...........................................................10, 11, 12, 16

*Evans v. Tex. Dep't of Transp.*,
    547 F.Supp.2d 626 (E.D.Tex.2007), aff'd, 273 Fed.Appx. 391 (5th Cir.2008)
    (per curiam)......................................................................................................19

*Foreman v. Babcock & Wilcox Co.*,
    117 F.3d 800, 810 (5th Cir.1997) ................................................................13, 14

*Garcia v. Professional Contract Servs., Inc.*,
    938 F.3d 236 (5th Cir. 2019) ...........................................................................24

*Greene v. Santander Consumer USA, Inc.*,
    No. 4:18-CV-247-A, 2019 WL 399532 (N.D. Tex. Jan. 30, 2019)...................18, 24

*Hazen Paper Co. v. Biggins*,
    507 U.S. 604, 610 (1993)...................................................................................21

*Jenkins v. Cleco Power, LLC*,
    487 F.3d 309, 315 (5th Cir.2007) .....................................................................14

*Kapche v. City of San Antonio*,
    304 F.3d 493 (5th Cir.2002) (per curiam)..........................................................11

*Laurence v. Chevron U.S.A., Inc.*,
    885 F.2d 280 (5th Cir.1989) .............................................................................20

*Lee v. Kansas City S. Ry. Co.*,
   574 F.3d 253 (5th Cir.2009) ...................................................................17

*Little v. Republic Refining Co.*,
   924 F.2d 93 (5th Cir.1991) ....................................................................20

*Long v. Eastfield College*,
   88 F.3d 300, 305 n. 4 (5th Cir.1996) .....................................................25

*Martin v. Kroger Co.*,
   65 F. Supp.2d 516 (S.D. Tex. 1999), aff'd, 224 F.3d 765 (5th Cir. 2000)..............................23

*Matsushita Elec. Indus., Co., Ltd. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986)..............................................................................9

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).....................................11, 18, 20, 21, 23

*McInnis v. Alamo Cmty. Coll. Dist.*,
   207 F.3d 276 (5th Cir. 2000) ............................................................10, 17

*Medina v. Ramsey Steel Co., Inc.*,
   238 F.3d 674, 685 (5th Cir.2001) ..........................................................25

*Mission Consol. Indep. Sch. Dist. v. Garcia*,
   372 S.W.3d 629, 632 (Tex. 2012).............................................................21

*Neely v. PSEG Tex., Ltd. P'ship*,
   735 F.3d 242 (5th Cir.2013) .................................................................11

*Otero v. New Mexico Corr. Dep't*,
   640 F.Supp.2d 1346 (D.N.M. 2009) .........................................................29

*Owens v. Calhoun Cnty. Sch. Dist.*,
   546 F. App'x 445, 448-49 (5th Cir. 2013) .............................................18, 24

*Pegram v. Honeywell, Inc.*,
   361 F.3d 285–87 (5th Cir. 2004) ............................................................10

*Pineda v. UPS, Inc.*,
   360 F.3d 483 (5th Cir. 2004) ............................................................23, 25

*Quick v. Frontier Airlines, Inc.*,
   544 F.Supp.2d 1197 (D. Colo. 2008).........................................................29

*Rachid v. Jack In The Box, Inc.*,
   376 F.3d 305 (5th Cir.2004) .................................................................19

*Reed v. Petroleum Helicopters, Inc.*,
    218 F.3d 477 (5th Cir. 2000) ...................................................................17

*Reeves v. Sanderson Plumbing Products, Inc.*
    120 S.Ct. 2097, 2105 (2000)................................................................21

*Robertson v. Neuromedical Ctr.*,
    161 F.3d 292, 295 (5th Cir. 1998) ...................................................15

*Rogers v. Int'l Marine Terminals, Inc.*,
    87 F.3d 755, 759 (5th Cir. 1996) .................................................13, 17

*Ross v. Judson Indep. Sch. Dist.*,
    993 F.3d 315, 321 (5th Cir. 2021), cert. denied, 142 S. Ct. 216, 211 L. Ed. 2d
    94 (2021)..............................................................................17, 18

*Shackelford v. Deloitte & Touche*, LLP
    190 F.3d 398, 405 (5th Cir. 1999) ...................................................20

*Sheehan v. Dep't of the Navy*,
    240 F.3d 1009, 1013 (Fed. Cir. 2001).............................................26, 27

*Silva v. City of Hidalgo, Tex.*,
    575 Fed. Appx. 419 (5th Cir. 2014).................................................13, 14

*Snowman v. IMCO Recycling, Inc.*,
    347 F.Supp. 2d 338, 342 (N.D. Tex. 2004) .........................................27

*Swanson v. Gen. Serv. Admin.*,
    110 F.3d 1180, 1186 (5th Cir.1997) .................................................20

*Tex. Tech Univ. Health Scis. Ctr.-El Paso v. Flores*,
    612 S.W.3d 299, 305 (Tex. 2020).................................................20, 21

*Turco v. Hoechst Celanese Corp.*,
    101 F.3d 1090, 1093 (5th Cir.1996) (per curiam)................................11

*United States v. Diebold, Inc.*,
    369 U.S. 654, 655 (1962)...............................................................9

*Williams v. Tarrant Cnty. Coll. Dist.*,
    717 F. App'x 440 (5th Cir. 2018).....................................................10

**Statutes**

38 U.S.C.A. § 4311(c) ....................................................................26

38 U.S.C.A. § 4311(b) ....................................................................29

38 U.S.C.A. § 4311(c)(1) .................................................................................26

42 U.S.C.A. § 12111(8) ...............................................................................11, 12

42 U.S.C.A. § 12111(9)(B) ..............................................................................13

ADA .................................................................................................5, 10, 13, 15

Tex. Lab. Code § 21.055 ..................................................................................23

Texas Commission on Human Rights Act ..........................................................9

Chapter 21 of the Texas Labor Code ................................................................9

Uniformed Services Employment and Reemployment Rights Act (USERRA) ................... *passim*

**Other Authorities**

FED. R. CIV. P. 56(c) ........................................................................................9

FED. R. CIV. P. 56(e) ......................................................................................10

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **ABEL GARZA,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:23-cv-00027-D** |
| | § | |
| **ENERGY TRANSFER PARTNERS, L.L.C. and LA GRANGE ACQUISITION, L.P.,** | § | |
| | § | |
| | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

<u>**BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**</u>

Defendants Energy Transfer Partners, L.L.C. ("Energy Transfer")[1] and La Grange Acquisition, L.P. ("La Grange") (collectively, the "Company" or "Defendants") file this Brief in Support of their Motion for Summary Judgment and respectfully show the Court as follows:

## I.  <u>INTRODUCTION</u>

Plaintiff, a former Plant Operator for La Grange, is unable to establish that he was discriminated or retaliated against because of his age, disability, or military status.  Instead, the undisputed evidence shows that La Grange terminated Plaintiff's employment because he could no longer perform the essential functions of his position, with or without reasonable accommodation.  The Company notified Plaintiff on several occasions that it could not identify any available accommodation that would allow him to perform the essential functions of his position or any other available position.  With this knowledge, Plaintiff did not return to work and instead remained on a leave of absence for nearly nine months until his employment was

---

[1] Plaintiff has improperly named Energy Transfer Partners L.L.C. as a Defendant in this matter. Plaintiff was employed by La Grange Acquisition, L.P. at all relevant times and La Grange Acquisition, L.P. is the proper Defendant in this matter.  Energy Transfer should be dismissed from this action for this reason alone.

terminated due to his failure to return to work. Because Plaintiff cannot establish the essential elements of his discrimination and retaliation claims, and because he cannot overcome La Grange's legitimate, nondiscriminatory reason for his termination, Defendants ask the Court to grant their Motion and dismiss Plaintiff's claims in their entirety.

## II.     FACTUAL BACKGROUND

### A.     La Grange's Business and its Equal Employment Opportunities.

La Grange is a subsidiary and employing entity of Energy Transfer, a natural gas pipeline company that, among other things, transports and stores natural gas, natural gas liquids, crude oil, and refined products throughout the country. (App. at 210)[2].  La Grange is an equal opportunity employer that does not discriminate based on age, disability, veteran status, or any other protected characteristic. (App. at 287-289, 291)[3].  La Grange is also committed to complying with the Americans with Disabilities Act ("ADA"), as well as any similar state and local laws, and considers reasonable accommodations for all qualified disabled employees or applicants upon request. (App. at 297-298)[4].  La Grange strictly forbids any form of retaliation that is directed toward an employee because he or she has raised concerns of unlawful discrimination, reported violations of the EEO and Anti-Discrimination policy or the Disability Accommodation policy, or because he or she has filed a charge of unlawful discrimination. (App. at 295-296)[5].  Plaintiff was fully aware of La Grange's policies and acknowledged that he read and understood these policies. (App. at 83)[6].

---

[2] Exhibit 2, Velasco Depo., 16:14-22.

[3] Exhibit 6, Ariza Decl., ¶3; Exhibit 6-A, Employee Handbook, pg. 10.

[4] Exhibit 6-A, Employee Handbook, pg. 16-17.

[5] Exhibit 6, Employee Handbook, pg. 14-15.

[6] Exhibit 1, Plaintiff Depo., 81:1-11 .

**B.    Plaintiff's Job Duties as a Plant Operator.**

La Grange hired Plaintiff on or around July 20, 2015, at the King Ranch Gas Plant in Kingsville, Texas. (App. at 71,72-73)[7]. Although originally hired as a Plant Operator C, Plaintiff was eventually promoted to Plant Operator A. (App. at 72, 75)[8]. The primary function of the King Ranch Gas Plant is to collect product at the plant, clean the product, chemically separate the product, and then move the product through pipelines downstream to other plants. (App. at 254-255)[9]. The Plant Operator position is responsible for the operation of compressors, motors, cooling equipment, pumps, valves, pipelines and other related gas processing equipment. (App. at 287-289, 301-303, 77)[10]. More specifically, Plaintiff's job duties as a Plant Operator included:

- Operating, inspecting, and maintaining equipment and systems at the King Ranch Plant in a reliable and efficient manner while in compliance with Energy Transfer and La Grange policies;

- Responding to alarms and problems within the plant and taking corrective measures;

- Monitor and control pressures, temperatures, flow rates, and levels to efficiently achieve desired operating results;

- Oversee the construction and/or maintenance activities performed by third parties;

- Working independently and exercising good judgment;

- Working in a 24/7 operational environment, shift rotations, and performing call outs 24/7;

- Reacting to high stress/emergency situations in a deliberate, thoughtful, and timely manner; and

---

[7] Exhibit 1, Plaintiff Depo., 69:17-19, 70:22-71:1.

[8] Exhibit 1, Plaintiff Depo., 70:11-16, 73:6-12.

[9] Exhibit 4, R. Garza Depo., 44:11-45:3.

[10] Exhibit 6, Ariza Decl., ¶3; Exhibit 6-B, Job Description – Plant Operator; Exhibit 1, Plaintiff Depo., 75:4-13.

- Working in confined spaces and around loud machinery.

(App. at 301-303, 77-78, 79-81)[11].  These duties were part of the essential functions of Plaintiff's job as a Plant Operator at the King Ranch gas plant. (*Id*.).

## C.    Plaintiff's Accommodation Request and the Interactive Process.

In April of 2021, Plaintiff notified Clarissa Velasco, Supervisor – Leave Administration, that he needed medical accommodations related to PTSD/Anxiety/Depression. (App. at 90, 269)[12]. Specifically, Plaintiff requested being moved to another area of the Plant, such as the shipping station, moving to a safety representative position, or having someone else work with him in case he had problems performing his regular duties. (App. at 90-91, 269)[13]. Upon receiving this request, the Company followed its normal process for determining Plaintiff's functional limitations and considering whether there were any reasonable accommodations available that would allow Plaintiff to perform the essential functions of his job. (App. at 211)[14]. As part of these efforts, the Company reached out to Plaintiff's doctor, Dr. Jeremy Waddell, for additional documentation on Plaintiff's medical condition in order to evaluate Plaintiff's functional limitations. (App. at 211).[15] Dr. Waddell stated that Plaintiff would function best in an open, minimally restrictive environment, with predictable and/or manualized tasks to complete, and that having an environment free from loud and unexpected stimuli would allow Plaintiff to function at a higher

---

[11] Exhibit 6-B, Job Description – Plant Operator ; Exhibit 1, Plaintiff Depo., 75:14-76:2, 77:13-79:16). (emphasis added).

[12] Exhibit 1, Plaintiff Depo., 88:17-20; Exhibit 5-A, 2021-04-01 Email from Plaintiff.

[13] Exhibit 1, Plaintiff Depo., 88:21-89:11; Exhibit 5-A, 2021-04-01 Email from Plaintiff.

[14] Exhibit 2, Velasco Depo., 44:8-20.

[15] Exhibit 2, Velasco Depo., 44:8-25.

level. (App. at 274, 104-105, 212, 214-215)[16].

Shortly after the Company received this information from Dr. Waddell, Plaintiff requested to take time away from work and was approved for short-term disability leave ("STD leave"). (App. at 108-110)[17]. Plaintiff remained on STD leave until January 6, 2022. (App. at 116)[18]. In the meantime, in August of 2021, Dr. Waddell provided Plaintiff with a release to return to work with temporary restrictions, which included (1) movement to less restrictive environment; (2) movement to a less noisy environment; and (3) movement to a more predictable work environment. (App. at 276-277, 114)[19]. Given the nature of Plaintiff's job duties, it was evident to the Company that Plaintiff was unable to perform the essential functions of his Plant Operator job with these restrictions, and the Company was unable to identify any available accommodation that would have allowed him to do so; accordingly, the Company notified Plaintiff by letter on October 22, 2021, that it could not accommodate him. (App. at 278, 116-117, 218-219)[20]. However, the Company encouraged Plaintiff to submit additional information for it to consider in order to determine whether any alternative accommodations were possible. (*Id*.).

**D.    Plaintiff Could Not Perform the Essential Functions of His Job and There Were No Other Available Positions for Him.**

Following the receipt of additional information from Plaintiff, the Company continued to work towards finding a solution for Plaintiff that would accommodate his disability. (App. at

---

[16] Exhibit 5-B, ADA Questionnaire from Dr. Waddell; Exhibit 1, Plaintiff Depo., 102:16-103:2; Exhibit 2, Velasco Depo., 69:20-70:2, 71:17-72:2.

[17] Exhibit 1, Plaintiff Depo., 106:8-11, 106:19-108:8.

[18] Exhibit 1, Plaintiff Depo., 114:7-16.

[19] Exhibit 5-C, Work Release; Exhibit 1, Plaintiff Depo., 112:15-19.

[20] Exhibit 5-D, 2021-10-22 Letter Regarding Accommodation; Exhibit 1, Plaintiff Depo., 114:17-115:4; Exhibit 2, Velasco Depo., 116:25-117:9.

222)[21].  Ms. Velasco spoke with Plaintiff's supervisors about potentially modifying the job duties of a Plant Operator. (App. at 264-265)[22]. Given the nature of the Plant Operator position, however, the Company was unable to provide Plaintiff with a less noisy, more open, less restrictive, and more predictable environment because doing so would require eliminating the essential functions of the Plant Operator position. (App. at 301-303, 282-283, 218-219)[23]. Accordingly, the Company considered whether there were any other positions that Plaintiff could perform with his restrictions. (App. at 220)[24].

In terms of positions at the King Ranch gas plant, Plaintiff requested that he be placed in a warehouse position, a shipping station position, or a safety position. (App. at 279-280, 118, 120)[25]. But none of these positions were available at the time. (App. at 220)[26].  Plaintiff expressed interest in the warehouseman position because the current employee who held the position was retiring; however, upon her retirement, the Company decided not to backfill the position and instead absorbed the duties into other roles. (App. at 144, 256)[27].  The safety position was also not available, as another employee at the King Ranch gas plant was already in that position. (App. at 252-253, 258)[28].  And the Company also decided not to backfill the former shipping station position in light of the modernization of the plant and the need for operators to train and be certified

---

[21] Exhibit 2, Velasco Depo., 175:17-22

[22] Exhibit 5, Velasco Decl., ¶3

[23] Exhibit 6-B, Job Descriptions; Exhibit 5-G, 2021-11-23 Letter; Exhibit 2, Velasco Depo., 116:25-117:9

[24] Exhibit 2, Velasco Depo., 153:17-22

[25] Exhibit 5-E, 2021-11-01 Letter from Plaintiff; Exhibit 1, Plaintiff Depo., 116:10-13, 120:5-24

[26] Exhibit 2, Velasco Depo., 155:3-6

[27] Exhibit 1, Plaintiff Depo., 142:3-11; Exhibit 4, R. Garza Depo., 50:10-17

[28] Exhibit 4, R. Garza Depo., 24:21-22, 25:23-25, 64:11-18

in all plant areas. (App. at 159, 217, 223-224, 257)[29]. But even if these positions had been available, they would not have offered Plaintiff a less restrictive, less noisy, and more predictable environment due to the nature of the work environment in the warehouse. (App. at 282-283)[30]. And while Plaintiff also expressed interest in a recruiting position with human resources, Plaintiff did not have the required educational background to fill the position because he did not have a bachelor's degree in a business-related field. (App. at 155, 287-288, 304)[31]. Accordingly, none of the positions Plaintiff identified amounted to reasonable accommodations of Plaintiff's medical limitations.

Plaintiff also applied, and was interviewed for, a safety representative position at another plant in October of 2021. (App. at 124, 126-127)[32]. In addition to Plaintiff, Michael Johnson, Director of Operations STX, interviewed five other individuals for the open position. (App. at 127-128, 239-240)[33]. Following the interviews, Mr. Johnson selected Matthew Thomas, a veteran, for the safety representative position (App. at 305, 132-133, 225)[34] and provided a detailed explanation of the reasoning for the decision, including Mr. Thomas's qualifying experience for the role. (App. at 306, 308)[35]. Once Mr. Thomas cleared his background check and drug testing,

---

[29] Exhibit 1, Plaintiff Depo., 157:7-21; Exhibit 2, Velasco Depo., 104:6-12, 183:23-184:1; Exhibit 4, R. Garza Depo., 59:3-11.

[30] Exhibit 5-G, 2021-11-23 Letter Regarding Accommodations.

[31] Exhibit 1, Plaintiff Depo., 153:9-21; Exhibit 6, Ariza Decl., ¶3; Exhibit 6-C, Job Description for Recruiting Position.

[32] Exhibit 1, Plaintiff Depo., 122:14-16, 124:11-17, 125:2-4.

[33] Exhibit 1, Plaintiff Depo., 125:20-126:5; Exhibit 3, De La Vega Depo., 21:23-22:2.

[34] Exhibit 7, Johnson Decl., ¶3; Exhibit 1, Plaintiff Depo., 130:20-131:9; Exhibit 2, Velasco Depo., 204:15-19.

[35] Exhibit 7, Johnson Decl., ¶5; Exhibit 7-A, Justification for Matthew Thomas.

the Company notified Plaintiff that he did not receive the position. (App. at 241, 173)[36].  Although Plaintiff now believes Mr. Johnson's decision not to select him for the position was discriminatory, Plaintiff admits that at no point during the interview or afterwards did Mr. Johnson make any negative comment about Plaintiff's disability, his age, or his military service. (App. at 130)[37].

**E.      Plaintiff is Terminated Because He is Unable to Return to Work.**

By the very beginning of 2022, Plaintiff was fully aware that none of the positions he expressed interest in were available and that the Company could not accommodate him otherwise because doing so would require the elimination of one or more essential functions of his job.  Yet, Plaintiff did not apply for any other positions at the Company or suggest any other possible accommodations. (App. at 161, 165, 169)[38].  Instead, Plaintiff remained on leave for several more months and did not return to work. (App. at 284-286)[39].  On April 20, 2022, Ms. Velasco sent Plaintiff a letter that again detailed the reasons why the Company could not accommodate Plaintiff and provided him one more opportunity to return to work. (App. at 266, 284-286, 170)[40]. By this point, Plaintiff had been on leave for nearly nine months and La Grange could not permit him to remain on leave indefinitely. (App. at 285)[41].  Accordingly, when Plaintiff did not return to work on April 25, 2022, La Grange terminated his employment for failure to return to work. (App. at 226, 285)[42].

---

[36] Exhibit 3, De La Vega Depo., 32:7-9; Exhibit 1, Plaintiff Depo., 171:5-10.

[37] Exhibit 1, Plaintiff Depo., 128:2-14.

[38] Exhibit 1, Plaintiff Depo., 159:14-23, 163:20-22, 167:8-19.

[39] Exhibit 5-H, 2022-04-20 Letter Regarding Return to Work.

[40] Exhibit 5, Velasco Decl., ¶11; Exhibit 5-H, 2022-04-20 Letter Regarding Return to Work; Exhibit 1, Plaintiff Depo., 168:3-7.

[41] Exhibit 5-H, 2022-04-20 Letter Regarding Return to Work.

[42] Exhibit 2, Velasco Depo., 224:20-23; Exhibit 5-H, 2022-04-20 Letter Regarding Return to Work.

### III.     PROCEDURAL POSTURE

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and Texas Workforce Commission ("TWC") on or about January 4, 2022. [Doc. #1-3, pg. 19, ¶9]. Plaintiff received his right to sue letter on or about October 11, 2022 [Doc. #1-3, pg. 19, ¶10] and filed his Original Petition in the 95th Judicial District Court of Dallas County, Texas, on November 21, 2022. [Doc. #1-3, pg. 17]. Plaintiff's Original Petition alleges claims of discrimination and retaliation based on his age and disability under Chapter 21 of the Texas Labor Code, also known as the Texas Commission on Human Rights Act ("TCHRA"), as well as claims of retaliation and discrimination under the Uniformed Services Employment and Reemployment Rights Act (USERRA). [Doc. #1-3, pg. 24-29, ¶32-72]. Defendants removed the case to this Court on January 5, 2023. [Doc. #1].

### IV.     SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Matsushita Elec. Indus., Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether issues of fact exist requiring a trial, "the inferences to be drawn from the underlying facts… must be viewed in the light most favorable to the party opposing the motion." *Matsushita*, 475 U.S. at 587 (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

The moving party has the initial burden of showing no genuine issue of material fact exists. *Celotex*, 477 U.S. at 322-23. Summary judgment must be entered if the nonmoving party fails to provide sufficient evidence on an essential element to that party's case on which the party will bear the burden of proof at trial. *Id*. The nonmoving party must present more than a mere scintilla

of evidence and "may not rest upon the mere allegations or denials of his pleading, but… must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); FED. R. CIV. P. 56(e) (emphasis added). A party may not defeat a motion for summary judgment by relying on hearsay, conclusions, unsubstantiated assertions, conjecture, or subjective beliefs. *Bodenheimer v. PPG Indust., Inc.*, 5 F.3d 955, 959 (5th Cir. 1993).

## V.     ARGUMENTS AND AUTHORITIES

**A.     Plaintiff's Disability Discrimination Claims Fail as a Matter of Law Because He Cannot Make Out a *Prima Facie* Case or Show Pretext for Discrimination.**

Plaintiff argues that Defendants discriminated against him on the basis of his disability by terminating his employment.[43]   As explained below, Plaintiff cannot establish a *prima facie* case of disability discrimination under the TCHRA[44] because there is no evidence that Plaintiff was qualified for his position or that there is a causal connection between his alleged disability and his termination.   To establish a *prima facie* case of disability discrimination, Plaintiff must prove: (1) that he has a disability; (2) that he was qualified for the job; (3) that he was subject to an adverse employment decision on account of his disability, *i.e.*, there was a "causal nexus," *i. e.*, "causal connection," between the adverse employment action and his disability, and [4] that he was replaced by or treated less favorably than non-disabled employees. *E.E.O.C. v. LHC Group, Inc.*, 773 F.3d 688, 697 (5th Cir. 2014); *Burns v. Nielsen*, 456 F. Supp. 3d 807, 824 (W.D. Tex. 2020); *McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 279–80 (5th Cir. 2000).   In a discriminatory termination action under the TCHRA, Plaintiff may either present direct evidence that he was

---

[43] Plaintiff has not made a claim of "failure to accommodate" under the TCHRA. *See* Plaintiff's Original Petition [Dkt. No. 1-3, pg. 17], which pleads only a discrimination claim, not a failure-to-accommodate claim.

[44] Because the TCHRA "'parallels the language of the [ADA]', Texas Courts follow ADA law in evaluating TCHRA discrimination claims." *Williams v. Tarrant Cnty. Coll. Dist.*, 717 F. App'x 440, 444–45 (5th Cir. 2018) (quoting *Pegram v. Honeywell, Inc.*, 361 F.3d 285–87 (5th Cir. 2004)).

discriminated against because of his disability or alternatively proceed under the burden-shifting analysis first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242, 245 (5th Cir.2013). This burden-shifting framework first requires Plaintiff to establish a *prima facie* case of discrimination. *See E.E.O.C. v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 615 (5th Cir.2009). If Plaintiff is able to meet this burden, then the Company must articulate a legitimate, nondiscriminatory reason for terminating him. *See id.*  The burden then shifts back to Plaintiff, who must demonstrate that the Company's proffered reason is pretextual in order to avoid summary judgment. *See id.*

### i.    *Plaintiff Was Not Qualified for His Position as a Plant Operator.*

Plaintiff cannot make a *prima facie* case of disability discrimination because he cannot show that he was qualified for his position as a Plant Operator. On the contrary, the undisputed evidence shows that Plaintiff could not perform the essential functions of his job and there were no reasonable accommodations that would have enabled Plaintiff to perform those duties.

To avoid summary judgment, Plaintiff must show that either (1) he could "perform the essential functions of the job in spite of [his] disability," or, if he could not, (2) that "a reasonable accommodation of [his] disability would have enabled [him] to perform the essential functions of the job." *LHC Group, Inc.*, 773 F.3d at 697 (*citing Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1093 (5th Cir.1996) (per curiam) (citing the ADA, 42 U.S.C. § 12111(8), which defines "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position ...")). A function is "essential" if it bears "more than a marginal relationship" to the employee's job. *Chandler v. City of Dall.*, 2 F.3d 1385, 1393 (5th Cir.1993), holding modified on other grounds as discussed in *Kapche v. City of San Antonio*, 304 F.3d 493 (5th Cir.2002) (per curiam).

Here, it is undisputed that the essential functions of Plaintiff's job included the ability to

work independently, respond to alarms and problems within the plant while taking corrective measures, react to high stress/emergency situations in a deliberate, thoughtful, and timely manner, and work in confined spaces and around loud machinery (App. at 301-303, 77-81)[45]. S*ee LHC Group, Inc.*, 773 F.3d at 697–98 (stating that courts owe deference to a company's job description and "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8)). But Plaintiff told the Company that he could not be around loud noises and alarms because it would cause anxiety and flashbacks (App. at 57, 90, 269)[46], admitted that he could not perform the Plant Operator position alone (App. at 95)[47], and stated that he could not return to a position in the powerhouse (App. at 121)[48]. Further, the restrictions Plaintiff received from his doctor included movement to less restrictive environment, movement to a less noisy environment, and movement to a more predictable work environment. (App. at 277, 114)[49]. By his own statements, as reinforced by his doctor's orders, Plaintiff could not perform the essential functions of his Plant Operator position because he was required to respond to alarms, work independently, react to high stress and emergency situations, work in confined spaces, and work around loud machinery. (App. at 301-303)[50].  Because the accommodation Plaintiff was requesting was to remove those essential functions from his regular duties, he was not qualified

---

[45] Exhibit 6-B, Job Description – Plant Operator; Exhibit 1, Plaintiff Depo., 75:14-76:2, 77:13-79:16

[46] Exhibit 1, Plaintiff Depo., 55:7-12, 88:17-20; Exhibit 5-A, 2021-04-01 Email from Plaintiff

[47] Exhibit 1, Plaintiff Depo., 93:23-25

[48] Exhibit 1, Plaintiff Depo., 119:1-11

[49] Exhibit 5-C, Work Release; Exhibit 1, Plaintiff Depo., 112:15-19

[50] Exhibit 6-B, Job Descriptions – Plant Operator

for his Plant Operator position as a matter of law. *See Barber v. Nabors Drilling U.S.A., Inc.*, 130 F.3d 702, 709 (5th Cir.1997) ("We cannot say that [an employee] can perform the essential functions of the job with reasonable accommodation, if the only successful accommodation is for [the employee] not to perform those essential functions."); *see also Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 759 (5th Cir. 1996) (citing *Carr v. Reno*, 23 F.3d 525, 530 (D.C.Cir.1994) (stating that an essential element of any job is the ability to appear for work).

Nor was there any reasonable accommodation La Grange could have provided that would have enabled Plaintiff to perform those essential job functions. The ADA defines "reasonable accommodations" to include:

> job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9)(B). As explained above, Plaintiff's requested accommodations included being moved to another position – including a position at shipping station, a warehouse position, a safety representative position, and a recruiting position – or to have someone work alongside him to be able to assist him "if there [were] problems." (App. at 269, 279-280, 118, 122, 153)[51]. None of these proposed accommodations were reasonable, as a matter of law.

First, Plaintiffs' request to be moved to another position was not reasonable because the positions he identified either did not exist, or he was not qualified for the role. "For the accommodation of a reassignment to be reasonable, it is clear that a position must first exist and be vacant." *Silva v. City of Hidalgo, Tex.*, 575 Fed. Appx. 419, 423 (5th Cir. 2014) (citing *Foreman*

---

[51] Exhibit 5-A, 2021-04-01 Email from Plaintiff; Exhibit 5-E, 2021-11-01 Letter from Plaintiff; Exhibit 1, Plaintiff Depo., 116:10-13, 120:5-24, 151:17-23.

*v. Babcock & Wilcox Co.*, 117 F.3d 800, 810 (5th Cir.1997).  As explained above, the positions Plaintiff requested were either not open or were not going to be back-filled. (App. at 221)[52]. For example, the Company had already planned to not fill the warehouse position (App. at 144, 256)[53], the shipping station position was being eliminated due to modernization of the plant, (App. at 159, 217)[54], and another individual already held the position of safety representative (App. at 252-253, 258)[55]. Even the recruiting position was not a viable option because Plaintiff did not meet the qualification of having a bachelor's degree in a business-related field. (App. at 155, 304)[56]. *See Silva*, 575 Fed. Appx. at 423 (citing *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir.2007)) (stating that a plaintiff bears the burden of proving that an available position existed that he was qualified for and could, with reasonable accommodations, perform). Although Plaintiff did apply for another safety representative at a different plant, the director of that plant made the decision to hire a different individual whom he deemed more qualified. (App. at 305, 132, 225)[57]. And because the safety position still would have required Plaintiff to work in a loud environment, Plaintiff was not qualified for the role in any event. (App. at 282-283)[58].

Plaintiff's request for the Company to assign someone to follow Plaintiff around and perform his essential job duties if one of Plaintiff's episodes arose was likewise unreasonable. As explained above, an essential function of the Plant Operator position is the ability to work

---

[52] Exhibit 2, Velasco Depo., 155:3-6

[53] Exhibit 1, Plaintiff Depo., 142:3-11; Exhibit 4, R. Garza Depo., 50:10-17

[54] Exhibit 1, Plaintiff Depo., 157:7-21; Exhibit 2, Velasco Depo., 104:6-12

[55] Exhibit 4, R. Garza Depo., 24:21-22, 25:23-25, 64:11-18

[56] Exhibit 1, Plaintiff Depo., 153:9-21; Exhibit 6-C, Job Description for Human Resources Position

[57] Exhibit 7, Johnson Decl., ¶3; Exhibit 1, Plaintiff Depo., 130:20-131:9; Exhibit 2, Velasco Depo., 204:15-19

[58] Exhibit 5-G, 2021-11-23 Letter Regarding Accommodations

independently and respond promptly to alarms and problems within the plant and take the proper corrective measures. (App. at 301-303)[59]. Plaintiff testified, though, that when the alarms would go off, his PTSD/anxiety/depression symptoms were sometimes triggered. (App. at 57)[60]. These symptoms included the inability to focus or concentrate, becoming irritable, and having difficulty breathing. (App. at 54-57)[61]. Plaintiff also testified that these symptoms and "episodes" varied – sometimes they could happen several times during a week or sometimes only once. (App. at 58-59)[62]. Given the nature of his episodic condition, Plaintiff was essentially requesting that La Grange designate another employee to be available at the drop of a hat to perform Plaintiff's essential job duties, such as responding to problems in the plant, if there was an unpredictable issue. (App. at 65-66)[63]. The law is clear that it is not a reasonable accommodation to reassign other employees to shadow an individual in case he is not able to perform his job duties. *See Burch v. City of Nacogdoches*, 174 F.3d 615, 621 (5th Cir. 1999) ("The ADA does not require an employer to relieve an employee of any essential functions of his or her job, modify those duties, reassign existing employees to perform those jobs, or hire new employees to do so") (citing *Robertson v. Neuromedical Ctr.*, 161 F.3d 292, 295 (5th Cir. 1998) and *Barber*, 130 F.3d at 709). Accordingly, Plaintiff's only other requested accommodation was not reasonable as a matter of law.

Because Plaintiff could not perform the essential functions of his job, with or without reasonable accommodation, Plaintiff was not a "qualified employee" under the TCHRA, and his

---

[59] Exhibit 6-B, Job Description – Plant Operator

[60] Exhibit 1, Plaintiff Depo. 55:7-12

[61] Exhibit 1, Plaintiff Depo. 54:20-55:6

[62] Exhibit 1, Plaintiff Depo. 56:20-57:1

[63] Exhibit 1, Plaintiff Depo. 63:21-64:12

claim necessarily fails.  Defendants are entitled to summary judgment on this basis alone.

> ### ii.   *Plaintiff Cannot Establish that He was Terminated On Account of his Disability.*

Even if Plaintiff could show that he was qualified for his Plant Operator position, his disability discrimination claim still fails because he cannot demonstrate that La Grange terminated his employment because of his disability.  In order to succeed on this element, Plaintiff is required to prove that he was subject to an adverse employment decision on account of his disability, *i.e.*, there was a "causal connection" between his termination and his disability. *LHC Group, Inc.*, 773 F.3d at 697; *Burns*, 456 F. Supp. 3d at 824.  Despite Plaintiff's assertion that he was terminated on account of his disability, the facts show that Plaintiff was terminated because he was out on an indefinite leave of absence and had not demonstrated any ability to return to work in the foreseeable future. (App. at 284-286, 170)[64].

As explained above, Plaintiff took a leave of absence from his Plant Operator position because of his inability to perform the role with his medical restrictions.  (App. at 108-110)[65]. While on leave, La Grange notified Plaintiff on several occasions that they were not going to be able to accommodate him given his limitations and the impact of those limitations on the essential functions of his job. (App. at 278, 282-283)[66]. In January of 2022, when La Grange informed Plaintiff that he did not receive the safety representative position he had applied for, and Plaintiff knew that none of the other positions he requested were available, Plaintiff continued to remain on leave, did not apply for any other positions, and did not attempt to return to work. (App. at 161,

---

[64] Exhibit 5-H, 2022-04-20 Letter Regarding Return to Work; Exhibit 1, Plaintiff Depo., 168:3-7

[65] Exhibit 1, Plaintiff Depo., 106:8-11, 106:19-108:8

[66] Exhibit 5-D, 2021-10-22 Letter Regarding Accommodations; Exhibit 5-G, 2021-11-23 Letter Regarding Accommodations

165, 169)[67]. Indeed, instead of attempting to return to work, Plaintiff began looking for jobs at other companies while still employed by La Grange. (App. at 166)[68]. After the passage of several months, La Grange contacted Plaintiff to provide him with one last opportunity to return to work. (App. at 284-286)[69]. When Plaintiff did not return to work as requested, La Grange terminated his employment. (App. at 284-286, 226[70]).  Plaintiff was not terminated "on account of" his disability, rather, he was terminated because he failed to return to work, and the only alternative was to place him on an indefinite leave of absence, which La Grange was not required to provide as a matter of law.  *See Reed v. Petroleum Helicopters, Inc.*, 218 F.3d 477, 481 (5th Cir. 2000) (citing *Rogers*, 87 F.3d at 759 (holding that an indefinite medical leave is not a reasonable accommodation).

### iii.    *Plaintiff Cannot Establish Any Comparators.*

Plaintiff's *prima facie* case also fails because Plaintiff does not have any evidence that he was treated less favorably than other similarly situated employees. *McInnis*, 207 F.3d at 279–80. In order for Plaintiff to succeed, Plaintiff must proffer a comparator who was not terminated but engaged in nearly identical circumstances as Plaintiff. *Ross v. Judson Indep. Sch. Dist.*, 993 F.3d 315, 322 (5th Cir. 2021), cert. denied, 142 S. Ct. 216, 211 L. Ed. 2d 94 (2021) (citing *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009)). Plaintiff must show that the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories. *Lee*, 574 F.3d at 260.

---

[67] Exhibit 1, Plaintiff Depo., 159:14-23, 163:20-22, 167:8-19.

[68] Exhibit 1, Plaintiff Depo., 164:23-25.

[69] Exhibit 5-H, 2022-04-20 Letter Regarding Return to Work.

[70] Exhibit 5-H, 2022-04-20 Letter Regarding Return to Work; Exhibit 2, Velasco Depo., 224:20-23.

Here, Plaintiff has not, and cannot, demonstrate that any other employees were treated more favorably than he under nearly identical circumstances. When asked about how other employees were treated, Plaintiff admitted that he was not sure how other employees were treated on a daily basis. (App. at 182)[71]. Further, there was never any kind of negative comment negative comments from management about Plaintiff's disability. (App. at 71)[72]. Plaintiff will be unable to show that he was treated less favorably than other similarly situated employees.

Because Plaintiff cannot make out a *prima facie* case of disability discrimination, Defendants are entitled to summary judgment on this claim.

**B.**    **La Grange Had a Legitimate, Nondiscriminatory Reason for Plaintiff's Termination, and Plaintiff Cannot Show it was Pretextual.**

Even if the Court finds that Plaintiff could demonstrate a *prima facie* case of disability discrimination under the TCHRA, then the burden shifts to the Defendants "to articulate some legitimate, nondiscriminatory reason" for its actions. *Ross*, 993 F.3d at 321 (citing *McDonnell Douglas Corp.*, 411 U.S. at 802). As explained above, La Grange has demonstrated a legitimate, nondiscriminatory reason for Plaintiff's termination – Plaintiff's failure to return to work following an extended leave of absence (App. at 284-286)[73]. An employee's failure to return to work following a leave of absence is a legitimate, nondiscriminatory reason for termination, as a matter of law. *Greene v. Santander Consumer USA, Inc.*, No. 4:18-CV-247-A, 2019 WL 399532, at *4 (N.D. Tex. Jan. 30, 2019) (citing *Owens v. Calhoun Cnty. Sch. Dist.*, 546 F. App'x 445, 448-49 (5th Cir. 2013)) (stating that a failure to return to work is a legitimate and nondiscriminatory reason for terminating a disabled employee).

---

[71] Exhibit 1, Plaintiff Depo., 180:6-12

[72] Exhibit 1, Plaintiff Depo., 69:2-4

[73] Exhibit 5-H, 2022-04-20 Letter Regarding Return to Work

Plaintiff has not provided any evidence that La Grange's legitimate, nondiscriminatory reason for terminating his employment was instead a pretext for disability discrimination.  In order to survive summary judgment, Plaintiff must offer sufficient evidence to create a genuine issue of material fact either (1) that the Company's reason is not true but is instead a pretext for discrimination (pretext alternative); or (2) that the Company's reason, while true, is only one of the reasons for its conduct, and another motivating factor is Plaintiff's disability (mixed-motive[s] alternative). *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir.2004) (citations and internal quotation marks omitted); *see also Evans v. Tex. Dep't of Transp.*, 547 F.Supp.2d 626, 640 (E.D.Tex.2007) (applying same analysis to cases under ADA), aff'd, 273 Fed.Appx. 391 (5th Cir.2008) (per curiam); *Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 607 (5th Cir.2007) ("Under the Texas statute, to establish an unlawful employment practice, [the plaintiff] need only prove that discrimination was 'a motivating factor' in the employer's decision, rather than a 'but for' cause as Title VII requires." (internal citations omitted)).  Plaintiff has no evidence of either.

In the letter sent to Plaintiff in April of 2022, Ms. Velasco explained in detail why Plaintiff could not be accommodated and that he needed to return to work. (App. at 284-286)[74]. This is after Plaintiff had previously been advised of La Grange's policies on remaining out on leave. (App. at 162-163, 281)[75]. Yet, Plaintiff did not return to work.  Further, Plaintiff's only "evidence" of pretext is based on his own assumption that La Grange terminated him for unlawful reasons and

---

[74] Exhibit 5-H, 2022-04-20 Letter Regarding Return to Work.

[75] Exhibit 1, Plaintiff Depo., 160:3-161:15; Exhibit 5-F, 2021-11-02 Letter Regarding January 6th Deadline.

amounts to nothing more than speculation. (App. at 71, 129-130, 137-138, 150, 182-183)[76].  For

example, when asked why Plaintiff's military status or age played a role in the decision to not hire

Plaintiff in the safety representative position, Plaintiff merely responded with, "I don't know."

(App. at 137-138)[77]. Speculation and belief are insufficient to create a fact issue as to pretext, as a

matter of law. *Britt v. Grocers Supply Co., Inc.*, 978 F.2d 1441, 1451 (5th Cir. 1992) (citing *Little

v. Republic Refining Co.*, 924 F.2d 93 (5th Cir.1991) and *Laurence v. Chevron U.S.A., Inc.*, 885

F.2d 280 (5th Cir.1989)); *see also Shackelford v. Deloitte & Touche*, LLP, 190 F.3d 398, 405 (5th

Cir. 1999) (citing *Swanson v. Gen. Serv. Admin.*, 110 F.3d 1180, 1186 (5th Cir.1997) (noting that

bare allegations of racial discrimination are too speculative to create a jury question) (citations

omitted)).

      Plaintiff has no evidence that his disability was in any way a motivating factor in La

Grange's decision to terminate his employment. Therefore, because La Grange has provided a

legitimate, nondiscriminatory reason for Plaintiff's termination and Plaintiff will be unable to

establish that it was pretextual, Defendants ask the Court to grant their Motion and dismiss

Plaintiff's claim of disability discrimination in its entirety.

**C.**    **<u>Plaintiff's Age Discrimination Claim Fails</u>.**

      Similarly, Plaintiff cannot establish that he was discriminated against because of his age or

that age was the true reason for his termination. Age discrimination claims follow the same

*McDonnell-Douglas* burden-shifting framework as other discrimination claims. *Tex. Tech Univ.

Health Scis. Ctr.-El Paso v. Flores*, 612 S.W.3d 299, 305 (Tex. 2020) (citing *Alamo Heights Indep.

Sch. Dist. v. Clark*, 544 S.W.3d 755, 782 (Tex. 2018); *see also McDonnell Douglas Corp. v. Green*,

---

[76] Exhibit 1, Plaintiff Depo., 69:2-4, 127:18-128:14, 135:21-136:3, 136:22-25, 148:4-18, 180:1-181:3.

[77] Exhibit 1, Plaintiff Depo., 135:21-136:3, 136:22-25.

411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Therefore, Plaintiff must first create a presumption of illegal discrimination by establishing a *prima facie* case of age discrimination under the TCHRA. *Tex. Tech Univ. Health Scis. Ctr.-El Paso*, 612 S.W.at 305.

In an age-discrimination case, Plaintiff establishes a prima facie case with evidence that he (1) was a member of the protected class (that is, 40 years of age or older), (2) was qualified for the position at issue, (3) suffered a final, adverse employment action, and (4) was either (a) replaced by someone significantly younger or (b) otherwise treated less favorably than others who were similarly situated but outside the protected class. *Tex. Tech Univ. Health Scis. Ctr.-El Paso*, 612 S.W.at 305 (citing *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 632 (Tex. 2012) and *AutoZone v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008) (per curiam)). Further, Plaintiff must demonstrate that his age "actually played a role in the [employer's decision making] process and had a determinative influence on the outcome." *Reeves v. Sanderson Plumbing Products, Inc.* 120 S.Ct. 2097, 2105 (2000) (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)).

Here, Plaintiff cannot establish that his age actually played a role in La Grange's decision to terminate his employment. Indeed, when asked about how the Company discriminated against him based on his age, Plaintiff's only purported evidence was a conversation in a parking lot that occurred three years before his termination in which two employees commented that they were unaware of Plaintiff's age. (App. at 151, 181)[78]. To further illustrate Plaintiff's speculation on the merits of his age discrimination claim, Plaintiff admitted that no one has made any negative comments about his age, and he has no idea how younger employees are treated at the plant. (App. at 182)[79]. Plaintiff even admitted that he was unsure why he was not selected for the safety

---

[78] Exhibit 1, Plaintiff Depo., 149:9-19, 179:9-25.

[79] Exhibit 1, Plaintiff Depo., 180:1-12.

representative role that he interviewed for, declining to even speculate that it was because of his age. (App. at 137-138)[80].

Regardless, as explained in detail above, *see supra*, La Grange had a legitimate, nondiscriminatory reason for Plaintiff's termination that was not pretextual. When the Company instructed Plaintiff to return, Plaintiff made the conscious decision not to. (App. at 284-286)[81]. This was after the Company notified Plaintiff, on several occasions, that they were not able to provide his requested accommodations. (App. at 278, 281-286)[82]. Plaintiff's argument that the Company discriminated against him because of his age, or that La Grange's reasoning is pretextual, does not make logical sense given that the Company was asking Plaintiff to return to work. (*Id*.).   In any event, Plaintiff has absolutely no evidence suggesting La Grange's reasons were a pretext for age discrimination, other than his subjective belief, which is insufficient to defeat summary judgment as a matter of law. *See Auguster v. Vermillion Parish Sch. Bd.*, 249 F.3d 400, 403 (5th Cir. 2001) ("This court has consistently held that an employee's 'subjective belief of discrimination' alone is not sufficient to warrant judicial relief.").   Accordingly, for these reasons, Plaintiff's age discrimination claims should be dismissed in their entirety.

**D.**   <u>**Plaintiff Cannot Establish a Claim for Retaliation**</u>.

Because there is no evidence of a causal link between any protected activity by Plaintiff and his termination, and because the Company had a legitimate, nondiscriminatory reason for Plaintiff's termination, his claim of retaliation fails.   In order to recover on a claim of retaliation

---

[80] Exhibit 1, Plaintiff Depo., 135:21-136:3.

[81] Exhibit 5-H, 2022-04-20 Letter Regarding Return to Work.

[82] Exhibit 5-D, 2021-10-22 Letter Regarding Accommodations; Exhibit 5-F, 2021-11-02 Letter Regarding January 6th Deadline; Exhibit 5-G, 2021-11-23 Letter Regarding Accommodations; Exhibit 5-H, 2022-04-20 Letter Regarding Return to Work.

under the TCHRA, Plaintiff must prove (1) that he engaged in a protected activity; (2) that an adverse employment action occurred; and (3) that a causal link existed between the protected activity and the adverse action. *Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 525 (5th Cir. 2021) (citing *Pineda v. UPS, Inc.*, 360 F.3d 483, 487 (5th Cir. 2004)).  Protected activity under the Texas Labor Code is when an employee: (1) opposes a discriminatory practice; (2) makes or files a charge; (3) files a complaint; or (4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing. Tex. Lab. Code § 21.055. The causal connection requirement of Plaintiff's prima facie case "may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Martin v. Kroger Co.*, 65 F. Supp. 2d 516, 559 (S.D. Tex. 1999), aff'd, 224 F.3d 765 (5th Cir. 2000) (quoting *Chavez v. City of Arvada*, 88 F.3d 861, 866 (10th Cir.1996), cert. denied, 519 U.S. 1056, 117 S.Ct. 684, 136 L.Ed.2d 608 (1997) (citing *Burrus v. United Tel. Co. of Kan., Inc.*, 683 F.2d 339, 343 (10th Cir.), cert. denied, 459 U.S. 1071, 103 S.Ct. 491, 74 L.Ed.2d 633 (1982))). Similar to above, the *McDonnell Douglas* burden-shifting framework applies. *Campos*, 10 F.4th at 525 (citing *Pineda*, 360 F.3d at 487).

Here, the only protected activity that Plaintiff engaged in was the filing of a charge of discrimination, which occurred on or about January 4, 2022. [Doc. #1-3, pg. 19, ¶9]. A few weeks after Plaintiff filed this charge of discrimination, Plaintiff provided the Company with an update on his medical treatment and long-term disability claim. (App. at 165-166)[83]. Yet, Plaintiff was not terminated until over four months later (App. at 226, 284-286)[84], and only after Plaintiff had been repeatedly told that the Company could not accommodate him and that his requested

---

[83] Exhibit 1, Plaintiff Depo., 163:23-164:22.

[84] Exhibit 2, Velasco Depo., 224:20-23; Exhibit 5-H, 2022-04-20 Letter Regarding Return to Work.

alternative positions were not available. (App. at 278, 282-286, 170)[85]. Though close temporal proximity can be persuasive evidence of retaliation, the Fifth Circuit has noted that a three-month duration is not sufficient. *Garcia v. Professional Contract Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019) (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001)). Further, Plaintiff's only proffered reason for the retaliation was not that he filed a charge of discrimination, but that he asked for an accommodation and the Company didn't want him employed anymore. (App. at 183)[86]. Plaintiff does not have evidence, and cannot show, that Defendants retaliated against him in violation of the TCHRA.

Regardless, and as mentioned at length above, La Grange had a legitimate, nonretaliatory reason for Plaintiff's termination. *See supra*. Following nine months of leave, which included four months of leave after his STD expired, the Company requested that Plaintiff return to work. (App. at 284-286[87]). Even though Plaintiff had been warned, he did not return to work and La Grange terminated Plaintiff's employment for that reason. (App. at 226, 284-286)[88]. La Grange's reasoning for Plaintiff's termination had nothing to do with Plaintiff's filing of his charge of discrimination or any request for accommodation but was focused instead on Plaintiff's failure to return to work – a legitimate, nondiscriminatory reason under applicable law. *Greene*, 2019 WL 399532, at *4 (citing *Owens*, 546 F. App'x at 448-4) (failure to return to work is a legitimate and nondiscriminatory reason for terminating a disabled employee).

---

[85] Exhibit 5-D, 2021-10-22 Letter Regarding Accommodations; Exhibit 5-G, 2021-11-23 Letter Regarding Accommodations; Exhibit 5-H, 2022-04-20 Letter Regarding Return to Work; Exhibit 1, Plaintiff Depo., 168:3-7.

[86] Exhibit 1, Plaintiff Depo., 181:4-14.

[87] Exhibit 5-H 2022-04-20 Letter Regarding Return to Work.

[88] Exhibit 2, Velasco Depo., 224:20-23; Exhibit 5-H, 2022-04-20 Letter Regarding Return to Work.

The Fifth Circuit has repeatedly held that if an employer meets their burden of showing a legitimate, non-retaliatory reason for the plaintiff's termination, which the Company has done here, then the employee is required to show that "but for" the employee's protected activity, he would not have been terminated. *Pineda*, 360 F.3d at 487 (citing *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 685 (5th Cir.2001) (Plaintiff "must demonstrate that he would not have been terminated 'but for' engaging in the protected activity.") and *Long v. Eastfield College*, 88 F.3d 300, 305 n. 4 (5th Cir.1996) ("[E]ven if a plaintiff's protected conduct is a substantial element in a defendant's decision to terminate an employee, no liability for unlawful retaliation arises if the employee would have been terminated even in the absence of the protected conduct.")). Regardless of whether Plaintiff filed a charge of discrimination, La Grange would have still terminated Plaintiff's employment given the fact that Plaintiff remained out of work for nine months with no intention of returning. (App. at 183)[89]. Plaintiff has no evidence suggesting that La Grange's rationale was pretextual or otherwise motivated by an intent to retaliate against him. Because Plaintiff cannot present any evidence creating a genuine issue of material fact as to whether La Grange retaliated against him, Defendants are entitled to summary judgment on Plaintiff's retaliation claim.

**E.**     **Plaintiff's USERRA Claims Fail.**

Finally, Plaintiff claims that La Grange discriminated and retaliated against him because of his veteran status, in violation of USERRA. But Plaintiff's allegations fail because he cannot establish that his military status was a "substantial or motivating factor" in his termination or that his protected activity was causally connected to his termination. There is a two-step process

---

[89] Exhibit 1, Plaintiff Depo., 181:10-14 ("And since I didn't want to go back to work in the position where I was having problems…")

allocating the burden of proof between the employee and the employer in a USERRA discrimination case under § 4311(c). 38 U.S.C.A. § 4311(c). The initial burden rests with Plaintiff, who must establish by a preponderance of the evidence that his military service was a substantial or motivating factor in the adverse employment action.  This Plaintiff cannot do.

### i.    *Plaintiff Cannot Establish a Claim of Discrimination Under USERRA.*

Plaintiff has no credible evidence that he was discriminated against on the basis of his membership in the uniformed services. To establish a discrimination claim under USERRA (Section 4311), Plaintiff has the initial burden to show that, by a preponderance of the evidence, "the employee's military service was 'a substantial or motivating factor'" in the materially adverse employment decision.  *See* 38 U.S.C. § 4311(c)(1); *see also Bradberry v. Jefferson Cty., Tex.*, 732 F.3d 540, 545 (5th Cir. 2013); *Sheehan v. Dep't of the Navy*, 240 F.3d 1009, 1013 (Fed. Cir. 2001). "If this requirement is met, the employer then has the opportunity to come forward with evidence to show, by a preponderance of the evidence, that the employer would have taken the adverse action anyway, for a valid reason." *Sheehan*, 240 F.3d at 1013.  The statute is explicit – Defendants carry the burden of persuasion *only after* plaintiff makes an initial showing that military service was "a substantial or motivating factor" and he was subject to a materially adverse employment decision. *See* 38 U.S.C. § 4311(c).

Here, Plaintiff has not provided any evidence that his military status was a motivating factor in the Company's decision to terminate his employment. *See Bennett v. Dallas Indep. Sch. Dist.*, 936 F. Supp. 2d 767, 788 (N.D. Tex. 2013) (stating that the plaintiff had not pointed to any evidence that the employer's decisions regarding plaintiff's employment related to his protected status as a member of the military); *see also Sheehan*, 240 F.3d at 1014 (holding that "in USERRA [discrimination] actions there must be an initial showing by the employee that *military status* was

at least a motivating or substantial factor") (emphasis added).  Rather, Plaintiff's employment with the Company ended after Plaintiff was told, on numerous occasions, that the Company could not accommodate him given his inability to perform the essential functions of his job and that none of the positions Plaintiff applied for were available. (App. at 169, 278, 282-286)[90].  Plaintiff even admitted that no one at the Company made any negative comments about his military service. (App. at 183)[91]. Plaintiff's own speculation on why he was terminated is not even related to his military service, but rather his request for an accommodation. (App. at 182)[92].  When Plaintiff did not return to work, the Company terminated his employment. (App. at 284-286)[93]. Plaintiff's military service was not a substantial or motivating factor in the termination of his employment – the undisputed evidence shows that Plaintiff's failure to return to work was the sole reason. (*Id*.).

Assuming, *arguendo*, that Plaintiff can meet his initial burden (which he cannot), the Company has provided sufficient evidence that La Grange would have taken the adverse action anyway, for a valid reason. *Bennett*, 936 F. Supp. 2d at 787 (citing *Snowman v. IMCO Recycling, Inc.*, 347 F. Supp. 2d 338, 342 (N.D. Tex. 2004)). In November of 2021, the Company notified Plaintiff that that his STD was set to expire on January 6, 2022, and that the Company does not generally permit employees to remain on leave for longer than six months without approval or other leave. (App. at 162-163, 265-266, 281)[94]. Given that Plaintiff was applying for long-term

---

[90] Exhibit 1, Plaintiff Depo., 167:16-19; Exhibit 5-D, 2021-10-22 Letter Regarding Accommodations; Exhibit 5-G, 2021-11-23 Letter Regarding Accommodations; Exhibit 5-H, 2022-04-20 Letter Regarding Return to Work.

[91] Exhibit 1, Plaintiff Depo., 181:1-3.

[92] Exhibit 1, Plaintiff Depo., 180:13-25.

[93] Exhibit 5-H, 2022-04-20 Letter Regarding Return to Work.

[94] Exhibit 1, Plaintiff Depo., 160:3-161:15; Exhibit 5, Velasco Decl., ¶7, 10; Exhibit 5-F, 2021-11-02 Letter.

disability benefits, La Grange did not terminate Plaintiff on January 6, but at the same time, Plaintiff was aware of the Company's policies. (App. at 162-163, 165-166)[95]. Eventually, Unum, the third-party administrator of the Company's long-term disability benefits, denied Plaintiff's request for long-term disability in February of 2022. (App. at 216, 165, 266)[96]. Even though Plaintiff was aware of the Company's policies regarding remaining on leave, Plaintiff did not apply for any positions and instead remained on leave for several more months. (App. at 169, 284-286)[97]. Eventually, the Company notified Plaintiff that if he did not return to work, he would be terminated. (App. at 284-286)[98]. When Plaintiff did not return to work as requested, La Grange terminated Plaintiff's employment. (App. at 226, 284-286)[99]. Plaintiff's military status played no role in any of the Company's decisions, and the Company would have reached the same result with or without Plaintiff's military service. (App. at 137-138)[100].

Plaintiff further alleges that the Company did not select Plaintiff for the safety representative position he applied for because of his military service.  But as with his termination, Plaintiff has absolutely no evidence that his veteran status played any role in the Company's decision to select another individual for the position instead of Plaintiff.  On the contrary, the undisputed evidence shows that Michael Johnson, Director of Operations STX, interviewed five other individuals for the safety representative position and ultimately chose another individual for

---

[95] Exhibit 1, Plaintiff Depo., 160:3-161:15, 163:23-164:1.

[96] Exhibit 2, Velasco Depo., 73:2-7; Exhibit 1, Plaintiff Depo., 163:5-7; Exhibit 5, Velasco Decl., ¶9.

[97] Exhibit 1, Plaintiff Depo., 167:8-19; Exhibit 5-H, 2022-04-20 Letter Regarding Return to Work.

[98] Exhibit 5-H, 2022-04-20 Letter Regarding Return to Work.

[99] Exhibit 2, Velasco Depo., 224:20-23; Exhibit 5-H, 2022-04-20 Letter Regarding Return to Work.

[100] Exhibit 1, Plaintiff Depo., 135:25-136:25.

the position who was also a military veteran. (App. at 305, 132-133, 225)[101].  In light of the fact that another veteran was chosen over Plaintiff for the position, he cannot show that his miliary service was a motivating factor in La Grange's decision not to choose him instead.  Furthermore, Plaintiff offers only mere conjecture in support of his belief that he was not chosen for the position because he is a veteran, which is not competent summary judgment evidence as a matter of law. (App. at 138)[102].  Plaintiff's claim necessarily fails.

Therefore, because Plaintiff cannot establish that his military status was a motivating factor in any employment decision, and because the undisputed evidence shows La Grange would have taken the same action regardless of Plaintiff's military status, Defendants are entitled to summary judgment on Plaintiff's USERRA discrimination claim as a matter of law.

### ii.   *Plaintiff Cannot Establish a Claim of Retaliation Under USERRA.*

Although the term "retaliation" is not used in the statute, USERRA also provides that employers are prohibited from discriminating in employment against and may not take adverse employment actions against the following qualified individuals: "(1) those who have taken action to enforce protections offered by USERRA, (2) those who have testified in a USERRA proceeding, (3) those who have participated in a USERRA investigation, and (4) those who have exercised a right provided for by USERRA." *See* 38 U.S.C. § 4311(b); *Otero v. New Mexico Corr. Dep't*, 640 F. Supp. 2d 1346, 1353 (D.N.M. 2009).  While it "does not use the term 'retaliation,' the gravamen of [§ 4311(b)] is to prohibit adverse action taken in retaliation for involvement in the assertion of substantive rights established by USERRA."  *Quick v. Frontier Airlines, Inc.,* 544 F.Supp.2d 1197, 1208 (D. Colo. 2008).

---

[101] Exhibit 7, Johnson Decl., ¶3; Exhibit 1, Plaintiff Depo., 130:20-131:9; Exhibit 2, Velasco Depo., 204:15-19.

[102] Exhibit 1, Plaintiff Depo., 136:4-21.

29

Although his pleading is unclear, Plaintiff purportedly alleges that Defendants retaliated against him for filing a charge of discrimination alleging violations of USERRA.  Like Plaintiff's claims of retaliation under the TCHRA, Plaintiff's USERRA retaliation claim also fails because Plaintiff has no evidence that his filing of a charge of discrimination was a "motivating factor" in La Grange's decision to terminate his employment or to overcome the undisputed evidence that his employment would have been terminated regardless of the charge of discrimination.  As explained repeatedly above, Plaintiff filed his charge of discrimination on or about January 4, 2022. [Doc. #1-3, pg. 19, ¶9]. For the next several months, Plaintiff did not apply for other positions or return to work (App. at 169)[103], despite having full knowledge that his accommodations could not be granted and the positions he applied for were not available. (App. at 278, 282-283)[104].  At no point has Plaintiff shown that his termination was because he filed a charge of discrimination alleging USERRA violations rather than his failure to return to work. (App. at 284-286[105]). Even Plaintiff admits that his claim of retaliation refers to his request for a disability accommodation, not the filing of a charge of discrimination or anything else protected under USERRA. (App. at 183)[106]. Simply put, Plaintiff has no evidence that La Grange terminated his employment in retaliation for raising a claim for USERRA violations or for any other reason related to his membership in the uniformed services.  And in contrast, La Grange has provided overwhelming evidence that the reason for Plaintiff's termination had nothing to do with his military status but instead was entirely because Plaintiff did not return to work. (App. at 284-

---

[103] Exhibit 1, Plaintiff Depo., 167:8-19.

[104] Exhibit 5-D, 2021-10-22 Letter Regarding Accommodations; Exhibit 5-G, 2021-11-23 Letter Regarding Accommodations.

[105] Exhibit 5-H 2022-04-20 Letter Regarding Return to Work.

[106] Exhibit 1, Plaintiff Depo., 181:4-14.

286)[107]. For these reasons, Plaintiff's claim of retaliation under USERRA fails, and Defendants are entitled to summary judgment as a matter of law.

## VI.      <u>CONCLUSION</u>

Based on the foregoing, Defendants respectfully requests that the Court grant its Motion for Summary Judgment in its entirety and dismiss Plaintiff's claims with prejudice and grant Defendants such other and further relief to which it may be justly entitled.

---

[107] Exhibit 5-H 2022-04-20 Letter Regarding Return to Work.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 4, 2024, the foregoing was electronically filed with the Clerk of the Court, utilizing the ECF system, which sent notification of such filing to the following:

Charles H. Peckham
Mary A. Martin
PECKHAM MARTIN, PLLC
Two Bering Park
800 Bering Drive, Suite 220
Houston, Texas 77057
cpeckham@pmlaw-us.com
mmartin@pmlaw-us.com

***Attorneys for Plaintiff***

*/s/ Kelley Edwards*
Kelley Edwards

4877-2810-2550.9 / 076244-1060

32