**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **ABEL GARZA** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 3-23-CV-00027-D** |
| | § | |
| **ENERGY TRANSFER PARTNERS,** | § | |
| **L.L.C.** | § | |
| **and LA GRANGE ACQUISITION, L.P.** | § | |
| | § | |
| **the Defendant.** | § | *Jury Trial Requested* |

---

**PLAINTIFF'S BRIEF IN SUPPORT OF RESPONSE TO DEFENDANTS' ENERGY TRANSFER PARTNERS, L.L.C. AND LA GRANGE ACQUISITION, L.P. MOTION FOR SUMMARY JUDGMENT**

---

1

## TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................ 2

TABLE OF AUTHORITIES .................................................................................................. 4

I. SUMMARY OF RESPONSE .............................................................................................. 8

II. BRIEF STATEMENT OF PROCEDURAL HISTORY AND FACTS ...................................... 11

III.  ARGUMENT AND AUTHORITIES ................................................................................ 19

    A.     GARZA MAKES A PRIMA FACIE CASE FOR DISCRIMINATION ............ 19

        1.  GARZA WAS QUALIFIED FOR HIS POSITION AS A PLANT
OPERATOR ................................................................................. 19

        2.  FAILURE/REFUSAL TO ACCOMMODATE GARZA'S DISABILITY
WHEN REASONABLE ACCOMMODATIONS EXISTED ............................ 22

           a.    Failure to Accommodate Claim Was Made by Garza .............................. 22

           b.    After a Long Delay and Putting Garza's Accommodations Request
on Hold, Defendants Then Initially Denied Any Accommodations
or Consideration of Accommodations Wrongfully Claiming that
Garza's Depression, Anxiety and PTSD were Situational or
Temporary in Nature Thereby Absolving Defendants from
Considering Any Accommodations in Clear Violation of the Texas
Labor Code ................................................................................ 24

           c.    With No Legal Basis to Continue to Deny Accommodations
Defendants Then Blocked All Suggested Accommodations ................... 28

           d.    The Safety Representative Position ........................................... 30

           e.    New and Different Health Condition Requirement Added Post-
Termination ................................................................................ 33

           f.    No Undue Hardship Existed to Deny Accommodations to Garza ............ 34

           g.    Summary of Argument as to Reasonable Accommodation
Requests Made, Defendants'' Reasons Given for Denial, and How
these are Either Meritless or Pretextual. ................................... 36

        3. GARZA HAD A SERVICE-CONNECTED COMBAT DISABILITY
AND WAS TERMINATED BECAUSE OF HIS DISABILITY ........................ 40

           a.    Garza had a Long-Standing Disability ........................................... 40

            b.    Garza was Terminated Due to His Established Combat-Related
Disability ................................................................................ 40

4. COMPARATORS.................................................................................. 42

B. DEFENDANTS HAD NO LEGITIMATE NON-DISCRIMINATORY REASON TO TERMINATE GARZA'S EMPLOYMENT ................................. 43

C. GARZA HAS ESTABLISHED SUFFICIENT EVIDENCE OF AGE DISCRIMINATION ............................................................................... 44

D. DEFENDANTS RETALIATED AGAINST GARZA ......................................... 45

E. USERRA CLAIMS .............................................................................. 45

IV. CONCLUSION................................................................................................ 47

CERTIFICATE OF SERVICE ..................................................................................... 48

APPENDIX ................................................................................. FILED SEPARATELY

3

## T<small>ABLE OF</small> A<small>UTHORITIES</small>

**C<small>ASES</small>**

*Alamo Heights ISD v. Clark*, 544 S.W.3d 755 (Tex. 201836 F.2d 805, 813 (5th Cir. 1991) ........................................................................................................ 34, 36

*Amburgey v. Corhart Refractories Corp., Inc.*, 936 F.2d 805, 813 (5th Cir. 1991) .................. 19

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) .......................................................... 8

*Ashcroft v. Iqbal,* 556 U.S. 662, 678, 684 (2009) ........................................................................ 23

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) .......................................................... 23

*Bradberry v. Jefferson Cnty.*, 732 F.3d 540, 547 (5th Cir. 2013 .................................................. 46

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 323 (1986) .............................................................. 8

*Fellows v. Universal Rests., Inc.*, 701 F.2d 447, 450–51 (5th Cir. 1983) ............................. 22, 23

*Gamble v. Birmingham S. R.R. Co., Tex.,* 514 F.2d 678, 689 (5th Cir. 1975) ............................ 23

*Garcia-Ascanio v. Spring Indep. Sch. Dist.*, 74 F.4th 305, 309–10 (5th Cir. 2023 ..................... 46

*Geer v. Allstate Fire and Cas. Ins. Co.*, 2015 WL 4569520 (S.D. Tex. – Corpus Christi 2015) ......................................................................................................... 23

*Griggs v. Duke Power Company,* 401 U.S. 424 (1971) .......................................................... 37, 38

*Groff v. DeJoy*, 600 U.S. 447 (June 29, 2023) ...................................................................... 22, 35

*Hostettler v. Coll. Of Wooster,* 895 F.3d 844, 854 (6th Cir. 2018) ............................................. 27

*In re Lipsky*, 460 S.W.3d 579 (Tex. 2015)....................................................................... 23

*In re Great Lakes Dredge & Dock Co. LLC,* 624 F.3d 201, 210 (5th Cir. 2010)........................ 23

*Machinchick v. PB Power, Inc.,* 398 F.3d 345, 355 n. 33 (5th Cir. 2005).................................... 43

*Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 586-87 (1986) ................................. 8

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 799, 802 (1973) ............................ 19, 22, 23

*McNeill v. Tyson Fresh Meats, Inc*., 2023 WL 8532408 (December 8, 2023) ..................... 22, 23

*Mooney v. Aramco Services Co.,* 54 F.3d 1207, 1216 (5th Cir. 1995) ......................................... 43

*Price Waterhouse v. Hopkins,* 490 U.S. 228, 246 (1989)............................................................. 43

*Primeaux v. Conoco*, 961 S.W.2d 401, 403-404 (Tex. App. – Houston [1st Dist.] 1997) .................................................................................................................................. 9

*Roark v. Allen*, 633 S.W.2d 804, 809 - 810 (Tex. 1982) ............................................................. 23

*Russell v. McKinney Hosp. Venture*, 235 F.3d 219 (5th Cir. 2000) ............................................. 19

*Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 464, 466 (5th Cir. 1970) ......................... 22, 23

*Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 403 n.2 (5th Cir. 1999) ......................... 9

*Turco v. Hoechst Celanese Corp*., 101 F.3d 1090,1093 (5th Cir. 1996) .............................. 21, 25

*Watson v. FedEx Express*, No. 3:22-CV-01738-B-BT, 2023 WL 4534965, at *4 (N.D. Tex. June 26, 2023) ....................................................................................................... 45

*Young v. City of Hous., Tex.,* 906 F.2d 177, 179 (5th Cir. 1990) .................................................. 22


**STATUTES**

Texas Labor Code Ch. 21 ................................................................................................ 8,38

Texas Labor Code Ch. 21.001 ............................................................................................. 9

Texas Labor Code Ch. 21.128(a) ....................................................................................... 36

38 USC 4300 et. seq. ........................................................................................................... 7

38 USC 4302 ...................................................................................................................... 46

38 USC 4303(2) .................................................................................................................. 46

38 USC 4311(c)(1) .............................................................................................................. 46

42 U.S.C. §12100, et. seq ................................................................................................... 27

42 U.S.C. §12102(1)(A) ................................................................................................ 21, 27

42 U.S.C. §12102(4)(D) ..................................................................................................... 27

42 U.S.C. §12112(b)(5)(A) ................................................................................................. 24

42 U.S.C. §12203(a) ........................................................................................................... 45


**RULES**

29 C.F.R. §1630.2(j)(1)(i) .................................................................................................. 21

29 C.F.R. §1630.2(j)(1)(ii) ................................................................................................ 21

29 C.F.R. §1630.2(j)(3)(iii) ............................................................................................... 21

Federal Rule of Civil Procedure 8 ..................................................................................... 23

Federal Rule of Civil Procedure 9 ..................................................................................... 23

Federal Rule of Civil Procedure 56(a) ................................................................................. 8

Federal Rule of Civil Procedure 56(c) ................................................................................. 8

# I.

## **SUMMARY OF RESPONSE**

1.01    Abel Garza ("Garza") is an otherwise healthy middle-aged man, but who has service/combat-related injuries including Post Traumatic Stress Disorder (PTSD), anxiety and depression that is usually well controlled through mitigating measures of counseling and coping mechanisms. (Appx. at 027; 061).[1]  He has worked his entire adult life, including from 2015 – 2022 for Defendants, and still works today. (Appx. at 034; 035; 037; 038; 134; 135; 191).[2]

1.02    Summary Judgment Standard: This Court and the parties are well aware of the burdens of parties on summary judgment under Fed. R. Civ. P. 56(a).  Garza brings to the Court's attention that Defendants have not demonstrated the absence of a genuine dispute of material fact or the appropriateness of judgment as a matter of law, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Even so, Garza presents here competent summary judgment evidence showing the existence of a genuine dispute of material fact such that a jury could return a verdict in his favor, *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); Fed. R. Civ. P. 56(a, c).

1.03    Garza's causes of action: In this case, Garza alleges (i) discrimination and retaliation violations of the Uniformed Services Employment and Reemployment Act (USERRA) found at 38 USC 4300 et. seq., and (ii) violations of Chapter 21 of the Texas Labor Code for (a) Disability Discrimination and Harassment (including failure to reasonably

---

[1] Exhibit 5 - (Abel Garza, p. 59, ll. 14 – 24; p. 117, ll. 6 – 13).
[2] Exhibit 5 - (Abel Garza, p. 69, ll. 11 – 24; p. 70, ll. 3 – 7; p. 72, l. 17 – p. 73, 1. 4); Exhibit 6 - (Velasco, p. 158, l. 21 – p. 159, l. 6); Exhibit 9.

accommodate), and (b) Age Discrimination and Harassment and (c) Retaliation. [Doc. 1-3, Ex. 4].

1.04     One of the purposes of the TCHRA is the correlation of federal and state law in the area of employment discrimination including anti-discrimination provisions in order to implement the policies embodied in the ADA and its amendments. Tex. Labor Code §21.001; *Primeaux v. Conoco*, 961 S.W.2d 401, 403-404 (Tex. App. – Houston [1st Dist.] 1997); *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 403 n.2 (5th Cir. 1999).

1.05     <u>Garza has met his burden of proof.</u>  Garza has brought forth ample evidence that he was qualified for his position, but Defendant failed and refused to make reasonable accommodation for Garza even though this accommodation existed and imposed no undue hardship upon Defendants. Garza was retaliated against in the refusal by Defendants to (i) engage in the accommodation process for months; and (ii) consider any accommodation. Garza was retaliated against by Defendants for requesting leave and accommodation and was ultimately terminated.

1.06     <u>Garza was targeted for his veteran and military disability and his age and was retaliated against</u>: This suit was brought as to Energy Transfer Partners, L.L.C. (hereinafter "ETP") and La Grange Acquisition, L.P. (hereinafter "La Grange") (collectively "Defendants") because Garza, who had worked for Defendants (Appx. at 037; 038; 092)[3] since 2015, was refused any accommodation for work in one single area of Defendants' plant that triggered his PTSD, was targeted for his veteran and combat-related military disability, age and was retaliated against. Garza was qualified for his position.

---

[3] Exhibit 5 - (Abel Garza, p. 72, l. 17 – p. 73, l. 9); Exhibit 6 - (Velasco, p. 46, ll. 15-19).

1.07    <u>Defendants blocked any accommodation for Garza and ultimately engaged in trickery to keep him from working</u>: Defendants engaged in duplicity in keeping Garza from any accommodation despite Garza' vast efforts to obtain accommodations with his own relentless job searches and endless applications so that at the expiration of his short-term disability, he was fired from his employ.  Defendants discriminated against and retaliated against Garza, and he was ultimately terminated from his employment as a result.

1.08    <u>Garza was qualified for his position as an Operator</u>: Garza was at all times qualified for his position. (Appx. at 192; 195; 196-199; 200-204; 205-207; 208-211; 212-215; 216-219).[4] With minor accommodation that imposed no undue hardship on Defendants there existed jobs within Defendants' companies, Garza could have continued to work. Defendants further actively circumvented their own written policy giving preference to qualified internal transfers to hire an external candidate in their calculated quest to keep any accommodation from Garza.

1.09    <u>Defendants violated the Uniformed Services Employment and Reemployment Rights Act (" USERRA")</u> <u>in their discrimination against Garza</u>: USERRA protects the rights of military personnel, past and present members included, in their civilian employment to be free from discrimination and retaliation. USERRA provides protection for disabled veterans such as Garza.

---

[4] Exhibit 10; Exhibit 11; Exhibit 12; Exhibit 13; Exhibit 14; Exhibit 15; Exhibit 16.

## II.

## BRIEF STATEMENT OF PROCEDURAL HISTORY AND FACTS

2.01    This case was originally filed in state court at the conclusion of the EEOC administrative process but was removed by Defendants based upon federal question jurisdiction with appendant supplemental jurisdiction on January 5, 2023 [Doc. 1].

2.02    Written discovery has concluded, and the following depositions have been taken:

    a.  Plaintiff Abel Garza – 09-12-2023;
    b.  Clarissa Velasco (Defendants' Human Resources employee) – 10-25-2023;
    c.  Raymond De La Vega (Senior Human Resources employee) – 10-25-2023;
    d.  Robert Garza (Defendants' Plant Manager at time of deposition who, upon information and belief, has since been terminated from employment with Defendants – 10-26-2023.

2.03 Garza was well-qualified for his position and received good performance reviews. (Appx. at 192-195; 196-199; 200-204; 205-207; 208-211; 212-215; 216-219).[5]   He worked the entirety of his seven years with Defendants in the King Ranch Gas Plant location. (Appx. at 035-036)[6].

2.04    Garza's last position held prior to his termination was as a Plant Operator A. (Appx. at 089; 035; 038; 220-222).[7] Notably he had been continually promoted while employed by Defendants *until* after six years of employment with Defendants he needed slight accommodation for his service-related PTSD that imposed no undue hardship upon Defendants. (Appx. at 088; 089; 120; 121-125; 144-145; 035; 038; 220-222).[8]

---

[5] *Id.*
[6] Exhibit 5 - (Abel Garza. P. 70, l. 25-p. 71, l. 4).
[7] Exhibit 6 - (Velasco, p. 29, ll. 14-16); Exhibit 5 - (Abel Garza, p. 70, ll. 11-16; p. 73, ll.6-15); Exhibit 17.
[8] *Id.*; Exhibit 6 - (Velasco, p. 28, l. 4 – 19; p. 29, ll. 14-16; p. 143, ll. 11-20; l. 24 – p. 144, l.14; p. 144, l. 20 – p. 148, l. 17; p.169, l. 8 – p. 170, l. 20).

2.05    Garza had worked in other positions within the King Ranch Gas Plant as an Operator including process loading rack, plant area and shipping station. (Appx. at 035-037; 62).[9]

2.06    While more fully expanded upon within the argument section of this brief, this is a timeline of events to assist the Court.

- 2015 – Garza begins his employment with Defendants. (Appx. at 223).[10]

- 2019 – Garza, an Operator, is moved to the Powerhouse. (Appx. at 036).[11]

- April 1, 2021 – Garza requests an accommodation due to alarms and sounds in the Powerhouse triggering his combat-related disabilities, Garza explains his combat-related disability that he has been treated for at the VA since 2009 and gives accommodation suggestions so that he can continue working. (Appx. at 023; 025-026; 030-033; 224).[12]

- April 12, 2021 – Garza's Veteran's Administration ("VA") physician Jeremy Waddell, sends a chart review note explaining Garza's combat-related disability issues. (Appx. at 225).[13]

- April 13, 2021 – Garza emails Clarissa Velasco and Raymond de la Vega in Defendants' Human Resources, and sends the chart note that Dr. Waddell had sent the prior day. (Appx. at 226-227).[14]

- May 3, 2021 - Garza is sent a Medical Release Authorization Form. (Appx. at 228-230)[15]

- May 10, 2021 - Garza attempts to explain to Clarissa Velasco, Human Resources for Defendants, the difficulty she will have getting records from the VA with the

---

[9] Exhibit 5 - (Abel Garza, p. 70, l. 22 – p. 72, l. 16; p. 120, ll. 5-24).
[10] Exhibit. 18.
[11] Exhibit 5 - (Abel Garza, p. 71, ll. 11-16).
[12] Exhibit. 5 - (Abel Garza, p. 55, ll. 7-12; p. 57, l. 17-p. 58, l. 10; p. 62, l. 1 – p. 66, l. 2); Exhibit 19.
[13] Exhibit.20.
[14] Exhibit 21.
[15] Exhibit 22.

medical release form she sent so Garza himself authorized the VA to release records. (Appx. at 52-53; 231-237).[16]

- June 25, 2021 - Garza's Veteran's Administration ("VA") physician Jeremy Waddell, sends the completed ADA Medical Questionnaire, having also spoken with Defendants hired occupational physician Dr. Tonn. (Appx. at 053; 054-055; 238-243.[17]

- July 2, 2021 - Email from John Joiner to multiple managers, supervisors and employees regarding the unfortunate situation of co-workers going out on STD thereby requiring overtime. (Appx. at 244).[18]

- July 7, 2021 - Garza officially seeks Short Term Disability ("STD") leave when no accommodation is made for Garza. (Appx. at 247).[19]

- July 7, 2021 - Defendants improperly put Garza's accommodation request on hold. (Appx. at 245; 248-249).[20]

- July 25, 2021 - Defendants send Garza a Return-to-Work Form. (Appx. at 057-058; 255; 258).[21]

- July 28, 2021 - Garza communicates with Defendants regarding VA interaction with Unum and his accommodation request. (Appx. at 248-249; 250-257).[22]

- August 3-4, 2021 – Garza's VA physician submits his Return to Work form and Garza communicates with Defendants regarding his Return to Work form submission by the VA. (Appx. at 059; 252; 255; 258).[23]

- August 11, 2021 - Garza communicates with Defendants regarding approval of his STD and also inquiring about his accommodations request – Garza receives a response from Noe Pena, a plant manager, that HR is still reviewing his accommodations request. (Appx. at 056; 254; 259-262).[24]

---

[16] Exhibit 5 - (Abel Garza, p. 100, l.1–p. 101, l.4); Exhibit 23.
[17] Exhibit 5- (Abel Garza, p. 101, ll. 5-15; p. 103, l. 3-p. 104, l. 21; Exhibit 24.
[18] Exhibit 25.
[19] Exhibit 26 (p. ETP 000716).
[20] Exhibit.26 (p. ETP 000714); Exhibit 27.
[21] Exhibit 5 - (Abel Garza, p. 108, l. 1-p. 109, l. 12); Exhibit 28 (p. ETP 000538).
[22] Exhibits 5 and 28.
[23] Exhibit 5 - (Abel Garza, p. 112, ll.1-19); Exhibit 28 (pp. ETP 000535 and 538); Exhibit 29.
[24] Exhibit 5 - (Abel Garza, p.105, ll. 1 -25); Exhibit 30; Exhibit 28 (p. ETP 000537).

- August 17, 2021 - Garza updates Defendants on his treatment plan and his application for another position within the company. (Appx. at 063-066; 254).[25]

- August 25, 2021 - Garza updated Defendants on his treatment and references that his accommodations request is still under review – he receives a response from Noe Pena that he has not heard anything regarding Garza's accommodations. (Appx. at 253-254)[26]

- September 1, 2021 - Garza informs Defendants that HR is still processing his accommodations request. (Appx. at 253)[27]

- September 8, 2021 – Garza informs Defendants that he has weekly doctor's appointments and that he has not heard back from HR, but his VA physician has spoken with Dr. Tonn regarding his accommodations request – Noe Pena responds that he has not heard anything either. (Appx. at 252-253).[28]

- September 15, 2021 - Garza informs Defendants that he is still waiting on HR to complete the ADA Accommodations Request while he continues to have his regularly scheduled appointments with his VA physician. (Appx. at 252).[29]

- September 22, 2021 - Garza informs Defendants that Unum is looking to extend STD for an additional month and that he has not heard anything from HR – he receives a response from Noe Pena stating that Unum has extended his claim. (Appx. at 060; 252; 258).[30]

- September 29, 2021 - Garza informs Defendants that he is continuing with his scheduled doctor's appointments and that he has not heard anything different from HR on the accommodations review – Noe Pena responds that he has not heard either. (Appx. at 251).[31]

- October 7, 2021 - Garza informs Defendants of his treatment status – Noe Pena acknowledges the email. (Appx. at 251).[32]

---

[25] Exhibit 5 - (Abel Garza, p. 122, l.14-p. 125, l. 4); Exhibit 28 (p. ETP 000537).
[26] Exhibit 28 (pp. ETP 000536-537).
[27] Exhibit 28 (p  ETP 000536).
[28] Exhibit 28 (p. ETP 000535-536).
[29] Exhibit 28 (p. ETP 000535).
[30] Exhibit 5 - (Abel Garza, p. 114, ll. 4-25); Exhibit 28 (p. ETP 000535); Exhibit 29.
[31] Exhibit 28 (p. ETP 000534).
[32] Exhibit 28 (p. ETP 000534).

- October 13, 2021 - Garza informs Defendants of his treatment plan and that HR has not given him any information concerning the ADA accommodations request – Noe Pena responds that he has not heard anything either. (Appx. at 250-251).[33]

- October 14, 2021 - Garza interviews for a Safety Position at Robstown with Michael Johnson and is led to believe that he was going to be hired into that position within the company. (Appx. at 063 -067; 263-264).[34]

- October 15, 2021 - Defendants are informed by Michael Johnson that he has hired an external candidate for the position – notably this is in violation of Defendants' own policy - and the hired person, Matthew Thomas, has no disability – *Garza is not informed of the hiring of another person, Matthew Thomas, for this position.* (Appx. at 093-095; 265-267; 268-276; 277-279; 280; 288).[35]

- October 21, 2021 - Garza informs Defendants of his STD extension and that HR is still reviewing his accommodations request – Garza also inquires into the Warehouse Management and Logistics position from which Cruz Mata had just retired. (Appx. at 250-251).[36]

- October 22, 2021 – Six (6) months after Garza requested accommodation, Garza is sent a letter by mail from Defendants denying his accommodations because "Your medical provider confirmed that your conditions are primarily situational/family-related.   Further, any medical conditions you have are temporary in nature, and your request for accommodations are based on personal desires with no medical reason necessitating such changes" – these reasons are not true and even if they were true provide no legal reason to deny a reasonable accommodation. (Appx. at 291).[37]

- October 27, 2021 - Garza sends an email to Michael Johnson checking in on the Safety Rep position that he interviewed for on October 14, 2021 – *Garza is not told that Matthew Thomas was hired for the position*. (Appx. at 093-095; 265-267; 268-276; 277-279; 280; 288).

- October 27, 2021 - Garza updates Defendants that he had a doctor's appointment that day but had received a letter from HR that his ADA accommodations request

---

[33] Exhibit 28 (pp. .ETP 000533 – 534).
[34] Exhibit 5 - (Abel Garza, p. 122, l. 14-p.126, l. 22); Exhibit 31.
[35] Exhibit 6 - (Velasco, p. 103, l. 12 - p.105, l.1); Exhibit 32; Exhibit 33; Exhibit 34; Exhibit 35 (pp .ETP 000087 and ETP 000095).
[36] Exhibit 28 (p. ETP 000533 - 534).
[37] Exhibit 36.

had been denied – he references additional information that his VA physician would be submitting. (Appx. At 250).[38]

- November 1, 2021 - Garza responds to Defendants denial of his accommodations request by letter – he mentions that he has spoken with his VA physician who had provided them with his diagnosis and reason for the accommodations request and disagreed with the decision to deny the request – Garza reiterates the long-standing origin of his combat-related disability and his medical need for accommodation reiterating his desire to work. (Appx. at 292).[39]

- November 2, 2021 - Defendants send Garza a reminder that his STD expires on January 6, 2022, and that he must return to work by that date or be terminated from employment. (Appx. at 293).[40]

- November 7, 2021 – Garza communicates with Amanda Gober in Human Resources regarding his long-standing VA disability and his desire to return to work. (Appx. at 294).[41]

- November 23, 2021 – Despite knowing that the reasons stated in the October 22, 2021, letter to Garza were not valid, Defendants doubled-down and reiterated those reasons to deny an accommodation to Garza. (Appx. at 150-151; 295-296).[42]

- November 29, 2021 – Garza emails Amanda Gober and Clarissa Velasco regarding an answer on his start date for the Safety Representative position – the following day Abel Garza receives a response that Raymond de la Vega will contact him the following week. (Appx. at 297; 298).[43]

- December 2, 2021 - Garza sends an email to Defendants regarding his most recent treatment plan and his ADA accommodations denial and *questioning the representation of unavailability of multiple positions.* (Appx. at 299-302).[44]

- December 7, 2021 - Garza receives an email from Robert Garza (Sr. Manager Plant Operations) that any questions regarding the decision to deny his accommodations request should go to HR and responding that *none of the vacant*

---

[38] Exhibit 28 (p. ETP 000533).
[39] Exhibit 37.
[40] Exhibit 38.
[41] Exhibit 39.
[42] Exhibit 6 - (Velasco, p. 178, l. 4 – p. 179, l.7); Exhibit 40.
[43] Exhibit 41; Exhibit 42.
[44] Exhibit 43.

16

*positions in the Shipping Station, Warehouse or Safety representative are available as they are filled or are not being filled.* (Appx. at 303-305).[45]

- December 23, 2021 - Garza sends an email to Clarissa Velasco inquiring about the position he interviewed for with Michael Johnson – *Garza still has not been informed about the hiring of Matthew Thomas on October 15, 2021.* (Appx. at 306).[46]

- December 23, 2021 – Garza sends an email to Defendants regarding his accommodation requests and the safety position. (Appx. at 307-308).[47]

- December 28, 2021 - Garza sends an email to Defendants again inquiring about the safety position he interviewed for with Michael Johnson since de la Vega never responded as he was told would happen the week of December 6, 2021 – *once again, he is not informed about the hiring of Matthew Thomas on October 15, 2021.* (Appx. at 309).[48]

- December 29, 2021 – Defendants' Human Resources Manager, Raymond de la Vega, instructs Michael Johnson to inform Garza he was not hired – Michael Johnson does not inform Garza that he was not hired for the position despite Garza's impending January 6, 2022, termination date if he does not return to work. (Appx. at 310).[49]

- January 4, 2022, Defendants receive Garza's EEOC Charge with Exhibits. (Appx. at 311-332).[50]

- January 4, 2022 – Michael Johnson informs Abel Garza by phone that he was not chosen for the Safety Representative position nearly three (3) months (81 days) after knowing another external candidate, Matthew Thomas, had been hired (Appx. at 333).[51]  Garza recorded that short call (Appx at.434-435).  In the call, Johnson acknowledges to Garza that he knows that Garza is an internal candidate and when asked why he was not chosen for the position, Johnson never says that Garza was in any way unqualified for the position.

---

[45] Exhibit 44.
[46] Exhibit 45.
[47] Exhibit 46.
[48] Exhibit 47.
[49] Exhibit 48.
[50] Exhibit 49.
[51] Exhibit 50.

- January 27, 2022 - Garza updates Defendant that he is continuing with his treatment plan and that Unum is reviewing his file for Long Term Disability ("LTD") [notably Unum denied LTD to Garza because, as noted by Garza himself, he was able to work] – Noe Pena forwards this email to Robert Garza with an FYI. (Appx. at 072; 334).[52]

- February 8, 2022 – Post-EEOC charge and Post-termination of Abel Garza, Michael Johnson sends Resumes for the individuals he interviewed for the Safety Position to Raymond de la Vega. (Appx. at 335-339).[53]

- February 20, 2022 – Believing that he has been terminated based upon the denial of his LTD and Defendant's correspondence and communications, Garza applies for unemployment benefits. (Appx. at 340-359).[54]

- March 18, 2022 – Robert Garza emails Raymond de la Vega inquiring whether he can replace Abel Garza when Abel informs him he has been approved for unemployment. (Appx. at 360).[55]

- March 28, 2022 – Garza receives a determination from the TWC on the payment of unemployment benefits with an approved date of claim of February 20, 2022, that Defendants received notice of and did not object. (Appx. at 340-359).[56]

- April 20, 2022 – Inexplicably and confusingly, post-termination, Garza is sent a letter from Defendants doubling down on claims that his only reason for a change is a personal desire for another job and personal preference but no medical reason and inserting a requirement that Garza have a new and different condition – Defendants also came up with different blockades created to bar Garza from any other position. (Appx. at 361-363; 364-368).[57]

- May 4, 2022 – Defendants internal communications indicate that Defendants, despite an unemployment determination for Garza in March of 2022 retroactive to February 2022, believed this was now Garza's termination date. (Appx. at 369).[58]

---

[52] Exhibit 5 - (Abel Garza, p. 164, ll. 8-25); Exhibit 51.
[53] Exhibit 52.
[54] Exhibit 53.
[55] Exhibit 54.
[56] Exhibit 53.
[57] Exhibit 55; Exhibit 56.
[58] Exhibit 57.

- February 1, 2023 – After a long and relentless job search, Garza finds new employment despite Defendants repeated refusal to confirm Garza's prior employment. (Appx. at 003-004; 370).[59]

**III.**

**ARGUMENT AND AUTHORITIES**

A.    **GARZA MAKES A PRIMA FACIE CASE FOR DISCRIMINATION**

3.01    A plaintiff can prove a case of discrimination and retaliation through circumstantial evidence using the familiar burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). See also, *Russell v. McKinney Hosp. Venture*, 235 F.3d 219 (5th Cir. 2000).   In a summary judgment setting, the plaintiff need not prove pretext, but merely needs to establish a genuine issue of material fact on the matter.   *Amburgey v. Corhart Refractories Corp., Inc*., 936 F.2d 805, 813 (5th Cir. 1991). Notably, however, in the accommodation construct, the burden switching framework does not apply.

1.    **GARZA WAS QUALIFIED FOR HIS POSITION AS A PLANT OPERATOR**

3.02    Garza had worked for Defendants since 2015, had been continually promoted and had good reviews. (Appx. at 191; 192-195; 196-199; 200-204; 205-207; 208-211; 212-215; 216-219).[60]   By the point that he requested accommodation for his service-related PTSD and Generalized Anxiety Disorder (anxiety and depression), he had been performing his job duties while coping with increased PTSD and anxiety the best he was able.  (Appx. at 362, 436)

---

[59] Exhibit 2; Exhibit 58.
[60] Exhibit 9; Exhibit 10; Exhibit 11; Exhibit 12; Exhibit 13; Exhibit 14; Exhibit 15; Exhibit 16.

3.03    Working in his other positions within the plant, Garza had no issues related to his PTSD and anxiety.  At the beginning of 2019, Garza was moved to work in the Powerhouse. (Appx. at 036).[61]

3.04    Once he was moved to the Powerhouse, and because of his service-related disabilities, Garza experienced increasing anxiety triggering his PTSD in his workplace due to Boiler/Plant upsets, flaring, and the noise (alarms) in a contained area of the plant in which he worked (in the Powerhouse) as well as not having help when needed. (Appx. at 030-033).[62]

3.05    Garza worked in the Powerhouse while struggling with his disability due to the alarms going off from 2019 until he finally sought reasonable accommodation from Defendants in April of 2021 and ultimately went on short term disability in July 2021 when no real accommodation or interactive process occurred. (Appx. at 023; 025-026; 224).[63]  Garza had been coping but could not work overtime as he had in the past before moving to the Powerhouse. (Appx. at 035-036; 077-078).[64]  The annoyance with Garza's overtime issues was publicly called out to many of Defendants' other employees/supervisors/managers. (Appx. at 244).[65]

3.06    Garza had to seek leave an accommodation because when the alarms went off, he could not concentrate, could not breathe, had headaches and could not think. (Appx. at 022-023; 024-026).[66]

---

[61] Exhibit 5 - (Abel Garza, p. 71, ll. 11-16).
[62] Exhibit 5 - (Abel Garza, p. 62, ll. 1 –p. 66, l. 4).
[63] Exhibit 5 - (Abel Garza, p. 55, ll. 7-12; p. 57, l. 17- p.58, l. 10); Exhibit 19.
[64] Exhibit 5 – (Abel Garza, p. 70, l. 3- p. 71, l. 25; p. 191, l. 17 – p. 192, l.5).
[65] Exhibit 25.
[66] Exhibit 5 - (Abel Garza p. 54, l. 4 - p. 55, l. 21; p. 56, l. 20 – p. 58, l.  25).

3.07    Garza's PTSD, anxiety and depression, when episodically triggered, affected major life activities as defined by 42 USC §12102(1)(A) and expanded for broader coverage by 29 C.F.R. §1630.2(j)(1)(i), §1630.2(j)(1)(ii) and §1630.2(j)(1)(v).

3.08    PTSD and major depressive disorder are specifically included within a group of impairments that will "virtually always be found to impose a substantial limitation on major life activity" due to their "inherent nature." 29 C.F.R. §1630.2(j)(3)(iii).   As evidenced by Garza's VA physician, his long-standing PTSD affected his ability to cope with these alarms. (Appx. at 225; 238-243).[67]

3.09    Garza initially sought one simple accommodation for his assigned job in the Powerhouse. Specifically, Garza requested that the person in the Process Area, who was already set as the back-up to the Powerhouse, be trained for the Powerhouse because at that time the person on his shift was not trained. (Appx. at 032; 090-091; 115).[68]   This would have allowed him to have assistance when the alarms went off which was a triggering event for his disability. *See*, *Turco v. Hoechst Celanese Corp*., 101 F.3d 1090, 1093 (5th Cir. 1996).

3.10    This requested accommodation to Garza's assigned position did not require Defendants to relieve Garza of the essential functions of his position, did not seek modification of those duties/functions, did not seek to abandon the essential functions of his job, and did not seek the hire of an additional person.   The requested accommodation sought to have the person who was already supposed to be there to assist as part of their job functions, to have the training to assist.   No undue hardship has been shown by Defendants as to this particular accommodation

---

[67] Exhibit 20; Exhibit 24.
[68] Exhibit 5 - (Abel Garza, p. 65, ll. 1-25); Exhibit 6 - (Velasco, p. 37, l. 9- p. 38, l. 18; p. 133, ll. 18-24).

request made by Garza. (Appx. at 088; 120-121; 121-125; 144-145).[69] *Groff v. DeJoy*, 600 U.S. 447 (June 29, 2023).

      3.11    However, Defendants have a well-known bias for not wanting to accommodate disabilities, but instead to demand only a full release to duty. (Appx. at 374).[70]

## 2. FAILURE/REFUSAL TO ACCOMMODATE GARZA'S DISABILITY WHEN REASONABLE ACCOMMODATIONS EXISTED

### a. Failure to Accommodate Claim Was Made by Garza

      3.12    Defendants make a passing argument that Plaintiff has not made a claim of failure to accommodate. This argument fails.

      3.13    As stated in *McNeill v. Tyson Fresh Meats, Inc*., 2023 WL 8532408 (December 8, 2023), "[A] cause of action for Title VII employment discrimination may be based, not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination." (quoting *Fellows v. Universal Rests., Inc.*, 701 F.2d 447, 450–51 (5th Cir. 1983)). "The scope of inquiry is not ... limited to the *exact* charge brought to the EEOC," *Young v. City of Hous., Tex.*, 906 F.2d 177, 179 (5th Cir. 1990); *see also Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 464 (5th Cir. 1970)(a plaintiff's complaint "is not restricted by [his] initial choice of boxes on the EEOC charge form"), much as "a Commission 'no reasonable cause' finding does not bar a lawsuit" on the same substance. *McDonnell Douglas Corp. v. Green*, 411

---

[69] Exhibit 6 - (Velasco, p. 28, l. 4 – 19; p. 143, l. 11 – p. 144, l.14; p. 144, l. 20 – p. 148, l. 17; p.169, l. 8 – p. 170, l. 20).
[70] Exhibit 59 (p. ETP 001546).

U.S. 792, 799 (1973). Rather, "the civil action is much more intimately related to the EEOC *investigation* than to the words of the charge which originally triggered the investigation." *Sanchez*, 431 F.2d at 466 (emphasis added).

3.14    The McNeill court further stated "[L]ikewise, no investigation is even needed, so long as one "could reasonably be expected to grow from" the charge. *Fellows*, 701 F.2d at 450. This is because the underlying policies of Title VII "are not served by limiting judicial relief to technical niceties of the language used by an often unlettered or unsophisticated employee in filing his or her initial grievance with the EEOC." *Id.* (quoting *Gamble v. Birmingham S. R.R. Co.*,514 F.2d 678, 689 (5th Cir. 1975)).

3.15    A petition is sufficient under the Texas fair notice pleading standard if the nature of the controversy, its basic issues may be reasonably inferred, and the opposing party can prepare a defense. *In re Lipsky*, 460 S.W.3d 579 (Tex. 2015); *Roark v. Allen*, 633 S.W.2d 804, 809 - 810 (Tex. 1982); *Geer v. Allstate Fire and Cas. Ins. Co*., 2015 WL 4569520 (S.D. Tex. – Corpus Christi 2015). Garza's pleading also meets the *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009), standard as well as the requirements of Federal Rules of Civil Procedure 8 and 9.  To be plausible, the "[f]actual allegations must be enough to raise a right to relief above the speculative level". *In re Great Lakes Dredge & Dock Co. LLC,* 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

3.16    Garza's Original Petition clearly sets forth a claim for failure to accommodate as did his EEOC Charge and Supplemental Charges. (Appx. at 311-332; 376-385; 386-413).[71]

---

[71] Exhibit 49; Exhibit 60; Exhibit 61; [Document 1-3, paragraphs 16-25 and 71].

3.17    Throughout depositions, Garza and other witnesses were repeatedly questioned regarding accommodation and the accommodation process.

3.18    Pursuant to 42 U.S.C. §12112(b)(5)(A), Garza has established that he is (i) a qualified individual with a disability, (ii) the disability and his limitations were known by Defendants; (iii) Defendants failed and refused to make reasonable accommodations for his limitations.

    **b.**  **After a Long Delay and Putting Garza's Accommodations Request on Hold, Defendants Then Initially Denied Any Accommodations or Consideration of Accommodations Wrongfully Claiming that Garza's Depression, Anxiety and PTSD were Situational or Temporary in Nature Thereby Absolving Defendants from Considering Any Accommodations in Clear Violation of the Texas Labor Code**

3.19    Garza communicated with Defendants that his long-standing combat-related disabilities impacted his daily life and that, specifically, the alarms in the Powerhouse triggered those disability issues. (Appx. at 017-019; 021-022; 023-027; 029-020; 031-032; 113-114; 292; 414-431; 432-433).[72] As referenced above, due to the worsening of his disability, on April 1, 2021, Garza sought reasonable accommodation from Defendants, and he suggested to Defendants multiple accommodation options which were summarily rebuffed meaning he ultimately went on Short Term Disability ("STD") in July of 2021. (Appx. at 039-043; 044-045; 046-051; 112; 224; 245-247; 248-249; 250-257; 259-262; 432-433).[73]

---

[72] Exhibit 5 - (Abel Garza, p. 35, ll. 20 – p. 37, l. 5; p. 53, l. 25 - p. 54, l. 19; p. 55, ll. 7 – p. 59, l. 18; p. 61, l. 2 - p. 62, l. 23; p. 64, l. 9 - .p. 65, l. 25); Exhibit 6 – (Velasco, p. 129, l. 20 – p. 130, l. 9); Exhibit 37; Exhibit 63;  Exhibit 62.

[73] Exhibit 5 - (Garza, p. 86, l. 9 – p. 90, l. 1 - 15; p. 91, l. 6 – p. 92, l. 11; p. 93, l. 12 – p. 98, l. 11; Exhibit 6 – (Velasco, p. 128, ll. 14 – 20); Exhibit 19; Exhibit 26; Exhibit 27; Exhibit 28; Exhibit 30; Exhibit 63.

3.20    As referenced above, Garza's initial request did not seek to have someone follow him around all day. Very specifically, Garza requested that the person in the Process Area who was assigned to be the back-up to the Powerhouse be trained for the Powerhouse because at that time the person on his shift was not trained. (Appx. at 005-006; 032; 039; 046-048)[74] This person would have been there anyway so it was not anything different. (Appx. at 005-006; 031; 039; 046-048)[75] Therefore this request to have the Process Area person properly trained posed no great burden or undue hardship on Defendants. This is the essence of reasonable accommodation, and this would have enabled Garza to perform the essential functions of the job. *See*, *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1093 (5th Cir. 1996).  Defendants ignored this simple request related to Garza's job in the Powerhouse.

3.21    Defendants refused to consider this accommodation to Garza and once Garza went out on STD, Clarissa Velasco, the Human Resources Representative, inexplicably put Garza's entire accommodation request on hold. (Appx. at 248-249).[76]

3.22    When it was clear that Defendants were not going to train the person in the Process Area to assist in the Powerhouse as was the norm, Garza began to make suggestions for other positions. While out on STD, Garza, who wanted to return to work, sent Defendants repeated requests (October 21, 2021, November 29, 2021, December 7, 2021, December 22, 2021, December 23, 2021, December 28, 2021) (Appx. at 127-129; 130; 136; 137-139; 140-141;

---

[74] Exhibit 3; Exhibit 5- (Garza, p. 65, ll. 1-25; p. 86, ll. 9-25; p. 93, ll. 16 – p. 95, l. 6).
[75] Exhibit 3; Exhibit 5 – (Garza, p. 66, ll.1-14; p. 86, ll. 9-25; p. 93, ll. 16 – p. 95, l. 6).
[76] Exhibit 27.

169-170; 294; 297; 298; 299-302; 303-305; 306; 307-308; 309; 310; 432-433).[77] regarding open positions he found within the company as possible accommodations but was shut down and/or ignored on every suggestion. (Appx. at 127-129; 130; 136; 137-139; 140-141; 169-170; 294; 297; 298; 299-302; 303-305; 306; 307-308; 309; 310; 374; 432-433)[78]

3.23    On October 22, 2021, six (6) months after Garza requested accommodation and was in repeated contact with Defendants to obtain accommodation and return to work. (Appx. at 224; 245-247; 250-257; 259-262; 268-276)[79], Defendants then wholly disregarded the disability and accommodation process, attempting to deny Garza any accommodation by claiming that his disability was "situational". He was told that he would not be accommodated because his "conditions are primarily situational/family related" and "are temporary in nature." (Appx. at 103-107; 111-112; 250-257; 258; 291; 292; 432-433)[80]    These opinions were made in conjunction with Defendants' occupational physician Dr. Tonn.

3.24    Clarissa Velasco was not even sure if Dr. Tonn, Defendant's hired occupational physician, received Abel Garza's Job Description before issuing these opinions. (Appx. at 114; 146; 294; 311-332). [81]

3.25    Even if Garza's disability was temporary or episodic in nature, courts have routinely recognized that numerous episodic conditions – including depression, post-traumatic stress disorder and other mental health conditions where an individual may experience flare-ups

[77] Exhibit 6 - (Velasco, p. 150, l. 15 - p. 152, ll. 24; p. 153, ll. 1-16; p. 160, ll. 2-22; p. 161, l. 1-. p. 163, l. 5; p. 164, l. 6 - p. 165, l. 2); Exhibit 7– (de la Vega, p. 27, l. 10  - p. 28, l. 7); Exhibit 39; Exhibit 41; Exhibit 42; Exhibit 43; Exhibit 44; Exhibit 45; Exhibit 46; Exhibit 47; Exhibit 48; Exhibit 63.
[78] Id; Exhibit 59.
[79] Exhibit 19; Exhibit 26; Exhibit 28; Exhibit 30; Exhibit 33.
[80] Exhibit 6 - (Velasco, p. 119, l. 1 –p. 123, l. 25; p. 127, l. 20- p. 128, l. 6; p. 128, ll. 16 – 24); Exhibit 28; Exhibit 29; Exhibit 36; Exhibit 37; Exhibit 63.
[81] Exhibit 5 - (Velasco, p. 130, ll. 6-9; p. 172, ll. 18 – 24); Exhibit 39; Exhibit 49.

– are disabilities. *Hostettler v. Coll. Of Wooster,* 895 F.3d 844, 854 (6th Cir. 2018); ADA Amendments Act of 2008 (ADAAA), 42 U.S.C. §12100, et. seq.; 42 U.S.C. §12102(1)(A); 42 U.S.C. §12102(4)(D).

3.26    On November 1, 2021, Garza responded to Defendants' denial of his accommodation request by letter, reiterating his long-standing combat-related disability, his medical condition, and his desire to work with accommodation. (Appx. at 292; 432-433).[82]  The comment that Garza wanted "someone to follow him around and perform his essential job duties" is simply meant to demean Garza's combat-related PTSD and is not what Garza sought as an accommodation. Garza sought a simple accommodation for the Powerhouse: Making sure someone else was there when there were issues with the boilers of the plant. (Appx. at 005-006; 032-033; 039; 046-048; 224; 432-433).[83]  This was not a request to hire a new person or reassign a person, but to make sure someone could come to assist when there was a problem. (Appx. at 005-006; 032-033; 039; 046-048; 224; 432-433).[84]

3.27    Again, on November 23, 2021, *knowing that the reasons stated in the October 22, 2021, letter to Garza were not legally valid*, Defendants reiterated the same "situational/temporary nature" of his PTSD, anxiety and depression as reason to blanketly deny any accommodation to Garza. (Appx. at 001-002; 005-006; 295-296; 076; 149).[85]

---

[82] Exhibit 37; Exhibit 63.
[83] Exhibit 3; Exhibit 5 - (Abel Garza, p. 65, l. 1- p. 66, l. 14; p. 86, ll. 9-25; p. 93, ll. 16 – p. 95, l. 6; Exhibit 19; Exhibit 63).
[84] Id.
[85] Exhibit 1; Exhibit 3; Exhibit 40; Exhibit 6 – (Velasco, p. 177, ll. 2 – 7); Exhibit 5 – (Abel Garza, p. 185, ll. 12 – 14.

3.28     These reasons were still not true and Mr. Garza's VA doctor, Dr. Waddell[a], did not say they were. (Appx. at 292; 311-332; 376-385; 386-413; 414-431).[86]

     c.     **With No Legal Basis to Continue to Deny Accommodations Defendants Then Blocked All Suggested Accommodations**

3.29     Included among the other potential accommodations sought by Mr. Garza was transfer to another location in the plant where the noise level was lower (no alarms), or transfer to another position.  The positions that were available included in the same Plant were at the Shipping Station (under the same job title and job description) as described above, as a Safety Representative (this position was applied for in August 2021), and in the Warehouse (in the Plant area but with no alarms). (Appx. at 075; 125-127; 295-296).[87]

3.30     On December 2, 2021, Garza sent an email to Defendants regarding his most recent treatment plan, his ADA accommodations denial and questioning the unavailability of multiple positions. (Appx. at 299-302).[88]

3.31     By December 2, 2021, *once Defendants realized there was not a legal basis to deny Mr. Garza's accommodation request*, Defendants then took a new stance and sought the accommodation denial by incorrectly claiming that no position identified by Mr. Garza could accommodate him because there was no "more open, less restrictive, less noisy, and more predictable environment." (Appx. at 001-002; 005-006; 303-305; 108-109).[89]

---

[86] Exhibit 37; Exhibit 49; Exhibit 60; Exhibit 61; Exhibit 62.
[87] Exhibit 6 - (Velasco, p. 148, l. 21 – p. 150, l. 5); Exhibit 5 – (Abel Garza, p. 180, ll. 13-25); Exhibit 40).
[88] Exhibit 43.
[89] Exhibit 1; Exhibit 3; Exhibit 44; Exhibit 6 - (Velasco, p. 124, l. 5 – p. 125, l. 23).

3.32    Yet Defendants are aware that the shipping station and the warehouse did not have alarms anymore. (Appx. at 001-002; 005-006).[90]

3.33    As to the Shipping Station, Mr. Garza was told that at the King Ranch location, this position was no longer going to have a long-term employee assigned there. (Appx. at 126; 001-002). [91] However, there were two long term employees assigned to this position; one retired leaving an open position and the other remains in that position.  This was clearly a separate assigned position and there was availability. (Appx. at 001-002).[92]

3.34    Yet, a new position in the Process Loading Rack was created (Appx. at 001-002; 007-008)[93] and Abel Garza had experience working the loading rack, which was less noisy, more predictable and did not have alarms. (Appx. at 001-002; 005-006; 035).[94]

3.35    Similarly, Garza was told that the warehouse position was not going to be back filled. (Appx. at 125-126; 295-296).[95]

3.36    On December 7, 2021, Garza received an email from Robert Garza stating that none of the positions he referenced were open and/or were not being filled. (Appx. at 303-305).[96]

3.37    Likely in response to Garza's request for accommodation and the realization that no legal basis existed to deny him accommodation, by December 7, 2021, Defendants changed their policies so that no specific area could be assigned to an operator long term. (Appx. at 131;

---

[90] Exhibit 1; Exhibit 3.
[91] Exhibit 6 - (Velasco, p. 149, ll. 1 – 3); Exhibit 1.
[92] Exhibit 1.
[93] Exhibit 1; Exhibit 4.
[94] Exhibit 1; Exhibit 3; Exhibit 5 – (Abel Garza, p. 70, ll. 22-24).
[95] Exhibit 6 -(Velasco, p. 148, ll. 21 – p. 149, l. 13); Exhibit 40.
[96] Exhibit 44.

132).[97] This allowed Defendants to conveniently deny the shipping station accommodation to Mr. Garza. (Appx. at 133).[98]  But this new policy is a double-edged sword for Defendants since it means that Abel Garza could easily have been accommodated by transfer into a position in one of the multiple less noisy and more predictable environments long before December 2021 when accommodations had been earlier requested.  This ever-shifting array of pretextual and created excuses to deny accommodation serve as an admission that earlier requests could have been reasonably accommodated.

3.38    As to the Safety Representative Position accommodation request, it is more fully addressed below.  However, Garza was told by Clarissa Velasco not to apply for any other positions because she felt that the Safety Representative position would be good accommodation for him. (Appx. at 074).[99]

### d.    The Safety Representative Position

3.39    Garza had applied for, and because of his qualifications on October 14, 2021 was chosen to interview for a Safety Representative position in another location at Defendants' worksite nearby. (Appx. at 110; 280-290).[100]

3.40    Michael Johnson interviewed Garza for that position asking him if he could start working as early as October 25, 2021, since he was already an employee of the company. (Appx. at 066-068; 297; 298; 299-302; 306).[101]

---

[97] Exhibit 6 – (Velasco, p. 154, l. 18 - p. 155, l. 25)
[98] Exhibit 6 - (Velasco, p. 156, ll. 1 – 9).
[99] Exhibit 5 – (Abel Garza, p. 171, ll. 11-21).
[100] Exhibit 6 - (Velasco, p. 126, ll. 2 – 25); Exhibit 35.
[101] Exhibit 5 - (Abel Garza, p. 125, l. 6 – p. 127, l. 23); Exhibit 41; Exhibit 42; Exhibit 43; Exhibit 45.

3.41    Garza asked Michael Johnson if he knew about his earlier accommodation request. Mr. Johnson said he did not know. Mr. Johnson stated that because he was an inter-company transfer, he would contact Mr. Garza's supervisor as a courtesy and would also talk to Human Resources.  He told Mr. Garza that he would contact him the next week about his start date. (Appx. at 066-069; 073; 263-264).[102]

3.42    After Johnson spoke to Human Resources about Garza, Michael Johnson refused for months to respond to Mr. Garza's emails or calls for an update on the position. (Appx. at 070-071; 277-279; 297; 298; 303-305; 306; 307-308; 309; 310; 333).[103]

3.43    Garza continued to wait for his assignment to the new position. Unbeknownst to Garza, Defendants contravened their own policy requiring internal transfers/candidates receive preference in hiring, and made a selection of an external candidate the day after his interview, on **October 15, 2021,** but refused to inform Garza until **January 4, 2022**, to inform Garza so that he would not have time to find another accommodation prior to his pending termination on January 6, 2022 at the end of his extended leave. (Appx. at 070-071; 277-279; 297; 298; 303-305; 306; 307-308; 309; 310; 333).[104]

3.44    Throughout October, November and December of 2021, Garza continued to inquire into the hiring for the Safety Representative position, yet no one informed him that the

---

[102] Exhibit 5 - (Abel Garza, p. 125, l.2 – p.128, l. 18; p. 170, ll. 2-6); Exhibit 31.
[103] Exhibit 5 - (Abel Garza, p. 130, l. 1-p.131, l. 4); Exhibit 34; Exhibit 41; Exhibit 42; Exhibit 44; Exhibit 45; Exhibit 46; Exhibit 47; Exhibit 48; Exhibit 50.
[104] Id.

hiring decision had already been made. (Appx. at 166; 168; 297; 298; 299-302; 303-305; 306; 307-308; 309; 310; 311-332; 333).[105]

3.45    On December 29, 2021, Defendants instruct Michael Johnson to inform Garza that he was not hired for the position. (Appx. at 310).[106]

3.46    However, Garza was not informed until January 4, 2022, two days before his stated termination date for failure to return to work from leave, and nearly three (3) months (81 days) after knowing that an external non-disabled candidate was hired [Matthew Thomas]. (Appx. at 333; 142).[107]    That same day, Garza filed and the Defendants received Garza's EEOC Charge. (Appx. at 311-332).[108]

3.47    Garza was falsely told by Mr. Johnson who stated that "the interviews took longer than expected" when internal documentation proves that interviews were concluded, and the decision was made on October 15, 2021. (Appx. at 434-435; 101; 102; 167).[109]    Further, in that recorded conversation, Mr. Johnson when asked about the reasoning for his decision did not say Garza was unqualified, but that the non-disabled Thomas was the better candidate. (Appx. at 434).

---

[105] Exhibit 7 - (de la Vega, p. 23, ll. 16 – 25; p. 26, ll. 3-18); Exhibit 41; Exhibit 42; Exhibit 43; Exhibit 44; Exhibit 45; Exhibit 46; Exhibit 47; Exhibit 48; Exhibit 49; Exhibit 50.
[106] Exhibit 48.
[107] Exhibit 50; Exhibit 6- (Velasco, p. 167, ll. 8 - 22).
[108] Exhibit 49.
[109] Exhibit 64; Exhibit 7 – (de la Vega, p. 24, ll. 1–13); Exhibit 6 – (Velasco, p. 111, l. 8- p. 112, l. 1).

### e.   New and Different Health Condition Requirement Added Post-Termination

3.48   Garza's termination date from his employment is confusing.  The Defendants claim that Garza was terminated from his employment in April 2022, however, Garza was told that his employment had ended effective January 6, 2022. Based upon that, on February 20, 2022, Garza applied for unemployment benefits with the TWC. (Appx. at 340-359).[110]

3.49   The TWC made a determination of benefits for Garza with an approved date of claim of February 20, 2022, and Defendants made no objection to the determination. (Appx. at 340-359).[111]

3.50   Oddly, on April 20, 2022 Defendants sent a termination letter to Garza stating that no accommodation was being made for him and summarized all of the reasons Garza was not being accommodated. (Appx. at 361-363; 364-368; 369; 147-148; 152).[112]

3.51   Notably, the April 20, 2022, letter to Garza reiterated the previously used excuses and returned to the pretexts that there was no need for the Defendants to have even considered accommodation since "personal desires" were Garza's reason for seeking accommodation with no proof of medical necessity. (Appx. at 361-363).[113] Of course, neither of those are legitimate factual or legal reasons to fail to accommodate and are of themselves, pretexts for discrimination.

3.52   Defendants also repeated a falsehood in that letter, that Garza's physician [Dr. Waddell] confirmed that Garza's only need for accommodation was his personal desire for

---

[110] Exhibit 53.
[111] Id.
[112] Exhibit 55; Exhibit 56; Exhibit 57; Exhibit 6 - (Velasco, p. 175, l. 9 – p. 176, l. 12; p. 181, ll. 8-18).
[113] Exhibit 55.

another job; this was a complete falsehood. (Appx. at 361-363).[114]  Also, the Defendants took the position that it was acceptable to deny accommodation because a "new" or "different" health condition was required as a prerequisite to extending a reasonable accommodation for the health condition; this is also a falsehood.  (Appx. at 361-363; 148-150).[115] There is no requirement in law, or anywhere, that a health condition needs to be "new or different" to trigger the requirement for accommodation or that there be a "medical necessity" for an accommodation. Tex. Lab. C. §21.128(a).  It appears that the Defendants have confused discrimination law with workers compensation law where causation might be an issue for insurance coverage.  Here however, the *prima facie* case is made without any determination of "new or different condition" or "medical necessity"; in other words those are not elements of the cause of action of discrimination for failure to reasonably accommodate, *See, Alamo Heights ISD v. Clark*, 544 S.W.3d 755 (Tex. 2018).

> **f.     No Undue Hardship Existed to Deny Accommodations to Garza**

3.53     We note that undue hardship is an affirmative defense on which the Defendants bear the burden of proof.

3.54     By November 23, 2021, Ms. Velasco is opining that Mr. Garza's disability accommodation request would create an undue hardship on the company despite all evidence to the contrary. (Appx. at 001-002; 003-004; 005-006; 007-008; 119-125; 295-296).[116]

3.55     Yet, Ms. Velasco had no idea whether this statement was true and could not even articulate what an undue hardship would be to Defendants. (Appx. at 121-125).[117]

---

[114] Id.
[115] Id.; Exhibit 6 - (Velasco, p. 176, l. 15 –p. 178, l. 2).
[116] Exhibit 1; Exhibit 2; Exhibit 3; Exhibit 4; Exhibit 40; Exhibit 6 - (Velasco, p. 142, l. 11 – p. 148, l. 17).

3.56   **No** cost calculation was performed by Defendants to determine if there were an undue hardship to accommodate Garza. (Appx. at 122-123; 143-144; 145).[118]   Ms. Velasco stated however that it was cost that caused this "undue hardship" preventing Garza's accommodation - this from a company that reported income in SEC filings for the first nine months ending September 2021 [the time frames of accommodation requests made by Garza] of $5.4 billion in profit. (Appx. at 144-145).[119]   There has been no proof offered by the Defendants to explain the absurdity as to how a company clearing $5.4 billion in net profit in just nine months of 2021 was at the same time unable to reasonably accommodate Garza due to the cost. Again, the Defendants made no such calculation of the cost of accommodating Garza and have baselessly alleged undue hardship.  There was no undue hardship, *See*, *Groff v. DeJoy*, 600 U.S. at 468-469, [highlight added]:

> Here, the key statutory term is "undue hardship." In common parlance, a "hardship" is, at a minimum, "something hard to bear." Random House Dictionary of the English Language 646 (1966) (Random House). Other definitions go further. See, *e.g.*, Webster's Third *469 New International Dictionary 1033 (1971) (Webster's Third) ("something that causes or entails suffering or privation"); American Heritage Dictionary 601 (1969) (American Heritage) ("[e]xtreme privation; adversity; suffering"); Black's Law Dictionary, at 646 ("privation, suffering, adversity"). But under any definition, a hardship is more severe than a mere burden. So even if Title VII said only that an employer need not be made to suffer a "hardship," an employer could not escape liability simply by showing that an accommodation would impose some sort of additional costs. Those costs would have to rise to the level of hardship, and adding the modifier "undue" means that the requisite burden, privation, or adversity must rise to an "excessive" or "unjustifiable" level.

---

[117] Exhibit 6 - (Velasco, p. 144, l. 1 – p. 148, l. 17).
[118] Exhibit 6 - (Velasco, p. 145, ll. 3 – p. 146, l. 1; p. 168, ll. 1 – 13; l. 24 –p. 169, l. 24; p. 170, ll. 14 – 20).
[119] Exhibit 6 - (Velasco, p.169, l. 8 – p. 170, l. 20).

g.   **Summary of Argument as to Reasonable Accommodation Requests Made, Defendants'' Reasons Given for Denial, and How these are Either Meritless or Pretextual.**

| Accommodation Requested by Abel Garza | Qualified? | Defendants' Reasons for Denial | Why Reasons are Pretext or otherwise Not Valid |
|---|---|---|---|
| Request to Modify Position by Having Have Assistance if an Alarm Sounds (Appx. 224; 361-362). | Yes. Abel Garza was trained and had been performing the role previously, (Appx. 001-002;005-006). | 1.       Had Been Performing Role and there is not a "new or different" health condition that would require accommodation (Appx.58; 361). | There is no requirement in law, or anywhere, that a health condition needs to be "new or different" to trigger the requirement for accommodation. Tex. Lab. C. §21.128(a). The *prima facie* case is made without any determination of "new or different condition"; in other words that is not an element of the cause of action of discrimination for failure to reasonably accommodate, *See, Alamo Heights ISD v. Clark*, 544 S.W.3d 755 (Tex. 2018). |
| | | 2.       Request for Accommodation is "not a medical necessity" (Appx. 361). | There is no requirement in law, or anywhere, that a health condition needs to be "medically necessary" to be accommodated. Tex. Lab. C. §21.128(a). The *prima facie* case is made without any determination of "medical necessity"; in other words, "medical necessity" is not an element of the cause of action of discrimination for failure to reasonably accommodate, *See, Alamo Heights ISD v. Clark*, 544 S.W.3d 755 (Tex. 2018). |
| | | 3.       "Company was unable to provide…[t]o do so would require eliminating essential functions" (Appx 362). | This is a fact question precluding summary judgment. Notably, the providing of assistance in times of emergency would not "eliminate essential functions" of the position. (Appx. 220-222). |
| Move to an Open Position at Process Loading Rack, Shipping Station and/or Process Loading Area (Appx. 224; 361-362). | Yes. This is part of the Operator position that Abel Garza had long been performing. (Appx. 001; 007; 361). | 1-2 above, *and* 4.       "[T]he warehouse position, shipping operator position, and safety position…remain either occupied or unavailable." | The positions were available. Appx. 001-002, 005-006. The positions that were available were filled by younger, non-disabled, and non-veteran persons, (Appx. 007). |

| | | | |
|---|---|---|---|
| | There is not a question of qualification. | (Appx. 362). | |
| | | 5.      "[E]ven if the positions were available, [they would not meet the restrictions]." (Appx. 362). | The positions met the restrictions.  The positions were not loud, were in an open environment, and had predictable job duties. (Appx.001-002; 006). |
| | | 6.      "Warehouse Manager position opening in Victoria, TX…was cancelled in December , and the position is no longer available. [Even if the position was available, it would not meet the restrictions]." (Appx. 362). | This is not completely true.  While the position changed title, the work was still being performed and required an Operator like Abel Garza. (Appx 001-002; 006).  There were also many other like positions where Abel Garza worked and also in a plant about three miles away. (Appx. 001-002; 005-006).<br><br>The new positions met the restrictions.  The positions were not loud, were in an open environment, and had predictable job duties. (Appx. 001-002; 005-006). |
| Recruiting Position in Dallas, Houston, or San Antonio (Appx. 362). | Yes.  Abel Garza was a long-time Operator and had been a Recruiter in the US Military (Appx. 275, 381). | 1-2 above *and* 7.      "already filled" and "requires a bachelor's degree in a business-related field, which you do not have. Thus, you did not meet the qualifications for this position." (Appx. 362). | It is true Abel Garza has no bachelor's degree in business but this is not an actual qualification and is not a business necessity for a recruiter.  Abel Garza instead had years of experience as a recruiter in the US Military.  There has been no fact presented by the Defendants that having a bachelor's degree is an actual work requisite.  Further, the Defendants did not offer and would not allow Mr. Garza to demonstrate his ability as a recruiter.  In the absence of that proof, this raises a fact question as to whether this is a mere pretext for discrimination.  Similarly, the employer in *Griggs v. Duke Power Company*, 401 U.S. 424 (1971), had adopted a high school diploma requirement for all positions in four of its five departments without "meaningful study" of its "relationship to job-performance ability," based on the untested |

| | | | belief that doing so would "improve the overall quality of the work force." *Griggs*, 401 U.S. at 431. The Court decided that the requirement was unlawful in part because it had a disparate impact on African Americans, who had high school diploma rates far lower than Whites in the relevant geographical area, and in part because the requirement was not job related for the positions in question and consistent with business necessity. The Court stated: |
|---|---|---|---|
| | | | The evidence . . . shows that employees who have not completed high school . . . have continued to perform satisfactorily and make progress in departments for which the high school . . . criteri[on is] now used. . . . |
| | | | . . . . |
| | | | The facts of [*Griggs]* demonstrate . . . the infirmity of using diplomas or degrees as fixed measures of capability. History is filled with examples of men and women who rendered highly effective performance without the conventional badges of accomplishment in terms of certificates, diplomas, or degrees. Diplomas and tests are useful servants, but Congress has mandated the commonsense proposition that they are not to become masters of reality. |
| | | | *Griggs*, 401 U.S. at 431-33. The courts and the EEOC have applied the holding in *Griggs* consistently, and Congress confirmed it when it amended Title VII in the Civil Rights Act of 1991 which Texas follows in application of Chapter 21 of the Texas Labor Code as to disability. |
| Available Safety Position at Same Plant or at Nearby Plant (Appx. 263). | Abel Garza was qualified. Abel Garza was trained in | 8.        Other non-disabled person was qualified and was an external | The person hired instead of Abel Garza, Matthew Thomas, may very well also have been qualified for this position as a non-disabled person.  But, he was an EXTERNAL |

| | this specific position (Appx. 063; 274). Abel Garza had been in a safety position in the military. (Appx. 275; 276). Abel Garza was qualified prior to the interview and was interviewed for the position. (Appx. 263). Abel Garza was told at the time of the interview that he was being hired and that should be expedited because he was an internal hire. (Appx. 067-068). | hire. (Appx. 265-267; 277; 279). | hire and no better qualified than Abel Garza. The Defendants' own written policy provides a preference for INTERNAL hires (Appx. 288 (section 3-2). ***Therefore, the Defendants had to overrule written preference for Abel Garza in order to hire a non-disabled person in this position.*** The only qualification-related difference identified by the Defendants is that Matthew Thomas is not disabled under the ADA and Texas Labor Code, while Abel Garza is disabled. This position would have accommodated Abel Garza. The failure to accommodate with this position is and was discriminatory. |
|---|---|---|---|

### 3.    GARZA HAD A SERVICE-CONNECTED COMBAT DISABILITY AND WAS TERMINATED BECAUSE OF HIS DISABILITY

#### a.    Garza had a Long-Standing Disability

3.57    Garza had long-standing combat-related PTSD, anxiety and depression diagnosis through the VA. (Appx. at 027; 029; 061; 116-117; 292; 414-431; 432-433).[120]

3.58    Again, even if Garza had a temporary disability, he was not precluded from accommodation.

#### b.    Garza was Terminated Due to His Established Combat-Related Disability

3.59    The long and winding road of the accommodation blockade, first on two separate grounds unsupported by law and then, failing that, by shutting down every possible accommodation suggested by Garza, then following Garza's termination returning to a ground unsupported by law to deny any accommodation, stands alone as proof of Garza's termination due to his disability.

3.60    Adding the inexplicable decision by Clarissa Velasco to put Garza's multiple accommodation requests on hold while he was out on short term disability, Garza had hit an impenetrable wall.

3.61    The justification by Defendants that Garza was terminated because he was out on an indefinite leave of absence and had not demonstrated any ability to return to work rings hollow given Garza's (i) continual requests for accommodation with suggested alternate position options and (ii) including a simple solution of having an extra person with him in the

---

[120] Exhibit 37; Exhibit 63; Exhibit 62; Exhibit 5 – (Abel Garza, p. 59, ll. 14 – 24; p. 61, ll. 2-25; p. 117, ll. 6 – 13); Exhibit 6 – (Velasco, p. 134, l. 12 - p. 135, l. 5).

powerhouse when there were flareups – not a request to have "someone follow him around and perform his essential job duties."

3.62    The further argument by Defendants that "In January of 2022, when La Grange informed Plaintiff that he did not receive the safety representative position he had applied for, and Plaintiff knew that none of the positions he requested were available, Plaintiff continued to remain on leave, did not apply for other positions, and did not attempt to return to work" is a blurring of truth.

3.63    First, this statement leaves out significant and important dates and facts surrounding those dates. Despite knowing since October 15, 2021, that Garza did not receive the Safety Representative Position. (Appx. at 070-071; 277-279; 297; 298; 303-305; 306; 307-308; 309; 310; 333)[121] and despite knowing that Defendants had already told Garza he would be terminated as of January 6, 2022, if he could not return to work, (Appx. at 070-071; 277-279; 297; 298; 303-305; 306; 307-308; 309; 310; 333)[122] Defendants waited until January 4, 2022, to inform Garza that he had not received the safety representative position. (Appx. at 310; 333).[123]

3.64    Second, it was not La Grange but Energy Transfer Partners that informed Plaintiff he did not receive the Safety Representative position. (Appx. at 310; 333)[124]

3.65    The statement that Garza "did not apply for other positions and did not attempt to return to work" is an attempt to erase the multiple attempts Garza made to find other positions within the company (Appx. at 224; 250-257; 258; 259-262; 268-276; 294; 297; 299-302; 306;

---

[121] Exhibit 5 - (Abel Garza, p. 130, l. l- p.131, l. 13); Exhibit 34; Exhibit 41; Exhibit 42; Exhibit 44; Exhibit 45; Exhibit 46; Exhibit 47; Exhibit 48; Exhibit 50.
[122] Id.
[123] Exhibit 48; Exhibit 50.
[124] Id.

307-308; 309)[125] and/or to have one simple accommodation made to the Powerhouse position. (Appx. at 005-006; 0320033; 039; 046-048; 224; 432-433).[126]

3.66    The contention that Garza could not handle the Safety Representative position due to noise is unsupported. (Appx. at 001-002; 003-004; 005-006; 006-007).[127]

### 4.    COMPARATORS

3.67    Garza adopts by reference the paragraphs above.

3.68    Defendants claim that Garza has provided no comparator evidence. This is incorrect.

3.69    Matthew Thomas, an external candidate hired by Defendants in contradiction to their own policies and procedures, is not disabled. (Appx. at 096;118; 166).[128]

3.70    No evidence exists that Thomas was disabled. (Appx. at 096; 118; 166).[129]. No evidence exists that Thomas required any disability accommodation.

3.71    Abel Garza, an internal candidate, met the qualifications for the Safety Representative position in South Texas with qualifications equal to and in some areas exceeding Matthew Thomas. (Appx. at 092-101; 265-267; 288; 335-339).[130]

3.72    Summary Judgment must be denied.

---

[125] Exhibit 19; Exhibit 28; Exhibit 29; Exhibit 30; Exhibit 33; Exhibit 39; Exhibit 41; Exhibit 43; Exhibit 45; Exhibit 46; Exhibit 47.
[126] Exhibit 3; Exhibit 5 - (Abel Garza, p. 65, l. 1- p. 66, l. 14; p. 86, ll. 9-25; p. 93, ll. 16 – p. 95, l. 6); Exhibit 19; Exhibit 63.
[127] Exhibit 1; Exhibit 3; Exhibit 4.
[128] Exhibit 6 – (Velasco, p. 106, ll. 11-23; p. 141, ll. 14-24); Exhibit 7 – (de la Vega, p. 23, ll. 3-15).
[129] Id.
[130] Exhibit 6 - (Velasco, p. 102, l. 4 – p. 111, l. 2; Exhibit 32; Exhibit 35 (p. ETP 000095); Exhibit 52.

B.  **DEFENDANTS HAD NO LEGITIMATE NON-DISCRIMINATORY REASON TO TERMINATE GARZA'S EMPLOYMENT**

3.73    Garza adopts by reference the paragraphs above.

3.74    The mixed-motives defense – where an employer contends that its discrimination notwithstanding, it would have made the same decision anyway – is an affirmative defense to liability.  *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 355 n.33 (5ᵗʰ Cir. 2005), quoting *Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1216 (5ᵗʰ Cir. 1995) and *Price Waterhouse v. Hopkins*, 490 U.S. 228, 246 (1989) ("[T]he employer's burden is most appropriately deemed an affirmative defense: the plaintiff must persuade the factfinder on one point, and then the employer, if it wishes to prevail, must persuade it on another.").

3.75    Defendants contend that they were justified in Garza's termination because he did not return to work after his leave expired.

3.76    Yet, we know that Defendants took actions to keep Garza from work for illegal reasons.

3.77    Perhaps the most egregious actions taken in retaliation against Garza and to block any accommodation was telling him for months that he had received a new position that would accommodate his military disability knowing the position had been offered to an external candidate who has no disability. Defendants' own policies require that current employees be given priority in filling open positions (Exhibit 35 [highlight added] (Appx at 288):

### 3-2. Internal Application Process

Energy Transfer has a job posting program to inform employees of available staff positions. The Company will attempt to fill job vacancies with internal candidates prior to seeking outside candidates. Vacancies will typically be posted concurrently or they may be posted internally for one week prior to being posted externally.

3.78     It is undisputed that that even though internal hires were to be given priority prior to seeking outside candidates for open positions, that the Defendants went out of their way to make certain that Mr. Garza would not be selected in a position that would accommodate his disability – a position for which he was qualified and had *priority* in hiring.  The Defendants specifically *intended* to discriminate against Garza.

3.79     As a result, Garza was not *permitted* to return to work by the Defendants, which the Defendants then used as the Kafkaesque reason to terminate his employ.

3.80     Ultimately, in retaliation for Plaintiff having taken his leave and asserting his disability rights, and in interference with those rights, Defendants made certain that Plaintiff was unable to return to his job and Plaintiff was terminated. Summary Judgment must be denied.

## C.     GARZA HAS ESTABLISHED SUFFICIENT EVIDENCE OF AGE DISCRIMINATION

3.81     There is a clear causal connection between Garza's age and the decision to terminate his employment (Appx. at 007-008).[131]   Several substantially younger persons were placed in the positions that Garza sought for accommodation (Appx at 007-008).

---

[131] Exhibit 4 – (Declaration of Patricio Aguilo-Marchant).

3.82    Plaintiff clearly suffered an adverse employment action, shown by the undisputed fact that he was kept from returning to work until he was ultimately terminated from his employment.

3.83    The reasons given for the actions taken are pretextual.

3.84    Summary Judgment must be denied.

D.    **DEFENDANTS RETALIATED AGAINST GARZA**

3.85    Garza adopts by reference the paragraphs above.

3.86    Garza has shown a prima facie case of retaliation under 42 U.S.C. §12203(a) because he (i) participated in an activity protected under the statute; (ii) Defendants took adverse employment action against him; (iii) a causal connection exists between the protected activity and the adverse action.

3.87    Moreover, as an inferential rebuttal on post-termination failure to mitigate, Defendants continued the pattern of retaliation by refusing to speak with a potential employer seeking a job reference. (Appx. At 003-004; 370).[132]

E.    **USERRA CLAIMS**

3.88    USERRA covers all employees who serve or have served in the uniformed services. USERRA touches every phase of the employment life cycle: hiring, retention, promotion, reemployment and other benefits associated with employment. *Watson v. FedEx Express*, No. 3:22-CV-01738-B-BT, 2023 WL 4534965, at *4 (N.D. Tex. June 26, 2023), *report and recommendation adopted,* No. 3:22-CV-01738-B-BT, 2023 WL 4533923 (N.D. Tex. July

---

[132] Exhibit 2; Exhibit 58.

13, 2023), *aff'd sub nom. PHILE ANDRA WATSON, Plaintiff-Appellant, v. FEDEX EXPRESS, Defendant-Appellee.*, No. 23-10806, 2024 WL 340817 (5th Cir. Jan. 30, 2024)[highlights added]:

> USERRA is a federal law, passed in 1994, that protects military service members and veterans from employment discrimination on the basis of their service,…. *See* 38 U.S.C. § 4311(a) ("A person who…has performed…in a uniformed service shall not be denied…retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership,…, performance of service….").
>
> ….Congress subsequently amended USERRA to include "terms, conditions, or privileges of employment" in the USERRA's definition of "benefit of employment." Pub. L. No. 112-56, § 251, 125 Stat. 711, 729 (2011); 38 U.S.C. § 4303(2). …[T]he Fifth Circuit indicated that this language authorizes a hostile work environment claim….

3.89    In the USERRA context, a plaintiff must prove that his or her "membership, application for membership, service, application for service, or obligation for service in the uniformed services is a motivating factor in the employer's action." *Garcia-Ascanio v. Spring Indep. Sch. Dist.*, 74 F.4th 305, 309–10 (5th Cir. 2023); *Bradberry v. Jefferson Cnty.*, 732 F.3d 540, 547 (5th Cir. 2013) (quoting 38 U.S.C. § 4311(c)(1)). The Act does not define "motivating factor," but "[b]y referring to *a* 'motivating factor, the statute does not textually suggest that military service be the sole factor." *Id.* To trigger liability, military status need only be "one of the reasons" for the employer's prohibited action. *Id.*

3.90    Here, Garza has shown that his disability was service related and that as a result, the failure to accommodate was a de facto service-related discrimination.

3.91    But, USERRA also provides employers with an affirmative statutory defense: An employer is not liable "if it 'can prove that the action would have been taken in the absence of such [military status]." *Id.* (quoting § 4311(c)(1)). "[T]he employer has the burden to prove the

affirmative defense that it would have taken the action anyway." *Id.* Here, the Defendants fail in that burden and therefore summary judgment must be denied.

## IV.

## <u>CONCLUSION</u>

Garza has established that he had a disability, that he was qualified for his job, and that he was subject to termination because of his disability as well as his age, that he was discriminated against due to his Veterans' status and in violation of USERRA and that he was retaliated against. Defendants' Motion for Summary Judgment is without merit since there are clear and discernible fact issues that preclude summary judgment.

WHEREFORE, PREMISES CONSIDERED, Garza prays that upon notice and hearing that the Motion for Summary Judgment be denied.  Garza further requests all equitable relief allowed under law.

Respectfully submitted,

_____
Charles H. Peckham
FBN:  15770
TBN: 15704900
cpeckham@pmlaw-us.com

PECKHAM MARTIN, PLLC
Two Bering Park
800 Bering Drive, Suite 220
Houston, Texas  77057
(713) 574-9044

**COUNSEL FOR PLAINTIFF**

47

## <u>CERTIFICATE OF SERVICE</u>

 I hereby certify that a true and correct copy of the foregoing instrument was forwarded to the following on this the 7th day of February 2024 via electronic service:

  Kelley Edwards (Attorney in Charge)
  kedwards@littler.com
  LITTLER MENDELSON, P.C.
  1301 McKinney Street, Suite 1900
  Houston, Texas 77010

  Matthew A. Swanger (Local Counsel)
  mswanger@littler.com
  LITTLER MENDELSON, P.C.
  2001 Ross Avenue
  Suite 1500, Lock Box 116
  Dallas, TX  75201.2931

  **COUNSEL FOR DEFENDANTS ENERGY TRANSFER PARTNERS,**
  **L.L.C. and LA GRANGE ACQUISITION, L.P.**

  _Charles H Peckham_
  _____
  Charles H. Peckham

---

[a] Dr. Waddell is unavailable to make a declaration as he is on active duty in the US Armed Forces and cannot be reached/located. (Appx at 450-451.)