My doctor sent my Return to Work document to Clarissa Velasco. She said she will contact me when I am cleared to return to work. Unum is still reviewing all the documents and said they will let me know something soon.

Respectfully,
Abel

On Wed, Jul 28, 2021 at 6:52 PM Pena, Noe <Noe.Pena@energytransfer.com> wrote:

Thanks for the update Abel.
Keep me posted on your condition.

Regards,

Sent from my iPhone

On Jul 28, 2021, at 5:52 PM, Abel Garza <abel.garza12@gmail.com> wrote:

I had my Appt today with my doctor and also spoke with Unum. Unum is requesting more documents and my doctor (after referring with his supervisor) says what they have provided already is sufficient enough according to the law. They feel Unum is requesting more information than is needed. Unum will be calling me tomorrow to discuss options. My doctor asked about the Accommodations Request and I told him it his still being reviewed by HR. If I get released back to work at the PowerHouse then I will continue having problems. We agreed that my best option is returning to work at the Shipping Station; where there are no alarms, random loud noise, and noise isn't confined indoors like the PowerHouse which makes it louder and constant. I hope that with Penny submitting her retirement the option for me is considered for me to replace her at the Shipping Station.
So my next appointment with my doctor is August 4th; with expected return to work on August 5th.

Respectfully,
Abel

On Sun, Jul 25, 2021, 9:50 PM Pena, Noe <Noe.Pena@energytransfer.com> wrote:

Able,
Work Release Form attached per your request.
Continue to keep me posted on your STD.

Regards.

Noe E. Pena
Title – Plant Manager
Department
Energy Transfer

office: 361-595-9250
cell: 361-406-8229

ETP 000400

Private and confidential as detailed here. If you cannot access hyperlink, please e-mail sender.

Private and confidential as detailed here. If you cannot access hyperlink, please e-mail sender.

ETP 000401

# Abel Garza

1806 Brook Lane ◆ Kingsville, Texas 78363 ◆ (361) 455-3309 ◆ abel.garza12@gmail.com

## Objective

*Professional position allowing the utilization of various skills obtained throughout a successful military career.*

## Profile

Talented professional who effectively multi-tasks and balances customer needs with company demands. Efficiently builds loyalty and long-term relationships with customers, while consistently reaching set goals.

Proven track record as a Leader and Manager with the experience to be successful in any type of environment and the ability to think outside the box.

Strong work ethic with the will to succeed and accomplish the mission. Goal oriented and eager to over-achieve any task assigned.

Thrive in deadline-driven environments. Excellent leadership and team-building skills.

## Skills Summary

|  |  |  |
|---|---|---|
| ◆ Project Management | ◆ Recruiter Manager | ◆ Public Affairs |
| ◆ Safety Management | ◆ Security Management | ◆ Risk Management |
| ◆ Logistics Management | ◆ Company Manager | ◆ Operations Management |
| ◆ Human Resources | ◆ Marketing & Sales | ◆ Professional Presentations |

## Employment History

### King Ranch Gas Plant- EXXONMOBIL(1yr) / ENERGY TRANSFER PARTNERS(4yrs)

Feb 2014 - Present
Project Coordinator/Materials Manager/Operations
- ◆ Coordinate all logistics and cost tracking for rebuild of the RADU Unit
- ◆ Manage ordering materials and contractors material inventory needed for RADU rebuild.
- ◆ Supervise work crews and safety program during the RADU Project.
- ◆ 4 years as an Operator providing surveillance and operational support for Fractionation Unit, Amine Unit, Glycol Unit, Shipping Station, PowerHouse, Loading Rack, and Saltwater Disposal

### ROCKWATER ENERGY SOLUTIONS- KINGSVILLE, TX

May 2013 — Jan 2014
Warehouse/Office Manager
- ◆ Manage the Logistics and daily operations.
- ◆ Create customer sales orders and maintain records of all sales.
- ◆ Assign drivers to all scheduled deliveries and manage the outsouring of additional drivers as needed
- ◆ Create Safety Program with incentives for employees.

### U.S. ARMY MISSION SUPPORT BATTALION, FORT KNOX, KY

December 2010 – November 2012

#### COMPANY MANAGER, PUBLIC AFFAIRS, OPERATIONS, PROJECT MANAGER
- ◆ Operations leadership consisting of 59 soldiers and 17 civilians.
- ◆ Responsible for planning and execution of all operational requirements.
- ◆ Create and design concepts for new and existing projects.

ETP 000402

monster.com

# Abel Garza

- Develop and implement Strategic Marketing Plans and provide Talking Points when needed.
- Responsible for development of Anti-Bullying video created for social media sites.
- Orchestrating the publication of video media including Recruiter Journal and Soldiers Magazine.
- Supervise monthly and quarterly Company training to include Security, Safety, and Risk Management.
- Manage all Logistics for Transportation Fleet traveling across the United States.

## HR / RECRUITER MANAGER – U.S. ARMY RECRUITING COMMAND, FORT KNOX, KY
June 1999 – December 2010

- Spokesperson for U.S. Army; notable interview June 2005 with 60 Minutes (Call of Duty)
- Oversee all Recruiting and maintain relationships with Local, State, and Federal Government Agencies.
- Build relationships with customers and the Communities to promote long term business growth.
- Responsible for making sure Company Security and Safety Policies are followed by employees
- Used networking opportunities to create successful continuous business relationships.
- Prioritized tasks and projects to meet extreme deadlines.

## LOGISTIC MANAGER – U.S. ARMY RESERVES
June 1989 – June 1999

- Manage all warehouse operations during a combat tour of duty
- Responsible for Safety and Security Planning
- Fleet and Operations Management
- Supervise Supply Chain for South and Central America

## Education

### COMMANDERS/FIRST SERGEANTS COURSE – FORT KNOX, KY
March 2012
Company Leadership, Public Affairs, Administration Management, Professional Development, Benefits, Ethics Law, Business Management, OSHA and EPA Training, Team Building, Security and Safety Management, Operations Management, and Risk Management.

### RECRUITING/PUBLIC AFFAIRS SCHOOL – FORT JACKSON, SOUTH CAROLINA
June 1999 – Aug 1999
Prospecting strategies, sales training, communication skills training, extensively trained in management. Leadership training program, Marketing and Advertising, Human Resources, and Public Affairs.

### ADVANCE NON COMMISSIONED OFFICERS COURSE – FORT RILEY, KS
March 1997 – August 1997
Personnel Management, Training and Readiness, Cyber Threats, Equipment Maintenance, Operations Management, Project Management, Professional Development, Logistic Management, Security and Safety Planning.

### BASIC NON COMMISSIONED OFFICERS COURSE – FORT SAM HOUSTON, TX
March 1996 – August 1996
Leadership, Counseling, Operations, Security and Safety Planning, Environmental Laws, Health and Welfare, Professional Development, Interpersonal Communications, Logistics Management, and Maintenance Management.

### ODEM HIGH SCHOOL – ODEM, TEXAS
High School Diploma, Graduated – June 1987

**Appendix 275**

ETP 000403

monster.com

# Abel Garza

1806 Brook Lane ◆ Kingsville, Texas 78363 ◆
(361) 455-3309 ◆ abel.garza12@gmail.com

Dear Employer,

As a serviceman in the U.S. Army for 26 years, I offered my best everyday to my peers, superiors and to my country. I have strong ties in the South Texas Region (Public, Political, & Government).

I was assigned as Manager in charge of Public Affairs and the National Convention Division. I have 24 years of Leadership experience. During my military career I supervised soldiers and civilians from various occupational backgrounds and skill sets. I learned how to overcome obstacles and handle any situation.

I also have many years of experience in Logistics Management, Safety and Risk Management, Transportation, Security, Chemical Operations, and Facilities Management. Throughout my experiences I managed employee files, training, benefits process, professional development, and public relations. I have experience with Emergency Response Planning.

The skills I have acquired and valuable experiences I have earned during my time in the military will help me to smoothly transition within the company.

Here is what I can bring to the company:

- ◆ Recruiting Management / Sales Management
- ◆ Business Development
- ◆ Public Affairs / Government Affairs
- ◆ Company Management
- ◆ Operations / Project Management
- ◆ Logistics Management
- ◆ Leadership
- ◆ Safety First Attitude / Training
- ◆ Maintenance Supervisor
- ◆ Emergency Response Experience
- ◆ Risk Management Training

Please feel free to contact me if you have any questions.

I look forward to growing with this Company. I appreciate your time and consideration for this opportunity.

Sincerely,

Abel Garza

**Appendix 276**

ETP 000404

Message

| | |
|---|---|
| **From:** | Johnson, Michael S [Michael.Johnson3@energytransfer.com] |
| **Sent:** | 10/15/2021 9:51:51 AM |
| **To:** | De La Vega, Raymond [Raymond.DeLaVega@energytransfer.com] |
| **Subject:** | RE: Safety Rep Position STX - Requisition # 2110001742 |

Yes sir

Matthew Thomas
Adan Perez
Daniel Saenz
Derrick Perez
Abel Garza
Greg Garnett

**From:** De La Vega, Raymond <Raymond.DeLaVega@energytransfer.com>
**Sent:** Friday, October 15, 2021 9:50 AM
**To:** Johnson, Michael S <Michael.Johnson3@energytransfer.com>
**Subject:** RE: Safety Rep Position STX - Requisition # 2110001742

Can you send me a list of who all you interviewed please. Need to update their status. Thanks.

Raymond De La Vega
Energy Transfer
Human Resources
Office: 210-403-6429
Cell: 210-260-7941

For assistance regarding  Benefits contact your Benefit Advocates at ETPBenefits@ajg.com or 1-855-562-5847 for a claim or eligibility issue.
For assistance regarding Payroll/eTime/iPay, you may also contact the Payroll Hotline, 713-989-2166 or Time.Mailbox@energytransfer.com
For assistance regarding STD/FMLA, contact **UNUM** at 1-877-463-2028 or www.unum.com.  Plan ID 882077

**From:** Johnson, Michael S <Michael.Johnson3@energytransfer.com>
**Sent:** Friday, October 15, 2021 9:46 AM
**To:** De La Vega, Raymond <Raymond.DeLaVega@energytransfer.com>
**Cc:** Ingalls, Chad <Chad.Ingalls@energytransfer.com>
**Subject:** Safety Rep Position STX - Requisition # 2110001742

Raymond,

I have selected Matthew Thomas as the Safety Rep position in STX.  After review of all resumes as well as 6 different interviews.  I have attached a brief justification supporting this selection.  I have also attached his resume.

Thanks



EXHIBIT
34

**Appendix 277**

ETP 000321





**Michael S. Johnson**
Director Of Operations STX
Energy Transfer
616 S. Hwy 77
Robstown, TX 78380

Michael.johnson3@energytransfer.com

**Cell:** 361-935-5861
**Office:** 361-698-4038
**Fax:** 361-698-4001

www. Energytransfer.com

ETP 000322

Hire Justification 1

I have selected Matthew Thomas for the safety Rep position out of Freer, Texas. After many candidate reviews and as well multiple interviews. Matthew is the most qualified applicant. He brings 9 years of industry knowledge, as well as his time in the United States Navy. Ricco as well served in the U.S. Navy from 2004-2012. With his time in the military as well as extensive experience from the contract side of the industry with roles in upstream, and downstream, he has the opportunity to bring this knowledge and experiences to the midstream portion of the industry. Matthew brings exceptional leadership skills with his time in previous employment in leadership roles. Matt also has the knowledge of basic Operations. He has also spent time recently with Chevron in STX and understands the border crisis vie are on. As he has developed strategic ideas that could correlate to our safety culture. As Energy Transfer continues to grow and become the leader in the industry, Matthew's knowledge will allow him to be instrumental in the growth of our assets in the STX Region as we continue to strive for near perfect results, resulting in the continued expectations of O incidents and O accidents in the STX Region. As we have grown in STX with the Reorg that took place across the Central TX Division, Matthew also is located in the heart of these assets and will be able to step in and hit the ground running. Matt brings multiple qualifications and certifications. As referenced on his resume. Matt, being a part of the contractor world also brings the instructor piece of the safety role to our company. As he has spent time instructing and coordinating a safety culture at previous companies that has allowed him to continue to grow with outstanding safety results. --Michael Johnson

ETP 000119

Energy Transfer Family of Partnerships

# Employee Handbook

October 2018



EXHIBIT

35

ENERGY TRANSFER    *SUNOCOLP*    Sunoco Logistics


Energy Transfer Family of Partnerships
**Employee Handbook**

## Section 2: Governing Principles of Employment

### 2-1. Equal Employment Opportunity and Anti-Discrimination Policy

Energy Transfer is an equal opportunity employer that does not discriminate on the basis of race, color, religion, sex, sexual orientation, gender identity, national origin, age, disability, pregnancy, veteran status, citizenship status, or any other characteristic protected by applicable law (including affiliation with someone in a protected class). This policy covers all employees and applicants of the Company. This policy applies to all employment decisions and terms and conditions of employment, including but not limited to recruitment, hiring, placement, promotion, transfer, training, development, compensation, benefits, demotion, discipline and termination. The Company will not tolerate any discrimination prohibited by this policy by anyone at work or engaged in Company business, which includes work related activities such as conventions, seminars, or social events.

**Responsibilities & Procedures**

All employees must comply with this policy and have a responsibility to promptly report any suspected violations of this policy. Any employees who believe that this policy has been violated should immediately report the issue to his or her direct supervisor. If for any reason the employee is not comfortable reporting the matter to the supervisor, the employee should report the matter to his or her Human Resources representative, any manager, the Executive Vice President and Chief Human Resources Officer or the EthicsPoint Confidential Helpline. The Helpline is available 24 hours per day/7 days per week at 1-888-332-3592 or 1-800-228-5687 or at www.energytransfer.ethicspoint.com. Anonymous reporting is available through the EthicsPoint Confidential Helpline. Energy Transfer's management, at all levels, is responsible for ensuring compliance with this policy in their areas of responsibility. Managers and supervisors who receive complaints, or who observe discriminating conduct, should immediately inform the Human Resources department. All employees are encouraged to consult with the Human Resources department if they have any questions concerning their responsibilities under this policy or other matters related to equal employment opportunities or discrimination in the workplace.

The Company will promptly investigate any reports or allegations of violations of this policy and, where it determines that a violation of policy has occurred, take appropriate corrective and/or preventive action, including discipline, up to and including termination. Even in those instances in which the investigation reveals inappropriate conduct that falls short of unlawful discrimination, discipline or termination may result. The Company will keep information relating to complaints or reports of discrimination and the terms of their resolution as confidential as practicable and protected from unnecessary disclosure.

10

ETP 000088



Energy Transfer Family of Partnerships
**Employee Handbook**

As explained in the Company's Non-Retaliation Policy, Section 2-3 of this Handbook, the Company will not allow any form of retaliation against individuals who make complaints that a violation of this policy has occurred.

### 2-2. Anti-Harassment Policy

It is the policy of Energy Transfer, that all employees should enjoy a work environment free from all forms of unlawful discrimination, including harassment. The Company is committed to preventing and correcting harassment in the workplace, and employees are strongly encouraged to report any harassing conduct so that the Company can stop harassment before it becomes severe or pervasive or a violation of any federal, state, or local law. Retaliation against an employee reporting any such conduct will not be tolerated by the Company.

Harassment consists of unwelcome conduct, whether verbal, physical, visual or otherwise, that is based upon a person's protected status, such as sex, pregnancy, sexual orientation, gender identity, race, color, religion, national origin, age, veteran status, disability, protected activity (i.e. opposition to the prohibited discrimination or participation in the statutory complaint procedures) or any other characteristic protected by applicable law. This prohibition applies to all employees, vendors, independent contractors and customers of the Company. The Company will not tolerate any conduct prohibited by this policy from anyone at work or engaged in Company business, which includes work related activities such as conventions, seminars, or social events.

Sexual harassment is defined to include unwelcome sexual advances, requests for sexual favors, and other verbal, visual, or physical conduct of a sexual nature, when:

o   Submission to such conduct is made either explicitly or implicitly a term or condition of employment;
o   Submission to or rejection of such conduct is used as the basis for employment decisions; or
o   Such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile or offensive work environment.

Conduct that creates a "hostile" work environment is determined by all the circumstances, which may include the frequency of the conduct, its severity, whether it is physically threatening or humiliating, whether it unreasonably interferes with work performance, and the overall effect on the employee's psychological well-being. Prohibited harassment includes many forms of offensive behavior.

Examples of conduct that is prohibited by this policy include, but are not limited to, the following:

ETP 000089

 Energy Transfer Family of Partnerships
**Employee Handbook**

1. Unwanted or unwelcome sexual advances, propositions, or repeated flirtations.

2. Offering or implying an employment-related reward (including, but not limited to a promotion or raise) in exchange for sexual favors or submission to sexual conduct.

3. Threatening or taking of a negative employment action (including, but not limited to termination, demotion, undesirable reassignment, compensation decisions, denial of a leave of absence or retaliation) if sexual conduct is rejected.

4. Physical assaults on another person, including rape, sexual battery, molestation, or attempts to commit these assaults.

5. Unwelcome intentional touching of another person or other unwanted intentional physical contact that is sexual in nature (including patting, pinching, or brushing against another person's body).

6. Asking unwelcome questions or making unwelcome comments about another person's sexual activities, dating, personal or intimate relationships, or appearance.

7. Unwelcome sexually suggestive or flirtatious gifts.

8. Unwelcome sexually suggestive or flirtatious letters, notes, e-mails, instant messages, text messages or voice mails.

9. Conduct or remarks that are sexually suggestive or that demean or show hostility to a person because of the person's gender (including jokes, pranks, teasing, obscenities, obscene or rude gestures or noises, slurs, epithets, taunts, negative stereotyping, threats, blocking of physical movement).

10. Displaying or circulating pictures, objects, or written materials (including graffiti, cartoons, photographs, pinups, calendars, magazines, figurines, novelty items) that   are sexually suggestive or that demean or show hostility to a person because of the person's gender.

11. Retaliation for making harassment reports or threatening to report harassment.

Sexual harassment can occur between employees of the same sex. It is prohibited for males to sexually harass females or other males, and for females to sexually harass males or other females.  Sexual harassment on the job is prohibited whether it involves co-worker harassment, harassment by a manager or

ETP 000090

Energy Transfer Family of Partnerships
**Employee Handbook**

supervisor, or harassment by persons doing business with the Company or other persons coming into contact with Company employees.

The Company also prohibits harassment on the basis of race, color, national origin, religion, gender, physical or mental disability, age, veteran status, sexual orientation, protected activity, or any other characteristic protected by applicable law. Such prohibited harassment includes but is not limited to the following examples of offensive conduct:

1. Verbal conduct such as making or using threats, epithets, derogatory comments, slurs, explicit or offensive jokes, or comments about characteristics related to one's legally protected status.

2. Visual conduct such as gestures or the display or dissemination of derogatory objects, pictures, articles, posters, cartoons, letters, notes, invitations, or drawings.

3. Written communications containing statements that may be offensive to individuals in a particular protected group, such as racial or ethnic stereotypes or caricatures.

4. Offensive physical conduct such as assault, unwanted touching or impeding or blocking normal movement.

5. Retaliation for making or threatening to make harassment reports to the Company, or for participating in an investigation into harassment allegations.

### Responsibilities & Procedures

All employee must comply with this policy and have a responsibility to promptly report any suspected violations of this policy. Any employees who believe that this policy has been violated should immediately report the issue to his or her direct supervisor. If for any reason the employee is not comfortable reporting the matter to the supervisor, the employee should report the matter to his or her Human Resources representative, any manager, the Executive Vice President and Chief Human Resources Officer or the EthicsPoint Confidential Helpline. The Helpline is available 24 hours per day/7 days per week at 1-888-332-3592 or 1-800-228-5687 or at www.energytransfer.ethicspoint.com. Anonymous reporting is available through the EthicsPoint Confidential Helpline.

Energy Transfer's management, at all levels, is responsible for ensuring compliance with this policy in their areas of responsibility. Managers and supervisors who receive a complaint or otherwise learn of harassment or suspected harassment or observe conduct that may be considered harassment, should immediately report the details of this information to his or her manager and the Human Resources department. Any question about whether or not particular

**Appendix 284**

ETP 000091



Energy Transfer Family of Partnerships
**Employee Handbook**

conduct may be deemed to be harassment should be directed to your Human Resources department. Even if the suspected harassment involves persons who work in a department other than that of the manager or supervisor, the manager or supervisor must report it to his or her manager and the Human Resources department.

The Company will promptly investigate any reports or allegations of violations of this policy and, where it determines that a violation of policy has occurred, take appropriate corrective and/or preventive action. Even in those instances in which the investigation reveals inappropriate conduct that falls short of unlawful harassment, discipline or termination may result. The Company will keep information relating to complaints or reports of harassment and the terms of their resolution as confidential as practicable and protected from unnecessary disclosure.

As explained in the Company's Non-Retaliation Policy, Section 2-3 of this Handbook, the Company will not allow any form of retaliation against individuals who make complaints that a violation of this policy has occurred.

## 2-3. Non-Retaliation Policy

Energy Transfer's policy is to provide employees with a workplace free of retaliation. The Company takes all reports and allegations of retaliation seriously, investigates them promptly and thoroughly, and takes appropriate responsive action. Employees found to have engaged in retaliation are subject to discipline, up to and including discharge.

For the purpose of this policy the term "retaliation" refers to any form of discriminatory or harassing treatment that is directed toward an employee because he or she has raised concerns of unlawful discrimination or harassment, reported violations of the Equal Employment Opportunity and Anti-Discrimination Policy, Anti-Harassment Policy, the Disability Accommodation Policy or the Non-Retaliation Policy, or because he or she has filed a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing concerning reports or allegations of unlawful discrimination or harassment. Prohibited retaliation includes, but is not limited to, termination, demotion, suspension, failure to hire or consider hiring, failure to give equal consideration in making employment decisions, and harassment.

Any employee who believes that he or she has been subjected to retaliation, or who has information about behavior that may violate this policy, the individual should immediately report such behavior to his or her supervisor. If for any reason the employee does not feel comfortable reporting the matter to the supervisor, the employee should report the matter to his or her Human Resources representative, any manager, the Executive Vice President and Chief Human Resources Officer or the EthicsPoint Confidential Helpline. The Helpline is available 24 hours per day/7 days per week at 1-888-332-3592 or 1-800-228-5687 or at

**Appendix 285**

ETP 000092



Energy Transfer Family of Partnerships
**Employee Handbook**

---

www.energytransfer.ethicspoint.com. Anonymous reporting is available through the EthicsPoint Confidential Helpline.

The Company will not allow any form of retaliation against individuals who make complaints that a violation of this policy has occurred.

### 2-4. Code of Business Conduct and Ethics

Energy Transfer has adopted a Code of Business Conduct and Ethics that applies to each partnership throughout our family of partnerships. As you are subject to compliance with your applicable code and are required to certify each year that you have read, understood and acknowledged whether or not you are aware of any violations to the code, we urge you to take the time to read the code carefully. In general, each code specifies that each employee must:

o  Act with absolute integrity at all times.
o  Be accountable for your actions.
o  Always conduct business in a legal and ethical manner.
o  Take responsibility for the assets of the Company as if they were your own.
o  If you are unsure about your actions, ask before you act.
o  Report wrong-doing.
o  Uphold the code.

If you become aware of any issues or conduct that may be contrary to this code, Energy Transfer's values or any laws or regulations under which we operate, there are several ways you can ask questions or report concerns:

o  You may make a report to your supervisor.
o  You may use the EthicsPoint confidential Helpline 24 hours per day/7 days per week at 1-888-332-3592 or 1-800-228-5687 or at www.energytransfer.ethicspoint.com. Anonymous reporting is available through the EthicsPoint Confidential Helpline.
o  You may contact Energy Transfer's Chief Compliance Officer at officeofethicsandcompliance@energytransfer.com.

**Employees can access the Code of Business Conduct and Ethics via the Intranet on the Office of Ethics and Compliance page or contact their manager or the Human Resources department to obtain a copy.**

### 2-5. Immigration Reform and Control Act

In compliance with the federal Immigration Reform and Control Act of 1986 (IRCA), our Company is committed to employing only individuals who are authorized to work in the United States.

Each new employee, as a condition of employment, must complete the Employment Eligibility Verification Form I-9 and present original documentation

---

15

ETP 000093

**Appendix 286**

 Energy Transfer Family of Partnerships
**Employee Handbook**

establishing identity and employment eligibility. If these documents cannot be presented on the employee's first day of employment, then proof of application for the documents must be presented within three business days. Failure to provide documentation as required under the IRCA will result in immediate termination of employment.

### 2-6. Disability Accommodation

The Company is committed to complying fully with the Americans with Disabilities Act (ADA), as amended by the ADA Amendments Act (ADAAA), and any similar, applicable state and local laws, and ensuring equal opportunity in employment for qualified persons with disabilities. All employment practices and activities are conducted on a non-discriminatory basis, and all employment decisions are based on the merits of the situation in accordance with defined criteria, not the disability of the individual.

The ADA requires that we provide reasonable accommodation so that an individual with a disability can perform the essential functions of the job, complete the job application process, and enjoy equal access to benefits and privileges of employment. The ADA does not require that we give preferential treatment to individuals with disabilities or lessen our qualification standards. Nor does the ADA require the Company to provide an accommodation that would impose an "undue hardship" on the business or cause a direct threat to the health or safety of others. The law does require that we consider reasonable modifications regarding how qualified individuals with disabilities perform the essential functions of their jobs, when the Company knows that the employee or applicant requires a reasonable accommodation.

Reasonable accommodation will be considered for all qualified disabled employees or applicants upon request, where the disability affects the performance of essential job functions. Any employee or applicant requesting a reasonable accommodation should notify his or her supervisor and Human Resources representative.

The Company is committed to complying with these ADA requirements and taking all other actions necessary to ensure equal employment opportunity for persons with disabilities in accordance with other applicable federal, state and local laws. We encourage all employees to help us achieve this objective.

As explained further in Section 2-1 Equal Employment Opportunity and Anti-Discrimination Policy, any employees who believe that this policy has been violated should immediately report the issue to his or her direct supervisor. If for any reason the employee is not comfortable reporting the matter to the supervisor, the employee should report the matter to his or her Human Resources representative, any manager, the Executive Vice President and Chief Human Resources Officer or the EthicsPoint Confidential Helpline. The Helpline is available 24 hours per day/7 days per week at 1-888-332-3592 or 1-800-228-5687

16

ETP 000094



Energy Transfer Family of Partnerships
**Employee Handbook**

or at www.energytransfer.ethicspoint.com.   Anonymous reporting is available through the EthicsPoint Confidential Helpline.

As explained in the Company's Non-Retaliation Policy, Section 2-3 of this Handbook, the Company will not allow any form of retaliation against individuals who request an accommodation under this policy or report that a violation of this policy has occurred.

## Section 3: Hiring

### 3-1. Hiring Overview

The Company expects management to make hiring decisions and manage resources in a way which best achieves Energy Transfer's goals and objectives to ensure compliance with applicable laws and regulations during the hiring process. Supervisors are expected to work with the Human Resources department to fill all vacancies.   Sufficient documentation should be kept by hiring managers to demonstrate nondiscriminatory selections and provide to the Human Resources department timely and complete documentation required by policy or law.

### 3-2. Internal Application Process

Energy Transfer has a job posting program to inform employees of available staff positions.  The Company will attempt to fill job vacancies with internal candidates prior to seeking outside candidates.   Vacancies will typically be posted concurrently or they may be posted internally for one week prior to being posted externally.

To apply for a posted position, an employee must:

o  Be in their current position for one year or more and performing at a satisfactory level;
o  Meet the minimum requirements for the position; and
o  Not have received a written warning within the past 90 days; employees who have received a verbal warning or that are on probation or suspension may also be prohibited from applying.

**Employees are responsible for notifying their supervisor as soon as they apply for an internal posting.**

Employees interested in applying for a posted position should submit a resume listing job-related skills and job accomplishments, prior work experience and/or education that qualifies them for the position online via the career page on the Company's website. Candidates will be evaluated on individual performance, conduct, experience, and potential.  Length of service, although considered, shall not be the sole determining factor in selecting candidates for promotion.

ETP 000095

**Appendix 288**


Energy Transfer Family of Partnerships
**Employee Handbook**

## Section 16:  Employee Privacy

### 16-1. Inspections

Energy Transfer reserves the right to require employees while on Company property, or on client property, to agree to the inspection of their persons, personal possessions and property, personal vehicles parked on Company or client property, and work areas.  This includes lockers, vehicles, desks, cabinets, work stations, packages, handbags, briefcases and other personal possessions or places of concealment.  Employees are expected to cooperate in the conduct of any search or inspection.   Employees should have no expectation of privacy whatsoever with regard to (i) offices, desks, vehicles, lockers, or other areas, storage or any equipment provided by the Company, (ii) briefcases, bags, containers or other personal possessions brought onto Company or client property, or (iii) personal vehicles located on Company or client property.

### 16-2. Camera Phones/Recording Devices

Due to the potential for issues such as invasion of privacy, sexual harassment, and loss of productivity, employees while on working time may not operate a camera phone, tape recorder or other types of voice recording devises or take, distribute, or post pictures, videos or audio recordings (including to record conversations or activities of other employees or management), unless such use is for official Company business. "Working time" is the time an employee is engaged, or should be engaged,   in performing his/her work tasks for Company, but does not include break times, meal periods and time before and after an employee's regularly scheduled work hours.  Employees also may not take pictures or make recordings of work areas.  An exception to the above rule concerning pictures and recordings of work areas would be to engage in activity protected by the National Labor Relations Act including, for example taking pictures of health, safety and/or working condition concerns or of strike, protest and work-related issues and/or other protected concerted activities.

## Section 17:  Complaint Policies

### 17-1. Open Door Policy

We want to maintain a positive and pleasant environment for all of our employees. To help us meet this goal, our Company has an open door policy, by which employees are encouraged to report work-related concerns.

If something about your job is bothering you, or if you have a question, concern, idea, or problem related to your work, please discuss it with your immediate supervisor as soon as possible.  If for any reason you don't feel comfortable bringing the matter to your supervisor, feel free to raise the issue with the Human

ETP 000096

 Energy Transfer Family of Partnerships
**Employee Handbook**

Resources department or any manager or officer of the Company.  **Employees may also contact the EthicsPoint confidential helpline 24 hours per day/7 days per week at 1-888-332-3592 or 1-800-228-5687 or at www.energytransfer.ethicspoint.com.**

We encourage you to come forward and make your concerns known to the Company.  We can't work to resolve an issue if we don't know about it.

### 17-2. Complaint Procedures

Our Company is committed to providing a safe and productive work environment, free of threats to the health, safety and well-being of our workers.  These threats include, but are not limited to, harassment, discrimination, violations of health and safety rules, and violence.

Any employee who witnesses or is subject to inappropriate conduct in the workplace may complain to their supervisor, the Human Resources department or any manager of the Company.  **Employees may also contact the EthicsPoint confidential Helpline 24 hours per day/7 days per week at 1-888-332-3592 or 1-800-228-5687 or at www.energytransfer.ethicspoint.com.**

Any supervisor or manager who receives a complaint about, hears of, or witnesses any inappropriate conduct is required to immediately notify his/her Human Resource representative.

Inappropriate conduct includes but is not limited to any conduct prohibited by our policies about harassment, discrimination, discipline, workplace violence, health and safety, wages and hours, and drug and alcohol use.  In addition, we encourage employees to come forward with any workplace complaint, even if the subject of the complaint is not explicitly covered by our written policies.

We encourage you to move forward with complaints immediately, so we can take whatever action is needed to resolve the issue.  Once a complaint has been made, the Human Resources department and management will determine how to handle it, including what investigation is needed.  All complaints will be handled as confidentially as possible.  When the investigation is complete, the Company will take corrective action, if appropriate.

If you believe that you're being subjected to any kind of negative treatment because you made or were questioned about a complaint, report the conduct immediately to your supervisor, the Human Resources department, or any officer or manager of the Company.

ETP 000097

**Appendix 290**

 ENERGY TRANSFER

October 22, 2021

Abel Garza
1806 Brook Lane
Kingsville, TX 78363

      RE:   Accommodation Request

Dear Abel,

I am writing in response to your request for one or more workplace accommodations. Based upon the information you provided, your medical condition has caused you to request the following accommodations: movement to a more open, less restrictive environment; less noisy environment; more predictable environment; and to work with a coworker. Alternatively, you requested that the Company provide you with a reassignment to another position within the company. Unfortunately, after careful review of the information you provided, and the information your treating physician provided, the Company will be unable to provide you with the accommodations you have requested for the following reasons(s): Your medical provider confirmed that your conditions are primarily situational/family-related. Further, any medical conditions you have are temporary in nature, and your request for accommodations are based on personal desires with no medical reason necessitating such changes.

If you wish to provide additional information to support your request for an accommodation, please submit it to my attention and we would be glad to reevaluate your request.

The Company will ensure your medical documentation remains securely maintained and confidential and will share only with those who have a need-to-know. Please feel free to contact me at 210-403-6441 if you have any questions or concerns.

Sincerely,

*Clarissa Velasco* (signature)

Clarissa Velasco
Supervisor – Leave Administration

Cc: Raymond De La Vega – Senior Manager – Human Resources

**EXHIBIT**
36

ETP 000010

Message

| | |
|---|---|
| **From:** | Abel Garza [abel.garza12@gmail.com] |
| **Sent:** | 11/1/2021 12:17:34 PM |
| **To:** | Velasco, Clarissa [clarissa.velasco@energytransfer.com] |
| **Subject:** | ADA Accommodations Request |
| **Attachments:** | Abel Garza VA Disability.jpg; Abel Garza-ADA ReEvaluation Request November 1.docx |

Clarissa,

I am attaching my response to the letter you sent me dated October 22,2021. And a document from the Veterans Administration showing I have a Service-Connected Disability.

I will also be sending you other medical documents to support my request and ask for a reevaluation. I have been receiving treatment for my disability from the Veterans Administration Behavioral Health Department since 2015-2016 and before that when I was on Active Duty in the Army beginning in 2009. So much for being temporary in nature.

My next appointment with Dr Waddell is this Wednesday afternoon. When I spoke with him last week he told me that he did not agree with the decision of denying my request. He was going to speak with his supervisor and see what the Veterans Administration can do in order to help me with this.

Respectfully,
Abel



EXHIBIT
37

**Appendix 292**

ETP 000789



**ENERGY TRANSFER**

Energy Transfer
800 E. Sonterra Bl.
San Antonio, Texas 78258

November 2, 2021

Abel Garza
1806 Brook Lane
Kingsville, TX 78363

Dear Abel,

You are receiving this letter because you have been out on a leave of absence for at least 16 weeks and may be in the process of applying for Long Term Disability (LTD) benefits under the Energy Transfer Partners GP LP Long Term Disability Plan. This letter is to address certain issues regarding your employment status and group health benefits.

Energy Transfer Partners leave policy generally limits the period of employment for employees who are on an approved leave of absence, including medical leaves of absence, to generally no more than six (6) months. If an employee is unable or unwilling to return to work within six (6) months of commencing the leave, unless otherwise prohibited by applicable law, regulation, or the Company is able to reasonably accommodate an ADAA-protected disability by reasonably extending the leave or in some other manner, the employee's employment will be terminated. If you do want to explore the possibility of returning to work or whether the Company can reasonably accommodate an extension of your leave beyond six (6) months, please contact me at (210) 403-6441 as soon as possible.

**Please be advised that if you have not returned to work or obtained approval from the Company for an extension of your medical leave of absence, your employment with the Company will be terminated as of <u>January 6, 2022</u>. Medical, dental and vision benefits will terminate at the end of the month employment is terminated.**

If your employment is terminated, you will have the right to continued group health benefits under COBRA. The COBRA continuation period is generally eighteen (18) months. The Company does not subsidize COBRA coverage. If you choose to continue your group health, dental and/or vision benefits under COBRA, you will be responsible for the entire cost of any continuation coverage.

If you have any questions, please call me on (210) 403-6441.

Sincerely,

*Clarissa Velasco*
Clarissa Velasco
Supervisor-Benefits

cc: HR Rep

**EXHIBIT**
**38**

AG - 000019

**Appendix 293**

Message

| | |
|---|---|
| **From:** | Abel Garza [abel.garza12@gmail.com] |
| **Sent:** | 11/7/2021 10:41:31 PM |
| **To:** | Gober, Amanda [amanda.gober@energytransfer.com] |
| **CC:** | Velasco, Clarissa [clarissa.velasco@energytransfer.com] |
| **Subject:** | ADA Accommodations- Reevaluation |
| **Attachments:** | Abel Garza_VA Disability 2017.jpg |

Amanda,

I am not sure if I sent this attached document to you already but just in case here it is. It is a letter from the Veterans Administration dated January 20, 2017 and shows my disability goes back to December 2016.

This is to show that I have been working as a Disabiled Veteran until I started having problems in the current area I am assigned to work in the Plant. I know I can return to work as long as the ADA Accommodations Dr. Waddell has recommended are approved.

Sincerely,
Abel Garza
361-455-3309



EXHIBIT
39

ETP 001170

 ENERGY TRANSFER

November 23, 2021

Abel Garza
1800 Brook Lane
Kingsville, TX 78363

        RE:    Accommodation Request

Dear Abel,

I am writing in response to your request for one or more workplace accommodations.

As you know, you have currently been out of work on leave since 7/5/2021. Since that time, you have received Company-provided Short-Term Disability (STD) benefits which were recently extended through 12/20/2021. Although you have not been released to return to work, the Company has been in the process of reviewing your request for workplace accommodations. Specifically, your request for movement to a more open, less restrictive environment; less noisy environment, more predictable environment, and to work with a coworker. Alternatively, you have requested that the Company provide you with a reassignment to another position.

In response to your request the Company reviewed information from you and your treating physician. Additionally, the Company's contracted occupational health specialist spoke with your treating physician. Based on this information, the Company denied your accommodation request because your treating physician confirmed that your conditions were primarily situational family-related, temporary, and that your request was based on personal desire with no medical reason necessitating such changes.

You accepted the Company's invitation to provide additional information supporting your request, which additional information was received on or about November 15, 2021. The additional information reiterates the need for the same accommodations and states in part that:

        ... the functional impairments Mr. Garza experiences as a result of environmental stress are at times personal [i.e. death of relatives, learning of family illnesses, important anniversary dates] and situational [difficulty functioning in work environment due to loud machinery, alarms, and sirens]. However, neither condition is mutually exclusive or exhaustive and elements of exposure or a combination thereof are likely to exacerbate Mr. Garza's experience of positive and negative symptoms related to anxiety and posttraumatic stress disorder in all settings, limiting functional capacity as a result.

After reviewing the additional information, the Company spoke with your management about accommodating your restrictions in your current position. Given the nature of your Plant Operator A position and the operation of the King Ranch Plant where you work, the Company will be unable

Doc ID: 5f7c3ab76c2...7

**EXHIBIT**

40

be provide a more open, less restrictive, less noisy, and more predictable environment than your current position. In these accommodations would create undue hardship and require eliminating essential functions of your position or otherwise fundamentally changing the nature of your position and operation of the business.

Alternatively, the Company spoke with your management about reassignment to a vacant position. Unfortunately, the three positions that you inquired about – the warehouse position, shipping station operator position, and safety position – are not available. However, even if the positions were available, they would not offer a more open, less restrictive, less noisy, and more predictable environment. Thus, they would not be effective in removing the workplace barriers you have identified.

As stated before, I am available to discuss other possible forms of accommodation that would be effective in enabling you to perform the essential functions of your position. Please contact me as soon as possible at (210) 403-7325 or Clarissa Velasco at (210) 403-6441 so that we may explore other potential solutions.

Alternatively, if you are unable to return to work and need to extend your current leave using company-provided STD benefits or otherwise, please contact Clarissa Velasco as soon as possible at (210) 403-6441 to discuss.

Sincerely,

Amanda Gruber
Sr. Manager, HR Administration

Cc: Raymond De La Vega – Senior Manager – Human Resources

Doc ID: 5f7c3ab76c2029a307b543b686814f01ae4fe387

ETP 000268

Message

| From: | Abel Garza [abel.garza12@gmail.com] |
|---|---|
| Sent: | 11/29/2021 1:08:35 PM |
| To: | Gober, Amanda [amanda.gober@energytransfer.com] |
| CC: | Velasco, Clarissa [clarissa.velasco@energytransfer.com] |
| Subject: | ADA Accommodation Request-Reevaluation |

Amanda,

I am just checking to see if there are any updates on the Reevaluation? Also, I was never given an answer on the Safety Representative position I interviewed for on October 14, 2021 and was asked when I could start working. I was asked if I could start the position on November 1, 2021. However, Michael Johnson said he would see if Human Resources could push the start date to October 25, 2021; since I am already an employee of the company.

Respectfully,
Abel Garza
361-455-3309


EXHIBIT
41

ETP 001684

Message

| | |
|---|---|
| **From:** | Velasco, Clarissa [Clarissa.Velasco@energytransfer.com] |
| **Sent:** | 11/30/2021 5:50:04 PM |
| **To:** | Abel Garza [abel.garza12@gmail.com]; Gober, Amanda [amanda.gober@energytransfer.com] |
| **Subject:** | RE: ADA Accommodation Request-Reevaluation |
| **Attachments:** | Abel Garza ADA Letter (2).pdf |

Hi Abel,

We sent a letter in response to the ADA Accommodation reevaluation request but attached is a courtesy copy of the letter mailed.

With respect to your questions regarding to the Safety Position you interviewed for, I will have Raymond reach out to you once he returns from vacation next week.

Thank you,



*Clarissa Velasco*
Supervisor - Benefits
Human Resources
Energy Transfer

**office:** 210.403.6441
**fax:** 210.403.6641

For 2021 claims, please contact UNUM at 1-877-463-2028 or www.unum.com. Plan ID 882077

This communication may contain confidential medical information that should only be shared with those with a need to know and only to the extent needed for business purposes. Any such information should not be disclosed to others without the permission of the sender.

**From:** Abel Garza <abel.garza12@gmail.com>
**Sent:** Monday, November 29, 2021 1:09 PM
**To:** Gober, Amanda <amanda.gober@energytransfer.com>
**Cc:** Velasco, Clarissa <Clarissa.Velasco@energytransfer.com>
**Subject:** ADA Accommodation Request-Reevaluation

Amanda,

   I am just checking to see if there are any updates on the Reevaluation? Also, I was never given an answer on the Safety Representative position I interviewed for on October 14, 2021 and was asked when I could start working. I was asked if I could start the position on November 1, 2021. However, Michael Johnson said he would see if Human Resources could push the start date to October 25, 2021; since I am already an employee of the company.



**Appendix 298**

ETP 000905

Message

| | |
|---|---|
| **From:** | Garza, Robert [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=F50CBE3B4BB44B05AC15FB7F9AE3765B-RGARZA20] |
| **Sent:** | 12/2/2021 3:53:55 PM |
| **To:** | Mann, Andrew [Andrew.Mann@energytransfer.com] |
| **Subject:** | RE: STD- Dec 2, 2021 |

I called Mike Johnson to find out if the Safety position had been filled but there was no answer. Can you find this out for me. If filled, there will not be any positions available that he is referencing to in this email.
Thanks



**Robert L. Garza**
Sr Manager
Plant Operations
King Ranch Gas Plant
Energy Transfer

**office:** 361-595-9214
**cell:** 361-318-8267

**From:** Mann, Andrew <Andrew.Mann@energytransfer.com>
**Sent:** Thursday, December 2, 2021 2:15 PM
**To:** Garza, Robert <Robert.Garza@energytransfer.com>
**Subject:** RE: STD- Dec 2, 2021

I appreciate the update. Make sure I am involved before HR tries to consider any accommodations. As you know, some of those positions mentioned will not be there in the future.

**From:** Garza, Robert <Robert.Garza@energytransfer.com>
**Sent:** Thursday, December 2, 2021 2:09 PM
**To:** Mann, Andrew <Andrew.Mann@energytransfer.com>
**Subject:** Fwd: STD- Dec 2, 2021

Keeping you in the loop.
Thank

Sent via the Samsung Galaxy S20+ 5G, an AT&T 5G smartphone
Get Outlook for Android

**From:** Velasco, Clarissa <Clarissa.Velasco@energytransfer.com>
**Sent:** Thursday, December 2, 2021 1:57:14 PM
**To:** Garza, Robert <Robert.Garza@energytransfer.com>
**Subject:** RE: STD- Dec 2, 2021



EXHIBIT
43

ETP 000481

**Appendix 299**

Thank you.



*Clarissa Velasco*
Supervisor - Benefits
Human Resources
Energy Transfer

**office:** 210.403.6441
**fax:** 210.403.6641

For 2021 claims, please contact UNUM at 1-877-463-2028 or www.unum.com. Plan ID 882077

This communication may contain confidential medical information that should only be shared with those with a need to know and only to the extent needed for business purposes. Any such information should not be disclosed to others without the permission of the sender.

**From:** Garza, Robert <Robert.Garza@energytransfer.com>
**Sent:** Thursday, December 2, 2021 1:56 PM
**To:** Velasco, Clarissa <Clarissa.Velasco@energytransfer.com>
**Subject:** Fwd: STD- Dec 2, 2021

Fyi

Sent via the Samsung Galaxy S20+ 5G, an AT&T 5G smartphone
Get Outlook for Android

---

**From:** Abel Garza <abel.garza12@gmail.com>
**Sent:** Thursday, December 2, 2021 12:55:07 PM
**To:** Pena, Noe <Noe.Pena@energytransfer.com>
**Cc:** Gober, Amanda <amanda.gober@energytransfer.com>; Velasco, Clarissa <Clarissa.Velasco@energytransfer.com>; Garza, Robert <Robert.Garza@energytransfer.com>
**Subject:** STD- Dec 2, 2021

Noe,

I am still continuing with my treatment plan as scheduled with my doctor. I received an email from Clarissa Velasco concerning the ADA Accommodations Reevaluation and it was denied once again. I sent her an email and they are offering to discuss possibilities of other accommodations to allow me the ability to return to work.

I really don't understand why the positions at the Shipping Station, Warehouse, and Safety Rep are not being considered as options since they are vacant and I am qualified. The environment for all three positions are very different from working at the PowerHouse. All these positions are less noisy, no distinctive alarms, give me a more predictable schedule, less restrictive, no confinement of constant loud noise, less environmental stress, and will allow me the ability to utilize relevant coping skills. They all give me a more predictable work environment and will allow me to return to work at full capacity.

ETP 000482

Message

| | |
|---|---|
| **From:** | Garza, Robert [Robert.Garza@energytransfer.com] |
| **Sent:** | 12/2/2021 2:15:49 PM |
| **To:** | Mann, Andrew [Andrew.Mann@energytransfer.com] |
| **Subject:** | Re: STD- Dec 2, 2021 |

Understood.

Sent via the Samsung Galaxy S20+ 5G, an AT&T 5G smartphone
Get Outlook for Android

---

**From:** Mann, Andrew <Andrew.Mann@energytransfer.com>
**Sent:** Thursday, December 2, 2021 2:15:04 PM
**To:** Garza, Robert <Robert.Garza@energytransfer.com>
**Subject:** RE: STD- Dec 2, 2021

I appreciate the update.  Make sure I am involved before HR tries to consider any accommodations.  As you know, some of those positions mentioned will not be there in the future.

**From:** Garza, Robert <Robert.Garza@energytransfer.com>
**Sent:** Thursday, December 2, 2021 2:09 PM
**To:** Mann, Andrew <Andrew.Mann@energytransfer.com>
**Subject:** Fwd: STD- Dec 2, 2021

Keeping you in the loop.
Thank

Sent via the Samsung Galaxy S20+ 5G, an AT&T 5G smartphone
Get Outlook for Android

---

**From:** Velasco, Clarissa <Clarissa.Velasco@energytransfer.com>
**Sent:** Thursday, December 2, 2021 1:57:14 PM
**To:** Garza, Robert <Robert.Garza@energytransfer.com>
**Subject:** RE: STD- Dec 2, 2021

Thank you.



*Clarissa Velasco*
Supervisor - Benefits
Human Resources
Energy Transfer

**office:**  210.403.6441
**fax:** 210.403.6641

For 2021 claims, please contact UNUM at 1-877-463-2028 or www.unum.com.  Plan ID 882077

This communication may contain confidential medical information that should only be shared with those with a need to know and only to the extent needed for business purposes.  Any such information should not be disclosed to others without the permission of the sender.

**From:** Garza, Robert <Robert.Garza@energytransfer.com>
**Sent:** Thursday, December 2, 2021 1:56 PM
**To:** Velasco, Clarissa <Clarissa.Velasco@energytransfer.com>
**Subject:** Fwd: STD- Dec 2, 2021

Fyi

Sent via the Samsung Galaxy S20+ 5G, an AT&T 5G smartphone
Get Outlook for Android

**From:** Abel Garza <abel.garza12@gmail.com>
**Sent:** Thursday, December 2, 2021 12:55:07 PM
**To:** Pena, Noe <Noe.Pena@energytransfer.com>
**Cc:** Gober, Amanda <amanda.gober@energytransfer.com>; Velasco, Clarissa <Clarissa.Velasco@energytransfer.com>; Garza, Robert <Robert.Garza@energytransfer.com>
**Subject:** STD- Dec 2, 2021

Noe,

I am still continuing with my treatment plan as scheduled with my doctor. I received an email from Clarissa Velasco concerning the ADA Accommodations Reevaluation and it was denied once again. I sent her an email and they are offering to discuss possibilities of other accommodations to allow me the ability to return to work.

I really don't understand why the positions at the Shipping Station, Warehouse, and Safety Rep are not being considered as options since they are vacant and I am qualified. The environment for all three positions are very different from working at the PowerHouse. All these positions are less noisy, no distinctive alarms, give me a more predictable schedule, less restrictive, no confinement of constant loud noise, less environmental stress, and will allow me the ability to utilize relevant coping skills. They all give me a more predictable work environment and will allow me to return to work at full capacity.

I am qualified to work all three of the positions I have requested as an accommodation. And being that I am a Disabled Veteran, it is hard for me to believe that Energy Transfer will not take care of me as I am an employee who has worked for the company for over 7 years.

Respectfully,
Abel

ETP 000489

Message

| From: | Garza, Robert [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=F50CBE3B4BB44B05AC15FB7F9AE3765B-RGARZA20] |
|---|---|
| Sent: | 12/7/2021 8:39:02 AM |
| To: | Pena, Noe [Noe.Pena@energytransfer.com]; Abel Garza [abel.garza12@gmail.com] |
| CC: | Gober, Amanda [amanda.gober@energytransfer.com]; Velasco, Clarissa [Clarissa.Velasco@energytransfer.com] |
| Subject: | RE: STD- Dec 2, 2021 |

Abel,

If you have any questions about the decision to deny your accommodation request or want to discuss other possibilities, I suggest that you reach out to Clarissa Velasco in the Human Resources Leave Administration Group.

In response to your separate question about the vacancy and/or availability of the Shipping Station, Warehouse, and Safety Representative positions:

1.      Shipping Station – At King Ranch we no longer have specific areas assigned to Operators long-term. Instead, we are requiring that all Operators train and eventually certify in all plant areas. This will allow our Operators to rotate on all certified positions as required. As a result, there will no longer be a position dedicated exclusively to the Shipping Station.

2.      Warehouse – this position will not be backfilled (permanently) per upper management due to needed cost savings.

3.      Safety Representative – as you know, the Safety Representative position in my area is already filled and I do not anticipate a vacancy any time soon. The other Safety Representative position that you applied for is outside of my area.  With that being said, I anticipate that Raymond and/or Michel Johnson will be in touch soon as they finalize their decision on that position.

I hope this answers your questions. We thank you for your service, appreciate you keeping us updated, and hope you can return to the plant soon.

Thanks again,



**Robert L. Garza**
Sr Manager
Plant Operations
King Ranch Gas Plant
Energy Transfer

**office:** 361-595-9214
**cell:** 361-318-8267



EXHIBIT
44

**From:** Pena, Noe <Noe.Pena@energytransfer.com>
**Sent:** Thursday, December 2, 2021 3:02 PM
**To:** Abel Garza <abel.garza12@gmail.com>
**Cc:** Gober, Amanda <amanda.gober@energytransfer.com>; Velasco, Clarissa <Clarissa.Velasco@energytransfer.com>;

ETP 000623

Garza, Robert <Robert.Garza@energytransfer.com>
**Subject:** RE: STD- Dec 2, 2021

Hello Abel,
Thanks for providing an update on your STD.

Regards,

**From:** Abel Garza <abel.garza12@gmail.com>
**Sent:** Thursday, December 2, 2021 12:55 PM
**To:** Pena, Noe <Noe.Pena@energytransfer.com>
**Cc:** Gober, Amanda <amanda.gober@energytransfer.com>; Velasco, Clarissa <Clarissa.Velasco@energytransfer.com>;
Garza, Robert <Robert.Garza@energytransfer.com>
**Subject:** STD- Dec 2, 2021

Noe,

I am still continuing with my treatment plan as scheduled with my doctor. I received an email from Clarissa Velasco concerning the ADA Accommodations Reevaluation and it was denied once again. I sent her an email and they are offering to discuss possibilities of other accommodations to allow me the ability to return to work.

I really don't understand why the positions at the Shipping Station, Warehouse, and Safety Rep are not being considered as options since they are vacant and I am qualified. The environment for all three positions are very different from working at the PowerHouse. All these positions are less noisy, no distinctive alarms, give me a more predictable schedule, less restrictive, no confinement of constant loud noise, less environmental stress, and will allow me the ability to utilize relevant coping skills. They all give me a more predictable work environment and will allow me to return to work at full capacity.

I am qualified to work all three of the positions I have requested as an accommodation. And being that I am a Disabled Veteran, it is hard for me to believe that Energy Transfer will not take care of me as I am an employee who has worked for the company for over 7 years.

Respectfully,
Abel

ETP 000624

Job Title: Coordinator - Warehouse Proc
Location King Ranch TX (Kingsville TX)

**Essential Duties and Responsibilities:**

- Handle Incoming/Outgoing mail, pickup and delivery to post office / UPS.
- Provide material coordinating services to support plant and construction activities.
- Requires manual work and equipment operational skills.
- Required training and certification to operate equipment.
- Maintain and control replenishment of vendor consignments.
- Maintain Warehouse inventory, restocking orders, goods receipt and documentation.
- Consumable tracking for operations.
- Responsible for maintaining warehouse facilities, housekeeping, tools and equipment.
- Coordinate project material staging, shipping and receiving as required.
- Ensure al required material specifications are met and documentation kept.
- Must be able to manage multiple tasks, changing priorities and deadlines.
- Must be PC proficient.

**Required Education or minimum level:**

- High School graduate or equivalent
- Experience:
    - 3+ years' experience warehouse operations.
    - Good verbal and written communication skills.
    - Ability to work independently and as a team.

**Software Knowledge:**

- Microsoft Word, Excel, Outlook, Power Point and Project.
- SAP

**Physical Requirements:**

- Lifting: 50lb. hrs./day
- Sitting: Up to 8hrs/da
- Driving: 3hrs/da
- Walking: 2 hrs./day
- Standing: Up to 4hrs/day



EXHIBIT

tabbies

19

**Appendix 305**

Message

| | |
|---|---|
| **From:** | Abel Garza [abel.garza12@gmail.com] |
| **Sent:** | 12/23/2021 12:53:16 PM |
| **To:** | Velasco, Clarissa [clarissa.velasco@energytransfer.com] |
| **Subject:** | [SUSPICIOUS MESSAGE] Safety Rep Position |

Clarissa,

As per our conversation on the phone December 7th... You mentioned talking with Raymond DeLaVega about the Safety Rep Position I interviewed for and said you or Raymond would get back to me.

Were you able to get any information about the position? And find out why I was told by Michael Johnson about starting either October 25th or November 1st; after he spoke with KRGP Plant Manager and Human Resources.

His thoughts were that I was already an employee and it would help speed up the process to have me start on one of those two dates. Rather than hire some who was new to the company and/or area.

Respectfully,
Abel Garza
361-455-3309



EXHIBIT
4 S

ETP 001449

Message

| | |
|---|---|
| **From:** | Abel Garza [abel.garza12@gmail.com] |
| **Sent:** | 12/23/2021 5:33:19 PM |
| **To:** | Pena, Noe [noe.pena@energytransfer.com] |
| **CC:** | Garza, Robert [Robert.Garza@energytransfer.com]; Velasco, Clarissa [clarissa.velasco@energytransfer.com]; Gober, Amanda [amanda.gober@energytransfer.com]; raymond.delavega@energytransfer.com |
| **Subject:** | STD- Dec 23 |

Noe,

Unum approved my Extension and my STD will end on Jan 6, 2022. They are requesting records from my doctor and are evaluating placing me on Long Term Disability.

I am continuing with my treatment plan and awaiting information from HR; concerning alternative positions with the company. (Safety Position Freer, Tx)

I can work the Shipping Station and/or Warehouse. As I have worked Shipping Station many times before being part of my normal duties and someone has to work there on a daily basis.

I have experience Managing a Warehouse and know someone has to do the work needed in the Warehouse to handle deliveries, shipping, and inventory.

These are both jobs I can do that will allow me to be able to return to work.

Hope you have a Merry Christmas.

Respectfully,
Abel Garza
361-455-3309



**EXHIBIT**

46

ETP 000334

**Appendix 307**

Message

| | |
|---|---|
| **From:** | Pena, Noe [Noe.Pena@energytransfer.com] |
| **Sent:** | 12/23/2021 9:07:52 PM |
| **To:** | Abel Garza [abel.garza12@gmail.com] |
| **CC:** | Garza, Robert [Robert.Garza@energytransfer.com]; Velasco, Clarissa [Clarissa.Velasco@energytransfer.com]; Gober, Amanda [amanda.gober@energytransfer.com]; De La Vega, Raymond [Raymond.DeLaVega@energytransfer.com] |
| **Subject:** | RE: STD- Dec 23 |

Thanks for the Update Abel.
Merry Christmas and a Happy New Years to you and your Family Abel.

Regards,

**From:** Abel Garza <abel.garza12@gmail.com>
**Sent:** Thursday, December 23, 2021 5:33 PM
**To:** Pena, Noe <Noe.Pena@energytransfer.com>
**Cc:** Garza, Robert <Robert.Garza@energytransfer.com>; Velasco, Clarissa <Clarissa.Velasco@energytransfer.com>;
Gober, Amanda <amanda.gober@energytransfer.com>; De La Vega, Raymond
<Raymond.DeLaVega@energytransfer.com>
**Subject:** STD- Dec 23

Noe,

   Unum approved my Extension and my STD will end on Jan 6, 2022. They are requesting records from my doctor and are evaluating placing me on Long Term Disability.

   I am continuing with my treatment plan and awaiting information from HR; concerning alternative positions with the company. (Safety Position Freer, Tx)

   I can work the Shipping Station and/or Warehouse. As I have worked Shipping Station many times before being part of my normal duties and someone has to work there on a daily basis.

   I have experience Managing a Warehouse and know someone has to do the work needed in the Warehouse to handle deliveries, shipping, and inventory.

   These are both jobs I can do that will allow me to be able to return to work.

   Hope you have a Merry Christmas.

Respectfully,
Abel Garza
361-455-3309

**Appendix 308**

Message

| From: | Abel Garza [abel.garza12@gmail.com] |
| Sent: | 12/28/2021 4:16:57 PM |
| To: | Velasco, Clarissa [clarissa.velasco@energytransfer.com] |
| Subject: | VA Letter |

Clarissa,

Mr. Arturo Pecos faxed a letter requesting information on how much work I have missed over the past three years. I just want to make sure you received it and if not I can email it to you.

Also, I never heard from Raymond DeLaVega about the Safety Position and was wondering what you found out about the position.

As you may well know, Unum extended my STD and is currently working on Long Term Disability.

Respectfully,
Abel Garza
361-455-3309



ETP 000717

Message

| | |
|---|---|
| **From:** | De La Vega, Raymond [Raymond.DeLaVega@energytransfer.com] |
| **Sent:** | 12/29/2021 8:18:44 PM |
| **To:** | Johnson, Michael S [Michael.Johnson3@energytransfer.com] |
| **Subject:** | Abel Garza |

**Importance:** High

Hi Mike, hope all is well. Now that Matthew Thomas has cleared background and drug test and has a start date set, would you mind reaching out to Abel Garza who interviewed for the position and let him know he was not selected. Please let me know when you have done that, I will need to update on my end. Thank you.

Ray





Raymond De La Vega
Sr Manager – Human Resources
Human Resources
Energy Transfer
office: 210.403.6429
cell: 210.260.7941

For assistance regarding Benefits contact your Benefit Advocates at ETPBenefits@ajg.com or 1-855-562-5847 for a claim or eligibility issue.

For assistance regarding Payroll/eTime/iPay, you may also contact the Payroll Hotline, 713-989-2166 or Time.Mailbox@energytransfer.com

For assistance regarding STD/FMLA, contact **UNUM** at 1-877-463-2028 or www.unum.com. Plan ID 882077

.



ETP 000329

Message

| | |
|---|---|
| **From:** | Charles Peckham [cpeckham@pmlaw-us.com] |
| **Sent:** | 1/4/2022 3:42:38 PM |
| **To:** | Garza, Robert [Robert.Garza@energytransfer.com]; Joiner, John [John.Joiner@energytransfer.com]; Pena, Noe [Noe.Pena@energytransfer.com]; Pena, Noe [Noe.Pena@energytransfer.com]; Johnson, Michael S [Michael.Johnson3@energytransfer.com]; clarsissa.velasco@energytransfer.com; De La Vega, Raymond [Raymond.DeLaVega@energytransfer.com] |
| **CC:** | Mary Martin [mmartin@pmlaw-us.com]; Bianca Rondon [asst@pmlaw-us.com] |
| **Subject:** | EEOC Charge - Abel Garza, Charging Party - Energy Transfer Partners, Respondent |
| **Attachments:** | Garza EEOC Charge w Exhibits 1-4-2022.pdf |

Mr. Garza, Mr. Joiner, Mr. Pena, Mr. Johnson, Ms. Velasco and Mr. DeLaVega,

Please find attached an EEOC Charge of Discrimination filed today with the Equal Employment Opportunity Commission and the Texas Workforce Commission Civil Rights Division on behalf of Mr. Abel Garza.

You may wish to forward this to legal counsel for the company.

Thank you,

Charles Peckham

Charles H. Peckham, Partner
cpeckham@pmlaw-us.com

Board Certified in Labor and Employment Law
By the Texas Board of Legal Specialization

PECKHAM MARTIN

Peckham Martin, PLLC
Two Bering Park
800 Bering Drive, Suite 220
Houston, Texas 77057
(713) 574-9044 — Telephone
www.pmlaw-us.com



ETP 000371

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | |

| Texas Workforce Commission Civil Rights Division | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Abel Garza** | **(713) 574-9044** | **6/27/1969** |

| Street Address | City, State and ZIP Code |
|---|---|
| **c/o Charles H. Peckham, Peckham Martin, PLLC, 800 Bering Drive, Suite 220, Houston, Texas 77057** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **Energy Transfer Partners** | **500+** | **210-403-6441** |

| Street Address | City, State and ZIP Code |
|---|---|
| **800 E. Sonterra, San Antonio, Texas 78258** | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **LaGrange Acquisitions LP.** | **500+** | **210-403-6441** |

| Street Address | City, State and ZIP Code |
|---|---|
| **1300 Main Street, Houston, Texas 77002** | |

| DISCRIMINATION BASED ON *(Check appropriate box(es).)* | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN | Earliest **April 2021**   Latest **Present** |
| ☒ RETALIATION   ☒ AGE   ☒ DISABILITY   ☐ GENETIC INFORMATION | |
| ☒ OTHER *(Specify)(Veteran Status)* | ☒ CONTINUING ACTION |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 01 / 04 / 2022                     *Abel Garza* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |
| Date                     *Charging Party Signature* | |

Doc ID: 5f7c3ab76c2029a307b543b686814f01ae4fe387

**Appendix 312**

ETP 000372

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | |

| Texas Workforce Commission Civil Rights Division | and EEOC |
|---|---|
| State or local Agency, if any | |

I.    My name is Abel Garza. I was employed by Energy Transfer though my paychecks came from LaGrange Acquisitions. All HR functions are through Energy Transfer. I have been employed since July 2015 as a Plant Operator.

II.    I am over the age of 40 and am a disabled Veteran. As background, I served in the Army for just under 26 years. I served 12 years in the Army Reserves while working in law enforcement for the Nueces County Sheriff's Department. After that, I served approximately 13 years in the active Army. I was deployed during Desert Storm in Saudi Arabia, Bahrain, and Kuwait. I have also served in Belize, Guatemala, and Panama. I retired from the Army from my last duty station at Fort Knox, Kentucky in October 2012. While in the military, I served in Automated Logistics Management, Materials Management, Military Police Corrections, as a Nuclear, Biological, & Chemical Warfare Specialist, in Project Management, Operations Management, Public Affairs, Recruiting Management, and as a Military Occupational Specialty Training Instructor, and a Leadership Training Instructor.



III.    There is a long record of my disability, and my employer knows that I have a 70% service-related combined disability rating to include Generalized Anxiety Disorder-F41.1 (Exs. 1-3).

IV.    Because of my service-related disability, I experienced increasing anxiety in my workplace due to Boiler/Plant upsets, flaring, and the noise (alarms) in a contained area of the plant in which I worked (in the Powerhouse) as well as not having help when needed. Due to the worsening of my disability, I sought a reasonable accommodation (Ex 4).

V.    By letter of October 22, 2021, HR informed me that I would not be accommodated because my "conditions are primarily situational/family related" and "are temporary in nature". Of course, these are not true, and my doctor did not say they were. Further, even if true, these are not a legal reason to deny me a reasonable accommodation.

VI.    Then, when HR clearly realized this was not a legal basis on which to deny my accommodation, then sought to deny me an accommodation saying instead that no position I had identified would accommodate me because there was

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 01 / 04 / 2022                     *Abel Garza*<br>Date                     Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) |

Doc ID: 5f7c3ab76c2029a307b543b686814f01ae4fe387

ETP 000373

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | |

| Texas Workforce Commission Civil Rights Division | and EEOC |
|---|---|
| State or local Agency, if any | |

no "more open, less restrictive, less noisy, and more predictable environment." (Ex. 6). Of course, this is also a falsehood.

VII.      One person actually working in one of the two Shipping Station positions (Hector) agreed that the position was accommodating, and the second spot in the position was open and available position (Ex. 7).

VIII.      Included among the potential accommodations sought was transfer to another location in the plant where the noise level was lower (no alarms), or transfer to another position. The positions that were available included in the same Plant were at the Shipping Station (under the same job title and job description) as described above, as a Safety Rep (the position was applied for in August 2021 – see below), and in the Warehouse (in the Plant area but with no alarms)(Ex. 8).

IX.      As to the Shipping Station, I was told that at the King Ranch location, this position was no longer going to have a long-term employee assigned there (Ex. 8). However, there were two long term employees assigned to this position; one retired leaving an open position and the other (Hector) remains in that position. Hector understands, as does my employer, that this was a separate assigned position and there was availability (See Ex. 7).

X.      As to the Warehouse position, I was told that due to cost savings, this empty position would not be filled. (Ex. 6). However, this position is a continued necessary position; with duties now assigned to other non-disabled persons.

XI.      As to the Safety Representative, the one in King Ranch I was told was filled and unavailable (Ex. 8).

XII.      I did apply for and was interviewed for a Safety Representative position in another location at a worksite nearby. Michael Johnson interviewed me for that position on October 1, 2021. I was asked on that day by Mr. Johnson if I could start working early on October 25, 2021 – being that I was already an employee of the company. He said he would get HR to fast track the process so that I could work with the person I was replacing through the end of the year and learn the area of operation. After being told I had the job, I asked Mr. Johnson if he knew about my earlier accommodation request. He said he had not but that because I was an inter-company transfer, he would contact my supervisor as a courtesy and would also talk to HR about it. He told me he would contact me the next week about my start date. Since the time he spoke to my supervisor and HR, Mr. Johnson had not responded to my emails, had refused my calls, and I had not been moved to this position though I was told I had been hired for it. This is both discriminatory and retaliatory. Then, *just today, January 4, 2022,* and two days before the expiration of my leave and my pending termination from employment, I received a call from Michael Johnson telling me that I was not being hired for the position (Ex. 9). This means that I have no time to seek any other position and that I am being set up for termination. It is clear that my employer purposefully undermined my hire to a position that would accommodate me because of my disability and in retaliation for seeking accommodations, my disability and Veteran status. The delay of two months since my approved hire to tell me I was no longer hired in a position that accommodated my disabilities was calculated to come so that it guaranteed my termination from employment (Ex. 10).

XIII.      Even though I had identified open and available positions that met my needed accommodations, I was told on November 23, 2021 and again on December 2, 2021 that no open positions were available to accommodate me which is not correct. (Exs 6, 7, 8, and 9).

XIV.      I had also been told that Energy Partners would be filling open spots with younger employees. Many positions had been filled with persons under the age of 40 and that were of people substantially younger.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br><br>SIGNATURE OF COMPLAINANT |
| 01 / 04 / 2022       *Abel Garza*<br>Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) |

Doc ID: 5f7c3ab76c2029a307b543b686814f01ae4fe387

ETP 000374

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | |

| Texas Workforce Commission Civil Rights Division | and EEOC |
|---|---|
| *State or local Agency, if any* | |

XV.    Energy Partners is trying to create reasons to refuse to accommodate me with other available positions. This is being done so that they can delay to January 6, 2022 and then terminate my employment by stating I had run out of time to find a position that would accommodate my disability (Ex. 10).

XVI.    I am able to work with available reasonable accommodations that are being refused me as a result of my Veterans' status, my service-related disability, and my age. I am being set up for termination of my employment.

XVII.    I have been discriminated against and retaliated against due to my disability, age, and Veteran status.

XVIII.    I have lost the rights and benefits of my employment in violation of Title VII of the Civil Rights Act of 1964 as amended, the ADA, USERRA and Chapter 21 of the Texas Labor Code.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br><br>SIGNATURE OF COMPLAINANT |
| 01 / 04 / 2022          *Abel Garza*<br><br>Date                    Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)* |

Doc ID: 5f7c3ab76c2029a307b543b686814f01ae4fe387

ETP 000375

**Appendix 315**

NOTE DATED: 04/12/2021 10:32
LOCAL TITLE: BHIP THERAPIST TELEPHONE NOTE
STANDARD TITLE: TELEPHONE ENCOUNTER NOTE
VISIT: 04/12/2021 10:00 HCC BHIP 2 PSY 2 TELEPH X
Clinical telephone contact with Veteran:
Length of telephone call: 30 minutes


Veteran Diagnosis
Generalized Anxiety Disorder F41.1


Reason for Contact:
Questions regarding reasonable accommodations


Intervention:
Provider discussed with the Veteran his request for a written statement
denoting reasonable accommodations for his employment. This provider discussed
what could be included on such a statement and to what degree information could
be provided relative to the Veteran's present condition within VHA guidelines.
Provider briefly reviewed content of the statement with Veteran. Veteran
conveyed understanding for what could be included in statement versus the
limitations. Provider explained when statement could be retrieved and how to
retrieve said statement.


Mental Status:
Veteran was alert and oriented x4; speech was WNL; mood was euthymic with a
congruent even affect; thought content and thought processes were WNL; veteran
denied presence of SI and HI; memory, attention, and concentration appeared
grossly intact.

Risk Assessment:
  No new risk factors relevant to suicide or homicide were reported. Veteran
  did not appear to be at imminent risk of harm to self or others at this time.
  The Veteran specifically denied suicidal/homicidal thoughts, plan, or intent.

Plan:
Reach Veteran to determine follow-up appointment at later date.


                    Signed by: /es/ JEREMY MICHAEL WADDELL
                               Psychologist
                               04/12/2021 10:32

                                                            EXHIBIT
                                                               2

GARZA, ABEL                         TVCBHCS                  Printed:04/13/2021 12:55
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 DOB:08/27/1969     Pt Loc: OUTPATIENT                    Vice SF 509


Doc ID: 5f7c3ab76c2029a307b543b586814f01ae4fe387

ETP 000378

```
-------------------------------------------------------------------------
MEDICAL RECORD                                               Progress Notes
-------------------------------------------------------------------------
NOTE DATED: 04/12/2021 14:11
LOCAL TITLE: CHART REVIEW NOTE
STANDARD TITLE: OUTPATIENT INTERDISCIPLINARY NOTE
VISIT: 04/12/2021 10:00 HCC BHIP 2 PSY 2 TELEPH-X
Mr. Abel Garza is currently under my care for mental health treatment. Mr.
Garza is receiving treatment for Generalized Anxiety Disorder. The prognosis for
this aforementioned condition is contingent upon Mr. Garza being able to
sufficiently utilize and apply relevant coping skills in response to
subjectively perceived stressors. Inability to adequately implement such skills
when needed, is likely to aggravate the intensity of the symptoms related to his
condition. Mr. Garza has been under my care since March 02, 2020.


                 Signed by: /es/ JEREMY MICHAEL WADDELL
                                 Psychologist
                                 04/12/2021 14:19
```

```
-------------------------------------------------------------------------
GARZA,ABEL                       TVCBHCS              Printed:04/13/2021 12:54
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 DOB:06/27/1969    Pt Loc: OUTPATIENT              Vice SF 509
-------------------------------------------------------------------------
```

Doc ID: 5f7c3ab76c2029a307b543b686814f01ae4fe387

**Appendix 317**



To Whom It May Concern:

Mr. Abel Garza is currently under my care for mental health treatment and has been on a continuous basis since February of 2020. Mr. Garza has been receiving treatment for Generalized Anxiety Disorder and Posttraumatic Stress Disorder with VA Texas Valley Coastal Bend Health Care System, with initial contacts beginning in 2015. The prognosis for these aforementioned conditions is contingent upon Mr. Garza being able to sufficiently utilize and apply relevant coping skills in response to subjectively perceived stressors in his environment to include home, work, and recreational settings. A recent decision had been made regarding Mr. Garza's request for accommodations under the ADA pertaining to his workplace. The requested accommodations included movement to a less noisy, less restrictive, more predictable work environment, or potential reassignment to ensure Mr. Garza could return back to work in a full capacity. The denial of these requests were noted as personal and situational in nature. It is my professional opinion that the functional impairments Mr. Garza experiences as a result of environmental stress are at times personal (i.e. death of relatives; learning of family illnesses; important anniversary dates) and situational (difficulty functioning in work environment due to loud machinery, alarms, and sirens). However, neither condition is mutually exclusive or exhaustive and elements of exposure or a combination therein are likely to exacerbate Mr. Garza's experience of positive and negative symptoms related to anxiety and posttraumatic stress disorder in all settings, limiting functional capacity as a result. I am hereby requesting that a re-evaluation be conducted regarding Mr. Garza's request for accommodations in the workplace. If any additional information is needed please do not hesitate to contact me by fax at 956-291-9828 or by phone at 956-291-9215 or 956-291-9214.

Regards,

Jeremy M. Waddell, PsyD, HSPP
Psychologist BHIP Team 2
VA Texas Valley Coastal Bend Health Care System
2601 Veterans Drive
Harlingen, TX 78550

U.S. Department of Veterans Affairs

VA Texas Valley Coastal Bend Health Care System



Doc ID: 5f7c3ab76c2029a307b543b686814f01ae4fe387

ETP 000380

**Appendix 318**

Abel Garza <abel.garza12@gmail.com>

## ADA ACCOMMODATIONS

Garza, Abel <Abel.Garza@energytransfer.com>                                    Thu Apr 1 2021 at 10 44 AM
To "Garza Robert" <Robert.Garza@energytransfer.com>
Cc "Velasco, Clarissa" <Clarissa.Velasco@energytransfer.com>, "De La Vega, Raymond" <Raymond.DeLaVega@energytransfer.com>, "abel.garza12@gmail.com"
<abel.garza12@gmail.com>

Good Morning-

I know it's been awhile since we spoke and I hope you are doing well. I have been thinking about my medical issues (disability) PTSD/Anxiety/Depression and remember you asking if there were any accommodations you could help me with. I would like to discuss possible accommodations or ideas with you whenever you have time. I believe that since working here at the Powerhouse part of being out sick is due to the loud noise and alarms. During times of a Plant Upset I get Flash Backs and bad Anxiety. I also have triggers I'm identifying outside of work and try to avoid them whenever possible. When I experience an injury, illness, and or death (family, friends) it also affects me. And there have been numerous family and friends who have passed within the past year and a half.

I am under the medical care of the Veterans Administration and have scheduled appointments with Mental Health. I am also seen for sleep disorders, joint pain, gastrointestinal issues, and past injuries while serving in the Army during my 26 years. It's really difficult and frustrating at times because I have never been a type of employee who misses work as much as I have the past year and a half.

Some of the ideas to help me would be reassignment to another area of the Plant (Shipping Station). Not sure if going back to Process would be helpful as well but would be willing to try. Another suggestion is a position with Safety or anything else that is available. I would even be willing to consider a position with the Company outside of the Plant if there are any available. If no other positions are available and I have to stay here at the Powerhouse the other suggestion is having someone else working here at Powerhouse with me during times of bringing up a Boiler and making sure someone is here to help me if there are problems. I've had to light a boiler the night before and when you don't have someone who knows what they are doing to help it is a lot of work for one person, especially if you have medical issues that make your job harder.

If there is an Energy Transfer form that I need to fill out for this request please let me know. I'm just asking for a reasonable accommodation if possible and appreciate your time.

Respectfully,

EXHIBIT
4

ETP 000381

Doc ID: 5f7c3ab76c2029a3075543b686814f01ae4fe387

**Appendix 319**

6:42 PM

ADA ACCOMMODATIONS

Abel Garza

(361)455-3309

Private and confidential as detailed    . If you cannot access hyperlink, please e-mail sender

Garza, Robert <Robert.Garza@energytransfer.com>                                Thu  Apr    2021 at

To: "Garza, Abel" <Abel.Garza@energytransfer.com>
Cc: "Velasco, Clarissa" <Clarissa.Velasco@energytransfer.com> "De La Vega, Raymond" <Raymond.DeLaVega@energytransfer.com> "abel garza12@gmail.com"
<abel.garza12@gmail.com>

Hello Abel, I'm sorry you are having to go through this. Thank you for all of your years of service for our country. I will review my options and discuss them with HR
to try to get some type of resolution that will work for all parties involved.

Thanks and have a Blessed Easter weekend.

Robert Garza

Sr Manager   Operations

King Ranch Gas Plant

18 Miles West Hwy 141

PO Box 1158

Kingsville, TX 78364

Office 361 595 9214

Cell 361 318 8267

 

Abel Garza <abel.garza12@gmail.com>                                       Fri, Mar 12  2021 at     PM

https://mail.google.com/mail/u/0/?ik=18a1b2bb21&view=pt&search=all&permthid=thread-f%3A16058634343838656544&simpl=msg-f%3A16058634343838656544&simpl=msg-f%3A16058634343838656544

Doc ID: 5f7c3ab76c2029a307b543b686814f01ae4fe387

ETP 000382

 ENERGY TRANSFER

October 22, 2021

Abel Garza
1800 Brook Lane
Kingsville, TX 78363

RE:   Accommodation Request

Dear Abel,

I am writing in response to your request for one or more workplace accommodations. Based upon the information you provided, your medical condition has caused you to request the following accommodations: movement to a more open, less restrictive environment; less noisy environment; more predictable environment; and to work with a coworker. Alternatively, you requested that the Company provide you with a reassignment to another position within the company. Unfortunately, after careful review of the information you provided, and the information your treating physician provided, the Company will be unable to provide you with the accommodations you have requested for the following reasons(s). Your medical provider confirmed that your conditions are primarily situational (family-related). Further, any medical conditions you have are temporary in nature, and your request for accommodations are based on personal desires with no medical reason necessitating such changes.

If you wish to provide additional information to support your request for an accommodation, please submit it to my attention and we would be glad to reevaluate your request.

The Company will ensure your medical documentation remains securely maintained and confidential and will share only with those who have a need-to-know. Please feel free to contact me at 210-403-6441 if you have any questions or concerns.

Sincerely,

Clarissa Velasco
Supervisor – Leave Administration

Cc: Raymond De La Vega   Senior Manager – Human Resources



Doc ID: 5f7c3ab76c2029a307b543b686814f01ae4fe387

ETP 000383



November 23, 2021

Abel Garza
1806 Brook Lane
Kingsville, TX 78363

RE:   Accommodation Request

Dear Abel:

I am writing in response to your request for one or more workplace accommodations.

As you know, you have currently been out of work on leave since 7/5/2021. Since that time, you have received Company-provided Short-Term Disability (STD) benefits which were recently extended through 12/20/2021. Although you have not been released to return to work, the Company has been in the process of reviewing your request for workplace accommodations. Specifically, your request for movement to a more open, less restrictive environment, less noisy environment, more predictable environment, and to work with a coworker. Alternatively, you have requested that the Company provide you with a reassignment to another position.

In response to your request the Company reviewed information from you and your treating physician. Additionally, the Company's contracted occupational health specialist spoke with your treating physician. Based on this information, the Company denied your accommodation request because your treating physician confirmed that your conditions were primarily situational family-related, temporary, and that your request was based on personal desire with no medical reason necessitating such changes.

You accepted the Company's invitation to provide additional information supporting your request, which additional information was received on or about November 15, 2021. The additional information reiterates the need for the same accommodations and states in part that:

> . . . the functional impairments Mr. Garza experiences as a result of environmental stress are at times personal [i.e. death of relatives, learning of family illnesses, important anniversary dates] and situational [difficulty functioning in work environment due to loud machinery, alarms, and sirens]. However, neither condition is mutually exclusive or exhaustive and elements of exposure or a combination therein are likely to exacerbate Mr. Garza's experience of positive and negative symptoms related to anxiety and posttraumatic stress disorder in all settings, limiting functional capacity as a result.

After reviewing the additional information, the Company spoke with your management about accommodating your restrictions in your current position. Given the nature of your Plant Operator A position and the operation of the King Ranch Plant where you work, the Company will be unable

EXHIBIT

Doc ID 5f7c3ab76c2023a307b543b686614f01ae4fe387

ETP 000384

**Appendix 322**

to provide a more open, less restrictive, less noisy, and more predictable environment is not current position. To do so would create an undue hardship and require eliminating essential functions of your position or otherwise fundamentally changing the nature of your position and operation of the business.

Alternatively, the Company spoke with your management about reassignment to a vacant position. Unfortunately, the three positions that you inquired about — the warehouse position, shipping station operator position, and safety position — are not available. However, even if the positions were available, they would not offer a more open, less restrictive, less noisy, and more predictable environment. Thus, they would not be effective in removing the workplace barriers you have identified.

As stated before, I am available to discuss other possible forms of accommodation that would be effective in enabling you to perform the essential functions of your position. Please contact me as soon as possible at (210) 403-7325 or Clarissa Velasco at (210) 403-6441 so that we may explore other potential solutions.

Alternatively, if you are unable to return to work and need to extend your current leave using company-provided STD benefits or otherwise, please contact Clarissa Velasco as soon as possible at (210) 403-6441 to discuss.

Sincerely,

Amanda Gober
Sr. Manager, HR Administration

Cc: Raymond De La Vega - Senior Manager – Human Resources

Doc ID: 5f7c3ab76c2029a307b543b686814f01ae4fe387

ETP 000385

Appendix 323

Hector:     I guess I'm doing all right.

Abel:       Yeah? How'd it go. Y'all went to Austin, right, for Thanksgiving?

Hector:     Yeah. I could never remember we [inaudible]

Abel:       Oh, wow. Wow.

Hector:     We went down to Ontario real fast and stayed in a house.

Abel:       Oh nice.

Hector:     Yeah, it was pretty neat.

Abel:       Yeah. Well that's good. At least you got time to spend with your boy.

Hector:     Yeah, both of them.

Abel:       Oh, good. Good. Are they doing all right?

Hector:     Yeah. They should be coming down for Christmas.

Abel:       Good, Good.

Hector:     How about you guys? You doing okay?

Abel:       Yeah, man, I'm trying to hang in there. I got another letter from Energy Transfer. They denied my request for the accommodations again for the reevaluation, and then the letter they put on there that they cannot provide me with an accommodation because it'll be a hardship, an undue hardship. Because they're saying that even if they moved me to the shipping station, which they're saying there's no opening at the shipping station, there's no opening for the warehouse. And there's no opening for the safety position, which I applied for, and I interviewed for, and the director said he was going to hire me. And then after he spoke with management, with Robert [inaudible] and he spoke to HR, I'm sure they told him not to hire me because he never called me back. And they're saying that even if those positions were open, that the position is the same thing. It's the same thing as working at the powerhouse.

Hector:     No it's not.

Abel:       That's what I told him.

Hector:     It's not, the powerhouse is the most stressful. The [inaudible], it's a little bit stressful when you're starting turbines, it's walking them. But after that it's no big deal. The bar [inaudible] is constantly problematic.



EXHIBIT

[illegible phone call text]
[illegible text]

Page 1 of 5

Doc ID: 5f7c3ab76c2029a307b543b686814f01ae4fe387

ETP 000386

This transcript was transcribed on Jan 04, 2022

| | |
|---|---|
| Abel: | Well, see, and that's the thing is that I told him in the letter, because you know, you're kind of indoors. You're in the warehouse. And so the sound, the noise, is confined to inside. Because if you walk outside the powerhouse, there's a difference in the noise. And then when you have alarms going off and you have problems, that's where it makes it worse for me. You know? And I started already a while back, I started getting like ringing in my ears. Every so often I start hearing ringing in my ears and that's a sign that your hearing is starting to mess up a little bit, but I can still hear and stuff. I don't have problems with my hearing, but I start getting the... |
| Hector: | Yeah. The Tinnitus is not [inaudible]. |
| Abel: | Right. So the thing is though, it's affecting me psychologically. And that's what I told them. I said, look, I got PTSD. I've been diagnosed with depression and anxiety. And there's things in the powerhouse, especially when we have problems that are triggering this. But man, it's like, they don't care. Hector, you know? It's like, they don't care at all. |
| Hector: | You try to get your doctor to get you an order. |
| Abel: | My doctor, because they quoted, supposedly they quoted on the letter, what my doctor told him and I sent the letter to my doctor so he could read it. And he is upset. He's mad because he said, I never told the contracted doctor that called me for your company, I never told him what they're saying on that letter. He said they're lying. You know, that's not true. |
| Hector: | They are. They're even lying about the position. |
| Abel: | Yes they are. Because you know what, Hector? The position that I applied for, the safety, it was open. I applied for it. I got called for an interview. I was told they were going to hire me. And then they say, no, there's no position. The position at the warehouse, [inaudible] retired, the position's open. But now all of a sudden they don't want to fill it. And the position at the shipping station, well Penny retired, and now all of a sudden, if I'm in, they don't want to fill it. And I'm qualified to work all the positions. |
| Hector: | [inaudible] |
| Abel: | Yeah. Yeah, the director told me, he said, out of almost 200 applicants, he's shows six people to interview. And he said, "I got your resume right here. And I want you to know that you're one of the six people that I chose. So that tells you something." |
| Hector: | For me, I can't stand this. I can't because of the stress we were under at the powerhouse when we had to run the powerhouse and the shipping and the [inaudible]. We had to run everything. And then I asked them, "Hey, can we silence the alarms?" And they denied them, "No, you cannot." And so, because of that, to this day, I can't stand working there. |
| Abel: | It affects you. It affects you. |

Doc ID: 5f7c3ab76c2029a307b543b686814f01ae4fe387

**Appendix 325**

ETP 000387

This transcript was transcribed on Jan 04, 2022

| | |
|---|---|
| Hector: | Most people that don't experience something like that, they don't understand, but there are doctors, but they all know [inaudible] |
| Abel: | Yeah. And I've already talked to somebody, but I don't want to go that route, man. I want them to do the right thing and resolve it. You know? I mean the right way. |
| Hector: | Well, you're wasting time, you're not going to get them to, they're not on your side. |
| Abel: | How long did you work at the powerhouse, Hector? |
| Hector: | Since the start of my career. |
| Abel: | And you were out there for what? Almost 40 years? 38 years? |
| Hector: | 33 years. And I was an internee. And I know a lot of stuff, we been questioned the legality of running number five and we were convinced that we were [inaudible]. But still it was ridiculous. |
| Abel: | And every time they told us that we were going to have to bring up number five, I would start getting anxiety because man, Hector, they would have me out there by myself and they would tell me, "Oh, we're going to have somebody help you." And then I'd be stuck out there by myself. And you know, Cindy can't go and help. She doesn't know anything about the powerhouse. And she's slow, you know? And so I'm there by myself. |
| Hector: | I would go see a lawyer. You worked for [inaudible], right? |
| Abel: | Yeah. |
| Hector: | Well, you bring those two up and you'll get some attention. |
| Abel: | But it's crazy. They're not even taking the consideration, Hector, when I tell them, "Hey look, I was diagnosed with this coming out of the military. I was even being seen when I was in the military." And plus I have law enforcement background. So these alarms, I think it's because they're similar to some of the things that I experienced when I was in law enforcement and in the military. I don't know. I guess it's kind of hard to explain. |
| Hector: | I know exactly what you mean. When I hear the phone ring... |
| Abel: | Yeah, I understand. |
| Hector: | You can't, you can't function without a phone nowadays. |
| Abel: | Yeah. But no, I just wanted to give you an update, let you know what's going on. And you know, HR told me in the letter to call them. They denied my accommodations, but then at the end of the letter they tell me to call them, the manager. "Call me so we can discuss alternative options of accommodation." So I called her and I called the |

Doc ID: 5f7c3ab76c2029a307b543b686814f01ae4fe387

**Appendix 326**

ETP 000388

This transcript was transcribed on Jan 04, 2022

|          | supervisor because she didn't answer. I left messages, I called them three times. They never returned my calls. |
|----------|------|
| Hector:  | They're just trying to make the time run out. So if I were you I'd quit messing around. If I would've done that way back, it'd be a whole lot different. I mean, I'm fine and I'm okay. But I would've put a stop to this issue. They're wrong, and they're crooked, and they're they're bending the rules. And they do all this shit and they don't give a damn about it. |
| Abel:    | Yeah. And I was thinking about it, and remember Javier Getta? You know how he didn't want to work at the powerhouse? You remember that? |
| Hector:  | Oh yeah. Yeah. |
| Abel:    | And I'm thinking it's because he had anxiety and I think that it was affecting him that's why he didn't want to be over there. |
| Hector:  | [inaudible] |
| Abel:    | Oh see. |
| Hector:  | Yeah. But he screwed me in a deal. |
| Abel:    | Oh no. Oh, I remember. I remember you told me you went to go help him with something with AC or something. |
| Hector:  | Yeah. I did an $800 job and he paid me like $80 and a hamburger. |
| Abel:    | He forgot the zero. |
| Hector:  | Yeah, but anyways. Just trying to be helpful and thought he would be appreciative. But anyway, I would seriously consider, just go get a lawyer and have your lawyer contact him. Once you tell somebody, because you're talking about big oil companies with deep pockets. So, and then they talk to your doctor, they talk to them, and just don't talk to them anymore. Let him handle it. It might take four or five years. But that way you have to figure out how to pay your bills and stuff like on your own, but eventually you'll come back. |
| Abel:    | Yep. All right. I'm going to try calling them again probably tomorrow. See if they pick up the phone this time. And then I got somebody I'm talking to, so I'll let you know. |
| Hector:  | Okay. Yeah because they're just playing games. They're just playing their corporate games and making the, what do you call it? Where the time runs out. They don't appreciate you. |
| Abel:    | All right, Hector, I'll let you go. |
| Hector:  | All right. We'll just hang in there. Take it easy. Enjoy, relax the best you can. |

Doc ID: 5f7c3ab76c2029a307b543b686814f01ae4fe387

ETP 000389

**Appendix 327**

This transcript was transcribed on Jan 04, 2022

Abel:          All right. Hector, take care. I'll talk to you later. All right, bye.

Doc ID: 5f7c3ab76c2029a307b543b686814f01ae4fe367

ETP 000390

**Appendix 328**



Abel Garza <abel.garza12@gmail.com>

## STD- Dec 2, 2021

1 message

**Abel Garza** <abel.garza12@gmail.com>                                      Thu, Dec 2, 2021 at 12:55 PM
To: "Pena, Noe" <noe.pena@energytransfer.com>
Cc: "Gober, Amanda" <amanda.gober@energytransfer.com>, "Velasco, Clarissa" <clarissa.velasco@energytransfer.com>,
"Garza, Robert" <Robert.Garza@energytransfer.com>

Noe

I am still continuing with my treatment plan as scheduled with my doctor. I received an email from Clarissa Velasco concerning the ADA Accommodations Reevaluation and it was denied once again. I sent her an email and they are offering to discuss possibilities of other accommodations to allow me the ability to return to work.

I really don't understand why the positions at the Shipping Station, Warehouse, and Safety Rep are not being considered as options since they are vacant and I am qualified. The environment for all three positions are very different from working at the PowerHouse. All these positions are less noisy, no distinctive alarms, give me a more predictable schedule, less restrictive, no confinement of constant loud noise, less environmental stress, and will allow me the ability to utilize relevant coping skills. They all give me a more predictable work environment and will allow me to return to work at full capacity.

I am qualified to work all three of the positions I have requested as an accommodation. And being that I am a Disabled Veteran. It is hard for me to believe that Energy Transfer will not take care of me as I am an employee who has worked for the company for over 7 years.

Respectfully,
Abel

**Pena, Noe** <Noe.Pena@energytransfer.com>                                  Thu, Dec 2, 2021 at 3:01 PM
To: Abel Garza <abel.garza12@gmail.com>
Cc: "Gober, Amanda" <amanda.gober@energytransfer.com>, "Velasco, Clarissa" <Clarissa.Velasco@energytransfer.com>,
"Garza, Robert" <Robert.Garza@energytransfer.com>

Hello Abel

Thanks for providing an update on your STD.

Regards,

Private and confidential as detailed      If you cannot access hyperlink, please e-mail sender.

**EXHIBIT**
**8**

**Garza, Robert** <Robert.Garza@energytransfer.com>                         Tue, Dec 7, 2021 at 8:39 AM
To: "Pena, Noe" <Noe.Pena@energytransfer.com>, Abel Garza <abel.garza12@gmail.com>
Cc: "Gober, Amanda" <amanda.gober@energytransfer.com>, "Velasco, Clarissa" <Clarissa.Velasco@energytransfer.com>

Doc ID: 5f7c3ab76c2029a307b543b688814f01ae4fa387

ETP 000391

Michael Johnson

This is Mike Johnson. How are you, sir?

Abel Garza

I'm all right. How about yourself?

Michael Johnson

I'm doing well. Thank you, sir.

Abel Garza

Good.

Michael Johnson

Hey, I just wanted to give you a call. I made my selection on the safety interview position and elected to go with another individual. I just wanted to thank you for your interest and putting in for the position.

Abel Garza

Yeah, I've been in contact with Clarissa Velasco at HR, because I hadn't heard back from you. I mean, I thought you had said you'd contact me the following week. You were going to try to fast track everything with HR since I was already an employee. I mean, I felt like the interview went well and that you were telling me I was hired for the job based on everything that we spoke about.

Abel Garza

I didn't hear from you. So HR got with Raymond Villavega and he was supposed to call me, but I never got a call back from him. So, I mean, I didn't know what was going on.

Michael Johnson

Right. No, of course, with the whole hiring process and everything, and the interviews took a little bit longer than expected and that's why I'm reaching out today.

Abel Garza

I mean, I don't... I mean this just doesn't match up with what I was getting from you and what we discussed in the interview and after it was over. I just hope your decision wasn't based on what I discussed with you afterwards on my disability. Like I told you, that's nothing that would affect me doing that job. My-

Michael Johnson

That had nothing to do with my decision. I selected the best candidate for the position.

Abel Garza

Well... I don't know what to say, because that's not what I got from you that day, you know, the interview. That's not what was being said with what you were telling me, as far as my having a start date of October the 25th or November the 1st, and my background and how impressed you were. And you talking to HR about fast tracking everything and talking to my manager at the plant as a courtesy, since I

Garza – Johnson Phone Call of January 4, 2023
Transcript by Rev.com

EXHIBIT

9

Page 1 of 2

Doc ID: 5f7c3ab76d2029a307b543b686814f01ae4fe387

ETP 000393

This transcript was transcribed on Jan 04, 2022.

had interviewed with you. That just doesn't match up. It doesn't sound right. I mean, I'm really disappointed.

Michael Johnson:

Okay, [crosstalk 00:03:00] Mr. Garza, I apologize. I do the same with all of my interviews and go through that process. That conversation could have had that... I know that I definitely stated if you were selected that we would look to be able to speed things up since you were an internal candidate. However, again, I hadn't made my decision at that time. So. Again, I just want to let you know that I selected someone else.

Abel Garza:

Let me ask you a question. The warehouse position that's available in Victoria, is that your area... for warehouse manager? No?

Michael Johnson:

I'm not over the warehouse fulfillment group.

Abel Garza:

Oh, okay. All right. All right, well, I appreciate your phone call.

Michael Johnson:

Yes, sir. Thank you.

Doc ID: 5f7c3ab76c2029a307b543b686814f01ae4fe387

**Appendix 331**

ETP 000394



ENERGY TRANSFER

November 2, 2021

Abel Garza
508 Brook Lane
Kingsville, TX 78363

Dear Abel,

You are receiving this letter because you have been on a leave of absence for at least 16 weeks and may be in the process of applying for Long Term Disability (LTD) benefits under the Energy Transfer Partners GP LP Long Term Disability Plan. This letter is to address certain issues regarding your employment status and group health benefits.

Energy Transfer Partners leave policy generally limits the period of employment for employees who are on an approved leave of absence, including medical leaves of absence, to generally no more than six (6) months. If an employee is unable or unwilling to return to work within six (6) months of commencing the leave, unless otherwise prohibited by applicable law, regulation or the Company is able to reasonably accommodate an ADAA-protected disability by reasonably extending the leave or in some other manner, the employee's employment will be terminated. If you do want to explore the possibility of returning to work or whether the Company can reasonably accommodate an extension of your leave beyond six (6) months, please contact me at (210) 403-6441 as soon as possible.

**Please be advised that if you have not returned to work or obtained approval from the Company for an extension of your medical leave of absence, your employment with the Company will be terminated as of <u>January 6, 2022</u>. Medical, dental and vision benefits will terminate at the end of the month employment is terminated.**

If your employment is terminated, you will have the right to continued group health benefits under COBRA. The COBRA continuation period is generally eighteen (18) months. The Company does not subsidize COBRA coverage. If you choose to continue your group health, dental and/or vision benefits under COBRA, you will be responsible for the entire cost of any continuation coverage.

If you have any questions, please call me on (210) 403-6441.

Sincerely,

Clarissa Velasco
Supervisor-Benefits

cc  HR Rep



Doc ID: 5f7c3ab76c2029a3076543b686814f01ae4fe387

ETP 000395

Message

**From:** De La Vega, Raymond [Raymond.DeLaVega@energytransfer.com]
**Sent:** 1/4/2022 12:13:59 PM
**To:** Johnson, Michael S [Michael.Johnson3@energytransfer.com]
**Subject:** Re: Abel Garza

Thanks I'll Clarissa know that he's been informed. Thanks.

Sent from my iPhone

On Jan 4, 2022, at 9:40 AM, Johnson, Michael S <Michael.Johnson3@energytransfer.com> wrote:

This has been taken care of

Thanks

**From:** De La Vega, Raymond <Raymond.DeLaVega@energytransfer.com>
**Sent:** Wednesday, December 29, 2021 8:19 PM
**To:** Johnson, Michael S <Michael.Johnson3@energytransfer.com>
**Subject:** Abel Garza
**Importance:** High

Hi Mike, hope all is well. Now that Matthew Thomas has cleared background and drug test and has a start date set, would you mind reaching out to Abel Garza who interviewed for the position and let him know he was not selected. Please let me know when you have done that, I will need to update on my end.  Thank you.

Ray



<image001.jpg>

Raymond De La Vega
Sr Manager – Human Resources
Human Resources
Energy Transfer
office: 210.403.6429
cell: 210.260.7941

For assistance regarding Benefits contact your Benefit Advocates at ETPBenefits@ajg.com or 1-855-562-5847 for a claim or eligibility issue.
For assistance regarding Payroll/eTime/iPay, you may also contact the Payroll Hotline, 713-989-2166 or Time.Mailbox@energytransfer.com
For assistance regarding STD/FMLA, contact **UNUM** at 1-877-463-2028 or www.unum.com.  Plan ID 882077

**EXHIBIT**

50

**Appendix 333**

ETP 000429

Message

| | |
|---|---|
| **From**: | Pena, Noe [Noe.Pena@energytransfer.com] |
| **Sent**: | 1/27/2022 1:27:37 PM |
| **To**: | Garza, Robert [Robert.Garza@energytransfer.com] |
| **Subject**: | FW: LTD-Jan 27 |

FYI

**From:** Abel Garza <abel.garza12@gmail.com>
**Sent:** Thursday, January 27, 2022 12:46 PM
**To:** Pena, Noe <Noe.Pena@energytransfer.com>
**Subject:** LTD-Jan 27

Noe,

I am continuing treatment and Unum is still reviewing my file for Long Term Disability.

Respectfully,
Abel



ETP 000629

**Appendix 334**

Message

| | |
|---|---|
| **From:** | Johnson, Michael S [Michael.Johnson3@energytransfer.com] |
| **Sent:** | 2/8/2022 12:56:57 PM |
| **To:** | De La Vega, Raymond [Raymond.DeLaVega@energytransfer.com] |
| **Subject:** | RE: Safety Rep Position |
| **Attachments:** | Abel GarzaResume+2021.docx; Adam's+Resume (1).docx; Daniel+Saenz+Resume+August+2021.docx; Derreck Perezresume+for+energy+transfer.pdf; Garnett Resume07132021.docx; Matthew+Thomas+Resume+8-24-21.docx |

Please see attached Resumes for the individuals I interviewed for the Safety Rep position in STX.

Thanks.



**Michael S. Johnson**
Director Of Operations - STX Region - Central Texas Division
Energy Transfer
616 S. Hwy 77
Robstown, TX 78380

Michael.johnson3@energytransfer.com

**O:** 361-698-4038
**C:** 361-935-5861



**From:** De La Vega, Raymond <Raymond.DeLaVega@energytransfer.com>
**Sent:** Tuesday, February 8, 2022 8:21 AM
**To:** Johnson, Michael S <Michael.Johnson3@energytransfer.com>
**Subject:** Safety Rep Position

Hey Mike, do you by chance still have the list of candidates for the position that you interviewed? I think email retention ate it. I have the following sent you for interviews, just let me know which ones not interviewed. Sorry about that. Looking to close these requisitions out.

Greg Garnett
Daniel Alberto Saenz
Abel Garza
Derreck Perez
Adan Perez
Matthew Thomas

Ray



EXHIBIT
5 2

ETP 000365

**Appendix 335**



Raymond De La Vega
Sr Manager – Human Resources
Human Resources
Energy Transfer
office: 210.403.6429
cell: 210.260.7941



For assistance regarding Benefits contact your Benefit Advocates at ETPBenefits@ajg.com or 1-855-562-5847 for a claim or eligibility issue.

For assistance regarding Payroll/eTime/iPay, you may also contact the Payroll Hotline, 713-989-2166 or Time.Mailbox@energytransfer.com

For assistance regarding STD/FMLA, contact **UNUM** at 1-877-463-2028 or www.unum.com.  Plan ID 882077

.

**Appendix 336**

ETP 000366

# Abel Garza

1806 Brook Lane ◆ Kingsville, Texas 78363 ◆ (361) 455-3309 ◆ abel.garza12@gmail.com

## Objective

*Professional position allowing the utilization of various skills obtained throughout a successful military career.*

## Profile

Talented professional who effectively multi-tasks and balances customer needs with company demands. Efficiently builds loyalty and long-term relationships with customers, while consistently reaching set goals.

Proven track record as a Leader and Manager with the experience to be successful in any type of environment and the ability to think outside the box.

Strong work ethic with the will to succeed and accomplish the mission. Goal oriented and eager to over achieve any task assigned.

Thrive in deadline-driven environments. Excellent leadership and team-building skills.

## Skills Summary

|  |  |  |
|---|---|---|
| ◆ Active Listening | ◆ Interpersonal Skills | ◆ Time Management |
| ◆ Communication | ◆ Leadership | ◆ Dependability |
| ◆ Computer Skills | ◆ Management Skills | ◆ Integrity |
| ◆ Customer Service | ◆ Problem Solving | ◆ Teamwork |

## Employment History

### King Ranch Gas Plant- EXXONMOBIL(1yr) / ENERGY TRANSFER PARTNERS(6yrs)

Feb 2014 - Present
Project Coordinator/Materials Manager/Operations
- ◆ Coordinate all logistics and cost tracking for rebuild of the RADU Unit
- ◆ Manage ordering materials and contractors material inventory needed for RADU rebuild.
- ◆ Supevise work crews and safety program during the RADU Project.
- ◆ 6 years as an Operator providing surveillance and operational support for Fractionation Unit, Amine Unit, Glycol Unit, Shipping Station, PowerHouse, Loading Rack, and Saltwater Disposal

### ROCKWATER ENERGY SOLUTIONS- KINGSVILLE, TX

May 2013 – Jan 2014
Warehouse/Office Manager
- ◆ Manage the Logistics and daily operations.
- ◆ Create customer sales orders and maintain records of all sales.
- ◆ Assign drivers to all scheduled deliveries and manage the outsouring of additional drivers as needed
- ◆ Create Safety Program with incentives for employees.

### U.S. ARMY MISSION SUPPORT BATTALION, FORT KNOX, KY

December 2010 – November 2012

#### COMPANY MANAGER, PUBLIC AFFAIRS, OPERATIONS, PROJECT MANAGER
- ◆ Operations leadership consisting of 59 soldiers and 17 civilians.
- ◆ Responsible for planning and execution of all operational requirements.
- ◆ Create and design concepts for new and existing projects.

ETP 000367

monster.com

# Abel Garza

- ◆ Develop and implement Strategic Marketing Plans and provide Talking Points when needed.
- ◆ Responsible for development of Anti-Bullying video created for social media sites .
- ◆ Orchestrating the publication of video media including Recruiter Journal and Soldiers Magazine.
- ◆ Supervise monthly and quarterly Company training to include Security, Safety, and Risk Management.
- ◆ Manage all Logistics for Transportation Fleet traveling across the United States.

### HR / RECRUITER MANAGER – U.S. ARMY RECRUITING COMMAND, FORT KNOX, KY
June 1999 – December 2010

- ◆ Spokesperson for U.S. Army; notable interview June 2005 with 60 Minutes (Call of Duty)
- ◆ Oversee all Recruiting and maintain relationships with Local, State, and Federal Government Agencies.
- ◆ Build relationships with customers and the Communities to promote long term business growth.
- ◆ Responsible for making sure Company Security and Safety Policies are followed by employees
- ◆ Used networking opportunities to create successful continuous business relationships.
- ◆ Prioritized tasks and projects to meet extreme deadlines.

### LOGISTIC MANAGER – U.S. ARMY RESERVES
June 1989 – June 1999

- ◆ Manage all warehouse operations during a combat tour of duty
- ◆ Responsible for Safety and Security Planning
- ◆ Fleet and Operations Management
- ◆ Supervise Supply Chain for South and Central America

## Education

### COMMANDERS/FIRST SERGEANTS COURSE – FORT KNOX, KY
March 2012
Company Leadership, Public Affairs, Administration Management, Professional Development, Benefits, Ethics Law, Business Management, OSHA and EPA Training, Team Building, Security and Safety Management,  Operations Management, and Risk Management.

### RECRUITING/PUBLIC AFFAIRS SCHOOL – FORT JACKSON, SOUTH CAROLINA
June 1999 – Aug 1999
Prospecting strategies, sales training, communication skills training, extensively trained in management. Leadership training program, Marketing and Advertising, Human Resources, and Public Affairs.

### ADVANCE NON COMMISSIONED OFFICERS COURSE – FORT RILEY, KS
March 1997 – August 1997
Personnel Management, Training and Readiness, Cyber Threats, Equipment Maintenance, Operations Management, Project Management, Professional Development, Logistic Management, Security and Safety Planning.

### BASIC NON COMMISSIONED OFFICERS COURSE – FORT SAM HOUSTON, TX
March 1996 – August 1996
Leadership, Counseling, Operations, Security and Safety Planning, Environmental Laws, Health and Welfare, Professional Development, Interpersonal Communications, Logistics Management, and Maintenance Management.

### ODEM HIGH SCHOOL – ODEM, TEXAS
High School Diploma, Graduated – June 1987

**Appendix 338**

ETP 000368

monster.com

# Abel Garza

1806 Brook Lane ◆ Kingsville, Texas 78363 ◆
(361) 455-3309 ◆ [ HYPERLINK "mailto:abel.garza12@gmail.com" ]

Dear Employer,

As a serviceman in the U.S. Army for 26 years, I offered my best everyday to my peers, superiors and to my country. My Communication and Teambuilding skills are Among the Best.

I was assigned as Manager in charge of Public Affairs and the National Convention Division. I have 24 years of Leadership experience. During my military career I supervised soldiers and civilians from various occupational backgrounds and skill sets. I learned how to overcome obstacles and handle any situation.

I also have many years of experience in Logistics Management, Safety and Risk Management, Transportation, Security, Government Relations, and Community Relations. Throughout my experiences I managed onboarding, training, benefits process, professional development, and public relations.

The skills I have acquired and valuable experiences I have earned during my time in the military will help me to smoothly transition within the company.

Here is what I can bring to the company:

- ◆ Be a good Team Player
- ◆ Excellent Communication Skills
- ◆ Proven ability to multi-task
- ◆ Dedication
- ◆ Self Motivation
- ◆ Strong work Ethic
- ◆ Leadership
- ◆ Safety First Attitude
- ◆ Can Do Attitude
- ◆ Attention to Detail
- ◆ Highly Organized

Please feel free to contact me if you have any questions.

I look forward to growing with this Company. I appreciate your time and consideration for this opportunity.

Sincerely,

Abel Garza

**Appendix 339**

ETP 000369

TEXAS WORKFORCE COMMISSION
PO BOX 2211
MC ALLEN TX 78502-2211



EXHIBIT
53

## DETERMINATION ON PAYMENT OF UNEMPLOYMENT BENEFITS
### Date Mailed:   March 18, 2022

ABEL GARZA
1806 BROOK LANE
KINGSVILLE TX 78363

Social Security Number: XXX-XX-8406
Employer: ENERGY TRANSFER PART
As:
Employer Account No: 11-147414-1
All dates are shown in
month-day-year order.

### Decision

Issue: Separation from Work

**Decision:** We can pay you benefits, if you meet all other weekly requirements such as being able, available and actively searching for work.
**Reason for Decision:** Our investigation found your employer fired you because of your medically verifiable illness. This is not considered misconduct connected with the work.
**Law Reference:** Section 207.044 of the Texas Unemployment Compensation Act.

### Understanding your Decision

If you receive a decision that says, "we cannot pay you benefits," it means there is a problem with your claim EVEN IF you have received other decisions for the same period that say, "we can pay you benefits." If even one decision for the same period says we cannot pay, you will not receive an unemployment payment for that period.
**To resolve issues on decisions you receive:**
1. Follow instructions on the notice(s); call the Tele-Center at 800-939-6631 if you have questions;
2. If the instructions tell you to "Report," call the Tele-Center at once;
3. If you disagree with a decision, file an appeal. Appeal each decision separately by the appeal deadline. If you fax your appeal, keep a confirmation sheet.
Your employer can appeal TWC's decision to pay benefits. TWC will notify you of any appeal hearing. If you do not participate, you may lose your benefits and have to repay benefits you received.

### Determination of Potential Chargeback for the Employer

There will be no charge to your former employer's account.

### If You Disagree with this Decision

**If you disagree with this decision, you may appeal. Submit your appeal by mail, fax, online, or in person at any Texas Workforce Solutions office, on or before   04-01-22   .**

TWC will use the postmark date, or the date we receive the fax or online form, to determine whether you submitted your appeal on time. If you appeal by fax, you should keep your fax confirmation as proof you sent it.   Please include a copy of this determination notice with your appeals correspondence.

**If you receive multiple determination notices, you must appeal each determination separately.**

Mail the appeal to:

Appeal Tribunal
Texas Workforce Commission
101 E. 15th Street
Austin, TX 78778-0002
Or fax to (512) 475-1135

| You may appeal by submitting TWC's online appeal form. Go to www.texasworkforce.org/uiappeal |
| --- |

| Case No.: | 3 |
| --- | --- |
| Claim ID.: | 02-20-22 |
| Claim Date: | 02-20-22 |
| HEARING IMPAIRED CLIENTS CALL 711 for RELAY TEXAS | |

**Please See Reverse For How To File An Appeal.**
BD300E 02/28/2018

AG - 001257

## How to Request an Appeal

Submit your appeal by mail, fax, in person at any Texas Workforce Solutions office, or online at www.texasworkforce.org/uiappeal. Mail or fax your signed letter to the TWC Appeals Department at the address or fax number on the front of this form. You must submit your appeal within **14 calendar days of the date** we mailed you this letter. The deadline is on the front of this form.

> **You MUST request payment** every two weeks, unless you return to full-time work. If the appeal is in your favor, we can pay you **only** for the weeks you requested payment and met all other eligibility requirements.

— If you **mail** your appeal, it must be **postmarked** on or before the deadline.
— If you submit your appeal online or by fax, TWC must **receive** it on or before the deadline. Print and keep the confirmation page as proof you sent it.

**Include in your appeal letter:**

— Your name, address, Social Security number (SSN).
— The date TWC mailed you the decision you want to appeal.
— Your request for translators, if needed, and the language you require.
— Your request for special services, if needed, such as an interpreter for the hearing-impaired.

**IMPORTANT:** If you miss the appeal deadline, your appeal letter **must** explain in detail why you submitted it late. If TWC decides **not** to hear the case because you appealed late, we will mail you a decision that you may appeal.

## Appeal Tribunal Hearing

The first appeal level is a telephone hearing with the Appeal Tribunal (AT). The AT hearing consists of oral statements given under oath. **Legal representation is optional** - someone can represent you, but TWC does not provide representation. **You may call witnesses.** Your employer may also appeal and participate in your hearing.

**Keep your mailing address current.** We will mail you the AT decision. It is important that you **participate in the AT hearing** because the hearing officer makes the decision solely on the testimony given at the hearing. If you cannot participate at the scheduled time, call the hearing officer at the number listed on the hearing notice.

To prepare for your hearing, see **How to Appeal a Decision** at www.texasworkforce.org/uiappeal.

**Date and Time.** We will mail you and the employer a hearing notice packet with the date and time of your hearing. It will include instructions on submitting additional documents you want to present at the hearing. You must mail or fax copies of the additional documents to the employer and TWC **immediately** after receiving the hearing packet.

## Additional Appeals

If you disagree with the AT decision, you may submit a **Commission Appeal (CA)**. The Commission will rule on your case after reviewing the AT decision and listening to the recorded hearing. If you disagree with the CA decision, you may request a **Motion for Rehearing (MR)** within 14 calendar days of the mailing date of the CA decision. TWC will grant the MR if you can show **all** of these:

— important new information about your case;
— why the information could change the decision; and
— a compelling reason why you did not present the information earlier.

You may also appeal the CA decision to a **civil court** between 15 and 28 days after the date we mailed you the CA decision. You must complete an AT hearing and CA appeal before appealing to a civil court.

## For More Information

Go to ui.texasworkforce.org and select **Appeal Status** to view your appeal status, actions taken, appeal history, and more. Read more about **How to appeal a decision** at www.texasworkforce.org/unemploymentbenefits. Access the Internet for free at public libraries and Texas Workforce Solutions offices.

BD300F  03/02/2018

AG - 001258

# Texas Workforce Commission
## Notice of Telephone Hearing

Case/Appeal No: 3198840 Proceeding: 1 Hearing: 1 Date Mailed: AUGUST 31, 2022

**Claimant:** SSN: XXX-XX-8406    **Employer:** Account: 00-000000-0

ABEL GARZA
1806 BROOK LANE
KINGSVILLE TX 78363

Hearing Start Time:
**3:00 PM**
Central Daylight Time

Hearing Date:
**TUESDAY, SEPTEMBER 13, 2022**

Hearing Officer:
**V. LONGMIRE-JEFFERIS**

Register at **texasworkforce.org/hearing**
or by calling **1-800-252-3749** between
2:00 PM and 2:45 PM for your hearing.

Note: If you live in or near El Paso, the
hearing time and call in time will be one hour
earlier than shown above.

### What You Must Do:

➢ **Send documents before the hearing.** If any documents you feel are important to your case are not included in this hearing packet, immediately fax or mail copies of the documents to the **hearing officer and the other party**. Documents should be received at least two working days prior to the scheduled hearing. Provide the Appeal number, the claimant's name, and the last four numbers of the claimant's Social Security number.

➢ **Register for your hearing.** This hearing will be held by telephone conference call. On the hearing date, **register online at texasworkforce.org/hearing or call (800) 252-3749 within the 45-minute period listed above.** Give the operator the phone number where you can be reached for the hearing. If you call from a pay phone, be sure it can receive incoming calls.

**Please review the hearing packet and have it available at the hearing.**

**The hearing may be your only chance to tell what happened, present your documents, and ask questions of the witnesses.** If you do not register online at texasworkforce.org/hearing or call (800) 252-3749 within the 45-minute period listed above, you may not be allowed to participate in the hearing. You will **not** have another opportunity to offer testimony unless you can establish good cause for why you did not call in as instructed. Employers who are not parties of interest (indicated above as **NPI**) do not have the right to request a new hearing, nor to appeal.

Visit **texasworkforce.org/appeals** or **texasworkforce.org/appealsemployers** for more information on the appeal and hearing process.

Appeal filed by: Claimant
Appeal Date: 04/04/2022
Initial Claim Date: 02/20/2022
Determination Date(s): 03/22/2022

V. LONGMIRE-JEFFERIS, Hearing Officer
Texas Workforce Commission
101 E.15th St.Rm.410
Austin,Tx 78778
Hearing Officer (512) 463-8323
Fax No. (972) 522-7698

**Appendix 342**

BENEFIT PAYMENT CONTROL
TEXAS WORKFORCE COMMISSION
101 E 15TH ST RM 568 MAIN
AUSTIN TX 78778-0001

## NOTICE OF POTENTIAL BENEFIT OVERPAYMENT
Date Mailed:   August 17, 2022

ABEL GARZA
1806 BROOK LANE
KINGSVILLE TX 78363

All dates are shown in
month-day-year order.

Social Security Number:
XXX-XX-8406

| IMPORTANT |
|---|

In accordance with the Texas Unemployment Compensation Act, persons filing for unemployment benefits must report all income earned from full-time, part-time and temporary work, even though they may not have received payment.  The reverse side displays a list of weeks you requested payment and the gross earnings reported by your employer(s):

**Employer A: LA GRANGE ACQUISITION LP**

| INSTRUCTIONS |
|---|

**If you agree** with the amount of earnings the employer(s) reported, **do not respond**.  If you disagree, please call the number listed below.  You must respond on or before   **08-24-22** .  After this date, TWC will base the benefit overpayment decision on available information.  **This is not a bill.**  TWC will notify you by mail of any benefit overpayment, and payment will be due at that time.

Texas Workforce Commission

If you have any questions, please call  **(800) 950-3592**

| HEARING-IMPAIRED CLIENTS |
|---|
| Dial 711 for Relay Texas. |

BO100E 04/29/11

AG - 001261

| Week Ending | Employer A | Employer B | Employer C | Employer D | Employer E | Employer F | Employer G | Employer H | Employer I | Employer J | Total Employer(s) | You Reported |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 04-02-22 | | | | | | | | | | | | 0 |
| 04-09-22 | | | | | | | | | | | | 0 |
| 04-16-22 | | | | | | | | | | | | 0 |
| 04-23-22 | | | | | | | | | | | | 0 |
| 04-30-22 | | | | | | | | | | | | 0 |
| 05-07-22 | 1,740 | | | | | | | | | | 1,740 | 0 |
| 05-14-22 | | | | | | | | | | | | 0 |
| 05-21-22 | | | | | | | | | | | | 0 |
| 05-28-22 | | | | | | | | | | | | 0 |
| 06-04-22 | | | | | | | | | | | | 0 |
| 06-11-22 | | | | | | | | | | | | 0 |
| 06-18-22 | | | | | | | | | | | | 0 |
| 06-25-22 | | | | | | | | | | | | 0 |
| 07-02-22 | | | | | | | | | | | | 0 |
| 07-09-22 | | | | | | | | | | | | 0 |
| 07-16-22 | | | | | | | | | | | | 0 |
| 07-23-22 | | | | | | | | | | | | 0 |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |

BO100F   05/02/11

AG - 001262

**Appendix 344**

UI Support & Customer Service
TEXAS WORKFORCE COMMISSION
PO BOX 2211
MC ALLEN TX 78502-2211

## DETERMINATION ON PAYMENT OF UNEMPLOYMENT BENEFITS
### Date Mailed:   March 18, 2022

ABEL GARZA
1806 BROOK LANE
KINGSVILLE TX 78363

Social Security Number: XXX-XX-8406
Employer: ENERGY TRANSFER PART
As:
Employer Account No:  11-147414-1
All dates are shown in
month-day-year order.

| Decision |
| --- |

**Issue:** Separation from Work
**Decision:** We can pay you benefits, if you meet all other weekly requirements such as being able, available and actively searching for work.
**Reason for Decision:** Our investigation found your employer fired you because of your medically verifiable illness. This is not considered misconduct connected with the work.
**Law Reference:** Section 207.044 of the Texas Unemployment Compensation Act.

### Understanding your Decision
If you receive a decision that says, "we cannot pay you benefits," it means there is a problem with your claim EVEN IF you have received other decisions for the same period that say, "we can pay you benefits." If even one decision for the same period says we cannot pay, you will not receive an unemployment payment for that period.
**To resolve issues on decisions you receive:**
1. Follow instructions on the notice(s); call the Tele-Center at 800-939-6631 if you have questions;
2. If the instructions tell you to "Report," call the Tele-Center at once;
3. If you disagree with a decision, file an appeal. Appeal each decision separately by the appeal deadline. If you fax your appeal, keep a confirmation sheet.
Your employer can appeal TWC's decision to pay benefits.  TWC will notify you of any appeal hearing.  If you do not participate, you may lose your benefits and have to repay benefits you received.

| Determination of Potential Chargeback for the Employer |
| --- |

There will be no charge to your former employer's account.

| If You Disagree with this Decision |
| --- |

**If you disagree with this decision, you may appeal.  Submit your appeal by mail, fax, online, or in person at any Texas Workforce Solutions office, on or before  04-01-22  .**

TWC will use the postmark date, or the date we receive the fax or online form, to determine whether you submitted your appeal on time.  If you appeal by fax, you should keep your fax confirmation as proof you sent it.   Please include a copy of this determination notice with your appeals correspondence.

**If you receive multiple determination notices, you must appeal each determination separately.**

Mail the appeal to:

Appeal Tribunal
Texas Workforce Commission
101 E. 15th Street
Austin, TX 78778-0002
Or fax to (512) 475-1135

You may appeal by submitting TWC's online  appeal form. Go to www.texasworkforce.org/uiappeal

| Case No.: | 3 |
| --- | --- |
| Claim ID.: | 02-20-22 |
| Claim Date: | 02-20-22 |
| HEARING IMPAIRED CLIENTS CALL 711 for RELAY TEXAS | |

**Please See Reverse For How To File An Appeal.**
BD300E 02/28/2018

**Appendix 345**

AG - 001263

## How to Request an Appeal

Submit your appeal by mail, fax, in person at any Texas Workforce Solutions office, or online at www.texasworkforce.org/uiappeal. Mail or fax your signed letter to the TWC Appeals Department at the address or fax number on the front of this form. You must submit your appeal within **14 calendar days of the date** we mailed you this letter. The deadline is on the front of this form.

> **You MUST request payment** every two weeks, unless you return to full-time work. If the appeal is in your favor, we can pay you **only** for the weeks you requested payment and met all other eligibility requirements.

— If you **mail** your appeal, it must be **postmarked** on or before the deadline.
— If you submit your appeal online or by fax, TWC must **receive** it on or before the deadline. Print and keep the confirmation page as proof you sent it.

**Include in your appeal letter:**
— Your name, address, Social Security number (SSN).
— The date TWC mailed you the decision you want to appeal.
— Your request for translators, if needed, and the language you require.
— Your request for special services, if needed, such as an interpreter for the hearing-impaired.

**IMPORTANT:** If you miss the appeal deadline, your appeal letter **must** explain in detail why you submitted it late. If TWC decides **not** to hear the case because you appealed late, we will mail you a decision that you may appeal.

## Appeal Tribunal Hearing

The first appeal level is a telephone hearing with the Appeal Tribunal (AT). The AT hearing consists of oral statements given under oath. **Legal representation is optional** - someone can represent you, but TWC does not provide representation. **You may call witnesses.** Your employer may also appeal and participate in your hearing.

**Keep your mailing address current.** We will **mail** you the AT decision. It is important that you **participate in the AT hearing** because the hearing officer makes the decision solely on the testimony given at the hearing. If you cannot participate at the scheduled time, call the hearing officer at the number listed on the hearing notice.

To prepare for your hearing, see **How to Appeal a Decision** at www.texasworkforce.org/uiappeal.

**Date and Time.** We will mail you and the employer a hearing notice packet with the date and time of your hearing. It will include instructions on submitting additional documents you want to present at the hearing. You must mail or fax copies of the additional documents to the employer and TWC **immediately** after receiving the hearing packet.

## Additional Appeals

If you disagree with the AT decision, you may submit a **Commission Appeal (CA).** The Commission will rule on your case after reviewing the AT decision and listening to the recorded hearing. If you disagree with the CA decision, you may request a **Motion for Rehearing (MR) within 14 calendar** days of the mailing date of the CA decision. TWC will grant the MR if you can show **all** of these:

— important new information about your case;
— why the information could change the decision; and
— a compelling reason why you did not present the information earlier.

You may also appeal the CA decision to a **civil court** between 15 and 28 days after the date we mailed you the CA decision. You must complete an AT hearing and CA appeal before appealing to a civil court.

## For More Information

Go to ui.texasworkforce.org and select **Appeal Status** to view your appeal status, actions taken, appeal history, and more. Read more about **How to appeal a decision** at www.texasworkforce.org/unemploymentbenefits. Access the Internet for free at public libraries and Texas Workforce Solutions offices.

UI Support & Customer Service
TEXAS WORKFORCE COMMISSION
PO BOX 2211
MC ALLEN TX 78502-2211

## DETERMINATION ON PAYMENT OF UNEMPLOYMENT BENEFITS
### Date Mailed:  March 18, 2022

ABEL GARZA
1806 BROOK LANE
KINGSVILLE TX 78363

Social Security Number: XXX-XX-8406
Employer: ETP LLC
As:
Employer Account No: 11-147414-1
All dates are shown in
month-day-year order.

| Decision |
| --- |

**Issue:** Validity of Claim-Initial Claim
**Decision:** Your claim is valid.
**Reason for Decision:** Our investigation found you were unemployed on the date you applied for benefits.
**Date of Approved Claim:** 02-20-22
**What you can do:** Continue to submit your payment requests and respond to any correspondence you receive from TWC.
**Law Reference:** Subsection 207.021(a)(2) of the Texas Unemployment Compensation Act.

### Understanding your Decision
If you receive a decision that says, "we cannot pay you benefits," it means there is a problem with your claim EVEN IF you have received other decisions for the same period that say, "we can pay you benefits." If even one decision for the same period says we cannot pay, you will not receive an unemployment payment for that period.
**To resolve issues on decisions you receive:**
1. Follow instructions on the notice(s); call the Tele-Center at 800-939-6631 if you have questions;
2. If the instructions tell you to "Report," call the Tele-Center at once;
3. If you disagree with a decision, file an appeal. Appeal each decision separately by the appeal deadline. If you fax your appeal, keep a confirmation sheet.
Your employer can appeal TWC's decision to pay benefits.  TWC will notify you of any appeal hearing.  If you do not participate, you may lose your benefits and have to repay benefits you received.

| Determination of Potential Chargeback for the Employer |
| --- |

| If You Disagree with this Decision |
| --- |

**If you disagree with this decision, you may appeal.  Submit your appeal by mail, fax, online, or in person at any Texas Workforce Solutions office, on or before  04-01-22  .**

TWC will use the postmark date, or the date we receive the fax or online form, to determine whether you submitted your appeal on time.  If you appeal by fax, you should keep your fax confirmation as proof you sent it.   Please include a copy of this determination notice with your appeals correspondence.

**If you receive multiple determination notices, you must appeal each determination separately.**

Mail the appeal to:

You may appeal by submitting TWC's online  appeal form. Go to www.texasworkforce.org/uiappeal

Appeal Tribunal
Texas Workforce Commission
101 E. 15th Street
Austin, TX 78778-0002
Or fax to (512) 475-1135

| Case No.: | 3 |
| --- | --- |
| Claim ID.: | 02-20-22 |
| Claim Date: | 02-20-22 |

HEARING IMPAIRED CLIENTS
CALL 711 for RELAY TEXAS

**Please See Reverse For How To File An Appeal.**
BD300E 02/28/2018

**Appendix 347**

AG - 001265

## How to Request an Appeal

**Submit your appeal by mail, fax, in person at any Texas Workforce Solutions office, or online at** www.texasworkforce.org/uiappeal. Mail or fax your signed letter to the TWC Appeals Department at the address or fax number on the front of this form. You must submit your appeal within **14 calendar days of the date** we mailed you this letter. The deadline is on the front of this form.

> **You MUST request payment** every two weeks, unless you return to full-time work. If the appeal is in your favor, we can pay you **only** for the weeks you requested payment and met all other eligibility requirements.

— If you **mail** your appeal, it must be **postmarked** on or before the deadline.
— If you submit your appeal online or by fax, TWC must **receive** it on or before the deadline. Print and keep the confirmation page as proof you sent it.

**Include in your appeal letter:**

— Your name, address, Social Security number (SSN).
— The date TWC mailed you the decision you want to appeal.
— Your request for translators, if needed, and the language you require.
— Your request for special services, if needed, such as an interpreter for the hearing-impaired.

**IMPORTANT:** If you miss the appeal deadline, your appeal letter **must** explain in detail why you submitted it late. If TWC decides **not** to hear the case because you appealed late, we will mail you a decision that you may appeal.

## Appeal Tribunal Hearing

The first appeal level is a telephone hearing with the Appeal Tribunal (AT). The AT hearing consists of oral statements given under oath. **Legal representation is optional** - someone can represent you, but TWC does not provide representation. **You may call witnesses.** Your employer may also appeal and participate in your hearing.

**Keep your mailing address current.** We will **mail** you the AT decision. It is important that you **participate in the AT hearing** because the hearing officer makes the decision solely on the testimony given at the hearing. If you cannot participate at the scheduled time, call the hearing officer at the number listed on the hearing notice.

To prepare for your hearing, see **How to Appeal a Decision** at www.texasworkforce.org/uiappeal.

**Date and Time.** We will mail you and the employer a hearing notice packet with the date and time of your hearing. It will include instructions on submitting additional documents you want to present at the hearing. You must mail or fax copies of the additional documents to the employer and TWC **immediately** after receiving the hearing packet.

## Additional Appeals

If you disagree with the AT decision, you may submit a **Commission Appeal (CA)**. The Commission will rule on your case after reviewing the AT decision and listening to the recorded hearing. If you disagree with the CA decision, you may request a **Motion for Rehearing (MR) within 14 calendar** days of the mailing date of the CA decision. TWC will grant the MR if you can show **all** of these:

— important new information about your case;
— why the information could change the decision; and
— a compelling reason why you did not present the information earlier.

You may also appeal the CA decision to a **civil court** between 15 and 28 days after the date we mailed you the CA decision. You must complete an AT hearing and CA appeal before appealing to a civil court.

## For More Information

Go to ui.texasworkforce.org and select **Appeal Status** to view your appeal status, actions taken, appeal history, and more. Read more about **How to appeal a decision** at www.texasworkforce.org/unemploymentbenefits. Access the Internet for free at public libraries and Texas Workforce Solutions offices.

# Texas Workforce Commission
# Notice of Telephone Hearing

Case/Appeal No: 3198840  Proceeding: 1  Hearing: 1    Date Mailed: AUGUST 31, 2022

**Claimant:**          SSN: XXX-XX-8406      **Employer:**      Account: 00-000000-0
ABEL GARZA
1806 BROOK LANE
KINGSVILLE TX 78363                    Hearing Start Time:
                                       **3:00 PM**
Hearing Date:                          Central Daylight Time
**TUESDAY, SEPTEMBER 13, 2022**
                                       Hearing Officer:
Register at **texasworkforce.org/hearing**    **V. LONGMIRE-JEFFERIS**
**or** by calling **1-800-252-3749** between
2:00 PM and 2:45 PM for your hearing.

Note: If you live in or near El Paso, the
hearing time and call in time will be one hour
earlier than shown above.

## What You Must Do:

➢ **Send documents before the hearing.** If any documents you feel are important to your case are
not included in this hearing packet, immediately fax or mail copies of the documents to the
**hearing officer and the other party**. Documents should be received at least two working days
prior to the scheduled hearing. Provide the Appeal number, the claimant's name, and the last four
numbers of the claimant's Social Security number.

➢ **Register for your hearing.** This hearing will be held by telephone conference call. On the
hearing date, **register online at texasworkforce.org/hearing or call (800) 252-3749 within the
45-minute period listed above.** Give the operator the phone number where you can be reached
for the hearing. If you call from a pay phone, be sure it can receive incoming calls.

**Please review the hearing packet and have it available at the hearing.**

**The hearing may be your only chance to tell what happened, present your documents, and ask
questions of the witnesses.** If you do not register online at texasworkforce.org/hearing or call (800)
252-3749 within the 45-minute period listed above, you may not be allowed to participate in the
hearing. You will **not** have another opportunity to offer testimony unless you can establish good
cause for why you did not call in as instructed. Employers who are not parties of interest (indicated
above as NPI) do not have the right to request a new hearing, nor to appeal.

Visit **texasworkforce.org/appeals** or **texasworkforce.org/appealsemployers** for more information
on the appeal and hearing process.

Appeal filed by: Claimant
Appeal Date: 04/04/2022
Initial Claim Date: 02/20/2022
Determination Date(s): 03/22/2022

V. LONGMIRE-JEFFERIS, Hearing Officer
Texas Workforce Commission
101 E.15th St.Rm.410
Austin.Tx 78778
Hearing Officer (512) 463-8323
Fax No. (972) 522-7698

UI Supp & 2 Determination
TEXAS WORKFORCE COMMISSION
PO BOX 2211
MC ALLEN TX 78502-2211

## DETERMINATION ON PAYMENT OF UNEMPLOYMENT BENEFITS
### Date Mailed:   March 18, 2022

ABEL GARZA
1806 BROOK LANE
KINGSVILLE TX 78363

Social Security Number: XXX-XX-8406
Employer: ENERGY TRANSFER PART
As:
Employer Account No: 11-147414-1
All dates are shown in
month-day-year order.

### Decision

**Issue:** Separation from work
**Decision:** We can pay you benefits, if you meet all other weekly requirements such as being able, available and actively searching for work.
**Reason for Decision:** Our investigation found your employer fired you because of your medically verifiable illness. This is not considered misconduct connected with the work.
**Law Reference:** Section 207.044 of the Texas Unemployment Compensation Act.

#### Understanding your Decision
If you receive a decision that says, "we cannot pay you benefits," it means there is a problem with your claim EVEN IF you have received other decisions for the same period that say, "we can pay you benefits." If even one decision for the same period says we cannot pay, you will not receive an unemployment payment for that period.
**To resolve issues on decisions you receive:**
1. Follow instructions on the notice(s); call the Tele-Center at 800-939-6631 if you have questions;
2. If the instructions tell you to "Report," call the Tele-Center at once;
3. If you disagree with a decision, file an appeal. Appeal each decision separately by the appeal deadline. If you fax your appeal, keep a confirmation sheet.
Your employer can appeal TWC's decision to pay benefits. TWC will notify you of any appeal hearing. If you do not participate, you may lose your benefits and have to repay benefits you received.

### Determination of Potential Chargeback for the Employer

There will be no charge to your former employer's account.

### If You Disagree with this Decision

**If you disagree with this decision, you may appeal. Submit your appeal by mail, fax, online, or in person at any Texas Workforce Solutions office, on or before   04-01-22   .**

TWC will use the postmark date, or the date we receive the fax or online form, to determine whether you submitted your appeal on time. If you appeal by fax, you should keep your fax confirmation as proof you sent it.   Please include a copy of this determination notice with your appeals correspondence.
**If you receive multiple determination notices, you must appeal each determination separately.**

Mail the appeal to:

You may appeal by submitting
TWC's online  appeal form. Go to
www.texasworkforce.org/uiappeal

Appeal Tribunal
Texas Workforce Commission
101 E. 15th Street
Austin, TX 78778-0002
Or fax to (512) 475-1135

**Please See Reverse For How To File An Appeal.**
BD300E 02/28/2018

| Case No.: | 3 |
|-----------|---|
| Claim ID.: | 02-20-22 |
| Claim Date: | 02-20-22 |

HEARING IMPAIRED CLIENTS
CALL 711 for RELAY TEXAS

**Appendix 350**

AG - 001270

## How to Request an Appeal

**Submit your appeal by mail, fax, in person at any Texas Workforce Solutions office, or online at** www.texasworkforce.org/uiappeal. Mail or fax your signed letter to the TWC Appeals Department at the address or fax number on the front of this form. You must submit your appeal within **14 calendar days of the date** we mailed you this letter. The deadline is on the front of this form.

> **You MUST request payment** every two weeks, unless you return to full-time work. If the appeal is in your favor, we can pay you **only** for the weeks you requested payment and met all other eligibility requirements.

— If you **mail** your appeal, it must be **postmarked** on or before the deadline.

— If you submit your appeal online or by fax, TWC must **receive** it on or before the deadline. Print and keep the confirmation page as proof you sent it.

Include in your appeal letter:

— Your name, address, Social Security number (SSN).

— The date TWC mailed you the decision you want to appeal.

— Your request for translators, if needed, and the language you require.

— Your request for special services, if needed, such as an interpreter for the hearing-impaired.

**IMPORTANT:** If you miss the appeal deadline, your appeal letter **must** explain in detail why you submitted it late. If TWC decides **not** to hear the case because you appealed late, we will mail you a decision that you may appeal.

## Appeal Tribunal Hearing

The first appeal level is a telephone hearing with the Appeal Tribunal (AT). The AT hearing consists of oral statements given under oath. **Legal representation is optional** - someone can represent you, but TWC does not provide representation. **You may call witnesses.** Your employer may also appeal and participate in your hearing.

**Keep your mailing address current.** We will **mail** you the AT decision. It is important that you **participate in the AT hearing** because the hearing officer makes the decision solely on the testimony given at the hearing. If you cannot participate at the scheduled time, call the hearing officer at the number listed on the hearing notice.

To prepare for your hearing, see **How to Appeal a Decision** at www.texasworkforce.org/uiappeal.

**Date and Time.** We will mail you and the employer a hearing notice packet with the date and time of your hearing. It will include instructions on submitting additional documents you want to present at the hearing. You must mail or fax copies of the additional documents to the employer and TWC **immediately** after receiving the hearing packet.

## Additional Appeals

If you disagree with the AT decision, you may submit a **Commission Appeal (CA)**. The Commission will rule on your case after reviewing the AT decision and listening to the recorded hearing. If you disagree with the CA decision, you may request a **Motion for Rehearing (MR) within 14 calendar** days of the mailing date of the CA decision. TWC will grant the MR if you can show **all** of these:

— important new information about your case;

— why the information could change the decision; and

— a compelling reason why you did not present the information earlier.

You may also appeal the CA decision to a **civil court** between 15 and 28 days after the date we mailed you the CA decision. You must complete an AT hearing and CA appeal before appealing to a civil court.

## For More Information

Go to ui.texasworkforce.org and select **Appeal Status** to view your appeal status, actions taken, appeal history, and more. Read more about **How to appeal a decision** at www.texasworkforce.org/unemploymentbenefits. Access the Internet for free at public libraries and Texas Workforce Solutions offices.

UI Support & Systems Service
TEXAS WORKFORCE COMMISSION
PO BOX 2211
MC ALLEN TX 78502-2211

## DETERMINATION ON PAYMENT OF UNEMPLOYMENT BENEFITS
Date Mailed:  March 18, 2022

ABEL GARZA
1806 BROOK LANE
KINGSVILLE TX 78363

Social Security Number: XXX-XX-8406
Employer: ETP LLC
As:
Employer Account No: 11-147414-1
All dates are shown in
month-day-year order.

### Decision

**Issue:** Validity of Claim-Initial Claim
**Decision:** Your claim is valid.
**Reason for Decision:** Our investigation found you were unemployed on the date you applied for benefits.
**Date of Approved Claim:** 02-20-22
**What you can do:** Continue to submit your payment requests and respond to any correspondence you receive from TWC.
**Law Reference:** Subsection 207.021(a)(2) of the Texas Unemployment Compensation Act.

### Understanding your Decision
If you receive a decision that says, "we cannot pay you benefits," it means there is a problem with your claim EVEN IF you have received other decisions for the same period that say, "we can pay you benefits." If even one decision for the same period says we cannot pay, you will not receive an unemployment payment for that period.
**To resolve issues on decisions you receive:**
1. Follow instructions on the notice(s); call the Tele-Center at 800-939-6631 if you have questions;
2. If the instructions tell you to "Report," call the Tele-Center at once;
3. If you disagree with a decision, file an appeal. Appeal each decision separately by the appeal deadline. If you fax your appeal, keep a confirmation sheet.
Your employer can appeal TWC's decision to pay benefits. TWC will notify you of any appeal hearing. If you do not participate, you may lose your benefits and have to repay benefits you received.

### Determination of Potential Chargeback for the Employer

### If You Disagree with this Decision

**If you disagree with this decision, you may appeal.  Submit your appeal by mail, fax, online, or in person at any Texas Workforce Solutions office, on or before  04-01-22  .**

TWC will use the postmark date, or the date we receive the fax or online form, to determine whether you submitted your appeal on time.  If you appeal by fax, you should keep your fax confirmation as proof you sent it.   Please include a copy of this determination notice with your appeals correspondence.

**If you receive multiple determination notices, you must appeal each determination separately.**

Mail the appeal to:

You may appeal by submitting TWC's online appeal form. Go to www.texasworkforce.org/uiappeal

Appeal Tribunal
Texas Workforce Commission
101 E. 15th Street
Austin, TX 78778-0002
Or fax to (512) 475-1135

| Case No.: | 3 |
| Claim ID.: | 02-20-22 |
| Claim Date: | 02-20-22 |
| HEARING IMPAIRED CLIENTS CALL 711 for RELAY TEXAS | |

**Please See Reverse For How To File An Appeal.**
BD300E 02/28/2018

AG - 001272

**Appendix 352**

## How to Request an Appeal

**Submit your appeal by mail, fax, in person at any Texas Workforce Solutions office, or online at** www.texasworkforce.org/uiappeal. Mail or fax your signed letter to the TWC Appeals Department at the address or fax number on the front of this form. You must submit your appeal within **14 calendar days of the date** we mailed you this letter. The deadline is on the front of this form.

> **You MUST request payment** every two weeks, unless you return to full-time work. If the appeal is in your favor, we can pay you **only** for the weeks you requested payment and met all other eligibility requirements.

— If you **mail** your appeal, it must be **postmarked** on or before the deadline.
— If you submit your appeal online or by fax, TWC must **receive** it on or before the deadline. Print and keep the confirmation page as proof you sent it.

**Include in your appeal letter:**

— Your name, address, Social Security number (SSN).
— The date TWC mailed you the decision you want to appeal.
— Your request for translators, if needed, and the language you require.
— Your request for special services, if needed, such as an interpreter for the hearing-impaired.

**IMPORTANT:** If you miss the appeal deadline, your appeal letter **must** explain in detail why you submitted it late. If TWC decides **not** to hear the case because you appealed late, we will mail you a decision that you may appeal.

## Appeal Tribunal Hearing

The first appeal level is a telephone hearing with the Appeal Tribunal (AT). The AT hearing consists of oral statements given under oath. **Legal representation is optional** - someone can represent you, but TWC does not provide representation. **You may call witnesses.** Your employer may also appeal and participate in your hearing.

**Keep your mailing address current.** We will **mail** you the AT decision. It is important that you **participate in the AT hearing** because the hearing officer makes the decision solely on the testimony given at the hearing. If you cannot participate at the scheduled time, call the hearing officer at the number listed on the hearing notice.

To prepare for your hearing, see **How to Appeal a Decision** at www.texasworkforce.org/uiappeal.

**Date and Time.** We will mail you and the employer a hearing notice packet with the date and time of your hearing. It will include instructions on submitting additional documents you want to present at the hearing. You must mail or fax copies of the additional documents to the employer and TWC **immediately** after receiving the hearing packet.

## Additional Appeals

If you disagree with the AT decision, you may submit a **Commission Appeal (CA)**. The Commission will rule on your case after reviewing the AT decision and listening to the recorded hearing. If you disagree with the CA decision, you may request a **Motion for Rehearing (MR)** within **14 calendar** days of the mailing date of the CA decision. TWC will grant the MR if you can show **all** of these:

— important new information about your case;
— why the information could change the decision; and
— a compelling reason why you did not present the information earlier.

You may also appeal the CA decision to a **civil court** between 15 and 28 days after the date we mailed you the CA decision. You must complete an AT hearing and CA appeal before appealing to a civil court.

## For More Information

Go to ui.texasworkforce.org and select **Appeal Status** to view your appeal status, actions taken, appeal history, and more. Read more about **How to appeal a decision** at www.texasworkforce.org/unemploymentbenefits. Access the Internet for free at public libraries and Texas Workforce Solutions offices.

TEXAS WORKFORCE COMMISSION
PO BOX 2211
MC ALLEN TX 78502-2211

## DETERMINATION ON PAYMENT OF UNEMPLOYMENT BENEFITS
Date Mailed: March 28, 2022

ABEL GARZA
1806 BROOK LANE
KINGSVILLE TX 78363

Social Security Number: XXX-XX-8406
Employer: ETP LLC
As:
Employer Account No: 11-147414-1
All dates are shown in
month-day-year order.

### Decision

**Issue:** Ability-Cannot Perform Past Work
**Decision:** We can pay you benefits, if your job separation is not disqualifying and you meet all other weekly requirements such as being able, available, and actively searching for work.
**Reason for Decision:** Our investigation found that although you are not able to do the work you performed in the past, you have shown that you are looking for and able to perform other types of work.
**Law Reference:** Subsection 207.021(a)(3) of the Texas Unemployment Compensation Act.

#### Understanding your Decision
If you receive a decision that says, "we cannot pay you benefits," it means there is a problem with your claim EVEN IF you have received other decisions for the same period that say, "we can pay you benefits." If even one decision for the same period says we cannot pay, you will not receive an unemployment payment for that period.
**To resolve issues on decisions you receive:**
1. Follow instructions on the notice(s); call the Tele-Center at 800-939-6631 if you have questions;
2. If the instructions tell you to "Report," call the Tele-Center at once;
3. If you disagree with a decision, file an appeal. Appeal each decision separately by the appeal deadline. If you fax your appeal, keep a confirmation sheet.
Your employer can appeal TWC's decision to pay benefits. TWC will notify you of any appeal hearing. If you do not participate, you may lose your benefits and have to repay benefits you received.

### Determination of Potential Chargeback for the Employer

### If You Disagree with this Decision

**If you disagree with this decision, you may appeal. Submit your appeal by mail, fax, online, or in person at any Texas Workforce Solutions office, on or before 04-11-22 .**

TWC will use the postmark date, or the date we receive the fax or online form, to determine whether you submitted your appeal on time. If you appeal by fax, you should keep your fax confirmation as proof you sent it. Please include a copy of this determination notice with your appeals correspondence.

**If you receive multiple determination notices, you must appeal each determination separately.**

Mail the appeal to:

You may appeal by submitting
TWC's online appeal form. Go to
www.texasworkforce.org/uiappeal

Appeal Tribunal
Texas Workforce Commission
101 E. 15th Street
Austin, TX 78778-0002
Or fax to (512) 475-1135

| Case No.: | 3 |
| Claim I.D.: | 02-20-22 |
| Claim Date: | 02-20-22 |
| HEARING IMPAIRED CLIENTS |
| CALL 711 for RELAY TEXAS |

**Please See Reverse For How To File An Appeal.**
BD300E 02/28/2018

AG - 001274

## How to Request an Appeal

**Submit your appeal by mail, fax, in person at any Texas Workforce Solutions office, or online at** www.texasworkforce.org/uiappeal. Mail or fax your signed letter to the TWC Appeals Department at the address or fax number on the front of this form. You must submit your appeal within **14 calendar days of the date** we mailed you this letter. The deadline is on the front of this form.

> **You MUST request payment** every two weeks, unless you return to full-time work. If the appeal is in your favor, we can pay you **only** for the weeks you requested payment and met all other eligibility requirements.

— If you **mail** your appeal, it must be **postmarked** on or before the deadline.

— If you submit your appeal online or by fax, TWC must **receive** it on or before the deadline. Print and keep the confirmation page as proof you sent it.

**Include in your appeal letter:**

— Your name, address, Social Security number (SSN).

— The date TWC mailed you the decision you want to appeal.

— Your request for translators, if needed, and the language you require.

— Your request for special services, if needed, such as an interpreter for the hearing-impaired.

**IMPORTANT:** If you miss the appeal deadline, your appeal letter **must** explain in detail why you submitted it late. If TWC decides **not** to hear the case because you appealed late, we will mail you a decision that you may appeal.

## Appeal Tribunal Hearing

The first appeal level is a telephone hearing with the Appeal Tribunal (AT). The AT hearing consists of oral statements given under oath. **Legal representation is optional** - someone can represent you, but TWC does not provide representation. **You may call witnesses.** Your employer may also appeal and participate in your hearing.

**Keep your mailing address current.** We will **mail** you the AT decision. It is important that you **participate in the AT hearing** because the hearing officer makes the decision solely on the testimony given at the hearing. If you cannot participate at the scheduled time, call the hearing officer at the number listed on the hearing notice.

To prepare for your hearing, see **How to Appeal a Decision** at www.texasworkforce.org/uiappeal.

**Date and Time.** We will mail you and the employer a hearing notice packet with the date and time of your hearing. It will include instructions on submitting additional documents you want to present at the hearing. You must mail or fax copies of the additional documents to the employer and TWC **immediately** after receiving the hearing packet.

## Additional Appeals

If you disagree with the AT decision, you may submit a **Commission Appeal (CA)**. The Commission will rule on your case after reviewing the AT decision and listening to the recorded hearing. If you disagree with the CA decision, you may request a **Motion for Rehearing (MR) within 14 calendar days** of the mailing date of the CA decision. TWC will grant the MR if you can show **all** of these:

— important new information about your case;

— why the information could change the decision; and

— a compelling reason why you did not present the information earlier.

You may also appeal the CA decision to a **civil court** between 15 and 28 days after the date we mailed you the CA decision. You must complete an AT hearing and CA appeal before appealing to a civil court.

## For More Information

Go to ui.texasworkforce.org and select **Appeal Status** to view your appeal status, actions taken, appeal history, and more. Read more about **How to appeal a decision** at www.texasworkforce.org/unemploymentbenefits. Access the Internet for free at public libraries and Texas Workforce Solutions offices.

BD300F  03/02/2018

AG - 001275

**Appendix 355**

TEXAS WORKFORCE COMMISSION
PO BOX 2211
MC ALLEN TX 78502-2211

## DETERMINATION ON PAYMENT OF UNEMPLOYMENT BENEFITS
Date Mailed:   March 24, 2022

ABEL GARZA
1806 BROOK LANE
KINGSVILLE TX 78363

Social Security Number: XXX-XX-8406
Employer: ENERGY TRANSFER PART
As:
Employer Account No: 11-147414-1
All dates are shown in
month-day-year order.

### Decision

**Issue:** Ability-Personal Illness
**Decision:** We can pay you benefits if your job separation is not disqualifying and you meet all other weekly requirements such as being able, available and actively searching for work.
**Reason for Decision:** Our investigation found you are able to work.
**Law Reference:** Subsection 207.021(a)(3) of the Texas Unemployment Compensation Act.

#### Understanding your Decision
If you receive a decision that says, "we cannot pay you benefits," it means there is a problem with your claim EVEN IF you have received other decisions for the same period that say, "we can pay you benefits." If even one decision for the same period says we cannot pay, you will not receive an unemployment payment for that period.
**To resolve issues on decisions you receive:**
1. Follow instructions on the notice(s); call the Tele-Center at 800-939-6631 if you have questions;
2. If the instructions tell you to "Report," call the Tele-Center at once;
3. If you disagree with a decision, file an appeal. Appeal each decision separately by the appeal deadline. If you fax your appeal, keep a confirmation sheet.
Your employer can appeal TWC's decision to pay benefits. TWC will notify you of any appeal hearing. If you do not participate, you may lose your benefits and have to repay benefits you received.

### Determination of Potential Chargeback for the Employer

Chargeback does not apply to this decision since it does not involve a separation from last work.

### If You Disagree with this Decision

**If you disagree with this decision, you may appeal. Submit your appeal by mail, fax, online, or in person at any Texas Workforce Solutions office, on or before   04-07-22   .**

TWC will use the postmark date, or the date we receive the fax or online form, to determine whether you submitted your appeal on time. If you appeal by fax, you should keep your fax confirmation as proof you sent it.   Please include a copy of this determination notice with your appeals correspondence.

**If you receive multiple determination notices, you must appeal each determination separately.**

Mail the appeal to:

You may appeal by submitting TWC's online  appeal form. Go to www.texasworkforce.org/uiappeal

Appeal Tribunal
Texas Workforce Commission
101 E. 15th Street
Austin, TX 78778-0002
Or fax to (512) 475-1135

| Case No.: | 3 |
| Claim ID.: | 02-20-22 |
| Claim Date: | 02-20-22 |
| HEARING IMPAIRED CLIENTS CALL 711 for RELAY TEXAS | |

**Please See Reverse For How To File An Appeal.**
BD300E 02/28/2018

AG - 001276

**Appendix 356**

## How to Request an Appeal

**Submit your appeal by mail, fax, in person at any Texas Workforce Solutions office, or online at** www.texasworkforce.org/uiappeal. Mail or fax your signed letter to the TWC Appeals Department at the address or fax number on the front of this form. You must submit your appeal within **14 calendar days of the date** we mailed you this letter. The deadline is on the front of this form.

> **You MUST request payment** every two weeks, unless you return to full-time work. If the appeal is in your favor, we can pay you **only** for the weeks you requested payment and met all other eligibility requirements.

— If you **mail** your appeal, it must be **postmarked** on or before the deadline.
— If you submit your appeal online or by fax, TWC must **receive** it on or before the deadline. Print and keep the confirmation page as proof you sent it.

**Include in your appeal letter:**

— Your name, address, Social Security number (SSN).
— The date TWC mailed you the decision you want to appeal.
— Your request for translators, if needed, and the language you require.
— Your request for special services, if needed, such as an interpreter for the hearing-impaired.

**IMPORTANT:** If you miss the appeal deadline, your appeal letter **must** explain in detail why you submitted it late. If TWC decides **not** to hear the case because you appealed late, we will mail you a decision that you may appeal.

## Appeal Tribunal Hearing

The first appeal level is a telephone hearing with the Appeal Tribunal (AT). The AT hearing consists of oral statements given under oath. **Legal representation is optional** - someone can represent you, but TWC does not provide representation. **You may call witnesses.** Your employer may also appeal and participate in your hearing.

**Keep your mailing address current.** We will mail you the AT decision. It is important that you **participate in the AT hearing** because the hearing officer makes the decision solely on the testimony given at the hearing. If you cannot participate at the scheduled time, call the hearing officer at the number listed on the hearing notice.

To prepare for your hearing, see **How to Appeal a Decision** at www.texasworkforce.org/uiappeal.

**Date and Time.** We will mail you and the employer a hearing notice packet with the date and time of your hearing. It will include instructions on submitting additional documents you want to present at the hearing. You must mail or fax copies of the additional documents to the employer and TWC **immediately** after receiving the hearing packet.

## Additional Appeals

If you disagree with the AT decision, you may submit a **Commission Appeal (CA)**. The Commission will rule on your case after reviewing the AT decision and listening to the recorded hearing. If you disagree with the CA decision, you may request a **Motion for Rehearing (MR) within 14 calendar** days of the mailing date of the CA decision. TWC will grant the MR if you can show all of these:

— important new information about your case;
— why the information could change the decision; and
— a compelling reason why you did not present the information earlier.

You may also appeal the CA decision to a **civil court** between 15 and 28 days after the date we mailed you the CA decision. You must complete an AT hearing and CA appeal before appealing to a civil court.

## For More Information

Go to ui.texasworkforce.org and select **Appeal Status** to view your appeal status, actions taken, appeal history, and more. Read more about **How to appeal a decision** at www.texasworkforce.org/unemploymentbenefits. Access the Internet for free at public libraries and Texas Workforce Solutions offices.

TEXAS WORKFORCE COMMISSION
PO BOX 2211
MC ALLEN TX 78502-2211

## DETERMINATION ON PAYMENT OF UNEMPLOYMENT BENEFITS
Date Mailed:   March 22, 2022

ABEL GARZA
1806 BROOK LANE
KINGSVILLE TX 78363

Social Security Number: XXX-XX-8406
Employer: ETP LLC
As:
Employer Account No: 11-147414-1
All dates are shown in
month-day-year order.

### Decision

**Issue:** Validity of Claim-Backdating
**Decision:** We cannot approve your request to backdate your claim to 01-09-22
**Reason for Decision:** Our investigation found that you have not shown good cause for backdating your claim.
**Your claim is effective:** 02-20-22
**Law Reference:** Subsections 207.021(a)(2) and 208.001 of the Texas Unemployment Compensation Act.

#### Understanding your Decision
If you receive a decision that says, "we cannot pay you benefits," it means there is a problem with your claim EVEN IF you have received other decisions for the same period that say, "we can pay you benefits." If even one decision for the same period says we cannot pay, you will not receive an unemployment payment for that period.
**To resolve issues on decisions you receive:**
1. Follow instructions on the notice(s); call the Tele-Center at 800-939-6631 if you have questions;
2. If the instructions tell you to "Report," call the Tele-Center at once;
3. If you disagree with a decision, file an appeal. Appeal each decision separately by the appeal deadline. If you fax your appeal, keep a confirmation sheet.
Your employer can appeal TWC's decision to pay benefits.  TWC will notify you of any appeal hearing.  If you do not participate, you may lose your benefits and have to repay benefits you received.

### Determination of Potential Chargeback for the Employer

### If You Disagree with this Decision

If you disagree with this decision, you may appeal.  Submit your appeal by mail, fax, online, or in person at any Texas Workforce Solutions office, on or before **04-05-22**.

TWC will use the postmark date, or the date we receive the fax or online form, to determine whether you submitted your appeal on time.  If you appeal by fax, you should keep your fax confirmation as proof you sent it.   Please include a copy of this determination notice with your appeals correspondence.

**If you receive multiple determination notices, you must appeal each determination separately.**

Mail the appeal to:

Appeal Tribunal
Texas Workforce Commission
101 E. 15th Street
Austin, TX 78778-0002
Or fax to (512) 475-1135

You may appeal by submitting TWC's online appeal form. Go to www.texasworkforce.org/uiappeal

| Case No.: | 3 |
|---|---|
| Claim ID.: | 02-20-22 |
| Claim Date: | 02-20-22 |
| HEARING IMPAIRED CLIENTS CALL 711 for RELAY TEXAS | |

**Please See Reverse For How To File An Appeal.**
BD300E 02/28/2018

**Appendix 358**

AG - 001278

## How to Request an Appeal

Submit your appeal by mail, fax, in person at any Texas Workforce Solutions office, or online at www.texasworkforce.org/uiappeal. Mail or fax your signed letter to the TWC Appeals Department at the address or fax number on the front of this form. You must submit your appeal within **14 calendar days of the date** we mailed you this letter. The deadline is on the front of this form.

> You MUST request payment every two weeks, unless you return to full-time work. If the appeal is in your favor, we can pay you only for the weeks you requested payment and met all other eligibility requirements.

— If you **mail** your appeal, it must be **postmarked** on or before the deadline.

— If you submit your appeal online or by fax, TWC must **receive** it on or before the deadline. Print and keep the confirmation page as proof you sent it.

**Include in your appeal letter:**

— Your name, address, Social Security number (SSN).

— The date TWC mailed you the decision you want to appeal.

— Your request for translators, if needed, and the language you require.

— Your request for special services, if needed, such as an interpreter for the hearing-impaired.

**IMPORTANT:** If you miss the appeal deadline, your appeal letter **must** explain in detail why you submitted it late. If TWC decides **not** to hear the case because you appealed late, we will mail you a decision that you may appeal.

## Appeal Tribunal Hearing

The first appeal level is a telephone hearing with the Appeal Tribunal (AT). The AT hearing consists of oral statements given under oath. **Legal representation is optional** - someone can represent you, but TWC does not provide representation. **You may call witnesses.** Your employer may also appeal and participate in your hearing.

**Keep your mailing address current.** We will mail you the AT decision. It is important that you **participate in the AT hearing** because the hearing officer makes the decision solely on the testimony given at the hearing. If you cannot participate at the scheduled time, call the hearing officer at the number listed on the hearing notice.

To prepare for your hearing, see **How to Appeal a Decision** at www.texasworkforce.org/uiappeal.

**Date and Time.** We will mail you and the employer a hearing notice packet with the date and time of your hearing. It will include instructions on submitting additional documents you want to present at the hearing. You must mail or fax copies of the additional documents to the employer and TWC **immediately** after receiving the hearing packet.

## Additional Appeals

If you disagree with the AT decision, you may submit a **Commission Appeal (CA).** The Commission will rule on your case after reviewing the AT decision and listening to the recorded hearing. If you disagree with the CA decision, you may request a **Motion for Rehearing (MR) within 14 calendar** days of the mailing date of the CA decision. TWC will grant the MR if you can show **all** of these:

— important new information about your case;

— why the information could change the decision; and

— a compelling reason why you did not present the information earlier.

You may also appeal the CA decision to a **civil court** between 15 and 28 days after the date we mailed you the CA decision. You must complete an AT hearing and CA appeal before appealing to a civil court.

## For More Information

Go to ui.texasworkforce.org and select **Appeal Status** to view your appeal status, actions taken, appeal history, and more. Read more about **How to appeal a decision** at www.texasworkforce.org/unemploymentbenefits. Access the Internet for free at public libraries and Texas Workforce Solutions offices.

BD300F 03/02/2018

AG - 001279

Message

**From:** Garza, Robert [Robert.Garza@energytransfer.com]
**Sent:** 3/18/2022 8:19:38 PM
**To:** De La Vega, Raymond [Raymond.DeLaVega@energytransfer.com]
**Subject:** FW: LTD- Mar 18

Raymond
Hope all is well. This was forwarded to me. I'm not sure what this means to me. Can I replace him now?
Thanks



**Robert L. Garza**
Sr Manager
Plant Operations
King Ranch Gas Plant
Energy Transfer

**office:** 361-595-9214
**cell:** 361-318-8267

**From:** Pena, Noe <Noe.Pena@energytransfer.com>
**Sent:** Friday, March 18, 2022 7:43 PM
**To:** Garza, Robert <Robert.Garza@energytransfer.com>
**Subject:** FW: LTD- Mar 18

FYI

**From:** Abel Garza <abel.garza12@gmail.com>
**Sent:** Friday, March 18, 2022 7:27 PM
**To:** Pena, Noe <Noe.Pena@energytransfer.com>
**Subject:** LTD- Mar 18

Noe,

I am just checking in to see if anything has changed. I was approved for unemployment.

Regards,
Abel



EXHIBIT
54

ETP 000330

 ENERGY TRANSFER

April 20, 2022

Abel Garza
1806 Brook Lane
Kingsville, TX 78363

      RE:   Accommodation Request

Dear Abel,

I am writing in response to your request for one or more workplace accommodations.

As you know, you have currently been out of work since July 5, 2021. Since that time, you have received Company-provided Short-Term Disability (STD) benefits which were extended through January 6, 2022. While you have been on leave, the Company has been in the process of reviewing your request for workplace accommodations when you return to the office. Specifically, your request for movement to a more open, less restrictive environment; less noisy environment; more predictable environment; and to work with a coworker. Alternatively, you requested that the Company provide you with a reassignment to another position.

In response to your requests, the Company's contracted occupational health specialist spoke with and reviewed information from your treating physician. Your treating physician confirmed that you have had no medical changes since 2018 (a time during which you have been performing your current role); the only change has been your personal desire for another job. Your treating physician also confirmed that loud noises are not a problem for you, and that the more significant issue, again, is your personal desire for another job or, alternatively, to have a coworker assist you with your duties in your current position. Both doctors viewed your request to be based on personal preference rather than medical necessity. Based on this information, and absent a medical reason necessitating the requested job changes, the Company determined you were not eligible for the accommodations requested.

Even so, you were invited to provide additional information supporting your request, which you provided on or about November 15, 2021. The additional information stated in part that:

> ...the functional impairments Mr. Garza experiences as a result of environmental stress are at times personal [i.e., death of relatives; learning of family illnesses; important anniversary dates] and situational [difficulty functioning in work environment due to loud machinery, alarms, and sirens]. However, neither condition is mutually exclusive or exhaustive and elements of exposure or a combination therein are likely to exacerbate Mr. Garza's experience of positive and negative symptoms related to anxiety and posttraumatic stress disorder in all settings, limiting functional capacity as a result.

The supplemental information did not change the fact that you did not require, as a matter of medical necessity, the accommodations you requested. Specifically, the Company's contracted occupational health specialist noted that your treating physician offered no objective evidence to support that you have a new, or different health condition that would require accommodation. Further, the only way to



EXHIBIT

55

ETP 000011

objectively gauge your current psychological functioning and motivation is to have you complete a fitness for duty examination and battery of neuropsychic testing, the cost of which ranges from $2,000 to $4,000.   Your treating physician provided no medical records or evidence that any such comprehensive psychiatric testing has been performed through the VA system.

Nevertheless, in an attempt to find a solution, the Company spoke with your management about possible modifications in your current position. Unfortunately, given the nature of your Plant Operator A position and the operation of the King Ranch Plant where you work, the Company was unable to provide a more open, less restrictive, less noisy, and more predictable environment in your current position. To do so would require eliminating essential functions of your position or otherwise fundamentally changing the nature of your position and operation of the business. Therefore, we began to discuss with you the possibility of reassignment to a vacant position for which you are qualified.

Unfortunately, we discussed three positions at King Ranch with you – the warehouse position, shipping station operator position, and safety position, all of which remain either occupied or unavailable. However, even if the positions *were* available, they would not offer a more open, less restrictive, less noisy, and more predictable environment.

Likewise, the Warehouse Manager position opening in Victoria, TX that we discussed with you was cancelled in December, and the position is no longer available. Even if the position *was* available, the job requires work in a warehouse environment with loud noise and machinery, including the operation of a forklift. In addition, being on-call for emergencies is an obligatory and essential function of the job, therefore impacting the predictable environment you state you need.  As such, it appears this position would be inconsistent with your reported limitations.

Finally, the Recruiting position in Dallas, Houston, or San Antonio, TX that we discussed with you has already been filled. Even if the position was still available, it requires a bachelor's degree in a business-related field, which you do not have. Thus, you did not meet the qualifications for this position.

For the above-mentioned reasons, the Company is unable to provide you with the changes you have requested to your current job, or reassign you to the other positions identified.

At this point you have been out of work since July of 2021. You have exhausted all STD and Family Medical Leave benefits. You were denied Long-Term Disability benefits because Unum determined that you are not disabled from performing the material and substantial duties of your occupation. The Company has already provided you with over nine (9) months of leave (both paid and unpaid) and cannot extend your leave indefinitely. Thus, please let me know by Monday, April 25, 2022 if your job-related limitations have changed such that you have an interest in returning to your prior role. If so, we will make arrangements for you to return to work the following week. Otherwise, your employment with La Grange Acquisition, L.P. will end.

Sincerely,

ETP 000012

Clarissa Velasco
Supervisor – Leave Administration

Cc: Raymond De La Vega – Senior Manager – Human Resources

ETP 000013

**From:** Abel Garza <abel.garza12@gmail.com>
**Sent:** Monday, April 25, 2022 9:04:30 PM
**To:** Velasco, Clarissa <Clarissa.Velasco@energytransfer.com>
**Cc:** De La Vega, Raymond <Raymond.DeLaVega@energytransfer.com>
**Subject:** Accommodation Request

Ms. Velasco,

I have attached a response to the letter you sent me dated April 20, 2022. I don't understand what is going on with my official status with LaGrange Acquisition and Energy Transfer Partners because I was told that my employment would end once my Short Term Disability ended on January 6, 2022. And since I had not heard anything from you or anyone else until after I applied for unemployment, I continued thinking that I was terminated.

One important thing you forgot to mention in the letter is how I applied, interviewed, and was told I was being hired by Mr. Michael Johnson for the Safety Rep position in Freer, Tx. But after he spoke with Raymond De La Vega and Robert Garza, I was never contacted until 2 1/2 months later (two days before my STD was ending); and told I was not being hired.

I told you I wanted to apply for the Recruiter positions but you told me not to apply until you spoke with Raymond De La Vega....In fact you told me not to apply for any other positions because you felt the Safety Rep position would be a good accommodation for me. I understand one of the requirements is a bachelor degree for Recruiter but being that I was an existing employee and was in the U.S. Army Recruiting Command for over 10 years, I know an exception for that requirement could have been made.

Energy Transfer Partners has received tax breaks and has had contracts with the Federal Government so I believe with me being a service-connected disabled veteran, something could have been done to accommodate me.

This is all very confusing and disappointing that a company like Energy Transfer Partners would treat me (a disabled veteran) like this.


Respectfully,
Abel Garza
Disabled American Veteran



**Appendix 364**

Ms. Velasco,                                                            April 25, 2022

This is in response to my many requests for reasonable accommodation and your letter of April 20, 2022. You state in that letter that LaGrange Acquisition and Energy Transfer Partners are going to terminate my employment today, April 25, 2022, because of my service-related disability.

You also state that LaGrange Acquisition and Energy Transfer Partners will not accommodate my disability or my veteran status to keep me employed in available jobs I can perform.

In your letter, you state that my doctor, Dr. Waddell agreed with you. He did not. This is a partial transcript of my call with him last week after he read your April 20, 2022 letter:

> Abel Garza:
> I just received this letter through FedEx. I just emailed it to you. And I mean, I didn't know if you had time today, or tomorrow. I didn't know if you're going to be in tomorrow. But I have to give them an answer by Monday.
>
> Doctor:
> Okay.
> ...
> Oh geez. It's long.
>
> Abel Garza:
> Yeah. It's two pages....
>
> Doctor:
> ...What are they wanting a response to? That's what [inaudible].
>
> Abel Garza:
> Well, that's the thing is... Well
>
> Doctor:
> This is literally the same thing that they said before.
> ...
>
> Abel Garza:
> ...And then, they're saying 'treating physician confirmed that you have had no medical changes since 2018. And a time during which you have been performing your current role. The only change has been your personal desire for another job. Your treating physician also confirmed that loud noises are not a problem for you, and that the more significant issue again is your personal desire for another job, or alternatively to have a coworker assist you with your duties in your current position.'
>
> Doctor:
> Which is also not true.

ETP 001579

Abel Garza:
Right. And then, they're-

Doctor:
You have everything that I sent them.

Abel Garza:
Right. And they're talking about at the bottom of that first page and on top of the second page, they're talking about gauging my current psychological function and motivation. To have me complete a fitness for duty examination, battery of neuropsychic testing, the cost of which ranges from $2000 to $4000. So-

Doctor:
Okay. Hold on. Let me jump in. Right?

Abel Garza:
Okay.

Doctor:
A fitness for duty evaluation we don't do. And a neuropsych evaluation is not necessary.

Abel Garza:
I don't think none of this is necessary because I've been diagnosed and been getting treated by the VA. I'm rated now at 100%. So it's not like it's... They just said, "Hey, we're giving you this." I had to go through evaluations and exams and all this stuff to be diagnosed and to be getting treated.

Doctor:
Right. So here's the thing too. Right? They're literally stating one thing and then discrediting themselves in the same breath.

Abel Garza:
Right.

Doctor:
"The treating physician confirmed that you have had no medical changes. And during that time you're performing your current role. The only change is your personal desire for another job. Your treating physician also confirmed that loud noises are not a problem for you." That's not true because if you look at literally that paragraph they copied and pasted.

Abel Garza:
Mm-hmm (affirmative).

Doctor:

ETP 001580

"Emotional Impairment listed in regard to the experiences and role of environmental stress are at times personal." Whatever….

Abel Garza:
Right.

Doctor:
And situational difficulty functioning in environments to loud machinery, alarms, and sirens.

Abel Garza:
Right.

Doctor:
So it literally contradicts exactly what they said based on what I put in the letter.

Abel Garza:
Correct. And like you even state in there. It's situational, which I've been telling them from the beginning that when we have problems in my area, or in the plant itself, and it causes the alarms to go off. It causes the disruption of the boilers, and the flaring. That kicks in everything. So it's the situation that I'm in, in that specific area.

Doctor:
Yeah.

Abel Garza:
And they're just totally disregarding that stuff.

Doctor:
Yeah. So it's also saying your physician provided no medical records of evidence that any such comprehensive psychiatric testing has been informed through the VA system. It doesn't have to be.

Abel Garza:
There-

Doctor:
This is ridiculous.

Abel Garza:
And that's what I think. I don't know what ADA, Americans With Disability Act, they're following because from what I understand, if I'm a disabled person or have an illness, and I'm telling them that I have a problem. Okay. Yeah. They're going to say, "Well, we need proof that you have an illness or a disability." Well, we provided them with that. You've provided them with that. And yet they still want more, way and beyond, than what the law says that we have to provide them with.

ETP 001581

Doctor:
Right.

Abel Garza:
And-

Doctor:
So here, it says specifically the company's contract at Occupational Health Specialists noted that [myself] offered no objective evidence to support that you have a new or different health condition that would require an accommodation. But you provided them with a list of your service-connected disabilities.

Abel Garza:
Right.

Doctor:
Which general anxiety disorder is listed as a service-connected disability. So nothing further should need to be provided. We don't have to do site testing to be able to say that this condition is creating a limitation.

Abel Garza:
Right. And that's what I

Doctor:
This is just asinine.

Abel Garza:
Yeah. But no. I just wanted to hear you say that because I mean, from what I have read up on the ADA, like you're saying, they're contradicting themselves. And they're not going by those guidelines.

Doctor:
Yeah. Yeah. But ultimately, I would just give this to your attorney because I mean, they literally contradicted themselves in a matter of four sentences because they say it right above. And then they copy and pasted my very same response, which basically says that your impairment is limited due to loud or unexpected noises. So goodness gracious.

It is clear that LaGrange Acquisition and Energy Transfer Partners refuse to accommodate my service-related disability and are discriminating against me. I sure hope you reconsider. It is not right that you should put me out of a job because I have a disability that I have because of service to my country.

Abel Garza
Disabled American Veteran

ETP 001582

Message

| | |
|---|---|
| **From:** | Velasco, Clarissa [Clarissa.Velasco@energytransfer.com] |
| **Sent:** | 5/4/2022 5:42:48 PM |
| **To:** | De La Vega, Raymond [Raymond.DeLaVega@energytransfer.com] |
| **CC:** | Mailbox, Time [Time.Mailbox@energytransfer.com]; Granger, Kristi H [KRISTI.GRANGER@energytransfer.com]; Velasco, Clarissa [Clarissa.Velasco@energytransfer.com]; Mailbox, Leave Administrator [LeaveAdministrator.Mailbox@energytransfer.com] |
| **Subject:** | Abel Garza 00216524 - TERM PAF |

Please move forward with Abel Garza's PAF for term effective today, May 4, 2022 for failure to return from leave.

eTime shows 7/04/2021 as Abel's last day worked.

Thank you,



*Clarissa Velasco*
Supervisor - Benefits
Human Resources
Energy Transfer

office: 210.403.6441
fax: 210.403.6641

For **2021** claims, please contact UNUM at 1-877-463-2028 or www.unum.com. Plan ID 882077

This communication may contain confidential medical information that should only be shared with those with a need to know and only to the extent needed for business purposes. Any such information should not be disclosed to others without the permission of the sender.



ETP 000370

**Appendix 369**

**From:** Abel Garza <abel.garza12@gmail.com>
**Sent:** Tuesday, January 3, 2023 4:44 PM
**To:** Brown,Gina <gina.brown@twc.texas.gov>
**Subject:** Re: FW: Job Openings at the Corpus Christi Army Depot

**CAUTION:** Email not from TWC System. Use care when clicking links and opening attachments.

[Quoted text hidden]

**Abel Garza** <abel.garza12@gmail.com>                                    Tue, Jan 3. 2023 at 5:09 PM
To: "Brown,Gina" <gina.brown@twc.texas.gov>

Oh, Wow! That would be a great help to explain my situation. I will reach out to Karen and see if it is something she can help me with.

Thanks!
[Quoted text hidden]

**Abel Garza** <abel.garza12@gmail.com>                                    Wed, Jan 4, 2023 at 9:37 AM
To: "Brown,Gina" <gina.brown@twc.texas.gov>

Good morning Gina-

I just received a phone call from Mrs. Trina Trevino with TWC. She is sending my interview file to a recruiter with her recommendation to be hired.

She called me last night telling me that Energy Transfer was giving her the run around about answering question concerning my employment with them. She said if she did not talk with anyone who could answer her questions that she would probably have to move on with the next applicant.

I was very worried of losing my opportunity so I tracked down a former supervisor who was willing to speak with her. I called her after 9:00pm last night and gave her his information. She called him and was able to verify my employment with Energy Transfer and get her questions answered.

I can only imagine how many past opportunities I might have lost because Energy Transfer either said something negative or did not talk with anyone about my employment with them.

Praying this will finally leads to getting hired.

Regards,
Abel Garza
(361)455-3309
[Quoted text hidden]

**Brown,Gina** <gina.brown@twc.texas.gov>                                  Wed, Jan 4, 2023 at 10:02 AM
To: Abel Garza <abel.garza12@gmail.com>

Oh my goodness! Abel I'm so thankful your previous supervisor was willing and able to talk with Mrs. Trevino, praise the Lord! I am very excited for you praying this is the perfect position for you! TWC really is a blessing of an employer! It would be great to welcome you to the team!

Would you be working in the Workforce Solutions office (520 N staples)?

[Quoted text hidden]

**EXHIBIT**
**58**

AG - 001253

Message

| | |
|---|---|
| **From:** | Hansen, Curt [CAHansen@unum.com] |
| **Sent:** | 10/4/2021 9:28:37 AM |
| **To:** | Velasco, Clarissa [Clarissa.Velasco@energytransfer.com] |
| **CC:** | Willis, Jonathan [JWillis2@UNUM.COM]; NCE BCM Tracking [NCEBCMTracking@UNUM.COM]; NCE BCM Tracking [NCEBCMTracking@UNUM.COM]; NCE BCM Tracking [NCEBCMTracking@UNUM.COM] |
| **Subject:** | RE: STD - RTW Accommodation Philosophy |

Unum COVID-19 Response - Click here

How to File a Claim Online - Click here

Thanks Clarissa, yes this is the employee that started the conversation.  Please keep us updated on your final landing spot surrounding the ADA conversations.  Your experiences with the VA are unfortunately not uncommon.  Curt

**Curt Hansen**
Benefits Client Manager

**unum** We've Got U

**From:** Velasco, Clarissa <Clarissa.Velasco@energytransfer.com>
**Sent:** Monday, October 04, 2021 9:44 AM
**To:** Hansen, Curt <CAHansen@unum.com>
**Cc:** Willis, Jonathan <JWillis2@UNUM.COM>; NCE BCM Tracking <NCEBCMTracking@UNUM.COM>; NCE BCM Tracking <NCEBCMTracking@UNUM.COM>
**Subject:** RE: STD - RTW Accommodation Philosophy

I believe I know, Abel Garza?  If so, we are in the middle, actually nearing the end, of his ADA review.  Working with the VA has made this review a lengthy one.  It's been hard to get in touch with his provider.



*Clarissa Velasco*
Supervisor - Benefits
Human Resources
Energy Transfer

**office:** 210.403.6441
**fax:** 210.403.6641



EXHIBIT

59

For **2021** claims, please contact **UNUM** at 1-877-463-2028 or http://secure-
web.cisco.com/1RZwhHRg8hSH_hlGhGb2zAerDxZ_vJehl35Xf1UE7GRKdN2JUc31JE_pJLtDtnxNX9JOGuuxxbiUBOiQ2-
6g9RVRgWSgccF6nIcH8jrzwpft2mDzXfr51vrGUrYW3Q1YSzdAxq0ZeqGmY26tVxPqrWAH2hgDjDCwYTRGoGjmUAAjJNJVAHHR6gRxKr0i

MI0bM8r8NMGLsaQVb88zFz1gp_WkbYA5f5_sLabFLfmgSLSr-RjaJL-
9792Dnty3Z20WYsBjq9nRQyy5d_FhZnVz1jg/http%3A%2F%2Fwww.unum.com. Plan ID 882077

*This communication may contain confidential medical information that should only be shared with those with a need to know and only to the extent needed for business purposes. Any such information should not be disclosed to others without the permission of the sender.*

**From:** Hansen, Curt <CAHansen@unum.com>
**Sent:** Friday, October 1, 2021 3:03 PM
**To:** Velasco, Clarissa <Clarissa.Velasco@energytransfer.com>
**Cc:** Willis, Jonathan <JWillis2@UNUM.COM>; NCE BCM Tracking <NCEBCMTracking@UNUM.COM>; NCE BCM Tracking <NCEBCMTracking@UNUM.COM>
**Subject:** RE: STD - RTW Accommodation Philosophy

Unum COVID-19 Response - Click here

How to File a Claim Online - Click here

Thanks Clarissa, sounds like a plan.  Would you like more details on who this particular claimant is or not necessary for now until your team finalizes the RTW process for all positions?  Curt

**Curt Hansen**
Benefits Client Manager

**uɴʊm** We've Got U

**From:** Velasco, Clarissa <Clarissa.Velasco@energytransfer.com>
**Sent:** Thursday, September 30, 2021 4:41 PM
**To:** Hansen, Curt <CAHansen@unum.com>
**Cc:** Willis, Jonathan <JWillis2@UNUM.COM>; NCE BCM Tracking <NCEBCMTracking@UNUM.COM>
**Subject:** RE: STD - RTW Accommodation Philosophy

Hi Curt – Yes, I think providing more information or a list of what jobs go through what kind of RTW process will help. We are currently in the middle of finalizing our company wide RTW process.  Once it has been finalized, then I can provide that over to Unum.

As far as working accommodated is something we do review.  We use a company contracted physician to go through the ADA review.

Thanks,



**Appendix 372**

ETP 001544



*Clarissa Velasco*
Supervisor - Benefits
Human Resources
Energy Transfer

**office:** 210.403.6441
**fax:** 210.403.6641

For **2021** claims, please contact **UNUM** at 1-877-463-2028 or http://secure-web.cisco.com/10c2KH-to13gn_xIUmP4lI7oHXI_G4oBkWKf1p7NG8XXk3aQ7FOCjiS6hbRxXQqLCaD7rEGfKMy0J3-qUGyR6p-eERzYMSA-aMcIbe2nJ6CTKw0grFa_1et9Juhokn6Sd7ftP4YrjV_fNsqK1zYonGliTkm-NN6IbhSYlk50ej4jA0FVzZ8ZxxS31YM34I-y0dZ2a4hyYVlqvca9np_uwQB6BqSTxeqPXGQ-2DPOsRdnIW6_6CTr2BasNwsqTq2-3/http%3A%2F%2Fwww.unum.com. Plan ID 882077

**This communication may contain confidential medical information that should only be shared with those with a need to know and only to the extent needed for business purposes. Any such information should not be disclosed to others without the permission of the sender.**

**From:** Hansen, Curt <CAHansen@unum.com>
**Sent:** Thursday, September 30, 2021 1:19 PM
**To:** Velasco, Clarissa <Clarissa.Velasco@energytransfer.com>
**Cc:** Willis, Jonathan <JWillis2@UNUM.COM>; NCE BCM Tracking <NCEBCMTracking@UNUM.COM>
**Subject:** STD - RTW Accommodation Philosophy

CAUTION EXTERNAL EMAIL: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Unum COVID-19 Response - Click here

How to File a Claim Online - Click here

Hi Clarissa, I wanted to bring you into the loop on the email chain below and get your general thoughts on Energy Transfer's appetite for RTW accommodations. From my research, it appears that this will be evaluated on a case by case basis.

On the implementation notes document under Rehab Return to Work, there is a note that states 'Identify (employees) that have a special RTW requirements, will address during claim review process'.

I think it would be helpful to our claims team to have a general note about this topic for awareness. My sense there would extra scrutiny on this topic for safety sensitive roles, so maybe we should call those out in a process note on this topic as well.

Any thoughts to share on this topic more globally that we should documenting for the Energy Transfer account on disability RTW accommodations? Thanks for your thoughts. Curt

**Curt Hansen**
Benefits Client Manager

**unum** We've Got U

**From:** Willis, Jonathan <JWillis2@UNUM.COM>
**Sent:** Thursday, September 30, 2021 9:22 AM
**To:** Landry, Seneca <SLandry2@UNUM.COM>; Hansen, Curt <CAHansen@unum.com>
**Cc:** NCE BCM Tracking <NCEBCMTracking@UNUM.COM>
**Subject:** RE: Voc referral ET

Hey Seneca,

Great questions, I have not had much interaction with ET about RTW with accommodations. They do seem to want most employee's released full duty. In this scenario the employee has stated he is working with ER and ADA for RTW and it is a special scenario because he doesn't have physical restrictions. He needs to be able to work in a different area of the plant which doesn't have the environmental triggers. There is medical documentation where ADA has contacted the AP about his RTW info. Not sure if we would assist if ADA is already in process or not. I have looped in the BCM.

Curt,

What are your thoughts about reaching out to ET about a possible transition to RTW?

Thank you,

*Jonathan Willis*
*Senior Life Event Specialist*
*Unum Life Insurance Company of America*
*Phone:  1-800-858-6843 Extension: 49932*
*Fax   #:  1-800-447-2498*

*For information and resources regarding Unum's Covid-19 response and FAQs, visit Unum.com/Covid-19.*

**From:** Landry, Seneca <SLandry2@UNUM.COM>
**Sent:** Thursday, September 30, 2021 9:10 AM
**To:** Willis, Jonathan <JWillis2@UNUM.COM>
**Subject:** RE: Voc referral

Hi Jonathan,

Thanks so much for your email!
I haven't worked with this employer before, and am trying to determine if they are willing to review RTW accommodations. The CEV indicates yes, but it automatically will default to yes. Based on the SH entry, it looks like the EE may be in a safety sensitive occupation which would require an AP release to RTW. I'm not sure if this means they are able to accommodate or not, given they need a FFD and AP release. Do you have any insight on this account's RTW accommodations process?

Thank you,


Seneca Landry
Return to Work Specialist
Unum Life Insurance Company of America
Phone: 800-858-6843, Ext.58106
Fax: 800-447-2498
SLandry2@unum.com

**Appendix 374**

ETP 001546

**From:** Willis, Jonathan <JWillis2@UNUM.COM>
**Sent:** Thursday, September 30, 2021 8:16 AM
**To:** Landry, Seneca <SLandry2@UNUM.COM>
**Subject:** Voc referral

Claim # 19729353

Good morning Seneca,

I believe I have a good voc file for you. I just received the BH GPN on 9/29, AP is requesting VOC call to discuss RTW assistance. I do know the claimant has been working with his ER for ADA accommodations but there has been no update on this. Claimant does seem to want to go back to work when I talk to him but he cannot work in the area of his plant that he is currently in due to environmental triggers.

Thank you,

## Jonathan Willis
*Senior Life Event Specialist*
*Unum Life Insurance Company of America*
*Phone:  1-800-858-6843 Extension: 49932*
*Fax   #:  1-800-447-2498*

*For information and resources regarding Unum's Covid-19 response and FAQs, visit Unum.com/Covid-19.*

Private and confidential as detailed here. If you cannot access hyperlink, please e-mail sender.
Private and confidential as detailed here. If you cannot access hyperlink, please e-mail sender.

ETP 001547

**EXHIBIT**

60

EEOC Form 5 (11/09)

| SUPPLEMENTAL CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 460-2022-01689 |

| Texas Workforce Commission Civil Rights Division | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Abel Garza** | **(713) 574-9044** | **6/27/1969** |

| Street Address | City, State and ZIP Code |
|---|---|
| **c/o Charles H. Peckham, Peckham Martin, PLLC, 800 Bering Drive, Suite 220, Houston, Texas 77057** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others.  (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **Energy Transfer Partners** | **500+** | **210-403-6441** |

| Street Address | City, State and ZIP Code |
|---|---|
| **800 E. Sonterra, San Antonio, Texas 78258** | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **LaGrange Acquisitions LP.** | **500+** | **210-403-6441** |

| Street Address | City, State and ZIP Code |
|---|---|
| **1300 Main Street, Houston, Texas  77002** | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☒ AGE  ☒ DISABILITY  ☐ GENETIC INFORMATION
☒ OTHER (Specify) (Veteran Status)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: **April 2021**   Latest: **Present**

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br><br>SIGNATURE OF COMPLAINANT |
| 05 / 10 / 2022            *Abel Garza*<br>Date                        Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

AG - 000330
Doc ID: 398dcf7cf3550fc7ad048a2920387f0ffe4e45a5

EEOC Form 5 (11/09)

| SUPPLEMENTAL CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | FEPA | 460-2022-01689 |
| | X EEOC | |

| **Texas Workforce Commission Civil Rights Division** | and EEOC |
|---|---|
| *State or local Agency, if any* | |

I.    My name is Abel Garza.  This is a supplemental charge.
II.   On April 20, 2022, Energy Transfer told me I would be fired from La Grange Acquisition due to my service-related disability on April 25, 2022 because they would not accommodate my service-related disability (Ex. 11).
III.  I responded on April 25, 2022 (Ex. 12).
IV.   I was terminated from my employment on April 25, 2022.
V.    I am still able to work with available reasonable accommodations that are being refused me as a result of my Veterans' status, my service-related disability, and my age.
VI.   I have been discriminated against and retaliated against due to my disability, age, and Veteran status.
VII.  I have lost the rights and benefits of my employment in violation of Title VII of the Civil Rights Act of 1964 as amended, the ADA, USERRA and Chapter 21 of the Texas Labor Code.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| | SIGNATURE OF COMPLAINANT |
| 05 / 10 / 2022          *Abel Garza* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |
| Date               Charging Party Signature | |

 ENERGY TRANSFER

April 20, 2022

Abel Garza
1806 Brook Lane
Kingsville, TX 78363

RE:    Accommodation Request

Dear Abel,

I am writing in response to your request for one or more workplace accommodations.

As you know, you have currently been out of work since July 5, 2021. Since that time, you have received Company-provided Short-Term Disability (STD) benefits which were extended through January 6, 2022. While you have been on leave, the Company has been in the process of reviewing your request for workplace accommodations when you return to the office. Specifically, your request for movement to a more open, less restrictive environment; less noisy environment; more predictable environment; and to work with a coworker. Alternatively, you requested that the Company provide you with a reassignment to another position.

In response to your requests, the Company's contracted occupational health specialist spoke with and reviewed information from your treating physician. Your treating physician confirmed that you have had no medical changes since 2018 (a time during which you have been performing your current role); the only change has been your personal desire for another job. Your treating physician also confirmed that loud noises are not a problem for you, and that the more significant issue, again, is your personal desire for another job or, alternatively, to have a coworker assist you with your duties in your current position. Both doctors viewed your request to be based on personal preference rather than medical necessity. Based on this information, and absent a medical reason necessitating the requested job changes, the Company determined you were not eligible for the accommodations requested.

Even so, you were invited to provide additional information supporting your request, which you provided on or about November 15, 2021. The additional information stated in part that:

> ...the functional impairments Mr. Garza experiences as a result of environmental stress are at times personal [i.e., death of relatives; learning of family illnesses; important anniversary dates] and situational [difficulty functioning in work environment due to loud machinery, alarms, and sirens]. However, neither condition is mutually exclusive or exhaustive and elements of exposure or a combination therein are likely to exacerbate Mr. Garza's experience of positive and negative symptoms related to anxiety and posttraumatic stress disorder in all settings, limiting functional capacity as a result.

The supplemental information did not change the fact that you did not require, as a matter of medical necessity, the accommodations you requested. Specifically, the Company's contracted occupational health specialist noted that your treating physician offered no objective evidence to support that you have a new, or different health condition that would require accommodation. Further, the only way to



EXHIBIT
11

objectively gauge your current psychological functioning and motivation is to have you complete a fitness for duty examination and battery of neuropsychic testing, the cost of which ranges from $2,000 to $4,000.    Your treating physician provided no medical records or evidence that any such comprehensive psychiatric testing has been performed through the VA system.

Nevertheless, in an attempt to find a solution, the Company spoke with your management about possible modifications in your current position. Unfortunately, given the nature of your Plant Operator A position and the operation of the King Ranch Plant where you work, the Company was unable to provide a more open, less restrictive, less noisy, and more predictable environment in your current position. To do so would require eliminating essential functions of your position or otherwise fundamentally changing the nature of your position and operation of the business. Therefore, we began to discuss with you the possibility of reassignment to a vacant position for which you are qualified.

Unfortunately, we discussed three positions at King Ranch with you – the warehouse position, shipping station operator position, and safety position, all of which remain either occupied or unavailable. However, even if the positions *were* available, they would not offer a more open, less restrictive, less noisy, and more predictable environment.

Likewise, the Warehouse Manager position opening in Victoria, TX that we discussed with you was cancelled in December, and the position is no longer available. Even if the position *was* available, the job requires work in a warehouse environment with loud noise and machinery, including the operation of a forklift. In addition, being on-call for emergencies is an obligatory and essential function of the job, therefore impacting the predictable environment you state you need.    As such, it appears this position would be inconsistent with your reported limitations.

Finally, the Recruiting position in Dallas, Houston, or San Antonio, TX that we discussed with you has already been filled. Even if the position was still available, it requires a bachelor's degree in a business-related field, which you do not have. Thus, you did not meet the qualifications for this position.

For the above-mentioned reasons, the Company is unable to provide you with the changes you have requested to your current job, or reassign you to the other positions identified.

At this point you have been out of work since July of 2021. You have exhausted all STD and Family Medical Leave benefits. You were denied Long-Term Disability benefits because Unum determined that you are not disabled from performing the material and substantial duties of your occupation. The Company has already provided you with over nine (9) months of leave (both paid and unpaid) and cannot extend your leave indefinitely. Thus, please let me know by Monday, April 25, 2022 if your job-related limitations have changed such that you have an interest in returning to your prior role. If so, we will make arrangements for you to return to work the following week. Otherwise, your employment with La Grange Acquisition, L.P. will end.

Sincerely,

AG - 000333
Doc ID: 398dcf7cf3550fc7ad048a2920387f0ffe4e45a5

Clarissa Velasco
Supervisor   Leave Administration

Cc: Raymond De La Vega   Senior Manager   Human Resources

4:25/22  9:04 PM                                                    Gmail - Accommodation Request

 Gmail                                         Abel Garza <abel.garza12@gmail.com>

## Accommodation Request
1 message

**Abel Garza** <abel.garza12@gmail.com>                          Mon, Apr 25, 2022 at 9:04 PM
To: "Velasco, Clarissa" <clarissa.velasco@energytransfer.com>
Cc: raymond.delavega@energytransfer.com

Ms. Velasco,

I have attached a response to the letter you sent me dated April 20, 2022. I don't understand what is going on with my
official status with LaGrange Acquisition and Energy Transfer Partners because I was told that my employment would end
once my Short Term Disability ended on January 6, 2022. And since I had not heard anything from you or anyone else
until after I applied for unemployment, I continued thinking that I was terminated.

One important thing you forgot to mention in the letter is how I applied, interviewed, and was told I was being hired by Mr.
Michael Johnson for the Safety Rep position in Freer, Tx. But after he spoke with Raymond De La Vega and Robert
Garza, I was never contacted until 2 1/2 months later (two days before my STD was ending); and told I was not being
hired.

I told you I wanted to apply for the Recruiter positions but you told me not to apply until you spoke with Raymond De La
Vega....In fact you told me not to apply for any other positions because you felt the Safety Rep position would be a good
accommodation for me. I understand one of the requirements is a bachelor degree for Recruiter but being that I was an
existing employee and was in the U.S. Army Recruiting Command for over 10 years, I know an exception for that
requirement could have been made.

Energy Transfer Partners has received tax breaks and has had contracts with the Federal Government so I believe with
me being a service-connected disabled veteran, something could have been done to accommodate me.

This is all very confusing and disappointing that a company like Energy Transfer Partners would treat me (a disabled
veteran) like this.

Respectfully,
Abel Garza
Disabled American Veteran

📎 AbelGarzaApril252022.pdf
   1145K



EXHIBIT
12

https://mail.google.com/mail/u/0/?ik=16a1b2bb2f&view=pt&search=all&permthid=thread-a%3Ar6693500183266829014&simpl=msg-a%3Ar695477418   1/1

AG - 000335
Doc ID: 398dcf7cf3550fc7ad0484292038710f84845a5

Ms. Velasco,                                                               April 25, 2022

This is in response to my many requests for reasonable accommodation and your letter of April 20, 2022. You state in that letter that LaGrange Acquisition and Energy Transfer Partners are going to terminate my employment today, April 25, 2022, because of my service-related disability.

You also state that LaGrange Acquisition and Energy Transfer Partners will not accommodate my disability or my veteran status to keep me employed in available jobs I can perform.

In your letter, you state that my doctor, Dr. Waddell agreed with you. He did not. This is a partial transcript of my call with him last week after he read your April 20, 2022 letter:

> Abel Garza:
> I just received this letter through FedEx. I just emailed it to you. And I mean, I didn't know if you had time today, or tomorrow. I didn't know if you're going to be in tomorrow. But I have to give them an answer by Monday.
>
> Doctor:
> Okay.
> ...
> Oh geez. It's long.
>
> Abel Garza:
> Yeah. It's two pages....
>
> Doctor:
> ...What are they wanting a response to? That's what [inaudible].
>
> Abel Garza:
> Well, that's the thing is... Well
>
> Doctor:
> This is literally the same thing that they said before.
> ...
>
> Abel Garza:
> ...And then, they're saying 'treating physician confirmed that you have had no medical changes since 2018. And a time during which you have been performing your current role. The only change has been your personal desire for another job. Your treating physician also confirmed that loud noises are not a problem for you, and that the more significant issue again is your personal desire for another job, or alternatively to have a coworker assist you with your duties in your current position.'
>
> Doctor:
> Which is also not true.

Abel Garza:
Right. And then, they're-

Doctor:
You have everything that I sent them.

Abel Garza:
Right. And they're talking about at the bottom of that first page and on top of the second page, they're talking about gauging my current psychological function and motivation. To have me complete a fitness for duty examination, battery of neuropsychic testing, the cost of which ranges from $2000 to $4000. So-

Doctor:
Okay. Hold on. Let me jump in. Right?

Abel Garza:
Okay.

Doctor:
A fitness for duty evaluation, we don't do. And a neuropsych evaluation is not necessary.

Abel Garza:
I don't think none of this is necessary because I've been diagnosed and been getting treated by the VA. I'm rated now at 100%. So it's not like it's... They just said, "Hey, we're giving you this." I had to go through evaluations and exams and all this stuff to be diagnosed and to be getting treated.

Doctor:
Right. So here's the thing too. Right? They're literally stating one thing and then discrediting themselves in the same breath.

Abel Garza:
Right.

Doctor:
"The treating physician confirmed that you have had no medical changes. And during that time you're performing your current role. The only change is your personal desire for another job. Your treating physician also confirmed that loud noises are not a problem for you." That's not true because if you look at literally that paragraph they copied and pasted.

Abel Garza:
Mm-hmm (affirmative).

Doctor:

Doc ID: 398dcf7cf3550fc7ad048a292038770f/84e45a5

"Emotional Impairment listed in regard to the experiences and role of environmental stress are at times personal." Whatever....

Abel Garza:
Right.

Doctor:
And situational difficulty functioning in environments to loud machinery, alarms, and sirens.

Abel Garza:
Right.

Doctor:
So it literally contradicts exactly what they said based on what I put in the letter.

Abel Garza:
Correct. And like you even state in there. It's situational, which I've been telling them from the beginning that when we have problems in my area, or in the plant itself, and it causes the alarms to go off. It causes the disruption of the boilers, and the flaring. That kicks in everything. So it's the situation that I'm put in, in that specific area.

Doctor:
Yeah.

Abel Garza:
And they're just totally disregarding that stuff.

Doctor:
Yeah. So it's also saying your physician provided no medical records of evidence that any such comprehensive psychiatric testing has been informed through the VA system. It doesn't have to be.

Abel Garza:
There-

Doctor:
This is ridiculous.

Abel Garza:
And that's what I think. I don't know what ADA, Americans With Disability Act, they're following because from what I understand, if I'm a disabled person or have an illness, and I'm telling them that I have a problem. Okay, Yeah. They're going to say, "Well, we need proof that you have an illness or a disability." Well, we provided them with that. You've provided them with that. And yet they still want more, way and beyond, than what the law says that we have to provide them with.

Doctor:
Right.

Abel Garza:
And-

Doctor:
So here, it says specifically the company's contract at Occupational Health Specialists noted that [myself] offered no objective evidence to support that you have a new or different health condition that would require an accommodation. But you provided them with a list of your service-connected disabilities.

Abel Garza:
Right.

Doctor:
Which general anxiety disorder is listed as a service-connected disability. So nothing further should need to be provided. We don't have to do site testing to be able to say that this condition is creating a limitation.

Abel Garza:
Right. And that's what I

Doctor:
This is just asinine.

Abel Garza:
Yeah. But no. I just wanted to hear you say that because I mean, from what I have read up on the ADA, like you're saying, they're contradicting themselves. And they're not going by those guidelines.

Doctor:
Yeah. Yeah. But ultimately, I would just give this to your attorney because I mean, they literally contradicted themselves in a matter of four sentences because they say it right above. And then they copy and pasted my very same response, which basically says that your impairment is limited due to loud or unexpected noises. So goodness gracious.

It is clear that LaGrange Acquisition and Energy Transfer Partners refuse to accommodate my service-related disability and are discriminating against me. I sure hope you reconsider. It is not right that you should put me out of a job because I have a disability that I have because of service to my country.

Abel Garza
Disabled American Veteran

Doc ID: 398dcf7cf3550fc7ad0485252038f10fb4e45a5



EXHIBIT
6

EEOC Form 5 (11/09)

| SECOND SUPPLEMENTAL CHARGE OF DISCRIMINATION<br><br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| | ☐ FEPA | 460-2022-01689 |
| | ☒ EEOC | |

| **Texas Workforce Commission Civil Rights Division** | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(Indicate Mr., Ms., Mrs.)*<br>**Abel Garza** | Home Phone *(Incl. Area Code)*<br>**(713) 574-9044** | Date of Birth<br>**6/27/1969** |
|---|---|---|

| Street Address                City, State and ZIP Code |
|---|
| **c/o Charles H. Peckham, Peckham Martin, PLLC, 800 Bering Drive, Suite 220, Houston, Texas 77057** |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others.  *(If more than two, list under PARTICULARS below.)*

| Name<br>**Energy Transfer Partners** | No. Employees, Members<br>**500+** | Phone No. *(Include Area Code)*<br>**210-403-6441** |
|---|---|---|

| Street Address                City, State and ZIP Code |
|---|
| **800 E. Sonterra, San Antonio, Texas 78258** |

| Name<br>**LaGrange Acquisitions LP.** | No. Employees, Members<br>**500+** | Phone No. *(Include Area Code)*<br>**210-403-6441** |
|---|---|---|

| Street Address                City, State and ZIP Code |
|---|
| **1300 Main Street, Houston, Texas  77002** |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☒ AGE  ☒ DISABILITY  ☐ GENETIC INFORMATION
☒ OTHER (Specify)(Veteran Status)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **April 2021**   Latest **Present**

☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br><br>SIGNATURE OF COMPLAINANT |
| 05 / 12 / 2022            *Abel Garza*<br>Date            Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

Doc ID: a158d8dcb281a0979f56cab025b04c5c0774138c

EEOC Form 5 (11/09)

| SECOND SUPPLEMENTAL CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 460-2022-01689 |

| Texas Workforce Commission Civil Rights Division | and EEOC |
|---|---|
| State or local Agency, if any | |

I.   My name is Abel Garza. This is a second supplemental charge.

II.   On January 4, 2022, my attorney provided notice to Energy Transfer Partners of the filing of the EEOC Charge in the above Charge Number, and delivery was complete via email to several representatives of the Respondents, including but not limited to Clarissa Velasco and Raymond De La Vega (Ex. 13).

III.   It was Clarissa Velasco of Energy Transfer that told me I was fired from La Grange Acquisition due to my service-related disability on April 25, 2022 by letter cc'd to Raymond De La Vega (previously submitted Ex. 11).

IV.   I was terminated from my employment on April 25, 2022. It appears that this was effectuated by Clarissa Velasco and Raymond De La Vega, among others after they were well aware of my asserting that I have been discriminated against, denied accommodation, and had filed an EEOC Charge.

V.   I am still able to work with available reasonable accommodations that are being refused me as a result of my Veterans' status, my service-related disability, and my age.

VI.   I have been discriminated against and retaliated against due to my disability, age, and Veteran status as well as because I filed an EEOC Charge and asserted my rights under the provisions of these laws.

VII.   I have lost the rights and benefits of my employment in violation of Title VII of the Civil Rights Act of 1964 as amended, the ADA, USERRA and Chapter 21 of the Texas Labor Code.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br><br>SIGNATURE OF COMPLAINANT |
| 05 / 12 / 2022        *Abel Garza*<br>Date            Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) |

## Charles Peckham

| | |
|---|---|
| **From:** | Microsoft Outlook |
| **To:** | robert.garza@energytransfer.com; john.joiner@energytransfer.com; noe.pena@energytransfer.com; noe.pena@energytransfer.com; clarsissa.velasco@energytransfer.com; raymond.delavega@energytransfer.com |
| **Sent:** | Tuesday, January 4, 2022 3:43 PM |
| **Subject:** | Relayed: EEOC Charge – Abel Garza, Charging Party – Energy Transfer Partners, Respondent |

**Delivery to these recipients or groups is complete, but no delivery notification was sent by the destination server:**

robert.garza@energytransfer.com (robert.garza@energytransfer.com)

john.joiner@energytransfer.com (john.joiner@energytransfer.com)

noe.pena@energytransfer.com (noe.pena@energytransfer.com)

noe.pena@energytransfer.com (michael.johnson3@energytransfer.com)

clarsissa.velasco@energytransfer.com (clarsissa.velasco@energytransfer.com)

raymond.delavega@energytransfer.com (raymond.delavega@energytransfer.com)

Subject: EEOC Charge – Abel Garza, Charging Party – Energy Transfer Partners, Respondent



EXHIBIT
13

1

AG - 000342

## Charles Peckham

| From: | Charles Peckham |
|---|---|
| Sent: | Tuesday, January 4, 2022 3:43 PM |
| To: | robert.garza@energytransfer.com; john.joiner@energytransfer.com; noe.pena@energytransfer.com; noe.pena@energytransfer.com; michael.johnson3 @energytransfer.com; clarsissa.velasco@energytransfer.com; raymond.delavega@energytransfer.com |
| Cc: | Mary Martin; Bianca Rondon |
| Subject: | EEOC Charge - Abel Garza, Charging Party - Energy Transfer Partners, Respondent |
| Attachments: | Garza EEOC Charge w Exhibits 1-4-2022.pdf |

| Tracking: | Recipient | Read |
|---|---|---|
| | robert.garza@energytransfer.com | |
| | john.joiner@energytransfer.com | |
| | noe.pena@energytransfer.com | |
| | noe.pena@energytransfer.com | |
| | michael.johnson3@energytransfer.com | |
| | clarsissa.velasco@energytransfer.com | |
| | raymond.delavega@energytransfer.com | |
| | Mary Martin | |
| | Bianca Rondon | Read: 1/4/2022 3:44 PM |

Mr. Garza, Mr. Joiner, Mr. Pena, Mr. Johnson, Ms. Velasco and Mr. DeLaVega,

Please find attached an EEOC Charge of Discrimination filed today with the Equal Employment Opportunity Commission and the Texas Workforce Commission Civil Rights Division on behalf of Mr. Abel Garza.

You may wish to forward this to legal counsel for the company.

Thank you,

Charles Peckham

Charles H. Peckham, Partner
cpeckham@pmlaw-us.com

Board Certified in Labor and Employment Law
By the Texas Board of Legal Specialization



PECKHAM MARTIN

Peckham Martin, PLLC
Two Bering Park
800 Bering Drive, Suite 220
Houston, Texas 77057
(713) 574-9044 – Telephone
www.pmlaw-us.com

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | |

| Texas Workforce Commission Civil Rights Division | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(Indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Abel Garza** | **(713) 574-9044** | **6/27/1969** |

| Street Address | City, State and ZIP Code |
|---|---|
| **c/o Charles H. Peckham, Peckham Martin, PLLC, 800 Bering Drive, Suite 220, Houston, Texas 77057** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **Energy Transfer Partners** | **500+** | **210-403-6441** |

| Street Address | City, State and ZIP Code |
|---|---|
| **800 E. Sonterra, San Antonio, Texas 78258** | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **LaGrange Acquisitions LP.** | **500+** | **210-403-6441** |

| Street Address | City, State and ZIP Code |
|---|---|
| **1300 Main Street, Houston, Texas  77002** | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN
☒ RETALIATION   ☒ AGE   ☒ DISABILITY   ☐ GENETIC INFORMATION
☒ OTHER (Specify) (Veteran Status)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: **April 2021**   Latest: **Present**

☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 01 / 04 / 2022        *Abel Garza*<br>Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

Doc ID: 5f7c3ab76c2029a307b542b62631491ea4fe387

AG - 000344

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | |

| Texas Workforce Commission Civil Rights Division | and EEOC |
|---|---|
| State or local Agency, if any | |

I.       My name is Abel Garza. I was employed by Energy Transfer though my paychecks came from LaGrange Acquisitions. All HR functions are through Energy Transfer. I have been employed since July 2015 as a Plant Operator.

II.      I am over the age of 40 and am a disabled Veteran. As background, I served in the Army for just under 26 years. I served 12 years in the Army Reserves while working in law enforcement for the Nueces County Sheriff's Department. After that, I served approximately 13 years in the active Army. I was deployed during Desert Storm in Saudi Arabia, Bahrain, and Kuwait. I have also served in Belize, Guatemala, and Panama. I retired from the Army from my last duty station at Fort Knox, Kentucky in October 2012. While in the military, I served in Automated Logistics Management, Materials Management, Military Police Corrections, as a Nuclear, Biological, & Chemical Warfare Specialist, in Project Management, Operations Management, Public Affairs, Recruiting Management, and as a Military Occupational Specialty Training Instructor, and a Leadership Training Instructor.



III.      There is a long record of my disability, and my employer knows that I have a 70% service-related combined disability rating to include Generalized Anxiety Disorder-F41.1 (Exs. 1-3).

IV.      Because of my service-related disability, I experienced increasing anxiety in my workplace due to Boiler/Plant upsets, flaring, and the noise (alarms) in a contained area of the plant in which I worked (in the Powerhouse) as well as not having help when needed. Due to the worsening of my disability, I sought a reasonable accommodation (Ex 4).

V.      By letter of October 22, 2021, HR informed me that I would not be accommodated because my "conditions are primarily situational/family related" and "are temporary in nature". Of course, these are not true, and my doctor did not say they were. Further, even if true, these are not a legal reason to deny me a reasonable accommodation.

VI.      Then, when HR clearly realized this was not a legal basis on which to deny my accommodation, then sought to deny me an accommodation saying instead that no position I had identified would accommodate me because there was

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 01 / 04 / 2022    *Abel Garza* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| Date            Charging Party Signature | |

Doc ID: 5f7c3ab76c2029a307bAG-68000003454fe387

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | [ ] FEPA  [X] EEOC | |

| Texas Workforce Commission Civil Rights Division | and EEOC |
|---|---|
| *State or local Agency, if any* | |

no "more open, less restrictive, less noisy, and more predictable environment." (Ex. 6). Of course, this is also a falsehood.

VII.     One person actually working in one of the two Shipping Station positions (Hector) agreed that the position was accommodating, and the second spot in the position was open and available position (Ex. 7).

VIII.     Included among the potential accommodations sought was transfer to another location in the plant where the noise level was lower (no alarms), or transfer to another position. The positions that were available included in the same Plant were at the Shipping Station (under the same job title and job description) as described above, as a Safety Rep (the position was applied for in August 2021 — see below), and in the Warehouse (in the Plant area but with no alarms)(Ex. 8).

IX.     As to the Shipping Station, I was told that at the King Ranch location, this position was no longer going to have a long-term employee assigned there (Ex. 8). However, there were two long term employees assigned to this position; one retired leaving an open position and the other (Hector) remains in that position. Hector understands, as does my employer, that this was a separate assigned position and there was availability (See Ex. 7).

X.     As to the Warehouse position, I was told that due to cost savings, this empty position would not be filled. (Ex. 6). However, this position is a continued necessary position; with duties now assigned to other non-disabled persons.

XI.     As to the Safety Representative, the one in King Ranch I was told was filled and unavailable (Ex. 8).

XII.     I did apply for and was interviewed for a Safety Representative position in another location at a worksite nearby. Michael Johnson interviewed me for that position on October 1, 2021. I was asked on that day by Mr. Johnson if I could start working early on October 25, 2021 – being that I was already an employee of the company. He said he would get HR to fast track the process so that I could work with the person I was replacing through the end of the year and learn the area of operation. After being told I had the job, I asked Mr. Johnson if he knew about my earlier accommodation request. He said he had not but that because I was an inter-company transfer, he would contact my supervisor as a courtesy and would also talk to HR about it. He told me he would contact me the next week about my start date. Since the time he spoke to my supervisor and HR, Mr. Johnson had not responded to my emails, had refused my calls, and I had not been moved to this position though I was told I had been hired for it. This is both discriminatory and retaliatory. Then, *just today, January 4, 2022*, and two days before the expiration of my leave and my pending termination from employment, I received a call from Michael Johnson telling me that I was not being hired for the position (Ex. 9). This means that I have no time to seek any other position and that I am being set up for termination. It is clear that my employer purposefully undermined my hire to a position that would accommodate me because of my disability and in retaliation for seeking accommodations, my disability and Veteran status. The delay of two months since my approved hire to tell me I was no longer hired in a position that accommodated my disabilities was calculated to come so that it guaranteed my termination from employment (Ex. 10).

XIII.     Even though I had identified open and available positions that met my needed accommodations, I was told on November 23, 2021 and again on December 2, 2021 that no open positions were available to accommodate me which is not correct. (Exs 6, 7, 8, and 9).

XIV.     I had also been told that Energy Partners would be filling open spots with younger employees. Many positions had been filled with persons under the age of 40 and that were of people substantially younger.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.  SIGNATURE OF COMPLAINANT |
| 01 / 04 / 2022          *Abel Garza* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |
| Date          Charging Party Signature | |

Doc ID: 5f7c3ab76c2029a307b5f45b5868b013ae4fe387

AG - 000346

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974.  See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA   ☒ EEOC | |

| Texas Workforce Commission Civil Rights Division | and EEOC |
|---|---|
| State or local Agency, if any | |

XV.     Energy Partners is trying to create reasons to refuse to accommodate me with other available positions.  This is being done so that they can delay to January 6, 2022 and then terminate my employment by stating I had run out of time to find a position that would accommodate my disability (Ex. 10).

XVI.     I am able to work with available reasonable accommodations that are being refused me as a result of my Veterans' status, my service-related disability, and my age.  I am being set up for termination of my employment.

XVII.     I have been discriminated against and retaliated against due to my disability, age, and Veteran status.

XVIII.     I have lost the rights and benefits of my employment in violation of Title VII of the Civil Rights Act of 1964 as amended, the ADA, USERRA and Chapter 21 of the Texas Labor Code.

| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.   SIGNATURE OF COMPLAINANT |
| 01 / 04 / 2022                *Abel Garza*  _____   Date                          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |



DEPARTMENT OF VETERANS AFFAIRS
810 Vermont Ave NW
Washington, D.C. 20420

September 16, 2021

Abel Garza
1806 Brook Ln
Kingsville, TX 78363

In Reply Refer to:
xxx-xx-8406
27/eBenefits

Dear Mr. Garza:

This letter is a summary of benefits you currently receive from the Department of Veterans Affairs (VA). We are providing this letter to disabled Veterans to use in applying for benefits such as state or local property or vehicle tax relief, civil service preference, to obtain housing entitlements, free or reduced state park annual memberships, or any other program or entitlement in which verification of VA benefits is required. Please safeguard this important document. This letter is considered an official record of your VA entitlement.

Our records contain the following information:

## Personal Claim Information

Your VA claim number is: xxx-xx-8406

You are the Veteran.

## Military Information

Your most recent, verified periods of service (up to three) include:

| Branch of Service | Character of Service | Entered Active Duty | Released/Discharged |
|---|---|---|---|
| Army | Honorable | June 16, 1987 | October 14, 1987 |
| Army | Honorable | August 25, 1991 | February 22, 1992 |

(There may be additional periods of service not listed above.)

## VA Benefit Information

| | |
|---|---|
| You have one or more service-connected disabilities: | Yes |
| Your combined service-connected evaluation is: | 70% |
| You are considered to be totally and permanently disabled due solely to your service-connected disabilities: | No |

You should contact your state or local office of Veterans' affairs for information on any tax, license, or benefits for which you may be eligible. State offices of Veterans' affairs are available at http://www.va.gov/statedva.htm.



EXHIBIT
1

Doc ID: 5f7c3ab76c2029a30...   AG 000348

How You Can Contact Us

• If you need general information about benefits and eligibility, please visit us at https://www.ebenefits.va.gov or http://www.va.gov.

• Call us at 1-800-827-1000. If you use a Telecommunications Device for the Deaf (TDD), the number is 1-800-829-4833.

• Ask a question on the Internet at https://iris.custhelp.va.gov.

Sincerely,

Cheryl J Rawls
Assistant Deputy Under Secretary for Field Operations
Office of Outreach and Stakeholder Engagement

Doc ID: 5f7c3ab76c2029a307b4c6628600349fe387

---------------------------------------------------------------------
MEDICAL RECORD                                        Progress Notes
---------------------------------------------------------------------
NOTE DATED: 04/12/2021 10:21
LOCAL TITLE: BHIP THERAPIST TELEPHONE NOTE
STANDARD TITLE: TELEPHONE ENCOUNTER NOTE
VISIT: 04/12/2021 10:00 HCC BHIP 2 PSY 2 TELEPH-X
Clinical telephone contact with Veteran;
Length of telephone call: 30 minutes


Veteran Diagnosis:
Generalized Anxiety Disorder-F41.1


Reason for Contact:
Questions regarding reasonable accommodations


Intervention:
Provider discussed with the Veteran his request for a written statement
denoting reasonable accommodations for his employment. This provider discussed
what could be included on such a statement and to what degree information could
be provided relative to the Veteran's present condition within VHA guidelines.
Provider briefly reviewed content of the statement with Veteran. Veteran
conveyed understanding for what could be included in statement versus the
limitations. Provider explained when statement could be retrieved and how to
retrieve said statement.


Mental Status:
Veteran was alert and oriented x4; speech was WNL; mood was euthymic with a
congruent even affect; thought content and thought processes were WNL; veteran
denied presence of SI and HI; memory, attention, and concentration appeared
grossly intact.

Risk Assessment:
  No new risk factors relevant to suicide or homicide were reported.  Veteran
  did not appear to be at imminent risk of harm to self or others at this time.
  The Veteran specifically denied suicidal/homicidal thoughts, plan, or intent.

Plan:
Reach Veteran to determine follow-up appointment at later date.


                    Signed by: /es/ JEREMY MICHAEL WADDELL
                               Psychologist
                               04/12/2021 10:32

                                                        EXHIBIT
                                                           2

---------------------------------------------------------------------
GARZA, ABEL                          TVCBHCS          Printed:04/13/2021 12:55
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 DOB:06/27/1969    Pt Loc: OUTPATIENT                 Vice SF 509
---------------------------------------------------------------------

Doc ID: 5f7c3ab76c2029a307... AG-000350 ...4fe387

```
------------------------------------------------------------------------
MEDICAL RECORD                                            Progress Notes
------------------------------------------------------------------------
```
NOTE DATED: 04/12/2021 14:11
LOCAL TITLE: CHART REVIEW NOTE
STANDARD TITLE: OUTPATIENT INTERDISCIPLINARY NOTE
VISIT: 04/12/2021 10:00 HCC BHIP 2 PSY 2 TELEPH-X
Mr. Abel Garza is currently under my care for mental health treatment. Mr.
Garza is receiving treatment for Generalized Anxiety Disorder. The prognosis for
this aforementioned condition is contingent upon Mr. Garza being able to
sufficiently utilize and apply relevant coping skills in response to
subjectively perceived stressors. Inability to adequately implement such skills
when needed, is likely to aggravate the intensity of the symptoms related to his
condition. Mr. Garza has been under my care since March 02, 2020.

                    Signed by: /es/ JEREMY MICHAEL WADDELL
                               Psychologist
                               04/12/2021 14:19

```
------------------------------------------------------------------------
GARZA,ABEL                          TVCBHCS            Printed:04/13/2021 12:54
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 DOB:06/27/1969     Pt Loc: OUTPATIENT                  Vice SF 509
------------------------------------------------------------------------
```

Doc ID: 5f7c3ab76c2029a307f5c9b58b6b0d95a4fe387

AG 000351



U.S. Department of Veterans Affairs
VA Texas Valley Coastal Bend Healthcare System

To Whom It May Concern,

Mr. Abel Garza is currently under my care for mental health treatment and has been on a continuous basis since February of 2020. Mr. Garza has been receiving treatment for Generalized Anxiety Disorder and Posttraumatic Stress Disorder with VA Texas Valley Coastal Bend Health Care System, with initial contacts beginning in 2015. The prognosis for these aforementioned conditions is contingent upon Mr. Garza being able to sufficiently utilize and apply relevant coping skills in response to subjectively perceived stressors in his environment to include home, work, and recreational settings. A recent decision had been made regarding Mr. Garza's request for accommodations under the ADA pertaining to his workplace. The requested accommodations included movement to a less noisy, less restrictive, more predictable work environment, or potential reassignment to ensure Mr. Garza could return back to work in a full capacity. The denial of these requests were noted as personal and situational in nature. It is my professional opinion that the functional impairments Mr. Garza experiences as a result of environmental stress are at times personal [i.e. death of relatives; learning of family illnesses; important anniversary dates] and situational [difficulty functioning in work environment due to loud machinery, alarms, and sirens]. However, neither condition is mutually exclusive or exhaustive and elements of exposure or a combination therein are likely to exacerbate Mr. Garza's experience of positive and negative symptoms related to anxiety and posttraumatic stress disorder in all settings, limiting functional capacity as a result. I am hereby requesting that a re-evaluation be conducted regarding Mr. Garza's request for accommodations in the workplace. If any additional information is needed please do not hesitate to contact me by fax at 956-291-9828 or by phone at 956-291-9215 or 956-291-9214.

Regards,

Jeremy M. Waddell, PsyD, HSPP
Psychologist BHIP Team 2
VA Texas Valley Coastal Bend Health Care System
2601 Veterans Drive
Harlingen, TX 78550



U.S. Department of Veterans Affairs
VA Texas Valley Coastal Bend Health Care System

EXHIBIT
3

Doc ID: 5f7c3ab78c2029a3075... AG-00003524fe387

11/7/21, 6:32 PM

Gmail - ADA ACCOMMODATIONS

 Gmail

Abel Garza <abel.garza12@gmail.com>

## ADA ACCOMMODATIONS
4 messages

Garza, Abel <Abel.Garza@energytransfer.com>                                    Thu, Apr 1, 2021 at 10:44 AM
To: "Garza, Robert" <Robert.Garza@energytransfer.com>
Cc: "Velasco, Clarissa" <Clarissa.Velasco@energytransfer.com>, "De La Vega, Raymond" <Raymond.DeLaVega@energytransfer.com>, "abel.garza12@gmail.com"
<abel.garza12@gmail.com>

Good Morning-

I know it's been awhile since we spoke and I hope you are doing well. I have been thinking about my medical issues (disability) PTSD/Anxiety/Depression and remember you asking if there were any accommodations you could help me with. I would like to discuss possible accommodations or ideas with you whenever you have time. I believe that since working here at the Powerhouse part of being out sick is due to the loud noise and alarms. During times of a Plant Upset I get Flash Backs and bad Anxiety. I also have triggers I'm identifying outside of work and try to avoid them whenever possible. When I experience an injury, illness, and/or death (family, friends) it also affects me. And there have been numerous family and friends who have passed within the past year and a half.

I am under the medical care of the Veterans Administration and have scheduled appointments with Mental Health. I am also seen for sleep disorders, joint pain, gastrointestinal issues, and past injuries while serving in the Army during my 26 years. It's really difficult and frustrating at times because I have never been a type of employee who misses work as much as I have the past year and a half.

Some of the ideas to help me would be reassignment to another area of the Plant (Shipping Station). Not sure if going back to Process would be helpful as well but would be willing to try. Another suggestion is a position with Safety or anything else that is available. I would even be willing to consider a position with the Company outside of the Plant if there are any available. If no other positions are available and I have to stay here at the Powerhouse the other suggestion is having someone else working here at Powerhouse with me during times of bringing up a Boiler and making sure someone is here to help me if there are problems. I've had to light a boiler the night before and when you don't have someone who knows what they are doing to help it is a lot of work for one person; especially if you have medical issues that make your job harder.

If there is an Energy Transfer form that I need to fill out for this request please let me know. I'm just asking for a reasonable accommodation if possible and appreciate your time.

Respectfully,

AG - 000353

EXHIBIT
4

Doc ID: 517c3ab7622029a307b543b686814f01ae4fe387

11/7/21, 6:32 PM                                                Gmail - ADA ACCOMMODATIONS

Abel Garza

(361)455-3309

Private and confidential as detailed here. If you cannot access hyperlink, please e-mail sender.

Garza, Robert <Robert.Garza@energytransfer.com>                          Thu, Apr 1, 2021 at 11:12 AM
To: "Garza, Abel" <Abel.Garza@energytransfer.com>
Cc: "Velasco, Clarissa" <Clarissa.Velasco@energytransfer.com>, "De La Vega, Raymond" <Raymond.DeLaVega@energytransfer.com>, "abel.garza12@gmail.com"
<abel.garza12@gmail.com>

Hello Abel. I'm sorry you are having to go through this. Thank you for all of your years of service for our country. I will review my options and discuss them with HR
to try to get some type of resolution that will work for all parties involved.

Thanks and have a Blessed Easter weekend.

Robert Garza

Sr Manager – Operations

King Ranch Gas Plant

14 Miles West Hwy 141

PO Box 1150

Kingsville, Tx 78363

Office 361.595.9214

Cell 361.318.8267

 

(Quoted text hidden)
(Quoted text hidden)

Abel Garza <abel.garza12@gmail.com>                                      Fri, Oct 22, 2021 at 3:07 PM

https://mail.google.com/mail/u/0/?ik=16a1b2bb21&view=pt&search=all&permthid=thread-f%3A1695853434838656344&simpl=msg-f%3A1695853434838656344&simpl=msg-f%3A1695852312052107...   73

AG - 000354

Doc ID: 5f7c3ab76c2029a3076543b686814f01ae4fe387

 ENERGY TRANSFER

October 22, 2021

Abel Garza
1806 Brook Lane
Kingsville, TX 78363

      RE:   Accommodation Request

Dear Abel,

I am writing in response to your request for one or more workplace accommodations. Based upon the information you provided, your medical condition has caused you to request the following accommodations: movement to a more open, less restrictive environment; less noisy environment; more predictable environment; and to work with a coworker. Alternatively, you requested that the Company provide you with a reassignment to another position within the company. Unfortunately, after careful review of the information you provided, and the information your treating physician provided, the Company will be unable to provide you with the accommodations you have requested for the following reasons(s): Your medical provider confirmed that your conditions are primarily situational/family-related. Further, any medical conditions you have are temporary in nature, and your request for accommodations are based on personal desires with no medical reason necessitating such changes.

If you wish to provide additional information to support your request for an accommodation, please submit it to my attention and we would be glad to reevaluate your request.

The Company will ensure your medical documentation remains securely maintained and confidential and will share only with those who have a need-to-know. Please feel free to contact me at 210-403-6441 if you have any questions or concerns.

Sincerely,

Clarissa Velasco
Supervisor – Leave Administration

Cc: Raymond De La Vega – Senior Manager – Human Resources



Doc ID: 5f7c3ab76c2029a307b6d9b6806f03554fe387

AG-000355

 ENERGY TRANSFER

November 23, 2021

Abel Garza
1806 Brook Lane
Kingsville, TX 78363

RE:   Accommodation Request

Dear Abel,

I am writing in response to your request for one or more workplace accommodations.

As you know, you have currently been out of work on leave since 7/5/2021. Since that time, you have received Company-provided Short-Term Disability (STD) benefits which were recently extended through 12/20/2021. Although you have not been released to return to work, the Company has been in the process of reviewing your request for workplace accommodations. Specifically, your request for movement to a more open, less restrictive environment; less noisy environment; more predictable environment; and to work with a coworker. Alternatively, you have requested that the Company provide you with a reassignment to another position.

In response to your request the Company reviewed information from you and your treating physician. Additionally, the Company's contracted occupational health specialist spoke with your treating physician. Based on this information, the Company denied your accommodation request because your treating physician confirmed that your conditions were primarily situational/family-related, temporary, and that your request was based on personal desire with no medical reason necessitating such changes.

You accepted the Company's invitation to provide additional information supporting your request, which additional information was received on or about November 15, 2021. The additional information reiterates the need for the same accommodations and states in part that:

> ...the functional impairments Mr. Garza experiences as a result of environmental stress are at times personal [i.e., death of relatives; learning of family illnesses; important anniversary dates] and situational [difficulty functioning in work environment due to loud machinery, alarms, and sirens]. However, neither condition is mutually exclusive or exhaustive and elements of exposure or a combination therein are likely to exacerbate Mr. Garza's experience of positive and negative symptoms related to anxiety and posttraumatic stress disorder in all settings, limiting functional capacity as a result.

After reviewing the additional information, the Company spoke with your management about accommodating your restrictions in your current position. Given the nature of your Plant Operator A position and the operation of the King Ranch Plant where you work, the Company will be unable

EXHIBIT

Doc ID: 5f7c3ab76c2029...8807...e387   AG-000356

Plaintiff Appendix Pg. 152

to provide a more open, less restrictive, less noisy, and more predictable environment in your current position. To do so would create an undue hardship and require eliminating essential functions of your position or otherwise fundamentally changing the nature of your position and operation of the business.

Alternatively, the Company spoke with your management about reassignment to a vacant position. Unfortunately, the three positions that you inquired about – the warehouse position, shipping station operator position, and safety position – are not available. However, even if the positions were available, they would not offer a more open, less restrictive, less noisy, and more predictable environment. Thus, they would not be effective in removing the workplace barriers you have identified.

As stated before, I am available to discuss other possible forms of accommodation that would be effective in enabling you to perform the essential functions of your position. Please contact me as soon as possible at (210) 403-7325 or Clarissa Velasco at (210) 403-6441 so that we may explore other potential solutions.

Alternatively, if you are unable to return to work and need to extend your current leave using company-provided STD benefits or otherwise, please contact Clarissa Velasco as soon as possible at (210) 403-6441 to discuss.

Sincerely,

Amanda Gober
Sr. Manager, HR Administration

Cc: Raymond De La Vega – Senior Manager – Human Resources

| | |
|---|---|
| Hector: | I guess I'm doing all right. |
| Abel: | Yeah? How'd it go, y'all went to Austin, right, for Thanksgiving? |
| Hector: | Yeah. I could never remember we [inaudible] |
| Abel: | Oh, wow. Wow. |
| Hector: | We went down to Ontario real fast and stayed in a house. |
| Abel: | Oh nice. |
| Hector: | Yeah, it was pretty neat. |
| Abel: | Yeah. Well that's good. At least you got time to spend with your boy. |
| Hector: | Yeah, both of them. |
| Abel: | Oh, good. Good. Are they doing all right? |
| Hector: | Yeah. They should be coming down for Christmas. |
| Abel: | Good. Good. |
| Hector: | How about you guys? You doing okay? |
| Abel: | Yeah, man. I'm trying to hang in there. I got another letter from Energy Transfer. They denied my request for the accommodations again for the reevaluation, and then the letter they put on there that they cannot provide me with an accommodation because it'll be a hardship, an undue hardship. Because they're saying that even if they moved me to the shipping station, which they're saying there's no opening at the shipping station, there's no opening for the warehouse. And there's no opening for the safety position, which I applied for, and I interviewed for, and the director said he was going to hire me. And then after he spoke with management, with Robert [inaudible] and he spoke to HR, I'm sure they told him not to hire me because he never called me back. And they're saying that even if those positions were open, that the position is the same thing. It's the same thing as working at the powerhouse. |
| Hector: | No it's not. |
| Abel: | That's what I told him. |
| Hector: | It's not, the powerhouse is the most stressful. The [inaudible], it's a little bit stressful, when you're starting turbines, it's walking them. But after that it's no big deal. The bar harbor is constantly problematic. |



EXHIBIT
7

Doc ID: 5f7c3ab76c2029a307b1d5b63b0f6352e84fe387   AG 000358



This transcript was transcribed on Jan 04, 2022

Abel:        Well, see, and that's the thing is that I told him in the letter, because you know, you're kind of indoors. You're in the warehouse. And so the sound, the noise, is confined to inside. Because if you walk outside the powerhouse, there's a difference in the noise. And then when you have alarms going off and you have problems, that's where it makes it worse for me. You know? And I started already a while back, I started getting like ringing in my ears. Every so often I start hearing ringing in my ears and that's a sign that your hearing is starting to mess up a little bit, but I can still hear and stuff. I don't have problems with my hearing, but I start getting the...

Hector:      Yeah. The Tinnitus is not [inaudible].

Abel:        Right. So the thing is though, it's affecting me psychologically. And that's what I told them. I said, look, I got PTSD. I've been diagnosed with depression and anxiety. And there's things in the powerhouse, especially when we have problems that are triggering this. But man, it's like, they don't care. Hector, you know? It's like, they don't care at all.

Hector:      You try to get your doctor to get you an order.

Abel:        My doctor, because they quoted, supposedly they quoted on the letter, what my doctor told him and I sent the letter to my doctor so he could read it. And he is upset. He's mad because he said, I never told the contracted doctor that called me for your company, I never told him what they're saying on that letter. He said they're lying. You know, that's not true.

Hector:      They are. They're even lying about the position.

Abel:        Yes they are. Because you know what, Hector? The position that I applied for, the safety, it was open. I applied for it. I got called for an interview. I was told they were going to hire me. And then they say, no, there's no position. The position at the warehouse, [inaudible] retired, the position's open. But now all of a sudden they don't want to fill it. And the position at the shipping station, well Penny retired, and now all of a sudden, if I'm in, they don't want to fill it. And I'm qualified to work all the positions.

Hector:      [inaudible]

Abel:        Yeah. Yeah, the director told me, he said, out of almost 200 applicants, he's shows six people to interview. And he said, "I got your resume right here. And I want you to know that you're one of the six people that I chose. So that tells you something."

Hector:      For me, I can't stand this. I can't because of the stress we were under at the powerhouse when we had to run the powerhouse and the shipping and the [inaudible]. We had to run everything. And then I asked them, "Hey, can we silence the alarms?" And they denied them, "No, you cannot." And so, because of that, to this day, I can't stand working there.

Abel:        It affects you. It affects you.

Doc ID: 5f7c3ab76c2029a307b5f3b6862147f1ca4fe387
AG - 000359

This transcript was transcribed on Jan 04, 2022

Hector:      Most people that don't experience something like that, they don't understand, but
             there are doctors, but they all know [inaudible]

Abel:        Yeah. And I've already talked to somebody, but I don't want to go that route, man. I
             want them to do the right thing and resolve it. You know? I mean the right way.

Hector:      Well, you're wasting time, you're not going to get them to, they're not on your side.

Abel:        How long did you work at the powerhouse, Hector?

Hector:      Since the start of my career.

Abel:        And you were out there for what? Almost 40 years? 38 years?

Hector:      33 years. And I was an internee. And I know a lot of stuff, we been questioned the
             legality of running number five and we were convinced that we were [inaudible]. But
             still it was ridiculous.

Abel:        And every time they told us that we were going to have to bring up number five, I would
             start getting anxiety because man, Hector, they would have me out there by myself and
             they would tell me, "Oh, we're going to have somebody help you." And then I'd be stuck
             out there by myself. And you know, Cindy can't go and help. She doesn't know anything
             about the powerhouse. And she's slow, you know? And so I'm there by myself.

Hector:      I would go see a lawyer. You worked for [inaudible], right?

Abel:        Yeah.

Hector:      Well, you bring those two up and you'll get some attention.

Abel:        But it's crazy. They're not even taking the consideration, Hector, when I tell them, "Hey
             look, I was diagnosed with this coming out of the military. I was even being seen when I
             was in the military." And plus I have law enforcement background. So these alarms, I
             think it's because they're similar to some of the things that I experienced when I was in
             law enforcement and in the military. I don't know. I guess it's kind of hard to explain.

Hector:      I know exactly what you mean. When I hear the phone ring...

Abel:        Yeah, I understand.

Hector:      You can't, you can't function without a phone nowadays.

Abel:        Yeah. But no, I just wanted to give you an update, let you know what's going on. And
             you know, HR told me in the letter to call them. They denied my accommodations, but
             then at the end of the letter they tell me to call them, the manager, "Call me so we can
             discuss alternative options of accommodation." So I called her and I called the

Doc ID: 5f7c3ab76c2029a307b5f3b8964494ca4fe387
AG - 000360

This transcript was transcribed on Jan 04, 2022

|  |  |
|---|---|
|  | supervisor because she didn't answer. I left messages, I called them three times. They never returned my calls. |
| Hector: | They're just trying to make the time run out. So if I were you I'd quit messing around. If I would've done that way back, It'd be a whole lot different. I mean, I'm fine and I'm okay. But I would've put a stop to this issue. They're wrong, and they're crooked, and they're they're bending the rules. And they do all this shit and they don't give a damn about it. |
| Abel: | Yeah. And I was thinking about it, and remember Javier Getta? You know how he didn't want to work at the powerhouse? You remember that? |
| Hector: | Oh yeah. Yeah. |
| Abel: | And I'm thinking it's because he had anxiety and I think that it was affecting him that's why he didn't want to be over there. |
| Hector: | [inaudible] |
| Abel: | Oh see. |
| Hector: | Yeah. But he screwed me in a deal. |
| Abel: | Oh no. Oh, I remember. I remember you told me you went to go help him with something with AC or something. |
| Hector: | Yeah. I did an $800 job and he paid me like $80 and a hamburger. |
| Abel: | He forgot the zero. |
| Hector: | Yeah, but anyways. Just trying to be helpful and thought he would be appreciative. But anyway, I would seriously consider, just go get a lawyer and have your lawyer contact him. Once you tell somebody, because you're talking about big oil companies with deep pockets. So, and then they talk to your doctor, they talk to them, and just don't talk to them anymore. Let him handle it. It might take four or five years. But that way you have to figure out how to pay your bills and stuff like on your own, but eventually you'll come back. |
| Abel: | Yep. All right. I'm going to try calling them again probably tomorrow. See if they pick up the phone this time. And then I got somebody I'm talking to, so I'll let you know. |
| Hector: | Okay. Yeah because they're just playing games. They're just playing their corporate games and making the, what do you call it? Where the time runs out. They don't appreciate you. |
| Abel: | All right, Hector, I'll let you go. |
| Hector: | All right. We'll just hang in there. Take it easy. Enjoy, relax the best you can. |

Doc ID: 5f7c3ab76c2029a307b543b68631191ae4fe387
AG - 000361

This transcript was transcribed on Jan 04, 2022

Abel:          All right. Hector, take care. I'll talk to you later. All right, bye.

Garza – phone call 12/05/2021
Transcript by Rev.com

Page 5 of 5

Doc ID: 5f7c3ab76c2029a307b543b688914f01aa4fe387
AG - 000362

Plaintiff Appendix Pg. 158
Appendix 408

12/7/21  9:03 AM                                        Gmail - STD- Dec 2, 2021

 Gmail                                Abel Garza <abel.garza12@gmail.com>

## STD- Dec 2, 2021
3 messages

**Abel Garza** <abel.garza12@gmail.com>                      Thu, Dec 2, 2021 at 12:55 PM
To: "Pena, Noe" <noe.pena@energytransfer.com>
Cc: "Gober, Amanda" <amanda.gober@energytransfer.com>, "Velasco, Clarissa" <clarissa.velasco@energytransfer.com>,
"Garza, Robert" <Robert.Garza@energytransfer.com>

Noe,

   I am still continuing with my treatment plan as scheduled with my doctor. I received an email from Clarissa Velasco
concerning the ADA Accommodations Reevaluation and it was denied once again. I sent her an email and they are
offering to discuss possibilities of other accommodations to allow me the ability to return to work.

   I really don't understand why the positions at the Shipping Station, Warehouse, and Safety Rep are not being
considered as options since they are vacant and I am qualified. The environment for all three positions are very different
from working at the PowerHouse. All these positions are less noisy, no distinctive alarms, give me a more predictable
schedule, less restrictive, no confinement of constant loud noise, less environmental stress, and will allow me the ability
to utilize relevant coping skills. They all give me a more predictable work environment and will allow me to return to work
at full capacity.

   I am qualified to work all three of the positions I have requested as an accommodation. And being that I am a Disabled
Veteran, it is hard for me to believe that Energy Transfer will not take care of me as I am an employee who has worked for
the company for over 7 years.

Respectfully,
Abel

**Pena, Noe** <Noe.Pena@energytransfer.com>                   Thu, Dec 2, 2021 at 3:01 PM
To: Abel Garza <abel.garza12@gmail.com>
Cc: "Gober, Amanda" <amanda.gober@energytransfer.com>, "Velasco, Clarissa" <Clarissa.Velasco@energytransfer.com>,
"Garza, Robert" <Robert.Garza@energytransfer.com>

Hello Abel,

Thanks for providing an update on your STD.

Regards,

[Quoted text hidden]
Private and confidential as detailed here. If you cannot access hyperlink, please e-mail sender.

[EXHIBIT stamp]

**Garza, Robert** <Robert.Garza@energytransfer.com>          Tue, Dec 7, 2021 at 8:39 AM
To: "Pena, Noe" <Noe.Pena@energytransfer.com>, Abel Garza <abel.garza12@gmail.com>
Cc: "Gober, Amanda" <amanda.gober@energytransfer.com>, "Velasco, Clarissa" <Clarissa.Velasco@energytransfer.com>

Doc ID: 577c3ab76c2029a307   AG-000363

**Plaintiff Appendix Pg. 159**
**Appendix 409**



Robert L. Garza

Sr Manager

Plant Operations

King Ranch Gas Plant

Energy Transfer

office: 361-595-9214

cell: 361-318-8267

[Quoted text hidden]
[Quoted text hidden]

Doc ID: 5f7c3ab76c2029a3076c43b66824491ea4fe387

AG - 000364

Michael Johnson:

This is Mike Johnson. How are you, sir?

Abel Garza:

I'm all right. How about yourself?

Michael Johnson:

I'm doing well. Thank you, sir.

Abel Garza:

Good.

Michael Johnson:

Hey, I just wanted to give you a call. I made my selection on the safety interview position and elected to go with another individual. I just wanted to thank you for your interest and putting in for the position.

Abel Garza:

Yeah, I've been in contact with Clarissa Velasco at HR, because I hadn't heard back from you. I mean, I thought you had said you'd contact me the following week. You were going to try to fast track everything with HR since I was already an employee. I mean, I felt like the interview went well and that you were telling me I was hired for the job based on everything that we spoke about.

Abel Garza:

I didn't hear from you. So HR got with Raymond Villavega and he was supposed to call me, but I never got a call back from him. So, I mean, I didn't know what was going on.

Michael Johnson:

Right. No, of course, with the whole hiring process and everything, and the interviews took a little bit longer than expected and that's why I'm reaching out today.

Abel Garza:

I mean, I don't... I mean this just doesn't match up with what I was getting from you and what we discussed in the interview and after it was over. I just hope your decision wasn't based on what I discussed with you afterwards on my disability. Like I told you, that's nothing that would affect me doing that job. My-

Michael Johnson:

That had nothing to do with my decision. I selected the best candidate for the position.

Abel Garza:

Well... I don't know what to say, because that's not what I got from you that day, you know, the interview. That's not what was being said with what you were telling me, as far as my having a start date of October the 25th or November the 1st, and my background and how impressed you were. And you talking to HR about fast tracking everything and talking to my manager at the plant as a courtesy, since I

Garza – Johnson Phone Call of January 4, 2022   Transcript by Rev.com

EXHIBIT
9

Page 1 of 2

Doc ID: 5f7c3ab76c2029a307b543b68691410 1ae4fe387

AG - 000365

This transcript was transcribed on Jan 04, 2022.

had interviewed with you. That just doesn't match up. It doesn't sound right. I mean, I'm really disappointed.

Michael Johnson:

Okay, [crosstalk 00:03:00] Mr. Garza, I apologize. I do the same with all of my interviews and go through that process. That conversation could have had that... I know that I definitely stated if you were selected that we would look to be able to speed things up since you were an internal candidate. However, again, I hadn't made my decision at that time. So. Again, I just want to let you know that I selected someone else.

Abel Garza:

Let me ask you a question. The warehouse position that's available in Victoria, is that your area... for warehouse manager? No?

Michael Johnson:

I'm not over the warehouse fulfillment group.

Abel Garza:

Oh, okay. All right. All right, well, I appreciate your phone call.

Michael Johnson:

Yes, sir. Thank you.

Doc ID: 5f7c3ab76c2029a307b543b68861f51ae4fe387
AG - 000366

 ENERGY TRANSFER

November 2, 2021

Abel Garza
1806 Brook Lane
Kingsville, TX 78363

Dear Abel,

You are receiving this letter because you have been out on a leave of absence for at least 16 weeks and may be in the process of applying for Long Term Disability (LTD) benefits under the Energy Transfer Partners GP LP Long Term Disability Plan. This letter is to address certain issues regarding your employment status and group health benefits.

Energy Transfer Partners leave policy generally limits the period of employment for employees who are on an approved leave of absence, including medical leaves of absence, to generally no more than six (6) months. If an employee is unable or unwilling to return to work within six (6) months of commencing the leave, unless otherwise prohibited by applicable law, regulation, or the Company is able to reasonably accommodate an ADAA-protected disability by reasonably extending the leave or in some other manner, the employee's employment will be terminated. If you do want to explore the possibility of returning to work or whether the Company can reasonably accommodate an extension of your leave beyond six (6) months, please contact me at (210) 403-6441 as soon as possible.

Please be advised that if you have not returned to work or obtained approval from the Company for an extension of your medical leave of absence, your employment with the Company will be terminated as of <u>January 6, 2022</u>. Medical, dental and vision benefits will terminate at the end of the month employment is terminated.

If your employment is terminated, you will have the right to continued group health benefits under COBRA. The COBRA continuation period is generally eighteen (18) months. The Company does not subsidize COBRA coverage. If you choose to continue your group health, dental and/or vision benefits under COBRA, you will be responsible for the entire cost of any continuation coverage.

If you have any questions, please call me on (210) 403-6441.

Sincerely,

Clarissa Velasco
Supervisor-Benefits

cc: HR Rep

EXHIBIT
10

Doc ID: 5f7c3ab76c2029a307b543b6862d4f04ae4fe387
AG - 000367



## DEPARTMENT OF VETERANS AFFAIRS
### Veterans Benefits Administration
### Regional Office


### ABEL GARZA

### VA File Number
### 466 37 8406

### Represented By:
### VETERANS OF FOREIGN WARS OF THE US
### Rating Decision
### 03/11/2022


### INTRODUCTION

The records reflect that you are a Veteran of the Gulf War Era. You served in the Army from August 25, 1991 to February 22, 1992 and from June 9, 1999 to October 30, 2012. You filed a new claim for benefits that was received on December 1, 2021. Based on a review of the evidence listed below, we have made the following decision(s) on your claim.


### DECISION

1. Evaluation of gastroesophageal reflux disease (GERD) with nonalcoholic steatohepatitis (claimed as GERD fatty liver disease and fatty liver), which is currently 10 percent disabling, is increased to 60 percent effective December 1, 2021.

2. Evaluation of obstructive sleep apnea to include asthma (claimed as sleep apnea and asthma), which is currently 30 percent disabling, is increased to 50 percent effective December 1, 2021.

3. Evaluation of posttraumatic stress disorder (PTSD) with panic attacks and agoraphobia (also claimed as major depression, insomnia and anxiety), which is currently 30 percent disabling, is increased to 50 percent effective December 1, 2021.



EXHIBIT

6 2

**Appendix 414**

AG - 000699

ABEL GARZA
466 37 8406
2 of 18

4. Service connection for allergic rhinitis is granted with an evaluation of 0 percent effective August 5, 2021.

5. Basic eligibility to Dependents' Educational Assistance based on permanent and total disability status is established from December 1, 2021.

6. Service connection for back osteoarthritis is denied.

7. Service connection for bilateral feet pain is denied.

8. Service connection for hyperlipidemia (also claimed as hypercholesterolemia) is denied.

9. Service connection for hypoesthesia, left upper is denied.

10. Service connection for hypoesthesia, right upper is denied.

11. Service connection for left ankle (claimed as bilateral ankles) is denied.

12. Service connection for left shoulder is denied.

13. Service connection for left wrist weakness, pain (claimed as bilateral wrist weakness, pain) is denied.

14. Service connection for neck is denied.

15. Service connection for presyncope is denied.

16. Service connection for right wrist weakness, pain (claimed as bilateral wrist weakness, pain) is denied.

17. The previous denial of service connection for a separate evaluation for asthma is confirmed and continued.

18. The previous denial of service connection for shortness of breath is confirmed and continued.

19. Service connection for chronic fatigue syndrome is granted with an evaluation of 60 percent effective December 1, 2021.

20. A decision on entitlement to compensation for bilateral onychomycosis and tinea versicolor (claimed as bilateral tinea versicolor, lower legs and bilateral onychomycosis) is deferred.

21. A decision on entitlement to compensation for chronic pain syndrome (also claimed as myositis/myalgia) is deferred.



AG - 000700

ABEL GARZA
466 37 8406
3 of 18

22. A decision on entitlement to compensation for chronic venous insufficiency is deferred.

23. A decision on entitlement to compensation for dermatitis abdomen/arms/legs/head is deferred.

24. A decision on entitlement to compensation for headaches/migraines is deferred.

25. A decision on entitlement to compensation for irritable bowel syndrome (IBS) is deferred.

26. A decision on entitlement to compensation for left forearm calcification and elbow (also claimed as bilateral elbow and bilateral forearm calcification) is deferred.

27. A decision on entitlement to compensation for right ankle (claimed as bilateral ankles) is deferred.

28. A decision on entitlement to compensation for right forearm calcification and elbow (also claimed as bilateral elbow and bilateral forearm calcification) is deferred.

29. A decision on entitlement to compensation for sinusitis is deferred.

30. A decision on entitlement to compensation for tinnitus is deferred.

31. The claim for an increased evaluation for patellofemoral syndrome with osteoarthritis, left knee is deferred.

32. The claim for an increased evaluation for patellofemoral syndrome with osteoarthritis, right knee is deferred.

## EVIDENCE

- Service Treatment Records, received December 11, 1987, November 28, 2012, June 6, 2015, September 7, 2016 and January 21, 2022, for the periods 1991 to February 22, 1992 and from June 9, 1999 to October 30, 2012
- Rating Decision, dated September 12, 2016
- Notification Letter- Stlil processing your claim, February 7, 2022
- Disability Benefit Questionnaire (Chronic fatigue syndrome), Logistics Health Incorporated (LHI), conducted January 25, 2022
- Disability Benefit Questionnaire (General Medical - Gulf War (including Burn Pits)), Logistics Health Incorporated (LHI), conducted January 25, 2022
- Disability Benefit Questionnaire (PTSD Review), QTC, conducted January 11, 2022
- VA Form 21-4142 Authorization and Consent to Release Information to Department of Veteran's Affairs, received January 23, 2022
- Correspondences, received January 5, 2022 and January 12, 2022

AG - 000701

ABEL GARZA
466 37 8406
4 of 18

- Lay Statement (or) Statements Received in Support of Claim, received January 10, 2022
- Private Treatment Records, South Texas Dermatology, received January5, 2022 and January 10, 2022, for the period December 10, 2021 to December 10, 2021
- Photograph, received January 10, 2022
- VA Form 21-526 EZ: Application for Disability Compensation and Related Compensation Benefits, received January 10, 2022
- VA Form 21-0966, Intent To File A Claim For Compensation and/or Pension, or Survivors Pension and/or DIC, received January 10, 2022
- Disability Benefit Questionnaire ( Liver Conditions), QTC, conducted December 26, 2021
- Disability Benefit Questionnaire (Esophageal Disorders), QTC, conducted December 26, 2021
- Disability Benefit Questionnaire (Sleep Apnea), QTC, conducted December 26, 2021
- Disability Benefit Questionnaire (Respiratory Conditions (Other than Tuberculosis and sleep apnea)), QTC, conducted December 26, 2021
- Section (§) 5103 Notice, dated December 10, 2021
- Copies of Disability Benefit Questionnaires, VA Texas Valley Coastal HCS, received December 1, 2021
- VA Form 20-0995, Decision Review Request - Supplemental Claims, received December 1, 2021
- VA Form 21-526 EZ: Application for Disability Compensation and Related Compensation Benefits, received January 10, 2022

## REASONS FOR DECISION

### 1. Evaluation of gastroesophageal reflux disease (GERD) with nonalcoholic steatohepatitis (claimed as GERD fatty liver disease and fatty liver) currently evaluated as 10 percent disabling.

The evaluation of gastroesophageal reflux disease (GERD) nonalcoholic steatohepatitis is increased to 60 percent disabling effective December 1, 2021. (38 CFR 4.1, 38 CFR 3.400)

The effective date of this grant is December 1, 2021. Entitlement to an increased evaluation has been established from the date of the medical evidence showing an increase in disability. When private medical evidence showing an increase in disability is received within one year of the date of the evidence, the effective date of the increase is the date of the evidence. (38 CFR 3.400)

We have assigned a 60 percent evaluation for your gastroesophageal reflux disease (GERD) based on:
- Dysphagia
- Material weight loss
- Persistently recurrent epigastric distress
- Pyrosis (Heartburn and/or Reflux)
- Regurgitation
- Substernal pain
- Symptom combinations productive of severe impairment of health



**Appendix 417**

AG - 000702

ABEL GARZA
466 37 8406
5 of 18


Additional symptom(s) include:
• Symptoms productive of considerable impairment of health

This is the highest schedular evaluation allowed under the law for gastroesophageal reflux disease (gerd). (38 CFR 4.112, 38 CFR 4.114, 38 CFR 4.113)

This disability is not specifically listed in the rating schedule; therefore, it is rated analogous to a disability in which not only the functions affected, but anatomical localization and symptoms, are closely related. (38 CFR 4.20)

If rated seperately a 10 percent evaluation for your nonalcoholic steatohepatitis based on:
• Abdominal pain
• Weakness

Additional symptom(s) include:
• Minor weight loss

A higher evaluation of 30 percent is not warranted for cirrhosis of the liver unless the evidence shows:
• Portal hypertension and splenomegaly, with weakness, anorexia, abdominal pain, malaise, and at least minor weight loss. (38 CFR 4.112, 38 CFR 4.114, 38 CFR 4.113)

**2. Evaluation of obstructive sleep apnea to include asthma (claimed as sleep apnea and asthma) currently evaluated as 30 percent disabling.**

A claimant may file a supplemental claim by submitting or identifying new and relevant evidence. New evidence is evidence not previously part of the actual record before agency adjudicators. Relevant evidence means evidence that tends to prove or disprove a matter at issue in a claim. (38 CFR 3.2501)

In support of your claim, new and relevant evidence has been received and your claim is now reconsidered.

The evaluation of obstructive sleep apnea to include asthma is increased to 50 percent disabling effective December 1, 2021. (38 CFR 4.1, 38 CFR 3.400)

The effective date of this grant is December 1, 2021. Entitlement to an increased evaluation has been established from the date of the medical evidence showing an increase in disability. When private medical evidence showing an increase in disability is received within one year of the date of the evidence, the effective date of the increase is the date of the evidence. (38 CFR 3.400)


We have assigned a 50 percent evaluation for your obstructive sleep apnea to include asthma based on:
• Requires use of breathing assistance device such as continuous airway pressure (CPAP)

AG - 000703

**Appendix 418**

ABEL GARZA
466 37 8406
6 of 18

machine

Additional symptom(s) include:
• Persistent day-time hypersomnolence

A higher evaluation of 100 percent is not warranted for sleep apnea syndromes unless the
evidence shows:
• Carbon dioxide retention; or,
• Chronic respiratory failure; or,
• Cor pulmonale; or,
• Tracheostomy required. (38 CFR 4.96, 38 CFR 4.97)

A higher evaluation of 100 percent is not warranted unless FEV-1 is less than 40 percent
predicted; or FEV-1/FVC less than 40 percent; or more than one attack per week with episodes
of respiratory failure; or the requirement for daily use of systemic (oral or parenteral) high dose
corticosteroids or immuno-suppressive medications. (38 CFR 4.96, 38 CFR 4.97)

If rated separately a 30 percent evaluation for your asthma based on:
• Daily inhalational therapy
• Daily oral bronchodilator therapy

Additional symptom(s) include:
• Ratio of Forced Expiratory Volume in One Second (FEV-1) to Forced Vital Capacity (FEV-
1/FVC) greater than 80 percent of predicted value (106%)

When there is a disparity between the results of different Pulmonary Function Tests (PFTs), so
that the level of evaluation would differ depending on which test result is used, the test result that
the examiner states most accurately reflects the level of disability shall be used. In your case, the
examiner has indicated that your FEV-1/FVC ratio most accurately reflects your level of
disability. (38 CFR 4.96)

A higher evaluation of 60 percent is not warranted for bronchial asthma unless the evidence
shows:
• At least monthly visits to a physician for required care of exacerbations; or,
• FEV-1 to Forced Vital Capacity (FVC) (FEV-1/FVC) of 40 to 55 percent; or,
• Forced Expiratory Volume in One Second (FEV-1) of 40 to 55 percent predicted; or,
• Intermittent (at least three per year) courses of systemic (oral or parenteral) corticosteroids. (38
CFR 4.96, 38 CFR 4.97)

The evaluation of the same disability under various diagnoses is to be avoided. Disability from
injuries to the muscles, nerves, and joints of an extremity may overlap to a great extent, so that
special rules are included in the appropriate body system for their evaluation. Dyspnea,
tachycardia, nervousness, fatigability, etc., may result from many causes. Some may be service-
connected; others, not. Both the use of manifestations not resulting from service-connected
disease or injury in establishing the service-connected evaluation and the evaluation of the same

AG - 000704

manifestation under different diagnoses are to be avoided. (38 CFR 4.14)

38 CFR 4.96(a) prohibits the assignment of separate evaluations for co-existing respiratory conditions rated under 38 CFR 4.97, diagnostic codes (DCs) 6600 through 6817 and 6822 through 6847.

**3. Evaluation of posttraumatic stress disorder (PTSD) with panic attacks and agoraphobia (also claimed as major depression, insomnia and anxiety) currently evaluated as 30 percent disabling.**

The evaluation of posttraumatic stress disorder (PTSD) with panic attacks and agoraphobia is increased to 50 percent disabling effective December 1, 2021. (38 CFR 4.1, 38 CFR 3.400)

The effective date of this grant is December 1, 2021. Entitlement to an increased evaluation has been established from the date of the medical evidence showing an increase in disability. When private medical evidence showing an increase in disability is received within one year of the date of the evidence, the effective date of the increase is the date of the evidence. (38 CFR 3.400)

We have assigned a 50 percent evaluation for your PTSD with panic attacks and agoraphobia based on:
• Anxiety
• Chronic sleep impairment
• Depressed mood
• Difficulty in adapting to a worklike setting
• Difficulty in adapting to stressful circumstances
• Difficulty in adapting to work
• Difficulty in establishing and maintaining effective work and social relationships
• Disturbances of motivation and mood
• Forgetting directions
• Forgetting names
• Forgetting recent events
• Mild memory loss
• Occupational and social impairment with reduced reliability and productivity
• Suspiciousness

The overall evidentiary record shows that the severity of your disability most closely approximates the criteria for a 50 percent disability evaluation. (38 CFR 4.7, 38 CFR 4.126)

A higher evaluation of 70 percent is not warranted for a mental disorder unless the evidence shows occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as:
• Suicidal ideation
• Obsessional rituals which interfere with routine activities
• Speech intermittently illogical, obscure, or irrelevant
• Near-continuous panic or depression affecting the ability to function independently,

AG - 000705

ABEL GARZA
466 37 8406
8 of 18

appropriately and effectively
• Impaired impulse control (such as unprovoked irritability with periods of violence)
• Spatial disorientation
• Neglect of personal appearance and hygiene
• Difficulty in adapting to stressful circumstances (including work or a worklike setting)
• Inability to establish and maintain effective relationships. (38 CFR 4.125, 38 CFR 4.126, 38 CFR 4.130)

## 4. Service connection for allergic rhinitis.

Service connection may be granted for specific diseases or conditions which are presumed to have been caused by service if manifested to a compensable degree following military discharge. Although not shown in service, service connection for allergic rhinitis has been granted on the basis of presumption. (38 CFR 3.307, 38 CFR 3.309)

The effective date of this grant is August 5, 2021. Service connection has been established from the date of the law change allowing VA to grant this claim. When a claim of service connection is received within one year after a change in law, and all the requirements were met for a grant on the date of the change in law, the effective date is the date of the change in law. (38 CFR 3.114)

A noncompensable evaluation is assigned from August 5, 2021.

We have assigned a noncompensable evaluation for your rhinitis based on:
• A diagnosed disability with no compensable symptoms (38 CFR 4.31)

Note: In every instance where the schedule does not provide a zero percent evaluation for a diagnostic code, a zero percent evaluation shall be assigned when the requirements for a compensable evaluation are not met. {38 CFR §4.31}

A higher evaluation of 10 percent is not warranted for allergic rhinitis unless the evidence shows:

• Rhinitis without polyps, but with greater than 50 percent obstruction of the nasal passages on both sides; or complete obstruction of the nasal passages on one side. (38 CFR 4.97)

Evaluation is being deferred for medical examination

## 5. Eligibility to Dependents' Educational Assistance under 38 U.S.C. Chapter 35 based on permanent and total disability status.

Eligibility for Dependents' Educational Assistance is derived from a Veteran who was discharged under other than dishonorable conditions; and has permanent and total service-connected disability(ies); or permanent and total disability(ies) existed at the time of death; or the Veteran died as a result of service-connected disability(ies). Also, eligibility exists for a service

**Appendix 421**



AG - 000706

ABEL GARZA
466 37 8406
9 of 18

member who died in service. Finally, eligibility can be derived from a service member who, as a member of the armed forces on active duty, has been listed for more than 90 days as missing in action; captured in line of duty by a hostile force; or forcibly detained or interned in line of duty by a foreign government or power. (38 USC Chapter 35, 38 CFR 3.807, 38 CFR 21.3021)

Basic eligibility for Dependents' Educational Assistance is granted as the evidence shows you currently have a totally disabling service-connected disability or disabilities, permanent in nature. (38 USC Chapter 35, 38 CFR 3.807, 38 CFR 21.3021)

The effective date of this grant is December 1, 2021, which is the date of your recent VA hospitalization that determined that you are permanently and totally disabled.

### 6. Service connection for back osteoarthritis.

Service connection may be granted for a disability which began in military service or was caused by some event or experience in service. (38 CFR 3.303)

A disability which began in service or was caused by some event in service must be considered "chronic" before service connection can be granted. Although there is a record of treatment in service for back osteoarthritis, no permanent residual or chronic disability subject to service connection is shown by the service medical records or demonstrated by evidence following service. Therefore, service connection for back osteoarthritis is denied. (38 CFR 3.303)

While your service treatment records reflect complaints, treatment, or a diagnosis similar to that claimed, the medical evidence supports the conclusion that a persistent disability was not present in service. (38 CFR 3.303, 38 CFR 3.304). There was no continuity of symptoms from service to the present. (38 CFR 3.303)

Favorable Findings identified in this decision:

The evidence shows that a qualifying event, injury, or disease had its onset during your service. Your service

### 7. Service connection for bilateral feet pain.

Service connection may be granted for a disability which began in military service or was caused by some event or experience in service. Service connection for bilateral feet pain is denied because the medical evidence of record fails to show that this disability has been clinically diagnosed. (38 CFR 3.303, 38 CFR 3.304)

While your service treatment records reflect complaints, treatment, or a diagnosis similar to that claimed, the medical evidence supports the conclusion that a persistent disability was not present in service. (38 CFR 3.303, 38 CFR 3.304) There was no continuity of symptoms from service to the present. (38 CFR 3.303)

AG - 000707

Favorable Findings identified in this decision:

The evidence shows that a qualifying event, injury, or disease had its onset during your service. Your service treatment records shows complaints of bilateral foot pain.

### 8. Service connection for hyperlipidemia (also claimed as hypercholesterolemia).

The condition identified as hyperlipidemia is considered a congenital or developmental defect which is unrelated to military service and not subject to service connection. (38 CFR 3.303, 38 CFR 4.9)

High cholesterol is a symptom or abnormal finding and not recognized as a chronic disability under VA regulations for which compensation may be paid. Also, a chronic disability manifested by this symptom is not shown. Service connection for high cholesterol is denied. (38 CFR 3.303)

The evidence does not show an event, disease or injury in service. (38 CFR 3.303, 38 CFR 3.304). Your service treatment records do not contain complaints, treatment, or diagnosis for this condition.

### 9. Service connection for hypoesthesia, left upper.

Service connection may be granted for a disability which began in military service or was caused by some event or experience in service. (38 CFR 3.303)

Service connection for hypoesthesia, left upper is denied since this condition neither occurred in nor was caused by service. (38 CFR 3.303, 38 CFR 3.304)

The evidence does not show an event, disease or injury in service. (38 CFR 3.303, 38 CFR 3.304) Your service treatment records do not contain complaints, treatment, or diagnosis for this condition. The evidence does not show a current diagnosed disability. (38 CFR 3.159, 38 CFR 3.303)

### 10. Service connection for hypoesthesia, right upper.

Service connection may be granted for a disability which began in military service or was caused by some event or experience in service. (38 CFR 3.303)

Service connection for hypoesthesia, right upper is denied since this condition neither occurred in nor was caused by service. (38 CFR 3.303, 38 CFR 3.304)

The evidence does not show an event, disease or injury in service. (38 CFR 3.303, 38 CFR 3.304) Your service treatment records do not contain complaints, treatment, or diagnosis for this condition. The evidence does not show a current diagnosed disability. (38 CFR 3.159, 38 CFR 3.303)

**Appendix 423**

AG - 000708

ABEL GARZA
466 37 8406
11 of 18

## 11. Service connection for left ankle (claimed as bilateral ankles).

Service connection may be granted for a disability which began in military service or was caused by some event or experience in service. (38 CFR 3.303)

Service connection for left ankle is denied since this condition neither occurred in nor was caused by service. (38 CFR 3.303, 38 CFR 3.304)

The evidence does not show an event, disease or injury in service. (38 CFR 3.303, 38 CFR 3.304) Your service treatment records do not contain complaints, treatment, or diagnosis for this condition.

Favorable Findings identified in this decision:

You have been diagnosed with a disability. Your VA treatment records shows complaints of ankle joint pain.

## 12. Service connection for left shoulder.

Service connection may be granted for a disability which began in military service or was caused by some event or experience in service. Service connection for left shoulder is denied because the medical evidence of record fails to show that this disability has been clinically diagnosed. (38 CFR 3.303, 38 CFR 3.304)

While your service treatment records reflect complaints, treatment, or a diagnosis similar to that claimed, the medical evidence supports the conclusion that a persistent disability was not present in service. (38 CFR 3.303, 38 CFR 3.304) There was no continuity of symptoms from service to the present. (38 CFR 3.303)

Favorable Findings identified in this decision:

The evidence shows that a qualifying event, injury, or disease had its onset during your service. Your service treatment records shows complaints of left shoulder pain.

## 13. Service connection for left wrist weakness, pain (claimed as bilateral wrist weakness, pain).

Service connection may be granted for a disability which began in military service or was caused by some event or experience in service. Service connection for left wrist weakness, pain is denied because the medical evidence of record fails to show that this disability has been clinically diagnosed. (38 CFR 3.303, 38 CFR 3.304)

While your service treatment records reflect complaints, treatment, or a diagnosis similar to that claimed, the medical evidence supports the conclusion that a persistent disability was not present



AG - 000709

ABEL GARZA
466 37 8406
12 of 18

in service. (38 CFR 3.303, 38 CFR 3.304) There was no continuity of symptoms from service to the present. (38 CFR 3.303) The evidence does not show that your disease developed to a compensable degree within the specified time period after release from service to qualify for the presumption of service connection. (38 CFR 3.307, 38 CFR 3.309)

Favorable Findings identified in this decision:

The evidence shows that a qualifying event, injury, or disease had its onset during your service. Your service treatment records shows complaints of carpel tunnel.

The claimed disability is a chronic disease which may be presumptively linked to your military service. Nerve conditions are considered to be a chronic condition for VA rating purposes.

You have sufficient service to meet the minimum requirements for presumptive service connection. Your D214 indicates at least 90 days of service.

## 14. Service connection for neck.

Service connection may be granted for a disability which began in military service or was caused by some event or experience in service. Service connection for neck is denied because the medical evidence of record fails to show that this disability has been clinically diagnosed. (38 CFR 3.303, 38 CFR 3.304)

While your service treatment records reflect complaints, treatment, or a diagnosis similar to that claimed, the medical evidence supports the conclusion that a persistent disability was not present in service. (38 CFR 3.303, 38 CFR 3.304) There was no continuity of symptoms from service to the present. (38 CFR 3.303)

Favorable Findings identified in this decision:

The evidence shows that a qualifying event, injury, or disease had its onset during your service. Your service treatment records shows a diagnosis of cervical crosed syndrome.

## 15. Service connection for presyncope.

Service connection may be granted for a disability which began in military service or was caused by some event or experience in service. (38 CFR 3.303)

Service connection for presyncope is denied since this condition neither occurred in nor was caused by service. (38 CFR 3.303, 38 CFR 3.304)

The evidence does not show an event, disease or injury in service. (38 CFR 3.303, 38 CFR 3.304) Your service treatment records do not contain complaints, treatment, or diagnosis for this condition. The evidence does not show a current diagnosed disability. (38 CFR 3.159, 38 CFR

**Appendix 425**

AG - 000710

ABEL GARZA
466 37 8406
13 of 18

3.303)

### 16. Service connection for right wrist weakness, pain (claimed as bilateral wrist weakness, pain).

Service connection may be granted for a disability which began in military service or was caused by some event or experience in service. Service connection for right wrist weakness, pain is denied because the medical evidence of record fails to show that this disability has been clinically diagnosed. (38 CFR 3.303, 38 CFR 3.304)

While your service treatment records reflect complaints, treatment, or a diagnosis similar to that claimed, the medical evidence supports the conclusion that a persistent disability was not present in service. (38 CFR 3.303, 38 CFR 3.304) There was no continuity of symptoms from service to the present. (38 CFR 3.303) The evidence does not show that your disease developed to a compensable degree within the specified time period after release from service to qualify for the presumption of service connection. (38 CFR 3.307, 38 CFR 3.309)

Favorable Findings identified in this decision:

The evidence shows that a qualifying event, injury, or disease had its onset during your service. Your service treatment records shows complaints of carpel tunnel.

The claimed disability is a chronic disease which may be presumptively linked to your military service. Nerve conditions are considered to be a chronic condition for VA rating purposes.

You have sufficient service to meet the minimum requirements for presumptive service connection. Your D214 indicates at least 90 days of service.

### 17. Service connection for a separate evaluation for asthma.

A claimant may file a supplemental claim by submitting or identifying new and relevant evidence. New evidence is evidence not previously part of the actual record before agency adjudicators. Relevant evidence means evidence that tends to prove or disprove a matter at issue in a claim. (38 CFR 3.2501) In support of your claim, new and relevant evidence has been received and your claim is now reconsidered.

The evidence does not support a change in our prior decision. Therefore, we are confirming the previous denial of this claim. The medical records fail to provide any evidence which would warrant any change in the previous decision.

A separate evaluation for asthma is not warranted. In determining evaluations for disability from bronchial asthma, consideration is given to objective evidence of severe impairment of health, weight loss, the degree of dyspnea and the severity and frequency of asthma attacks.



AG - 000711

ABEL GARZA
466 37 8406
14 of 18

In determining evaluations for sleep apnea syndrome, consideration is given to the degree of respiratory impairment, and the use of a breathing assistance device, such as a continuous airway pressure (CPAP) machine, is required; the condition is permanent, and residual disability objectively demonstrated by the evidence such as chronic respiratory failure with carbon dioxide retention or cor pulmonale, or the requirement for a tracheostomy.

Your evaluation of the sleep apnea syndrome to include asthma is evaluated based on the criteria caused and complications by the condition and cannot be, without violation of the law, be concurrently evaluated under a second diagnosis for the same impairment/condition.

The symptomatology used to evaluate your sleep apnea syndrome is overlapping with the criteria used to evaluate your asthma condition in which in your case is the same as the one used to evaluate the complications or residuals.

Although the medical evidence shows a diagnosis of asthma, this condition will ordinarily be rated as part of respiratory system including your sleep apnea syndrome condition. Per §4.96 Special provisions regarding evaluation of respiratory conditions. (a) Rating coexisting respiratory conditions. Ratings under diagnostic codes 6600 through 6817 and 6822 through 6847 will not be combined with each other. Where there is lung or pleural involvement, ratings under diagnostic codes 6819 and 6820 will not be combined with each other or with diagnostic codes 6600 through 6817 or 6822 through 6847. A single rating will be assigned under the diagnostic code which reflects the predominant disability with elevation to the next higher evaluation where the severity of the overall disability warrants such elevation.

A separate evaluation for asthma is denied as this condition has already been considered as part of the sleep apnea syndrome and respiratory condition.

**18. Service connection for shortness of breath.**

A claimant may file a supplemental claim by submitting or identifying new and relevant evidence. New evidence is evidence not previously part of the actual record before agency adjudicators. Relevant evidence means evidence that tends to prove or disprove a matter at issue in a claim. (38 CFR 3.2501) In support of your claim, new and relevant evidence has been received and your claim is now reconsidered.

The evidence does not support a change in our prior decision. Therefore, we are confirming the previous denial of this claim. The medical records fail to provide any evidence which would warrant any change in the previous decision. Service connection for this condition remains denied as the evidence continues to show this condition was not incurred in or aggravated by military service. (38 CFR 3.303, 38 CFR 3.304, 38 CFR 3.306)

The condition identified as shortness of breath is considered a congenital or developmental defect which is unrelated to military service and not subject to service connection.

Service connection for shortness of breaths is denied as this is merely a complaint or symptom



AG - 000712

ABEL GARZA
466 37 8406
15 of 18

and there is no evidence of any active disease process. For purposes of service connection, laboratory findings, or complaints without a diagnosed or identifiable underlying condition does not in and of itself constitute a disability.

The provisions of 38 CFR 3.303(a) and (b) require that a chronic disability must exist due to injury or disease in order to warrant service connection. Service connection is not warranted for complaints, or laboratory findings, "not substantiated by the clinical evidence". Service connection is denied because shortness of breaths is not considered an actually disabling condition.

Favorable Findings identified in this decision:

The evidence shows that a qualifying event, injury, or disease had its onset during your service. Your service treatment records shows complaints of shortness of breath.

**19. Service connection for chronic fatigue syndrome.**

A claimant may file a supplemental claim by submitting or identifying new and relevant evidence. New evidence is evidence not previously part of the actual record before agency adjudicators. Relevant evidence means evidence that tends to prove or disprove a matter at issue in a claim. (38 CFR 3.2501)

In support of your claim, new and relevant evidence has been received and your claim is now reconsidered.

Service connection may be presumed for disabilities resulting from undiagnosed illnesses or diagnosed illnesses which arose to a compensable degree after service in the Southwest Asia theater of operations during the Gulf War period. Service connection for chronic fatigue syndrome has been awarded on the basis of this presumption

The effective date of this grant is December 1, 2021. Service connection has been established from the day VA received your claim. When a claim of service connection is received more than one year after discharge from active duty, the effective date is the date VA received the claim. (38 CFR 3.400)

A claimant may continuously pursue a claim by timely and properly filing a supplemental claim. "Timely" means the supplemental claim is submitted within one year of the VA decision. "Properly" means VA form 20-0995, Decision Review Request: Supplemental Claim, is completed and submitted along with new and relevant evidence. (38 CFR 3.2500, 38 CFR 3.2501)

If the claim is not continuously pursued and benefits are granted, the effective date will be the date entitlement arose, but will not be earlier than the date of receipt of the supplemental claim currently under review. (except as otherwise provided by other regulations including 38 CFR

AG - 000713

ABEL GARZA
466 37 8406
16 of 18

3.400)

An evaluation of 60 percent is assigned from December 1, 2021.

We have assigned a 60 percent evaluation for your chronic fatigue syndrome based on:
• Symptoms, which wax and wane, resulting in periods of incapacitation of at least six weeks total duration per year

A higher evaluation of 100 percent is not warranted for chronic fatigue syndrome (cfs) unless the evidence shows:
• Debilitating fatigue, cognitive impairments (such as inability to concentrate, forgetfulness, confusion), or a combination of other signs and symptoms, which are nearly constant and so severe as to restrict routine daily activities almost completely and which may occasionally preclude self-care. (38 CFR 4.88a, 38 CFR 4.88b)

### 20. Compensation for bilateral onychomycosis and tinea versicolor (claimed as bilateral tinea versicolor, lower legs and bilateral onychomycosis).

The issue of compensation for bilateral onychomycosis and tinea versicolor is deferred for the following information: Medical Examination

### 21. Compensation for chronic pain syndrome (also claimed as myositis/myalgia).

The issue of compensation for chronic pain syndrome is deferred for the following information: Medical Examination

### 22. Compensation for chronic venous insufficiency.

The issue of compensation for chronic venous insufficiency is deferred for the following information: Medical examinatio

### 23. Compensation for dermatitis abdomen/arms/legs/head.

The issue of compensation for dermatitis abdomen/arms/legs/head is deferred for the following information: Medical Examination

### 24. Compensation for headaches/migraines.

The issue of compensation for headaches/migraines is deferred for the following information: Medical Examination

### 25. Compensation for irritable bowel syndrome (IBS).

The issue of compensation for irritable bowel syndrome (IBS) is deferred for the following



**AG - 000714**

ABEL GARZA
466 37 8406
17 of 18

information: Medical examination

### 26. Compensation for left forearm calcification and elbow (also claimed as bilateral elbow and bilateral forearm calcification).

The issue of compensation for left forearm calcification and elbow is deferred for the following information: Medical Examination

### 27. Compensation for right ankle (claimed as bilateral ankles).

The issue of compensation for right ankle is deferred for the following information: Medical Examination

### 28. Compensation for right forearm calcification and elbow (also claimed as bilateral elbow and bilateral forearm calcification).

The issue of compensation for right forearm calcification is deferred for the following information: Medical Examination

### 29. Compensation for sinusitis.

The issue of compensation for sinusitis is deferred for the following information: Medical examination

### 30. Compensation for tinnitus.

The issue of compensation for tinnitus is deferred for the following information: Medical Examination

### 31. Evaluation of patellofemoral syndrome with osteoarthritis, left knee currently evaluated as 10 percent disabling.

The evaluation for patellofemoral syndrome with osteoarthritis, left knee is deferred for the following: Medical Examination

### 32. Evaluation of patellofemoral syndrome with osteoarthritis, right knee currently evaluated as 10 percent disabling.

The evaluation for patellofemoral syndrome with osteoarthritis, right knee is deferred for the following: Medical Examination

AG - 000715

ABEL GARZA
466 37 8406
18 of 18

## REFERENCES:

Title 38 of the Code of Federal Regulations, Pensions, Bonuses and Veterans' Relief contains the regulations of the Department of Veterans Affairs which govern entitlement to all Veteran benefits. For additional information regarding applicable laws and regulations, please consult your local library, or visit us at our website, www.va.gov.

AG - 000716

Abel Garza                                                      November 1, 2021
1806 Brook Lane
Kingsville, Texas 78363
(361)455-3309

To: Clarissa Velasco- Energy Transfer (HR-Supervisor)

I received the ADA Reasonable Accommodations Denial Letter you sent me and
I disagree with the decision that has been made to deny my request. I spoke with
my doctor (Jeremy Waddell), who has provided you with my diagnosis and
reasons for my request for accommodations. He also disagrees with the decision
to deny the request.

I will be providing you with additional documents to support my ADA
Accommodations request and hope you will reevaluate my request.

I was evaluated when I was on Active Duty with the Army and again in 2015-
2016 by the Veterans Administration. I was diagnosed then and verified as having
a Disability. I have been under the care of the Veterans Administration Behavioral
Health Department ever since and seen multiple Providers throughout my
treatment for such Disability. I really don't want to and shouldn't have to get into
detail about my Disability. The details involving my diagnosis are very painful and
are not primarily family-related; as stated in the Letter you sent me dated
October 22, 2021.

Being assigned to the PowerHouse is an area that triggers my
PTSD/Anxiety/Panic Attacks; as I stated in the initial request for ADA
Accommodations on April 1, 2021. The constant noise, different alarms, scents,
and situational incidents that occur while working there for 12 hours with
nowhere to go when I have an episode is not a safe place for me to continue
working. I've been dealing with this way before I submitted the request on April 1,
2021 but can no longer do so.

My reassignment request is not a personal desire with no medical reason. I
have a medical reason and it is well documented. Further, I may have temporary



**EXHIBIT**

63

**Appendix 432**                                    AG - 000007

relief but when I experience something that triggers my condition, it is not temporary in nature.

There are so many stressors that affect me and I am telling you the ones that are affecting me specifically while working in a particular area of the Plant. I have stressors outside of work and I am able to deal with them better because I am not in a restricted area where I cannot leave and take the time needed to process what is happening. Sometimes I do have difficulty when there are multiple stressors and it could take more time.

I asked to be reassigned to positions that I am qualified to work; Shipping Station, Warehouse Manager, and Safety Rep. I don't know what is going on with each position currently but I am asking that you reconsider the request. The Warehouse Manager and Safety Rep positions would get me out of the environment more than working at the Shipping Station; which would allow more time and personal space if I needed to utilize my coping skills.

I really believed that Energy Transfer sincerely cared about our Military/Veterans, Law Enforcement, and Employees who have served. I am an Employee who was in Law Enforcement (8 years) and Military (26 years); who is asking for help and feel like the Company is all talk and does not really care about us. I pray that my ADA Accommodations Request is reevaluated and I am proven wrong by Energy Transfer doing what is only right with My Situation.

Respectfully,
Abel Garza

AG - 000008

This transcript was transcribed on Jan 04, 2022.



**EXHIBIT**

64

**Michael Johnson:**
This is Mike Johnson. How are you, sir?

**Abel Garza:**
I'm all right. How about yourself?

**Michael Johnson:**
I'm doing well. Thank you, sir.

**Abel Garza:**
Good.

**Michael Johnson:**
Hey, I just wanted to give you a call. I made my selection on the safety interview position and elected to go with another individual. I just wanted to thank you for your interest and putting in for the position.

**Abel Garza:**
Yeah, I've been in contact with Clarissa Velasco at HR, because I hadn't heard back from you. I mean, I thought you had said you'd contact me the following week. You were going to try to fast track everything with HR since I was already an employee. I mean, I felt like the interview went well and that you were telling me I was hired for the job based on everything that we spoke about.

**Abel Garza:**
I didn't hear from you. So HR got with Raymond Villavega and he was supposed to call me, but I never got a call back from him. So, I mean, I didn't know what was going on.

**Michael Johnson:**
Right. No, of course, with the whole hiring process and everything, and the interviews took a little bit longer than expected and that's why I'm reaching out today.

**Abel Garza:**
I mean, I don't... I mean this just doesn't match up with what I was getting from you and what we discussed in the interview and after it was over. I just hope your decision wasn't based on what I discussed with you afterwards on my disability. Like I told you, that's nothing that would affect me doing that job. My-

**Michael Johnson:**
That had nothing to do with my decision. I selected the best candidate for the position.

**Abel Garza:**
Well... I don't know what to say, because that's not what I got from you that day, you know, the interview. That's not what was being said with what you were telling me, as far as my having a start date of October the 25th or November the 1st, and my background and how impressed you were. And you talking to HR about fast tracking everything and talking to my manager at the plant as a courtesy, since I

This transcript was transcribed on Jan 04, 2022

had interviewed with you. That just doesn't match up. It doesn't sound right. I mean, I'm really disappointed.

Michael Johnson:

Okay, [crosstalk 00:03:00] Mr. Garza, I apologize. I do the same with all of my interviews and go through that process. That conversation could have had that... I know that I definitely stated if you were selected that we would look to be able to speed things up since you were an internal candidate. However, again, I hadn't made my decision at that time. So. Again, I just want to let you know that I selected someone else.

Abel Garza:

Let me ask you a question. The warehouse position that's available in Victoria, is that your area... for warehouse manager? No?

Michael Johnson:

I'm not over the warehouse fulfillment group.

Abel Garza:

Oh, okay. All right. All right, well, I appreciate your phone call.

Michael Johnson:

Yes, sir. Thank you.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ABEL GARZA §
§
    Plaintiff, §
§
VS. §    CIVIL ACTION NO. 3-23-CV-00027-D
§
ENERGY TRANSFER PARTNERS, §
L.L.C. §
and LA GRANGE ACQUISITION, L.P. §
§
    the Defendant. §    *Jury Trial Requested*

## DECLARATION OF ABEL GARZA

My name is Abel Garza. I am over the age of eighteen years, of sound mind and am otherwise legally qualified to give this declaration, do so voluntarily and of my own free will. My address is 1806 Brook Lane, Kingsville, Texas 78363, and my date of birth is 6/27/1969. Each of the following statements is within my personal knowledge.

In 2021, I was 52 years old and a disabled veteran.

I worked for Defendants since 2015. In 2019, I was moved to the Powerhouse. Due to the alarms that are unique to the Powerhouse and the noise, I began having increased issues with my Post Traumatic Stress Disorder (PTSD) and Generalized Anxiety Disorder (anxiety and depression) that had been previously well-controlled. By 2021, I realized I needed accommodations to work in the Powerhouse.

Initially I sought one simple accommodation for my assigned job in the Powerhouse. Specifically, I requested that the person in the Process Area, who was already set as the back-up to the Powerhouse, be trained for the Powerhouse because at that time the person on my shift was not trained. I was not seeking to have Defendants relieve me of the essential functions of my position, I was not seeking modification of those duties/functions, I did not seek to abandon the essential functions of my job, and I did not seek the hire of an additional person.

I have produced several recordings to Defendants in this matter.



EXHIBIT
65

**Appendix 436**

Doc ID: fd18a6372babc68234c269ceffbd6a3d07501dde

One recording is of Michael Johnson from his phone call to me on or about January 4, 2022, a phone call he was instructed by Defendants to make. Michael Johnson states in that recording that he knew I was an internal candidate.  Michael Johnson never stated during this recorded call that I was not qualified for the Safety Representative position for which I had interviewed with him.

The second recording is from a phone call with my VA treating psychologist, Jeremy Waddell, when I received a letter dated April 20, 2022 from Clarissa Velasco and shared it with him.  His reaction was palpable, and he was very surprised by the statements that were incorrectly being attributed to him.  This recording transcription is also attached as an exhibit to my EEOC Charges. Upon information and belief, Dr. Waddell is on deployment with the United States military and is therefore unavailable. I have attempted several times to reach him for his Declaration, but as he is on deployment, I could not make contact with him.

Both recordings and their transcripts have been produced to Defendants in this lawsuit. The recordings were made contemporaneously with the telephone calls.  The recording transcript for Michael Johnson is attached as Exhibit A to this Declaration.  The recording transcript for Jeremy Waddell is attached as Exhibit B to this Declaration.

Both recording transcripts attached here are true and correct transcriptions of the recorded statements.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

SIGNED ON THIS THE _6th_ DAY OF _FEBRUARY_ , 2024.

_____

Abel Garza

**Appendix 437**

Doc ID: fd18a6372babc68234c269ceffbd6a3d07501dde



**Michael Johnson:**
This is Mike Johnson. How are you, sir?

**Abel Garza:**
I'm all right. How about yourself?



**Michael Johnson:**
I'm doing well. Thank you, sir.

**Abel Garza:**
Good.

**Michael Johnson:**
Hey, I just wanted to give you a call. I made my selection on the safety interview position and elected to go with another individual. I just wanted to thank you for your interest and putting in for the position.

**Abel Garza:**
Yeah, I've been in contact with Clarissa Velasco at HR, because I hadn't heard back from you. I mean, I thought you had said you'd contact me the following week. You were going to try to fast track everything with HR since I was already an employee. I mean, I felt like the interview went well and that you were telling me I was hired for the job based on everything that we spoke about.

**Abel Garza:**
I didn't hear from you. So HR got with Raymond Villavega and he was supposed to call me, but I never got a call back from him. So, I mean, I didn't know what was going on.

**Michael Johnson:**
Right. No, of course, with the whole hiring process and everything, and the interviews took a little bit longer than expected and that's why I'm reaching out today.

**Abel Garza:**
I mean, I don't... I mean this just doesn't match up with what I was getting from you and what we discussed in the interview and after it was over. I just hope your decision wasn't based on what I discussed with you afterwards on my disability. Like I told you, that's nothing that would affect me doing that job. My-

**Michael Johnson:**
That had nothing to do with my decision. I selected the best candidate for the position.

**Abel Garza:**
Well... I don't know what to say, because that's not what I got from you that day, you know, the interview. That's not what was being said with what you were telling me, as far as my having a start date of October the 25th or November the 1st, and my background and how impressed you were. And you talking to HR about fast tracking everything and talking to my manager at the plant as a courtesy, since I

Garza – Johnson Phone Call of January 4, 2022
Transcript by Rev.com

Page 1 of 2

**Appendix 438**

Doc ID: fd18a6372babc68234c269ceffbd6a3d07501dde

had interviewed with you. That just doesn't match up. It doesn't sound right. I mean, I'm really disappointed.

Michael Johnson:

Okay, [crosstalk 00:03:00] Mr. Garza, I apologize. I do the same with all of my interviews and go through that process. That conversation could have had that... I know that I definitely stated if you were selected that we would look to be able to speed things up since you were an internal candidate. However, again, I hadn't made my decision at that time. So. Again, I just want to let you know that I selected someone else.

Abel Garza:

Let me ask you a question. The warehouse position that's available in Victoria, is that your area... for warehouse manager? No?

Michael Johnson:

I'm not over the warehouse fulfillment group.

Abel Garza:

Oh, okay. All right. All right, well, I appreciate your phone call.

Michael Johnson:

Yes, sir. Thank you.

**Appendix 439**

Doc ID: fd18a6372babc68234c269ceffbd6a3d07501dde

This transcript was exported on Apr 25, 2022 - view latest version here.

Carl:
Good afternoon. Thank you for calling [inaudible 00:00:29] VA. This is Carl. How can I help you?

Abel Garza:
Yes sir. This is Abel Garza, I'm a patient of Dr. Waddell.

Carl:
Yes sir.

**EXHIBIT**

B

Abel Garza:
I just sent him an email with a letter so he could review.

Carl:
Mm-hmm (affirmative).

Abel Garza:
I've got a time constraint on it. I just wanted to see if he would be available to talk to me. I'm not sure if it would be today. But maybe by tomorrow, just really quick.

Carl:
Okay. What's your last four [inaudible 00:01:08]?

Abel Garza:
8406.

Carl:
Let me see if it's a good time right now. Okay?

Abel Garza:
Okay. Thank you.

Recording:
[inaudible 00:01:56]. Do you know you can refill your prescription online 24/7 right from your home? Visit myhealth.va.gov and register for [myhealthevet 00:02:06] today.

Speaker 1:
[inaudible 00:02:27]?

Abel Garza:
Yes, sir.

Carl:
I'm going to connect you to him. Okay?

phone_20220421-162219_9562919214 (Completed 04/25/22)                    Page 1 of 8
Transcript by Rev.com
AG - 001217

**Appendix 440**

Doc ID: fd18a6372babc68234c269ceffbd6a3d07501dde

This transcript was exported on Apr 25, 2022 - view latest version here.

**Abel Garza:**
Okay. Thank you.

**Recording:**
Stay connected with us by liking our Facebook page. Or follow us on Twitter at [inaudible 00:02:45].

**Doctor:**
Mr. Garza?

**Abel Garza:**
Yes, sir.

**Doctor:**
Hey, how's it going, sir?

**Abel Garza:**
I just received this letter through FedEx. I just emailed it to you. And I mean, I didn't know if you had time today, or tomorrow. I didn't know if you're going to be in tomorrow. But I have to give them an answer by Monday.

**Doctor:**
Okay.

**Abel Garza:**
And I sent it to my attorney so he could look at it. But he's in trial right now. So I'll either speak with him tonight or maybe tomorrow. But they're stating things on here on my condition. And what they're saying you have been saying as far as my treatment goes. And I mean, it's just the same stuff that they continue to put on there. That really isn't what you're saying. And-

**Doctor:**
Oh geez. It's long.

**Abel Garza:**
Yeah. It's two pages. The last page is just their signature block. But it's two pages. Will you have time tomorrow? I don't know if you're busy? Or really busy right now? I don't-

**Doctor:**
I'm actually going to be out. I have some appointments in the morning. But then I have drill. I'll be leaving to report tomorrow morning. So I'm leaving here at like 11:30. What are they wanting a response to? That's what [inaudible 00:04:10].

**Abel Garza:**
Well, that's the thing is... Well-

AG - 001218

**Appendix 441**

Doc ID: fd18a6372babc68234c269ceffbd6a3d07501dde

This transcript was exported on Apr 25, 2022 - view latest version here.

Doctor:

This is literally the same thing that they said before.

Abel Garza:

Yeah.

Doctor:

Based on personal preference, I have a medical necessity, which is the truth.

Abel Garza:

Yeah. And then, they're saying treating physician confirmed that you have had no medical changes since 2018. And a time during which you have been performing your current role. The only change has been your personal desire for another job. Your treating physician also confirmed that loud noises are not a problem for you, and that the more significant issue again is your personal desire for another job, or alternatively to have a coworker assist you with your duties in your current position.

Doctor:

Which is also not true.

Abel Garza:

Right. And then, they're-

Doctor:

You have everything that I sent them.

Abel Garza:

Right. And they're talking about at the bottom of that first page and on top of the second page, they're talking about gauging my current psychological function and motivation. To have me complete a fitness for duty examination, battery of neuropsychic testing, the cost of which ranges from $2000 to $4000. So-

Doctor:

Okay. Hold on. Let me jump in. Right?

Abel Garza:

Okay.

Doctor:

A fitness for duty evaluation we don't do. And a neuropsych evaluation is not necessary.

Abel Garza:

**Appendix 442**

Doc ID: fd18a6372babc68234c269ceffbd6a3d07501dde

This transcript was exported on Apr 25, 2022 - view latest version here.

I don't think none of this is necessary because I've been diagnosed and been getting treated by the VA. I'm rated now at 100%. So it's not like it's... They just said, "Hey, we're giving you this." I had to go through evaluations and exams and all this stuff to be diagnosed and to be getting treated.

Doctor:

Right. So here's the thing too. Right? They're literally stating one thing and then discrediting themselves in the same breath.

Abel Garza:

Right.

Doctor:

The treating physician confirmed that you have had no medical changes. And during that time you're performing your current role. The only change is your personal desire for another job. Your treating physician also confirmed that loud noises are not a problem for you. That's not true because if you look at literally that paragraph they copied and pasted.

Abel Garza:

Mm-hmm (affirmative).

Doctor:

Emotional [impairment 00:06:16] listed in regard to the experiences and role of environmental stress are at times personal. Whatever.

Abel Garza:

Right.

Doctor:

And situational difficulty functioning in environments to loud machinery, alarms and sirens.

Abel Garza:

Right.

Doctor:

So it literally contradicts exactly what they said based on what I put in the letter. [inaudible 00:06:30].

Abel Garza:

Correct. And like you even state in there. It's situational, which I've been telling them from the beginning that when we have problems in my area, or in the plant itself, and it causes the alarms to go off. It causes the disruption of the boilers, and the flaring. That kicks in everything. So it's the situation that I'm put in, in that specific area.

Doctor:

Yeah.

**Appendix 443**

Doc ID: fd18a6372babc68234c269ceffbd6a3d07501dde

This transcript is as exported on Apr 25, 2022 - view latest version here.

Abel Garza:

And they're just totally disregarding that stuff.

Doctor:

Yeah. So it's also saying your physician provided no medical records of evidence that any such comprehensive psychiatric testing has been informed through the VA system. It doesn't have to be.

Abel Garza:

There-

Doctor:

This is ridiculous.

Abel Garza:

And that's what I think. I don't know what ADA, Americans With Disability Act, they're following because from what I understand, if I'm a disabled person or have an illness, and I'm telling them that I have a problem. Okay. Yeah. They're going to say, "Well, we need proof that you have an illness or a disability." Well, we provided them with that. You've provided them with that. And yet they still want more, way and beyond, than what the law says that we have to provide them with.

Doctor:

Right.

Abel Garza:

And-

Doctor:

So here, it says specifically the company's contract at Occupational Health Specialists noted that myself offered no objective evidence to support that you have a new or different health condition that would require an accommodation. But you provided them with a list of your service connected disabilities.

Abel Garza:

Right.

Doctor:

Which general anxiety disorder is listed as a service connected disability. So nothing further should need to be provided. We don't have to do site testing to be able to say that this condition is creating a limitation.

Abel Garza:

Right. And that's what I-

Doctor:

**Appendix 444**

Doc ID: fd18a6372babc68234c269ceffbd6a3d07501dde

This transcript was exported on Apr 25, 2022 - view latest version here.

This is just [assinizing 00:08:33].

Abel Garza:

Yeah. But no. I just wanted to hear you say that because I mean, from what I have read up on the ADA, like you're saying, they're contradicting themselves. And they're not going by those guidelines.

Doctor:

Yeah. Yeah. But ultimately, I would just give this to your attorney because I mean, they literally contradicted themselves in a matter of four sentences because they say it right above. And then they copy and pasted my very same response, which basically says that your impairment is limited due to loud or unexpected noises. So goodness gracious.

Abel Garza:

Yeah. They don't even mention on here. They mention like the warehouse position. I don't think they specifically say... Yeah. The shipping station. They say about the safety position in the plant. But I applied for a safety position outside of the plant with the company. They don't even mention how they totally just... They didn't want to give me that job. They told me I was being hired, that director. And then, HR got involved, and all of a sudden I wasn't hired for it.

Doctor:

Right.

Abel Garza:

All right. Yeah. I sent it to my attorney. Like I said, he's in, court.

Doctor:

Yeah.

Abel Garza:

So I'm hoping I'm going to talk to him either tonight or tomorrow, and go from there.

Doctor:

That sounds good. I'm sorry. Abel. But I mean, it's just like they're just repeating the same things that we are... I mean, they've already done. They already know this.

Abel Garza:

Yeah. And it's just-

Doctor:

They're trying to do things that are contradictory because they're just repeating the same information. And yeah, it's just-

Abel Garza:

AG - 001222

**Appendix 445**   Doc ID: fd18a6372babc68234c269ceffbd6a3d07501dde

This transcript was exported on Apr 25, 2022 - view latest version here.

It's just upsetting that after all this time that I've been out. And the short term disability ended on January the sixth. And I had no nothing from them. No letters, no emails. And then I applied for unemployment. And they fought that. But unemployment investigated, and found that they fired me. But I never got a letter. And now I'm getting a letter, like if I'm still employed, saying if I don't return back to work or give them a decision on by the 25th that I'll no longer be employed. That's just-

Doctor:

Yeah. I mean, we've already-

Abel Garza:

It's crazy.

Doctor:

... [crosstalk 00:11:20] already been established in [inaudible 00:11:22] order. So, well if anything changes, or you want to have an appointment. I'm fully booked up next week, I think. I do know we have a scheduled for the...

Abel Garza:

I have it on... Oh, the 11th.

Doctor:

The 11th. Okay.

Abel Garza:

Yeah.

Doctor:

Yeah. The 11th. If anything transpires between now and then, just feel free to give me a call if I'm available, I'll speak with you about it. But you can always send me an email like you do. But this is just another piece that again is incomprehensible.

Abel Garza:

Yes, sir.

Doctor:

Okay.

Abel Garza:

Well, all right. Well I thank you for your time.

Doctor:

Yeah. No. Of course. Yeah. You're welcome, sir. I just want to make sure everything was okay. But yeah. We'll keep track of this. And if you hear anything, just let me know.

AG - 001223

**Appendix 446**      Doc ID: fd18a6372babc68234c269ceffbd6a3d07501dde

This transcript was exported on Apr 25, 2022 - view latest version here.

Abel Garza:
All right. Thank you.

Doctor:
All right. You're welcome.

Abel Garza:
Okay. Bye. Bye.

**Appendix 447**    Doc ID: fd18a6372babc68234c269ceffbd6a3d07501dde

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **ABEL GARZA** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 3-23-CV-00027-D** |
| | § | |
| **ENERGY TRANSFER PARTNERS,** | § | |
| **L.L.C.** | § | |
| **and LA GRANGE ACQUISITION, L.P.** | § | |
| | § | |
| **the Defendant.** | § | *Jury Trial Requested* |

# DECLARATION OF CHARLES H. PECKHAM

My name is Charles H. Peckham. I am above the age of eighteen. I am in all ways competent to make this declaration and have personal knowledge of the facts set forth herein.

I am an attorney licensed to practice law in the State of Texas by the Supreme Court of Texas and I have continuously practiced law in Texas since my licensing in 1992. My bar license number is 15704900. I am licensed in the Northern District of Texas. I am an attorney in the office of Peckham Martin PLLC and am counsel representing Abel Garza in this lawsuit.

In my capacity as attorney of record for Abel Garza, I have become familiar with the pleadings and papers filed and obtained in this lawsuit. I have personally attended all depositions in this matter.

All Exhibits in support of the Plaintiff's Response to Defendants' Energy Transfer Partners, L.L.C. and La Grange Acquisition, L.P.'s Motion for Summary Judgment and Plaintiff's Brief in Support are contained within the Appendix of which this declaration is a part, and are true and correct copies of documents produced by Abel Garza (such as his EEOC Charges and supplements/amendments to those Charges), Defendants Energy Transfer Partners, L.L.C. and La Grange



Acquisition, L.P. or otherwise are depositions taken in this matter pursuant to F.R. 30 generally, and 30(b)(3) specifically.  To the extent depositions were taken non-stenographically, they were reduced to a transcript, which has been provided to this Court as part of the Appendix.  The transcriptions are true and correct depictions, to the word, of the non-stenographic depositions noticed without objection and taken pursuant to Rule 30(b)(3).

All non-stenographic deposition transcripts in this matter included within the Appendix of which this declaration is a part are actually from audio/video depositions.  Further, all telephone recording transcripts in this matter included within the Appendix of which this declaration is a part also have audio recordings which have also been provided to all parties in discovery.  If there is any question as to the correctness of the transcriptions, the recordings themselves are available for confirmation.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: February 6, 2024

_____
Charles H. Peckham




## scra
Servicemembers Civil Relief Act
CENTRALIZED VERIFICATION SERVICE

2300 N Street NW Suite 300-RLK
Washington, DC 20037
(202) 462-0600
www.ServicemembersCivilReliefAct.com
support@ServicemembersCivilReliefAct.com

## AFFIDAVIT IN COMPLIANCE WITH THE SERVICEMEMBERS CIVIL RELIEF ACT

Tracking No. 202402060937
Active Duty Status Date: February 6, 2024

District of Columbia, ss:

My name is Ellen J. Rowe and I am a Legal Assistant with the Servicemembers Civil Relief Act Centralized Verification Service at www.ServicemembersCivilReliefAct.com. I am more than eighteen (18) years of age, of sound mind, suffer from no legal or mental disabilities, and I am fully competent to testify to the matters stated herein.

Pursuant to the Servicemembers Civil Relief Act [50 USC 3911 et seq.], I further state that I have caused a careful investigation to be made to ascertain whether or not

# JEREMY MICHAEL WADDELL

is in Active Duty Status as to all Departments of the Department of Defense (Army, Navy, Marine Corps, Air Force, and Space Force) as well as the National Oceanic and Atmospheric Agency, Public Health Service, and Coast Guard, including information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty, and that as a result of said inquiry, affiant does hereby state that, based upon the information you have furnished, as of the Active Duty Status Date (referenced above), the records of the Department of Defense Manpower Data Center ("DMDC") indicate that the servicemember as being in Active Duty Status with the service component identified by the DMDC as "Army Reserve" with an Active Duty Begin Date of August 25, 2023. The Status Report obtained from the DMDC is appended hereto.

_____
Ellen J. Rowe

This multi-page document SUBSCRIBED AND SWORN to before me on February 7, 2024.

_____
Kate B. Stupin

My Commission Expires: January 14, 2029

NOTARY PUBLIC, D.C.



C1



EXHIBIT
67

**Appendix 450**

1

SCRA 5.18



## Status Report
## Pursuant to Servicemembers Civil Relief Act

SSN:            Redacted*
Birth Date:     Redacted*
Last Name:      WADDELL
First Name:     JEREMY
Middle Name:    MICHAEL
Status As Of:   Feb-06-2024
Certificate ID: LSM7VF97PTD9M2R

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| Aug-25-2023 | Still Serving | Yes | Army Reserve |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, Space Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Sam Yousefzadeh*

Sam Yousefzadeh, Director
Department of Defense - Manpower Data Center
4800 Mark Center Drive, Suite 04E25
Alexandria, VA 22350

*Redacted by SCRACVS per Fed. R. Civ. P. 5.2 and analogous State rules and privacy issues raised in *Shadi Hayden v. The Retail Equation, Inc.*, USDC No. 8:20-cv-01203 (C.D. Cal.).

**Appendix 451**